ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV 17 2008
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.: _____ (__) |
| v. | 3-08CV2050-D |
| MARK CUBAN, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

### SUMMARY OF ALLEGATIONS

1. The Commission charges Defendant Mark Cuban ("Cuban") with committing securities fraud by engaging in illegal insider trading. Despite agreeing in June 2004 to keep material, non-public information about an impending stock offering by Mamma.com Inc. confidential, Cuban sold his entire stake in the company – 600,000 shares – prior to the public announcement of the offering. By selling when he did, Cuban avoided losses in excess of $750,000.

2. By conduct detailed in this Complaint, Cuban violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Unless enjoined, Cuban is likely to commit such violations again in the

future.

3. The Commission seeks a judgment from the Court: (a) enjoining Cuban from engaging in future violations of the antifraud provisions of the federal securities laws; (b) ordering Cuban to disgorge, with prejudgment interest, the losses avoided as a result of the actions described herein; and (c) ordering Cuban to pay a civil money penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

5. The Court has jurisdiction over this action under Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

6. Cuban, directly or indirectly, used the means or instruments of interstate commerce, the mails, or the facilities of a national securities exchange in connection with the acts described herein.

7. Venue is proper because certain of the transactions, acts, practices, and courses of business occurred within this judicial district.

## DEFENDANT

8. **Mark Cuban**, age 50, resides in Dallas, Texas. Among other things, he owns the NBA's Dallas Mavericks franchise, HDNet, a national high-definition television network, and Landmark Theaters.

## OTHER RELEVANT ENTITY

9. **Mamma.com Inc.** was a foreign private issuer headquartered in Montreal, Québec, Canada. On June 8, 2007, Mamma.com Inc. shareholders voted to change the company's name from Mamma.com Inc. to Copernic Inc., and on June 21, 2007 the company's NASDAQ ticker symbol changed from MAMA to CNIC.

## STATEMENT OF FACTS

10. In March 2004, Cuban acquired 600,000 shares of Mamma.com, a 6.3% stake in the company. After his acquisition, the company's chief executive officer and president ("the CEO") was Cuban's primary point of contact at Mamma.com.

11. During Spring 2004, Merriman Curhan Ford & Co. ("Merriman"), an investment bank, suggested that Mamma.com should consider raising capital through a private placement known as a PIPE ("private investment in public equity") offering. After consideration, the company decided to proceed with the PIPE and engaged Merriman to serve as the placement agent.

12. At the end of June 2004, as the PIPE progressed toward closing, Mamma.com, at Merriman's suggestion, decided to invite Cuban, the company's then-largest known shareholder, to participate in the PIPE. The CEO was instructed to contact Cuban and to preface the conversation by informing Cuban that he had confidential information to convey to him in order to make sure that Cuban understood – before the information was conveyed to him – that he would have to keep the information confidential.

13. On June 28, 2004, the CEO sent an email message to Cuban titled "Call me pls," in which he asked Cuban to call him "ASAP" and provided both his cellular and office telephone

numbers. Cuban called four minutes later from the American Airlines Center in Dallas, home of the NBA's Dallas Mavericks, and spoke to the CEO for eight minutes and thirty-five seconds.

14. The CEO prefaced the call by informing Cuban that he had confidential information to convey to him, and Cuban agreed that he would keep whatever information the CEO intended to share with him confidential. The CEO, in reliance on Cuban's agreement to keep the information confidential, proceeded to tell Cuban about the PIPE offering. Cuban became very upset and angry during the conversation, and said, among other things, that he did not like PIPEs because they dilute the existing shareholders. At the end of the call, Cuban told the CEO "Well, now I'm screwed. I can't sell."

15. After speaking to Cuban, the CEO told the company's then-executive chairman about his conversation with Cuban, including the fact that Cuban was very upset and angry about the PIPE. Shortly thereafter, the executive chairman sent an email to the other Mamma.com board members updating them on various PIPE-related items, including the fact that the CEO had spoken to Cuban:

> Today, after much discussion, [the CEO] spoke to Mark Cuban about this equity raise and whether or not he would be interested in participating. As anticipated he initially 'flew off the handle' and said he would sell his shares (recognizing that he was not able to do anything until we announce the equity) but then asked to see the terms and conditions which we have arranged for him to receive from one of the participating investor groups with which he has dealt in the past.

16. In reliance on Cuban's acceptance of a duty of confidentiality and his acknowledgement that he could not sell until after the public announcement, the CEO, several hours after their conversation, sent Cuban a follow-up email in which he wrote: "If you want more details about the private placement please contact . . . [Merriman]." In his email, the CEO

4

provided the Merriman sales representative's telephone number.

17. Using that telephone number, Cuban called the Merriman sales representative later that afternoon and spoke to him for eight minutes about the PIPE. During that call, the salesman supplied Cuban with additional confidential details about the PIPE. In response to Cuban's questions, the salesman told him that the PIPE was being sold at a discount to the market price and that the offering included other incentives for the PIPE investors. Cuban was very upset and angry about the PIPE during the call.

18. One minute after hanging up with the Merriman sales representative, Cuban called his broker in Dallas and told the broker to sell his entire 600,000 share Mamma.com position. He told the broker "sell what you can tonight and just get me out the next day."

19. During after-hours trading on June 28, 2004, Cuban sold 10,000 of his 600,000 Mamma.com shares at an average cost per share of $13.4990.

