**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No. 3:08-cv-02050 (SAF)** |
| **MARK CUBAN,** | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## Memorandum of Law of Mark Cuban
## In Support of Motion to Dismiss

# TABLE OF CONTENTS

Page(s)

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ........................................................................................................................ 5

I.      Standard Of Review ................................................................................................ 7

II.     The SEC Has Failed To Adequately Allege That Mr. Cuban Engaged In
        Insider Trading. ...................................................................................................... 8

        A.      The existence of a fiduciary or fiduciary-like relationship is a matter
                of state law ................................................................................................... 9

        B.      Texas state law applies in this case. ......................................................... 11

        C.      Under Texas state law, Mr. Cuban did not have a fiduciary or
                fiduciary-like relationship with Mamma.com. ......................................... 12

        D.      Even if this Court were to apply "federal common law," the SEC has
                failed to adequately plead a fiduciary or fiduciary-like relationship. ......... 16

III.    SEC Rule 10b5-2(b)(1) Is Not Applicable In This Case. ...................................... 20

        A.      Rule 10b5-2(b)(1) only applies to family and other personal
                relationships ............................................................................................... 21

        B.      Rule 10b5-2(b)(1) is invalid if construed as creating liability in the
                absence of a fiduciary or similar duty of trust and confidence ................. 22

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*ARA Automotive Group v. Central Garage, Inc.*,
 124 F.3d 720 (5th Cir. 1997) .........................................................................14

*Atherton v. FDIC*,
 519 U.S. 213 (1997) .........................................................................................9

*Barker v. Henderson, Franklin, Starnes & Holt*,
 797 F.2d 490 (7th Cir. 1986) ...........................................................................9

*Bell Atlantic Corp. v. Twombley*,
 550 U.S. 544 (2007) .........................................................................................8

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*,
 343 F.3d 719 (5th Cir. 2003) .........................................................................11

*Burks v. Lasker*,
 441 U.S. 471 (1979) .......................................................................................10

*Chiarella v. United States*,
 445 U.S. 222 (1980) ..............................................................................*passim*

*City Solutions, Inc. v. Clear Channel Communications, Inc.*,
 201 F. Supp. 2d 1048 (N.D. Cal. 2002) .........................................................20

*Dirks v. SEC*,
 463 U.S. 646 (1983) .........................................................................................5

*Ernst & Ernst v. Hochfelder*,
 425 U.S. 212 (1976) .......................................................................................22

*Erie Railroad Co. v. Tompkins*,
 304 U.S. 64 (1938) ...........................................................................................9

*Financial Acquisition Partners LP v. Blackwell*,
 440 F.3d 278 (5th Cir. 2006) ...........................................................................3

*Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*,
 55 F.3d 181 (5th Cir. 1995) ...........................................................................14

*Fortson v. Winstead, McGuire, Sechrest, & Minick*,
961 F.2d 469 (4th Cir. 1992) ...................................................9

*Hollis v. Hill*,
232 F.3d 460 (5th Cir. 2000) .................................................13

*In re Katrina Canal Breaches Litigation*,
495 F.3d 191 (5th Cir. 2007) ...................................................7

*Landry v. All American Assurance Co.*,
688 F.2d 381 (5th Cir. 1982) ...................................................7

*Leach v. FDIC*,
860 F.2d 1266 (5th Cir. 1988) ...............................................10

*Nolan Bros. v. Whiteraven, L.L.C.*,
No. 99 Civ. 10256, 2004 WL 376265 (S.D.N.Y. Feb. 27, 2004)...................................20

*O'Melveny & Myers v. FDIC*,
512 U.S. 79 (1994) ..................................................................9

*Ray v. Karris*,
780 F.2d 636 (7th Cir. 1985) ...................................................7

*Regents of the University of California v. Credit Suisse First Boston (USA), Inc.*,
482 F.3d 372 (5th Cir. 2007) ............................................8, 24

*Sabre, Inc. v. Lyn-Lea Travel Corp.*,
No. Civ. A 3:96CV2068-R, 2003 WL 22203707 (N.D. Tex. Sept. 23, 2003)...............15

*Santa Fe Industries, Inc. v. Green*,
430 U.S. 462 (1977) ..............................................................10

*SEC v. Dorozhko*,
No. 07 Civ. 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008) ............... 6-7, 24

*SEC v. Kirch*,
263 F. Supp. 2d 1144 (N.D. Ill. 2003)....................................17

*SEC v. Kornman*,
391 F. Supp. 2d 477 (N.D. Tex. 2005) ...........................*passim*

*SEC v. Mayhew*,
916 F. Supp. 123 (D. Conn. 1995)..........................................18

*SEC v. Sargent*,
   229 F.3d 68 (1st Cir. 2000) ...........................................................................17

*SEC v. Talbot*,
   430 F. Supp. 2d 1029 (C.D. Cal. 2006), *reversed on other grounds*,
   530 F.3d 1085 (9th Cir. 2008) .........................................................16, 19, 21

*SEC v. Yun*,
   327 F.3d 1263 (11th Cir. 2003) ....................................................................17

*Southwest Realty, Ltd. v. Daseke*,
   No. CA3-89-3055-D, 1992 WL 373166 (N.D. Tex. May 21, 1992) ............9, 24

*Snap-On Inc. v. Ortiz*,
   No. 96 C 2138, 1996 WL 627618 (N.D. Ill. Oct. 24, 1996) .......................9, 20

*Stuart v. Spademan*,
   772 F.2d 1185 (5th Cir. 1985) .....................................................................11

*United States v. Cassese*,
   273 F. Supp. 2d 481 (S.D.N.Y. 2003) ......................................................18, 19

*United States v. Chestman*,
   947 F.2d 551 (2d Cir. 1991) ..................................................................*passim*

*United States v. Kim*,
   184 F. Supp. 2d 1006 (N.D. Cal. 2002) ..............................................16, 20, 21

*United States v. O'Hagan*,
   521 U.S. 642 (1997) ..............................................................................*passim*

*Wallis v. Pan American Petroleum Corp.*,
   384 U.S. 63 (1966) ....................................................................................9, 10

*Walton v. Morgan Stanley & Co.*,
   623 F.2d 796 (2d Cir. 1980) ........................................................................18

*Williams v. WMX Technologies, Inc.*,
   112 F.3d 175 (5th Cir. 1997) .........................................................................8


**STATE CASES**


*Anglo-Dutch Petroleum International, Inc. v. Smith*,
   243 S.W.3d 776 (Tex. App. – Houston [14th Dist.] 2007, pet. denied) ...........15

*Associated Indemnity Corp. v. CAT Contracting, Inc.*,
    964 S.W.2d 276 (Tex. 1998) ....................................................................14

*Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*,
    823 S.W.2d 591 (Tex. 1992) ....................................................................14

*Grant Thornton LLP v. Suntrust Bank*,
    133 S.W.3d 342 (Tex. App. – Dallas 2004, pet. denied)................................11

*Meyer v. Cathey*,
    167 S.W.3d 327 (Tex. 2005) ....................................................................14

*Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*,
    207 S.W.3d 801 (Tex. App. – Houston [14th Dist.] 2006, pet. denied)...........15

*Schlumberger Technology Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997) ....................................................................14

## ADMINISTRATIVE CASE

*Cady, Roberts & Co. v. SEC*,
    40 SEC 907 (1961) ...................................................................................5