20. The following morning, June 29, 2004, Mamma.com's executive chairman sent another email to the board. He wrote that "we did speak to Mark Cuban ([the CEO] and, subsequently, our investment banker) to find out if he had any interest in participating to the extent of maintaining his interest. His answers were: he would not invest, he does not want the company to make acquisitions, he will sell his shares which he can not do until after we announce."

21. On June 29, 2004, Cuban sold his remaining 590,000 Mamma.com shares during regular trading at an average cost per share of $13.2937.

22. On June 29, 2004, at 6:00 p.m. after the markets had closed, Mamma.com publicly announced the PIPE offering.

23. On June 30, 2004, the first trading day following the public announcement, trading in Mamma.com opened at $11.89 – down $1.215, or 9.3%, from the June 29, 2004 closing price of $13.105. The stock price on June 30, 2004 ultimately closed at $11.99, down $1.115, or 8.5%, from the June 29, 2004 closing price. Mamma.com continued to decline over the next week, closing at $8.00 on July 8, 2004 (down 39% from the June 29, 2004 closing price).

24. By selling his Mamma.com shares prior to the public announcement of the PIPE, Cuban avoided losses in excess of $750,000.

25. Cuban later publicly stated that he had sold his Mamma.com shares because the company was conducting a PIPE, which issued shares at a discount to the prevailing market price and also would have caused his ownership position to be diluted. Cuban never disclosed to Mamma.com that he was going to sell his shares prior to the public announcement of the PIPE.

26. Cuban sold his Mamma.com securities on the basis of material, non-public information he received from the CEO, and, subsequently, from the Merriman sales representative. Cuban knew or was reckless in not knowing that he had received material, non-public information from Mamma.com and that he breached a duty of trust or confidence that he owed to Mamma.com when he sold on the basis of that information.

27. As a result of the conduct described herein, Cuban violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

# FIRST CLAIM

## INSIDER TRADING IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

28. The Commission realleges and reincorporates paragraphs 1 through 27 as if fully set forth herein.

29. Cuban, with scienter, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit.

30. By reason of the actions alleged herein, Cuban violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

# SECOND CLAIM

## INSIDER TRADING IN THE OFFER OR SALE OF SECURITIES

### Violations of Section 17(a) of the Securities Act

31. The Commission realleges and reincorporates paragraphs 1 through 30 as if fully set forth herein.

32. Cuban, with scienter, by use of the means or instrumentalities of interstate commerce or of the mails, in the offer or sale of securities: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions

to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of the securities offered and sold by Cuban.

33. By reason of the actions alleged herein, Cuban violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

(i) finding that Cuban violated the antifraud provisions of the federal securities laws as alleged herein;

(ii) permanently enjoining Cuban from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(iii) ordering Cuban to disgorge the losses avoided as a result of the actions alleged herein and to pay prejudgment interest thereon;

(iv) ordering Cuban to a pay civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

(v) granting such other relief as this Court may deem just and proper.

Dated: November 17, 2008

Respectfully submitted,

*/s/ Kevin O'Rourke*
Kevin P. O'Rourke (D.C. Bar No. 254920)
Scott W. Friestad
Robert B. Kaplan
Daniel T. Chaudoin
Julie M. Riewe (D.C. Bar No. 472470) PHV
Adam S. Aderton (D.C. Bar No. 496247) PHV

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4442 (O'Rourke)
(202) 772-9246 (fax) (O'Rourke)
orourkek@sec.gov

Toby Galloway (Texas Bar No. 00790733)
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
(817) 978-6447
(817) 978-2700 (fax)

Attorneys for Plaintiff
Securities and Exchange Commission



**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Securities and Exchange Commission

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See attachment

## DEFENDANTS
Cuban, Mark

**3-08CV2050-D**

County of Residence of First Listed Defendant Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
See attachment

RECEIVED NOV 17 2008 CLERK, U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sec. 77q(a); 15 U.S.C. Sec. 78j(b)
Brief description of cause:
Securities Law Violation; Insider Trading

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Disgorgement of $750,000 plus interest and penalties
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 11/17/08
SIGNATURE OF ATTORNEY OF RECORD
Kevin O'Rourke

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# ATTACHMENT TO CIVIL COVER SHEET

**I.(c)** **Plaintiff's Attorneys**

    Kevin P. O'Rourke
    Scott W. Friestad
    Robert B. Kaplan
    Daniel T. Chaudoin
    Julie M. Riewe
    Adam S. Aderton
    Securities and Exchange Commission
    100 F Street, N.E.
    Washington, D.C. 20549
    (202) 551-4442 (O'Rourke)
    (202) 772-9246 (O'Rourke fax)
    orourkek@sec.gov

    Toby Galloway
    Securities and Exchange Commission
    Burnett Plaza, Suite 1900
    801 Cherry Street, Unit 18
    Fort Worth, TX 76102
    (817) 978-6447
    (817) 978-2700 (fax)

**I.(c)** **Defendant's Attorneys**

    Ralph C. Ferrara
    Stephen A. Best
    Christopher J. Clark
    Lyle Roberts
    Dewey & LeBouef LLP
    1101 New York Ave., N.W.
    Washington, D.C. 20005-4213
    (202) 346-8000
    (202) 346-8102 (fax)

    Paul E. Coggins
    Kiprian E. Mendrygal
    Fish & Richardson P.C.
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    (214) 747-5070
    (214) 747-2091 (fax)