## FEDERAL STATUTES AND REGULATORY MATERIAL

    15 U.S.C. § 78j(b)....................................................................................5
    17 C.F.R. § 240.10b5-2 ............................................................................2
    17 C.F.R. § 240.10b5-2(b)(1) ..........................................................2, 20, 25

Selective Disclosure and Insider Trading,
    64 Fed. Reg. 72590 (proposed rule, Dec. 28, 1999)....................................21

Selective Disclosure and Insider Trading,
    65 Fed. Reg. 51716 (final rule, Aug. 24, 2000)....................................21, 25

## STATE STATUTE

    Tex. Bus. Corp. Act Ann. art. 8.02A (Vernon 1980) ...................................13

**FOREIGN STATUTE**

Business Corporations Act,
   R.S.O. 1990, c. B.16, ss. 1, *et seq.* (Can.), available on Westlaw ...................................13

**MISCELLANEOUS**

Linda C. Thomsen, Director, Division of Enforcement, SEC,
   *Opening Remarks to the Securities Industry and Financial Markets Association*
   *Regulatory Symposium on Insider Trading* (May 19, 2008)..........................................2, 6

Restatement (Second) of Conflict of Laws § 148(2) (1971) ..................................11

Steven A. Ramirez & Christopher M. Gilbert,
   *The Misappropriation Theory of Insider Trading under United States v. O'Hagan:*
   *Why Its Bark Is Worse Than Its Bite*, 26 Sec. Reg. L.J. 162 (1998)................................11

W. Wang & M. Steinberg, *Insider Trading* § 5:4 (2d ed. 2005 & 2008 Supp.).....................6

Brief for the United States at *10-11, *United States v. O'Hagan*,
   521 U.S. 642 (1997) (No. 96-842)......................................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Securities and Exchange Commission ("SEC" or "Commission") has sued Mark Cuban for insider trading based on a single, unsolicited phone conversation that Mr. Cuban had more than four years ago with the Chief Executive Officer ("CEO") of Mamma.com Inc., a Canadian company in which Mr. Cuban was an investor. The call concerned an offering of shares that Mamma.com was about to announce to the public. In its Complaint, the SEC alleges Mr. Cuban engaged in insider trading when he supposedly agreed to keep confidential the information about the offering he received on the call (and in a follow-up call with Mamma.com's placement agent), but then violated that alleged agreement by selling his Mamma.com stock based on the information. The SEC has failed to state a cause of action, however, because it does not (and cannot) adequately allege that Mr. Cuban owed Mamma.com a fiduciary or similar duty of trust and confidence.[1]

There is no general prohibition on the trading of securities based on material, nonpublic information. Although the SEC has often argued that *any* recipient of material, nonpublic information has potential insider trading liability, the U.S. Supreme Court has repeatedly rejected the SEC's view. Instead, the Court has insisted that insider trading liability requires a showing of fraud. In an insider trading case like this one, a fraud occurs only if the trader violates a fiduciary or similar duty of trust and confidence by knowingly using, without disclosure to the source of the information, the material, nonpublic information for his own benefit.

The SEC has not been shy about its desire to impermissibly expand the scope of liability established by the Supreme Court. In a recent speech, the SEC's director of enforcement made it clear that the Commission is bringing suits that "confront" the limits

---

[1] Mr. Cuban vigorously disputes the SEC's version of the facts – including the assertion that Mr. Cuban entered into a confidentiality agreement with Mamma.com – but for purposes of this motion to dismiss assumes the truth of the allegations in the Complaint as required by law.

of insider trading law by challenging the Court's fiduciary duty requirement.[2]  This lawsuit is just such a test case.  The Complaint alleges that Mr. Cuban agreed at the beginning of his phone call with the CEO of Mamma.com to keep any information he received confidential and, by doing so, entered into a fiduciary or similar relationship of trust and confidence with Mamma.com.  No court has ever held, however, that a confidentiality agreement alone creates a fiduciary or fiduciary-like duty to act loyally to the source of the information.  In the absence of other factual allegations demonstrating the existence of a fiduciary or similar relationship, Mr. Cuban cannot be liable for insider trading.

The fact that SEC Rule 10b5-2(b)(1) provides that a person is presumed to have a "duty of trust or confidence" whenever he "agrees to maintain information in confidence" does not alter this conclusion.  17 C.F.R. § 240.10b5-2.  The adopting release for Rule 10b5-2(b)(1) states that the rule only addresses the existence of a fiduciary or similar duty in the context of a family or other personal relationship.  The rule therefore has no applicability in this case.  Moreover, to the extent the SEC claims that Rule 10b5-2(b)(1) creates potential liability based *solely* on the existence of a confidentiality agreement, the rule directly contravenes Supreme Court precedent by creating liability in the absence of the requisite duty and cannot be followed.

In sum, the SEC contends Mr. Cuban violated an oral agreement to keep information about Mamma.com's securities offering confidential.  Even if that were true, a breach of a confidentiality agreement does not constitute fraud in the absence of a fiduciary or fiduciary-like relationship between the parties to the agreement.  Mr. Cuban did not have the requisite relationship with Mamma.com.  Accordingly, this Court should decline the SEC's transparent invitation to ignore binding precedent and expand the scope of insider

---

[2] *See* Linda C. Thomsen, Director, Division of Enforcement, SEC, *Opening Remarks to the Securities Industry and Financial Markets Association Regulatory Symposium on Insider Trading* (May 19, 2008) ("Thomsen Opening Remarks"), *available at* http://www.sec.gov/news/speech/2008/spch051908lct.htm (arguing that "duty is not what [Section 10(b)] requires").

trading liability to encompass the non-fraudulent activity alleged in this case. The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Mamma.com was a Canadian company that operated an Internet search engine. *See* Mamma.com Inc., Annual Report (Form 20-F) (May 14, 2004) ("2003 Form 20-F") (Ex. 1).[3] In March 2004, Mr. Cuban purchased 600,000 shares, or 6.3%, of Mamma.com's outstanding common stock. (Compl. ¶ 10.) In compliance with SEC regulations, Mr. Cuban timely filed a Schedule 13G with the Commission disclosing his share purchase. Schedule 13G (Mar. 15, 2004) (Ex. 2). The SEC does not allege that Mr. Cuban had any relationship with Mamma.com other than as a minority shareholder.

During the spring of 2004, Mamma.com decided to engage in a private investment in public equity ("PIPE") offering and retained Merriman Curhan Ford & Co. ("Merriman") to serve as the placement agent. (Compl. ¶ 12.) Although Mamma.com "anticipated" that Mr. Cuban would be upset about the forthcoming PIPE offering and would want to sell his shares, it nevertheless decided to tell him about the offering in advance of the public announcement. (*Id.* ¶¶ 12, 15.) The SEC alleges Mamma.com wanted to invite Mr. Cuban to participate in the PIPE offering. (*Id.*) An internal company e-mail cited in the Complaint, however, states that as of the day Mamma.com contacted Mr. Cuban, the company's "board has indicated that we raised $15 million, we may be slightly

---

[3] In a motion to dismiss a securities fraud action, this Court may consider "public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit[], without, pursuant to Rule 12(b), converting the motion into one for summary judgment." *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). *See also* Defendant Mark Cuban's Motion For Judicial Notice.

*oversubscribed* at about $17 million. . . ." E-mail from Mamma.com Executive Chairman David Goldman on June 28, 2004 (emphasis added) (Compl. ¶ 15) (Ex. 3). [4]

On June 28, 2004, just one day prior to the closing and announcement of the PIPE offering, the CEO of Mamma.com spoke with Mr. Cuban about the transaction for the first time. (Compl. ¶ 13.) In that phone conversation, which lasted approximately eight minutes, the CEO allegedly "prefaced the call by informing Cuban that he had confidential information to convey to him, and Cuban agreed that he would keep whatever information the CEO intended to share with him confidential." (*Id.* ¶¶ 13, 14.) The CEO then "proceeded to tell Cuban about the PIPE offering." (*Id.* ¶ 14.) As anticipated by Mamma.com, Mr. Cuban reacted angrily to the information and indicated that he would sell his Mamma.com shares. (*Id.* ¶¶ 14, 15.) According to company personnel, however, Mr. Cuban also was concerned that he would be unable to sell his shares until after the PIPE offering was announced. (*Id.*)

Later that same day, the CEO of Mamma.com e-mailed Mr. Cuban with contact information for the Merriman sales representative. (*Id.* ¶ 16.) Mr. Cuban spoke with the sales representative and reiterated his displeasure with the PIPE offering. (*Id.* ¶ 17.) Mr. Cuban subsequently directed his broker to sell all of his Mamma.com shares. (*Id.* ¶ 18.) Mr. Cuban's broker sold a small amount of the shares in after-hours trading on June 28, 2004 and sold the rest during regular trading hours on June 29, 2004. (*Id.* ¶¶ 19, 21.) Mamma.com issued a press release about the PIPE offering on June 29, 2004 after the markets had closed. (*Id.* ¶ 22.)

In direct contrast to what one might expect from someone who has supposedly engaged in insider trading, Mr. Cuban openly disclosed both his sale of Mamma.com shares and his reasons for selling. Mr. Cuban filed an amended Schedule 13G with the SEC

---

[4] The PIPE offering ultimately involved the sale of "1,515,980 common shares and 606,392 warrants to certain accredited investors for an aggregate price of $16,599,981." Mamma.com Inc., Annual Report (Form 20-F), at 16 (May 27, 2005) (Ex. 4).

stating that, *as of June 29, 2004*, he no longer held any shares of Mamma.com. Schedule 13G, filed on July 1, 2004 (Ex. 5). In other words, Mr. Cuban immediately alerted the SEC and the public that he had sold his shares just prior to the announcement of the PIPE offering. According to the Complaint, Mr. Cuban also "publicly stated that he had sold his Mamma.com shares because the company was conducting a PIPE." (Compl. ¶ 25.)

## ARGUMENT

No federal statute expressly prohibits insider trading. Therefore, the SEC primarily has used the "catchall" fraud provisions of Section 10(b) of the Securities Exchange Act and Rule 10b-5 to cover this conduct. Ever since its seminal decision in *Cady, Roberts & Co. v. SEC*, 40 SEC 907 (1961), where the SEC found for the first time that insider trading violated Section 10(b), the Commission has pushed for a "parity of information" rule whereby anyone who possesses material, nonpublic information must either disclose it to the investing public or abstain from trading. The problem with the "parity of information" rule is that it does not conform to the plain language of Section 10(b), which only creates liability for "manipulative" or "deceptive" conduct. 15 U.S.C. § 78j(b).[5] As a result, the U.S. Supreme Court has forcefully rejected the SEC's "parity of information" rule and found that "only some persons, under some circumstances, will be barred from trading while in possession of material nonpublic information." *Dirks v. SEC*, 463 U.S. 646, 657 (1983) (citing *Chiarella v. United States*, 445 U.S. 222, 233 (1980)). The people who are barred from trading are those who have a duty to disclose based on the existence of a fiduciary or similar relationship of trust and confidence. *Chiarella*, 445 U.S. at 228; *United States v. O'Hagan*, 521 U.S. 642, 652 (1997).

There are two established theories of insider trading liability: classical and misappropriation. In *Chiarella*, the Court applied the classical theory, pursuant to which a

---

[5] Section 10 makes it "unlawful for any person . . . (b) [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." *Id.*

corporate insider commits securities fraud when he breaches his fiduciary duty to the corporation's shareholders by trading on the basis of material, nonpublic information obtained from the corporation. *Id.* at 227-28. An alternative (but closely related) theory of liability, originally adopted by some lower courts, is the misappropriation theory. *See, e.g.*, *United States v. Chestman*, 947 F.2d 551, 564 (2d Cir. 1991). Under the misappropriation theory, a person commits securities fraud when he misappropriates material, nonpublic information in breach of a fiduciary duty owed to the source of the information and then trades on the basis of the information. *Id.* When the issue of the validity of the misappropriation theory came before the Supreme Court in the *O'Hagan* case, the SEC specifically argued – consistent with *Chiarella* and the classical theory – that liability *required* the existence of a fiduciary or similar duty of trust and confidence that "deceives the information's legitimate possessor into believing that [the trader] is acting as a faithful agent." Brief for the United States at *10-11, *United States v. O'Hagan*, 521 U.S. 642 (1997) (No. 96-842). The Court accepted the SEC's position, because it comported with the language of Section 10(b), and endorsed the misappropriation theory. In particular, the Court held that "a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information." *O'Hagan*, 521 U.S. at 652. *See also* W. Wang & M. Steinberg, *Insider Trading* § 5:4 (2d ed. 2005 & 2008 Supp.).

The SEC is no longer satisfied, however, with the scope of the misappropriation theory as adopted by the Supreme Court. In contravention of the position it took in *O'Hagan*, the SEC (by its own admission) is bringing insider trading cases in which no breach of a fiduciary or similar duty of trust and confidence is alleged. *See* Thomsen Opening Remarks. Not surprisingly, courts have reacted negatively to this renewed attempt to impose the "parity of information" rule. In the most notable decision to date, *SEC v. Dorozhko*, the court was sharply critical of the SEC's failure to adequately allege any breach of a fiduciary or fiduciary-like duty in a case against a corporate outsider who

obtained material, nonpublic information by illegally hacking into a computer system. No. 07 Civ. 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008). The court found that violations of Section 10(b) "[u]niformly . . . have been predicated on a breach of a fiduciary (or similar) duty of candid disclosure." *Id.* at *1. For a court to "eliminate the fiduciary requirement now would be to undo decades of Supreme Court precedent, and rewrite the law as it has developed." *Id.*

The instant case is simply more of the same. Mr. Cuban is not alleged to have been (and was not) a corporate insider at Mamma.com. Thus, the SEC is proceeding under the misappropriation theory. The Complaint brazenly alleges that Mr. Cuban violated a "duty of confidentiality" (Compl. ¶ 16) or a "duty of trust *or* confidence" (*Id.* ¶ 26) (emphasis added), but never contends he violated the requisite fiduciary duty or similar duty of trust *and* confidence. The SEC may argue that the alleged facts nevertheless support the existence of the requisite duty. If so, it is the SEC's apparent position that an oral confidentiality agreement reached during an eight-minute phone call between the CEO of a company and one of his shareholders can give rise to Section 10(b) liability for insider trading. No court has ever held, however, that a confidentiality agreement *alone* creates a fiduciary or fiduciary-like duty to act loyally to the source of the information. For all the reasons discussed below, this Court should decline to be the first.[6]

## I.        Standard Of Review.

On a motion to dismiss for failure to state a claim, the court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations

---

[6] The Complaint asserts insider trading claims under both Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act (and Rule 10b-5 promulgated thereunder). (Compl. ¶¶ 28-33.) Courts have routinely examined these provisions under the same standards. *See Landry v. All Am. Assurance Co.*, 688 F.2d 381, 385 (5th Cir. 1982) ("Rule 10b-5, adopted under § 10(b) of the Securities and Exchange Act of 1934, is substantially identical to § 17(a)."); *Ray v. Karris*, 780 F.2d 636, 641, n.3 (7th Cir. 1985) ("Since, however, this section and Rule 10b-5 'track' each other closely, the lack of a 10b-5 cause of action would preclude section 17(a) relief also.").

omitted). However, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 552 (2007).

In addition, because the SEC asserts insider trading claims, which sound in fraud, it must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("FRCP 9(b)"). *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (FRCP 9(b) should be applied "with force, without apology"). The Commission therefore must plead with particularity all of the circumstances, other than mental state, constituting fraud under the misappropriation theory – namely, that Mr. Cuban both traded on the basis of material, nonpublic information and breached a duty of disclosure to the source of the information. *See, e.g.*, *O'Hagan*, 521 U.S. at 652, 666.

## II. The SEC Has Failed To Adequately Allege That Mr. Cuban Engaged In Insider Trading.

As the Supreme Court has held, "Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud." *Chiarella*, 445 U.S. at 234-35. For purposes of insider trading liability pursuant to the misappropriation theory, the fraud arises when the trader engages in "[d]eception through nondisclosure" by failing to tell the source of the material, nonpublic information that he is going to use the information for his own benefit by trading in securities. *O'Hagan*, 521 U.S. at 654. For the trader's actions to constitute deception, he must have had a duty of disclosure. *Id.* at 652; *see also Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 389 (5th Cir. 2007) (no "deception" under Section 10(b) "unless it involves breach of some duty of candid disclosure"). The duty of disclosure is created by the existence of a fiduciary or similar relationship of trust and confidence between the fiduciary-turned-trader and the source of the information. *O'Hagan*, 521 U.S. at 652. The SEC has failed to adequately allege that a

fiduciary or similar relationship of trust and confidence existed between Mr. Cuban and Mamma.com. As a result, Mr. Cuban cannot be liable for insider trading.

**A.     The existence of a fiduciary or fiduciary-like relationship is a matter of state law.**

The legal basis for determining what facts and circumstances give rise to a fiduciary duty, as this Court has recognized, is not the federal securities laws. *Southwest Realty, Ltd. v. Daseke*, No. CA3-89-3055-D, 1992 WL 373166, at \*9-10 (N.D. Tex. May 21, 1992). Instead, "the duty to disclose material facts arises only where there is some basis outside the securities laws, such as state law, for finding a fiduciary or other confidential relationship." *Id.* at \*10 (quoting *Fortson v. Winstead, McGuire, Sechrest, & Minick*, 961 F.2d 469, 472 (4th Cir. 1992)); *see also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir. 1986) ("[D]uty [to disclose] does not come from § 10(b) or Rule 10b-5; if it did the inquiry would be circular. The duty must come from a fiduciary relation outside securities law."); *Snap-On Inc. v. Ortiz*, No. 96 C 2138, 1996 WL 627618, at \*3 (N.D. Ill. Oct. 24, 1996) (in evaluating Section 10(b) claim based on non-disclosure, "[t]he existence of a fiduciary relationship depends upon the existence of a duty under applicable state law"). Although some lower courts – apparently not confronted with the argument that state law should apply – have appeared willing to apply a separate federal fiduciary duty analysis for purposes of applying the misappropriation theory (*see, e.g.*, *SEC v. Kornman*, 391 F. Supp. 2d 477 (N.D. Tex. 2005)), this runs directly counter to this Court's holding in *Southwest Realty* and the Supreme Court's jurisprudence.

There "is no federal general common law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83 (1994) (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Absent congressional authorization, the creation by courts of special federal rules can only be justified by a "significant conflict between some federal policy or interest and the use of state law." *Id.* at 87 (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)); *see also Atherton v. FDIC*, 519 U.S. 213, 218, 224 (1997) (rejecting creation of federal

common law to govern standard of care for directors of federally chartered banks).  The Supreme Court has already determined that there is no such conflict between Section 10(b) and state fiduciary duty law.

In *Santa Fe Industries, Inc. v. Green*, the Court rejected the Second Circuit's attempt to use federal common law to expand Section 10(b) liability to cover a non-deceptive breach of fiduciary duty related to a corporate cash-out merger.  430 U.S. 462, 480 (1977).  In particular, the Court expressed concern that a decision in favor of the plaintiffs would involve the creation of a "federal fiduciary principle" that "could be expected to depart from state fiduciary standards at least to the extent necessary to ensure uniformity within the federal system."  *Id.* at 478-79.  "Absent a clear indication of congressional intent," the Court declined to "federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden."  *Id.*  The Court ultimately concluded that "uniform federal fiduciary standards . . . should not be supplied by judicial extension of [Section] 10(b) and Rule 10b-5 to cover the corporate universe."  *Id.* at 480 (internal quotation marks omitted).[7]  *See also Burks v. Lasker*, 441 U.S. 471, 478, 479 (1979) (quoting *Wallis*, 384 U.S. at 68) (applying state law to cause of action under federal Investment Company Act because state law is "font of corporate directors' powers" and application of state law did not pose "significant threat to any identifiable federal policy or interest").[8]

---

[7] In an analogous situation – examining the standing of a minority shareholder to bring a Racketeer Influenced and Corrupt Organization Act ("RICO") action against corporate directors based on false representations – the Fifth Circuit has held that it must apply state law rather than "generating federal common law in this area."  *Leach v. FDIC*, 860 F.2d 1266, 1274 n.14 (5th Cir. 1988) ("Any definition of the term 'property,' an inherently state-law related term, should look to state law.").

[8] Nothing in *O'Hagan* suggests the Court intended to move away from its previous holdings and permit the creation of a federal fiduciary duty for purposes of insider trading claims under the misappropriation theory.  As commentators have noted, "in light of the Supreme Court's skepticism towards federal common law, it is unlikely it would countenance a wholesale

State law is the traditional "font" of fiduciary duties and, as the Supreme Court found in *Santa Fe*, courts should decline to override established state law to expand the scope of liability under Section 10(b) and Rule 10b-5. This Court should follow the approach it embraced in *Southwest Realty*, which accurately reflects the Supreme Court jurisprudence on the issue, and apply state law in determining whether Mr. Cuban had a fiduciary or similar relationship of trust and confidence with Mamma.com.

### B. Texas state law applies in this case.

Federal courts must follow the choice of law rules of the state in which they sit, *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985), and thus Texas choice of law rules apply here. Texas courts decide choice of law issues by using the "most significant relationship" test. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003). Specifically, Restatement (Second) of Conflict of Laws § 148(2) applies in fraud and misrepresentation claims. *Benchmark*, 343 F.3d at 727-28 n.4.[9]

---

creation of a federal common law of appropriate information use in contexts ranging from physician-patient relationships to father-son relationships, with nary a mention of this issue in the *O'Hagan* opinion." Steven A. Ramirez & Christopher M. Gilbert, *The Misappropriation Theory of Insider Trading under United States v. O'Hagan: Why Its Bark Is Worse Than Its Bite*, 26 Sec. Reg. L.J. 162 (1998) (state common law must be used to determine existence of fiduciary duty).

[9] The Restatement sets out a six-factor test for determining which state has the most significant relationship to the occurrence and the parties:

    a. The place, or places, where the plaintiff acted in reliance upon the defendant's representations,

    b. The place where the plaintiff received the representations,

    c. The place where the defendants made the representations,

    d. The domicile, residence, nationality, place of incorporation and place of business of the parties,

    e. The place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

    f. The place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2) (1971); *applied in Benchmark*, 343 F.3d at 727 n.4; *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 358 (Tex. App. – Dallas 2004, pet. denied).

The Restatement factors relating to the plaintiff are inapplicable in this case because the SEC, as plaintiff in its capacity as a government agency, is not the allegedly defrauded party. Accordingly, the "most significant relationship" test must focus on the defendant's conduct.

All of Mr. Cuban's alleged actions that the SEC cites in support of its claims took place in Texas. Mr. Cuban resides in Dallas. (Compl. ¶ 8.) Mr. Cuban allegedly entered into an oral confidentiality agreement with Mamma.com while in Dallas. (*Id.* ¶¶ 13, 14.) Mr. Cuban received the information about Mamma.com's PIPE offering while in Dallas. (*Id.* ¶¶ 14, 17.) Mr. Cuban's broker is located in Dallas. (*Id.* ¶ 18.) Mr. Cuban was in Dallas when he contacted his broker and instructed him to sell his Mamma.com shares. (*Id.*) Thus, the only reasonable conclusion is that Texas state law should be applied in this case.

### C. Under Texas state law, Mr. Cuban did not have a fiduciary or fiduciary-like relationship with Mamma.com.

The SEC contends that Mr. Cuban "breached a duty of trust or confidence that he owed to Mamma.com" when he sold his Mamma.com shares. (Compl. ¶ 26.) The Complaint contains only two factual allegations, however, that describe the relationship between Mr. Cuban and Mamma.com. First, the SEC alleges that Mr. Cuban was a minority shareholder in the company. (*Id.* ¶ 10.) Second, the SEC alleges that, in a phone conversation with the CEO of Mamma.com, Mr. Cuban entered into an oral confidentiality agreement prior to receiving information about the PIPE transaction. (*Id.* ¶ 14.)[10] Taken separately or together, these contentions do not – as a matter of law – adequately allege the existence of a fiduciary or fiduciary-like relationship between Mr. Cuban and Mamma.com.

---

[10] The Complaint also states that after Mr. Cuban acquired his stock, the CEO of Mamma.com was his "primary point of contact" at the company. (Compl. ¶ 10.) The SEC does not allege, however, that *any* contact actually took place prior to June 28, 2004, much less contact that gave rise to a fiduciary or fiduciary-like relationship.

As to any duties created by Mr. Cuban's stock ownership, this Court must look to Canadian (Ontario) law. Texas has adopted the "internal affairs doctrine" by statute, which specifically controls the choice of law issue. *See* Tex. Bus. Corp. Act Ann. art. 8.02A (Vernon 1980); *Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000). In Texas, "the internal affairs of the foreign corporation, 'including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares,' are governed by the laws of the jurisdiction of incorporation." *Hollis*, 232 F.3d at 465 (quoting Tex. Bus. Corp. Act Ann. art. 8.02A).

As of June 2004, Mamma.com was incorporated in Ontario, Canada. *See* 2003 Form 20-F (Ex. 1). Mr. Cuban was a minority shareholder of Mamma.com – at no time is he alleged to have held more than 6.3% of the outstanding common shares of the company. (Compl. ¶ 10.) Mamma.com was governed by the Business Corporations Act (Ontario) ("OBCA"), the provisions of which, *inter alia*, provide for all of the respective rights, duties, and powers of a corporation, its officers and directors, and its shareholders. Business Corporations Act, R.S.O. 1990, c. B.16, ss. 1, *et seq.* (Can.) (available on Westlaw). The OBCA does not provide that a minority stockholder owes a fiduciary or fiduciary-like duty to the corporation. *Id.* The only fiduciary or fiduciary-like duties imposed under the OBCA are those that are owed to the corporation by its directors and officers. *Id.*, s. 134(1). Accordingly, Mr. Cuban did not owe a fiduciary duty to Mamma.com based on his minority stock ownership.

In the absence of a relevant fiduciary relationship based on Mr. Cuban's stock ownership, the SEC is reduced to arguing that a fiduciary or similar relationship of trust and confidence was created by a single telephone call on June 28, 2004, in which Mr. Cuban supposedly "agreed that he would keep whatever information the CEO intended to share with him confidential." (Compl. ¶ 14.) As a matter of Texas law, however, a confidentiality agreement alone cannot create a relationship of trust and confidence.

Texas courts recognize both formal fiduciary relationships (*e.g.*, principal/agent, partners) and "informal fiduciary relationships [that] have also been termed 'confidential relationships' and may arise where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593-94 (Tex. 1992) (internal quotation marks omitted). "[A] fiduciary duty will not be lightly created" under Texas law, however, because "it imposes extraordinary duties" and requires the fiduciary to "put the interests of the beneficiary ahead of its own if the need arises." *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 188 (5th Cir. 1995).

Texas courts have consistently rejected attempts to impose a fiduciary obligation on an otherwise arms-length business relationship. *See ARA Auto. Group v. Central Garage, Inc.*, 124 F.3d 720, 726 (5th Cir. 1997) (noting that "few Texas cases have found fiduciary relationships outside of legal relationships that carry fiduciary duties as a matter of law" and citing two other Fifth Circuit decisions declining to find existence of fiduciary relationship between business parties under Texas law). The main barrier is the requirement that "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence *must exist prior to*, *and apart from*, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998) (emphasis added); *see also Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

Texas courts apply this principle with equal vigor to confidentiality agreements. As found by the Texas Supreme Court, "[e]very contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract." *Crim Truck*, 823 S.W.2d at 595. A party to a contract "is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability." *Id.* at 594. Accordingly, Texas courts have had no difficulty finding that in the absence of a pre-

existing confidential relationship, entering into a confidentiality agreement is insufficient as a matter of law to create an informal fiduciary duty. *Anglo-Dutch Petroleum Int'l, Inc. v. Smith*, 243 S.W.3d 776, 782 (Tex. App. – Houston [14th Dist.] 2007, pet. denied) (finding "no authority supporting the notion that confidentiality agreements can create fiduciary relationships"); *Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 827 (Tex. App. – Houston [14th Dist.] 2006, pet. denied) (without pre-existing relationship prior to entering confidentiality agreement, argument "fails as a matter of law").

The SEC has failed to allege any facts supporting the notion that a fiduciary or similar relationship of trust and confidence existed between Mr. Cuban and Mamma.com under the relevant law. Mr. Cuban's status as a minority shareholder did not cause him to owe the CEO of Mamma.com a fiduciary duty; rather, he was owed such a duty. Moreover, Mr. Cuban and Mamma.com are not alleged to have had a pre-existing confidential relationship prior to entering into the supposed confidentiality agreement. Texas courts have refused to find the existence of an informal fiduciary relationship under identical circumstances. *See Anglo-Dutch*, 243 S.W.3d at 782; *Ramco Oil & Gas*, 207 S.W.3d at 827.[11] Because Mr. Cuban had no fiduciary or similar relationship with Mamma.com under applicable state law, he had no duty to disclose to Mamma.com that he would use the information about the PIPE offering as a basis for trading in Mamma.com shares. Accordingly, Mr. Cuban cannot be liable for insider trading.

---

[11] If anything, the Complaint confirms that Mr. Cuban and Mamma.com did *not* have an informal fiduciary relationship. Under Texas law, the party seeking to enforce an informal fiduciary duty must have been "justified in placing confidence in the belief that another party will act in his or her best interest." *Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. Civ. A 3:96CV2068-R, 2003 WL 22203707, at *5 (N.D. Tex. Sept. 23, 2003) (citation omitted). The SEC alleges that Mamma.com "anticipated" that Mr. Cuban would "[fly] off the handle and [say] he would sell his shares" when told about the PIPE transaction. (Compl. ¶ 15.) Mamma.com clearly was not confident Mr. Cuban would act loyally to the company under these circumstances.

**D.** **Even if this Court were to apply "federal common law," the SEC has failed to adequately plead a fiduciary or fiduciary-like relationship.**

As discussed above, Texas choice of law rules – and, therefore, Canadian (Ontario) and Texas law – must be applied in determining the existence of a fiduciary or similar relationship of trust and confidence between Mr. Cuban and Mamma.com. The Court need not go any further in reaching its decision. Even if this Court were to consider court decisions that improperly apply "federal common law," however, the SEC has failed to adequately plead the existence of the requisite relationship.

Mr. Cuban's status as a minority shareholder did not give rise to a formal fiduciary duty under federal law. Indeed, it was the Mamma.com directors and officers who owed Mr. Cuban a fiduciary duty. *See SEC v. Talbot*, 430 F. Supp. 2d 1029, 1051 (C.D. Cal. 2006), *reversed on other grounds*, 530 F.3d 1085 (9th Cir. 2008) (declining to find status as minority shareholder gave rise to fiduciary duty). In the absence of a formal fiduciary duty, federal courts – as do Texas courts – assess whether there was a similar relationship of trust and confidence, which "must be the functional equivalent of a fiduciary relationship." *Chestman*, 947 F.2d at 568.

*Chestman* is the leading federal case examining the attributes of a fiduciary-like relationship. *See, e.g.*, *United States v. Kim*, 184 F. Supp. 2d 1006, 1010 (N.D. Cal. 2002) (following *Chestman*); *Kornman*, 391 F. Supp. 2d 477 (following both *Chestman* and *Kim*). Pursuant to *Chestman*, the hallmarks of a fiduciary-like relationship are "reliance, and de facto control and dominance." *Chestman*, 947 F.2d at 568 (internal quotation omitted). Essential to finding such a relationship, the *Chestman* court concluded, is a determination that "confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* "In relying on a fiduciary to act for his benefit, the beneficiary of the relation may entrust the fiduciary with custody over property." *Id.* at 569. The fiduciary "obtains access to this property to serve the ends of the fiduciary relationship" (as opposed to gratuitously) and, therefore, "becomes duty-bound not to appropriate the property for his

own use." *Id.* "While acceptance [of a duty of confidentiality] may be implied, it must be implied from a *pre-existing* fiduciary-like relationship between the parties." *Id.* at 571 (emphasis added).

In other words, as under Texas law, there are two factors in the federal common law analysis of a relationship of trust and confidence for purposes of the misappropriation theory. There must be a pre-existing relationship between the parties. In addition, the nature of that relationship must have provided the beneficiary with justifiable reason to believe that the other party would not appropriate any confidential information provided to him for his own use (*i.e.*, act disloyally). To proceed under the misappropriation theory based on a breach of a fiduciary-like relationship, a plaintiff must allege facts demonstrating the existence of *both* factors.

Insider trading cases that have found the existence of a fiduciary-like relationship have uniformly based their holdings on facts demonstrating a pre-existing relationship *and* a justifiable basis for an assumption of loyalty (either through a history of sharing confidences or an explicit confidentiality agreement). *See SEC v. Yun*, 327 F.3d 1263, 1273-74 (11th Cir. 2003) (evidence of husband-and-wife relationship involving "a history or pattern of sharing and keeping business confidences" and wife "explicitly accepted the duty to keep in confidence the business information she received"); *SEC v. Sargent*, 229 F.3d 68, 76 (1st Cir. 2000) (evidence of "pre-existing fiduciary relationship between [the parties] arising out of their status as sole shareholders of their closely-held business corporation" and "promise[] not to divulge" information); *Kornman*, 391 F. Supp. 2d at 488-89 (course of communications between advisor and executives, as well as advisor's superior knowledge, led to development of confidential relationship and advisor provided materials indicating information would be kept confidential); *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1150-51 (N.D. Ill. 2003) (parties had pre-existing membership in CEO Roundtable that had "express" confidentiality agreement and confidentiality agreement was reiterated directly before information was provided). The facts of these cases make it clear that none

of the courts held that a confidentiality agreement alone is sufficient to create the requisite duty and impose insider trading liability.

The SEC has completely failed to plead the existence of a pre-existing relationship between Mr. Cuban and Mamma.com that could give rise to a duty of trust and confidence. Rather, the Commission appears to assert that a single, eight-minute call was sufficient to both establish a pre-existing relationship and then, through the mechanism of an alleged oral confidentiality agreement, provide Mamma.com with justifiable reason to believe that Mr. Cuban would from that point forward "serve the ends of the fiduciary relationship." *Chestman*, 947 F.2d at 569.[12]

Not surprisingly, no court has found that a single phone call can create the necessary pre-existing relationship. The only case with a similar alleged fact pattern – *United States v. Cassese* – expressly *rejects* the idea. 273 F. Supp. 2d 481, 486-87 (S.D.N.Y. 2003). In *Cassese*, the defendant was the CEO of Computer Horizons Corp., which entered into negotiations to be acquired by Compuware Corp. *Id.* at 483. Compuware's CEO later called the defendant and told him that Compuware planned to acquire a different company. *Id.* at 484. The defendant allegedly misappropriated that information by trading in the shares of the new acquisition target. *Id.* The court found that the two CEO's were "not inherent fiduciaries, but rather potential arms-length business partners." *Id.* at 486. There were no allegations that they "had a long-standing relationship or that they regularly shared confidences." *Id.* The court concluded that this was "very far

---

[12] The SEC also alleges that at the end of the phone conversation Mr. Cuban told the CEO of Mamma.com "Well, now I'm screwed. I can't sell," and the CEO relied on this statement. (Compl. ¶¶ 14, 16.) Even assuming that Mr. Cuban made this statement and it caused a belief on the part of Mamma.com that Mr. Cuban would not sell his shares until the PIPE offering was publicly disclosed, this belief could not impose a fiduciary or similar duty of trust and confidentiality upon Mr. Cuban. *See, e.g.*, *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 (2d Cir. 1980) (expectation on part of source that party receiving nonpublic information will not trade cannot impose duty of confidentiality); *SEC v. Mayhew*, 916 F. Supp. 123, 130 (D. Conn. 1995) (the fact that an insider who disclosed material nonpublic information "expected [the recipient] to the keep the substance of the lunch conversation confidential, did not, in itself, give rise to a fiduciary duty").

from a relationship marked by 'de facto control' and 'dominance' or entailing 'discretionary authority and dependency.'" *Id.* (quoting *Chestman*, 947 F.2d at 568-69). In addition, the Compuware CEO had "no persuasive need" to tell the defendant about the alternative acquisition and the parties did not enter into a confidentiality agreement. *Id.* at 487.

The alleged relationship between Mr. Cuban and Mamma.com is even weaker than in *Cassese*. Far from being a fiduciary of Mamma.com, or even an "equal" arms-length business partner, Mr. Cuban was a minority shareholder who was *owed* a fiduciary duty by Mamma.com's officers and directors. In no way did Mr. Cuban exercise "de facto control" or "dominance" over Mamma.com's management. In fact, as a minority shareholder, it was Mr. Cuban who "reposed confidence in the management of [Mamma.com] to protect and enhance [his] investment" and Mamma.com's management, in turn, "held a position of superiority and influence respecting the use of those assets." *Talbot*, 430 F. Supp. 2d at 1062. Indeed, the information in question was conveyed when Mamma.com's management, with superior knowledge about the pending PIPE offering, allegedly solicited Mr. Cuban to buy shares. *Cf. Kornman*, 391 F. Supp. 2d at 488 (trader solicited information from executives based on his dominant position and then used the information for his own benefit).

Moreover, the Complaint makes it clear that Mamma.com had no expectation that Mr. Cuban would act for the company's benefit. The SEC alleges that Mamma.com "anticipated" that Mr. Cuban would "[fly] off the handle and [say] he would sell his shares" when told about the PIPE offering. (Compl. ¶ 15.) Mamma.com could not be justified in placing confidence in the belief that Mr. Cuban would act loyally to the company when it already knew, prior to calling Mr. Cuban, that he would want to sell his shares upon receiving the information. Nor did Mamma.com have a "persuasive need" to share the information about the PIPE offering with Mr. Cuban, given that management did not expect

Mr. Cuban to participate and the offering was already oversubscribed. E-mail from David Goldman on July 28, 2004. (Compl. ¶ 15.) (Ex. 3).

Mr. Cuban's alleged entry into an oral confidentiality agreement, even if true, is irrelevant in the absence of any pre-existing relationship. No court has held that a confidentiality agreement alone creates a fiduciary or similar relationship of trust or confidence. As stated in *Kim*, "an express [confidentiality] agreement can provide the basis for misappropriation liability only if the express agreement sets forth a relationship with the hallmarks of a fiduciary relationship." 184 F. Supp. 2d at 1015.[13] The SEC does not, because it cannot, allege that the supposed oral confidentiality agreement in this case encompassed an agreement by Mr. Cuban to assume all of the responsibilities of a fiduciary toward the CEO of Mamma.com (effectively reversing their existing legal positions).

In short, under either Texas or federal common law, the SEC has failed to adequately plead that Mr. Cuban had a fiduciary or fiduciary-like duty to Mamma.com. In the absence of such a duty and accompanying breach, any insider trading claim against Mr. Cuban fails as a matter of law.

## III.     SEC Rule 10b5-2(b)(1) Is Not Applicable In This Case.

Although the Complaint does not expressly cite SEC Rule 10b5-2, the Commission may attempt to invoke that provision in an effort to salvage its claims. In particular, subsection (b)(1) of Rule 10b5-2 states that a person is presumed to have a "duty of trust or confidence" for purposes of applying the misappropriation theory whenever he "agrees to maintain information in confidence." 17 C.F.R. § 240.10b5-2(b)(1). Rule 10b5-2(b)(1) is inapplicable in this case, however, for two reasons. First, the rule does not apply where no family or other personal relationship exists. Second, to the extent the SEC claims that the rule creates potential liability based *solely* on the existence of a confidentiality agreement,

---

[13] *Accord Nolan Bros. v. Whiteraven, L.L.C.*, No. 99 Civ. 10256, 2004 WL 376265, at *1 (S.D.N.Y. Feb. 27, 2004) (confidentiality agreement does not create fiduciary relationship); *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1049 (N.D. Cal. 2002) (same); *Snap-On*, 1996 WL 627618 at *4 (same).

the rule directly contradicts the Supreme Court's decisions on this issue by creating liability in the absence of a fiduciary or similar duty of trust and confidence and therefore cannot be followed.

### A.     Rule 10b5-2(b)(1) only applies to family and other personal relationships

The SEC created Rule 10b5-2 to resolve "an unsettled issue in insider trading law" – specifically, "under what circumstances certain *non-business* relationships, such as *family and personal relationships*, may provide the duty of trust or confidence required under the misappropriation theory."   Selective Disclosure and Insider Trading, 65 Fed. Reg. 51716, 51729 (final rule, Aug. 24, 2000) (emphasis added); *see also* Selective Disclosure and Insider Trading, 64 Fed. Reg. 72590 (proposed rule, Dec. 28, 1999).   Indeed, in explaining the need for and scope of Rule 10b5-2(b)(1), which creates a presumption of the requisite duty based on a confidentiality agreement, the SEC specifically contrasted a "business context," where parties sometimes "sign an express, written confidentiality agreement," with the Rule's more relaxed standard for "everyday personal interactions" where individuals may "rely on reasonable, implicit understandings of confidentiality."   *Id.* at 72603 (proposed rule, Dec. 28, 1999).   Simply put, the Rule, if interpreted consistently with its proposing and adopting releases, merely provides that a pre-existing relationship (family or personal) *combined* with a confidentiality agreement may be sufficient to create the requisite fiduciary or fiduciary-like duty.   *See supra* Section II.

With this background, it is obvious why the only two courts to have expressly considered the issue have found that Rule 10b5-2 does not apply to business relationships. In *Kim*, the court found that the "language of the release makes clear [Rule 10b5-2] applies to family or other non-business relationships."   184 F. Supp. 2d at 1015 (internal quotation omitted).   Likewise, the *Talbot* court specifically rejected the SEC's attempt to apply Rule 10b5-2 to the business relationships at issue in that case.   430 F. Supp. 2d at 1061 n.91.   *Cf. Kornman*, 391 F. Supp. 2d at 489-91 (court's determination that fiduciary-like relationship

existed "bolstered" by Rule 10b5-2, but court did not address issue of rule's scope). In the absence of any alleged family or other non-business relationship between Mr. Cuban and Mamma.com, Rule 10b5-2 is not applicable in this case.

**B.      Rule 10b5-2(b)(1) is invalid if construed as creating liability in the absence of a fiduciary or similar duty of trust and confidence.**

The SEC may argue, contrary to its own proposing and adopting releases (*see supra* Section III(A)), that Rule 10b5-2(b)(1) should be broadly interpreted as imposing potential liability upon any person who breaches an agreement to keep information confidential, regardless of the nature of the relationship (if any) between the person and the source of the information. If Rule 10b5-2(b)(1) were interpreted in this fashion, however, the Rule would conflict with the Supreme Court's construction of Section 10(b) and exceed the SEC's rulemaking authority.

The SEC does not have unlimited rulemaking authority pursuant to Section 10(b). "The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Ernst & Ernst v. Hochfelder*, 425 U.S. 212, 214 (1976) (internal citations omitted). The scope of Rule 10b5-2(b)(1) therefore cannot exceed the power granted the SEC under Section 10(b). *Id*. Section 10(b), which prohibits conduct involving manipulation or deception, "simply authorizes the SEC to proscribe manipulative or deceptive devices or contrivances." *O'Hagan*, 521 U.S. at 671 (internal quotations omitted).

The Supreme Court has held that for purposes of the misappropriation theory of insider trading liability, conduct is "deceptive" within the meaning of Section 10(b) only if it involves a breach of a duty to disclose. *O'Hagan*, 521 U.S. at 655. The duty to disclose "does not arise from the mere possession of nonpublic market information," *Chiarella*, 445 U.S. at 235, but from the existence of a fiduciary or similar relationship of trust and confidence. *Id*. at 230 (Section 10(b) liability for insider trading "is premised upon a duty

to disclose arising from a relationship of trust and confidence between parties to a transaction"); *O'Hagan*, 521 U.S. at 652-55 ("the misappropriation theory premises liability on a *fiduciary*-turned-trader's deception of those who *entrusted* him with access to confidential information" and "the deception essential to the misappropriation theory involves *feigning fidelity* to the source of information") (emphasis added)).

The Supreme Court's definition of "deceptive" forecloses any possibility that a defendant can incur Section 10(b) liability under the misappropriation theory if no fiduciary or fiduciary-like duty is breached. *See Chiarella*, 445 U.S. at 235, 228 ("When an allegation of fraud is based upon nondisclosure, *there can be no fraud absent a duty to speak*," and "one who fails to disclose material information prior to the consummation of a transaction commits fraud *only when* he is under a duty to do so.") (emphasis added); *O'Hagan*, 521 U.S. at 655 ("Because the deception *essential* to the misappropriation theory involves feigning fidelity to the source of information, if the fiduciary discloses to the source that he plans to trade on the nonpublic information, *there is no 'deceptive device' and thus no § 10(b) violation*.") (emphasis added). Moreover, the Court has made clear that the breach of a fiduciary or fiduciary-like duty is required by *the plain text of the statute*. *Chiarella*, 445 U.S. at 234-35.

This is made particularly explicit in *Chiarella*. There, the Supreme Court "emphasized" that "the 1934 Act cannot be read more broadly than its language and the statutory scheme reasonably permit" and, for purposes of Section 10(b), this means that "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Id.* (internal quotations omitted); *see also O'Hagan*, 521 U.S. at 659 n.9 (referring to the "*textual proscription*" of Section 10(b), and construing what the "*text* of [Section 10b] *requires*") (emphasis added). In other words: imposing fraud liability under Section 10(b) for insider trading where no duty to speak exists is inconsistent with the text of Section 10(b) because it "read[s] [Section 10(b)] more broadly than its language . . . permit[s]." *Chiarella*, 445 U.S. at 234 (internal quotations omitted).

The Fifth Circuit has recognized that the Supreme Court's definition of "deceptive" conduct is exclusive and controlling. In *Regents of the University of California*, the court found that the Supreme Court has "authoritatively construed" deception as involving a breach of duty: "the [Supreme] Court . . . has established that a device, such as a scheme, is not 'deceptive' *unless* it involves breach of some duty of candid disclosure." 482 F.3d at 389. The Fifth Circuit rejected the plaintiff's definition of "deceptive" because it was inconsistent with the Supreme Court's definition of "deceptive." The Fifth Circuit took pains to note that none of its Section 10(b) decisions has ever "contradicted" the Supreme Court on this issue. *Id.*[14]

To the extent the SEC urges that Rule 10b5-2(b)(1) be read as basing potential liability on a breach of a confidentiality agreement alone, this interpretation would effectively dispense with the fiduciary duty requirement. Under applicable common law, *a confidentiality agreement alone cannot create an obligation to act loyally to the other party*, and the breach of a confidentiality agreement therefore does not constitute a breach of fiduciary duty. *See supra* Section II.[15] Interpreted in this manner, Rule 10b5-2(b)(1) would create liability for conduct that is not "deceptive," thereby exceeding the SEC's limited authority under Section 10(b) to "proscribe deceptive conduct."

The text of Rule 10b5-2 suggests that the SEC may have improperly intended to reach just such a result. Rule 10b5-2 describes circumstances in which a person is deemed to have a duty of "trust *or* confidence," as opposed to the Supreme Court's consistent standard of a duty of "trust *and* confidence." As discussed above, this does not meet the

---

[14] *See also Dorozhko*, 2008 WL 126612 at *13 (*O'Hagan* makes clear that Section 10(b) "does not reach all structural disparities in information that result in securities transactions, *only those disparities obtained by dint of a breach of fiduciary duty of disclosure*.") (emphasis added).

[15] In addition, as this Court has previously recognized, "the duty to disclose material facts arises only where there is some basis *outside the securities laws*, such as state law, for finding a fiduciary or other confidential relationship." *Southwest Realty*, 1992 WL 373166 at *9 (rejecting plaintiff's attempt to rely upon SEC rule as source of fiduciary duty) (citations omitted) (emphasis added)).

Section 10(b) requirement of "deceptive" conduct, because under *Chiarella* and *O'Hagan*, only a relationship of both trust *and* confidence gives rise to a fiduciary-like relationship. While the term "confidence" standing alone suggests that the breach of a confidentiality agreement may be sufficient to violate the requisite duty, it does not comport with the requirement that it is the insider trader's undisclosed breach of trust and loyalty – and not merely his breach of confidentiality – that constitutes fraud under Section 10(b).[16]

The adopting release and the preliminary note for Rule 10b5-2(b)(1) expressly state that the Rule was designed to address when liability arises "under the *misappropriation theory* of insider trading." Selective Disclosure, 65 Fed. Reg. at 51729 (final rule, Aug. 24, 2000) (emphasis added); 17 C.F.R. § 240.10b5-2(b)(1) (emphasis added). To the extent the SEC urges this Court to apply in a literal fashion a "trust *or* confidence" standard, or otherwise argues that Rule 10b5-2(b)(1) creates potential liability based on the breach of a confidentiality agreement alone, the SEC would be paying mere lip service to the misappropriation theory and improperly creating insider trading liability based on non-fraudulent activity.

## CONCLUSION

Under both controlling Texas law and the improper "federal common law" that lower courts have developed, the SEC does not (and cannot) adequately plead that Mr. Cuban breached a fiduciary or similar duty of trust and confidence when he sold his Mamma.com stock. In the absence of such a breach, there is no fraud and no insider trading liability. For all the reasons stated above, defendant Mark Cuban respectfully requests that the Complaint be dismissed with prejudice.

---

[16] *See O'Hagan*, 521 U.S. at 653 (under the misappropriation theory, "a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty *and* confidentiality, defrauds the principal . . . ." (emphasis added).

Respectfully submitted,

**DEWEY & LEBOEUF LLP**

/s/ Lyle Roberts

By: _____

Lyle Roberts (*pro hac vice*)
D.C. Bar No. 464789
Ralph C. Ferrara (*pro hac vice*)
D.C. Bar No. 156380
Stephen A. Best
D.C. Bar No. 428447
Henry W. Asbill
D.C. Bar No. 938811
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
lroberts@dl.com
rferrara@dl.com
sbest@dl.com
hasbill@dl.com

Christopher J. Clark (*pro hac vice*)
N.Y. Bar No. 2854222
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
cjclark@dl.com

*Attorneys for Mark Cuban*

OF COUNSEL:

Stephen M. Ryan
Texas Bar No. 24002881
DEWEY & LEBOEUF LLP
1000 Main Street, Suite 2550
Houston, Texas 77002
Telephone 713-287-2025
713-445-2125 – Fax
sryan@dl.com

Paul Coggins
Texas Bar No. 04504700
Kip Mendrygal
Texas Bar No. 24041472
Fɪsʜ & Rɪcʜᴀʀᴅsᴏɴ P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: 214-747-5070
Facsimile: 214-747-2091
coggins@fr.com
mendrygal@fr.com

## CERTIFICATE OF SERVICE

On January 14, 2009, I electronically submitted the Memorandum of Law of Mark Cuban in Support of Motion to Dismiss and the Appendix with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Lyle Roberts

_____
Lyle Roberts