**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE** ) | |
| **COMMISSION,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:08-cv-02050 (SAF)** |
| ) | |
| **MARK CUBAN,** ) | |
| ) | |
| **Defendant** ) | |
| _____ ) | |

# REPLY BRIEF OF MARK CUBAN
# IN SUPPORT OF MOTION TO DISMISS

<u>ORAL ARGUMENT REQUESTED</u>

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

I.      The Supreme Court's *O'Hagan* Decision Does Not Support the SEC's Position...............2

II.     State Law Must Be Applied to Determine the Existence of a Fiduciary or
        Fiduciary-Like Duty...................................................................................................4

III.    Even Courts Erroneously Applying Federal Common Law Have Not Found That
        a Confidentiality Agreement Alone Is Sufficient to Create the Requisite Duty..................6

IV.     Rule 10b5-2(b)(1) Is Invalid if Construed as Creating Liability in the Absence of
        a Fiduciary or Fiduciary-Like Duty ................................................................................7

V.      Rule 10b5-2(b)(1) Does Not Apply to Business Relationships...........................................9

# TABLE OF AUTHORITIES

**CASES**

*Alaska Prof. Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030 (D.C. Cir. 1991) .................................. 10

*Chamber of Commerce v. SEC*, 443 F.3d 890 (D.C. Cir. 2006)................................................... 10

*City Solutions, Inc. v. Clear Channel Communications, Inc*., 201 F. Supp. 2d 1048 (N.D. Cal. 2002)............................................................................................................................ 7

*Croy v. Campbell*, 624 F.2d 709 (5th Cir. 1980) ........................................................................ 5

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).................................................................... 9

*In re Abbott Labs*, 51 F.3d 524 (5th Cir. 1995) ....................................................................... 10

*Leach v. FDIC*, 860 F.2d 1266 (5th Cir. 1988)........................................................................... 5

*National Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).................... 8

*Nolan Bros. of Texas, Inc. v. Whiteraven, L.L.C.*, No. 99 Civ. 10256(TPG), 2004 WL 376265 (S.D.N.Y. Feb. 27, 2004)........................................................................................ 7

*O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) ................................................................... 4, 5

*Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007) ................................................................................................................................. 3

*Safe Air for Everyone v. EPA*, 488 F.3d 1088 (9th Cir. 2007)..................................................... 10

*Santa Fe Indus., Inc. v. Green,* 430 U.S. 462 (1977).................................................................. 5

*SEC v. Kornman*, 391 F. Supp. 2d 477 (N.D. Tex. 2005) ...................................................... 7, 8, 9

*SEC v. Lenfest,* 949 F. Supp. 341 (E.D. Pa. 1996)..................................................................... 5

*SEC v. Lyon*, 529 F. Supp. 2d 444 (S.D.N.Y. 2008).................................................................... 6

*SEC v. Nothern*, No. 05-10983-NMG, 2009 WL 467535 (D. Mass. Feb. 20, 2009) ............. 6, 7, 8

*Southwest Realty, Ltd. v. Daseke*, No. CA3-89-3055-D, 1992 WL 373166 (N.D. Tex. May 21, 1992)........................................................................................................................ 5

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) ............................................................ 5

*United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001) .............................................................. 6

*United States v. Kim*, 184 F. Supp. 2d 1006 (N.D. Cal. 2002) ..................................................... 9

*United States v. O'Hagan,* 521 U.S. 642 (1997) .................................................................. 2, 3, 4, 8

*Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63 (1966) ............................................................ 5

**STATUTES**

5 U.S.C. §§ 552(a)(1), 553(b) ..................................................................................................... 10

**OTHER AUTHORITIES**

64 Fed. Reg. 72590 ..................................................................................................................... 8

Barbara Bader Aldave, *Misappropriation: A General Theory of Liability for Trading on Nonpublic Information*, 13 Hofstra L. Rev. 101 (1984)) .............................................................. 3

Comment letter from Ad Hoc Task Force of the Sections of Business Law and Litigation of the American Bar Association (May 8, 2000) ...................................................................... 10

Comment letter from the Committee on Securities Regulation of the Association of the Bar of the City of New York (June 19, 2000) .......................................................................... 10

Comment letter from the Corporation, Finance and Securities Law Section of the District of Columbia Bar (April 28, 2000) ....................................................................................... 10

Rafael Chodos, *The Law of Fiduciary Duties* §1.1 (Blackthorne Legal Press 2001) ..................... 4

**RULES**

SEC Rule 10b5-2(b)(1) ................................................................................................... 7, 8, 9, 10

# INTRODUCTION

Even assuming the truth of the facts as alleged in the Complaint, Mark Cuban did not engage in insider trading when he sold his Mamma.com stock because a confidentiality agreement alone does not establish a fiduciary or fiduciary-like duty. The SEC spends its entire Opposition distorting or ignoring controlling Supreme Court and Texas precedent on this issue. That should tell the Court all it needs to know about the strength of the SEC's position. Mr. Cuban's motion to dismiss should be granted with prejudice.

Insider trading under the misappropriation theory is based on the deception that occurs when a person who has a duty to disclose his use of nonpublic information for his own personal gain fails to do so. The source of this duty of disclosure is a fiduciary or fiduciary-like relationship between the trader and the source of the information. The law does not lightly impose a fiduciary or fiduciary-like duty, which exposes the holder of the duty to significant legal risks, including the possibility of fraud liability where none would otherwise exist.

The SEC concedes its insider trading case against Mark Cuban is based entirely on his supposed misappropriation of material, non-public information in violation of an alleged confidentiality agreement. The SEC argues "black letter" law provides a confidentiality agreement alone is *always* sufficient to establish the existence of a fiduciary or fiduciary-like duty. Far from being "black letter" law, courts have routinely held a confidentiality agreement alone is *never* sufficient to create the requisite duty. Nothing about a confidentiality agreement inherently creates a duty of disclosure.

Three Supreme Court opinions dictate the outcome of this motion. The SEC deliberately misreads or ignores all of them. In *O'Hagan*, the Court established that insider trading liability pursuant to Section 10(b) requires the breach of a fiduciary or fiduciary-like duty. In *Santa Fe*, the Court held that Congress did not intend to create a federal fiduciary duty standard for Section 10(b) claims, which means that state law standards govern. In *Brand X*, the Court held that if it has found the meaning of a statute plain on its face, an administrative agency's different interpretation of the statute is not entitled to deference.

Taken together and applied here, this Supreme Court precedent establishes that the alleged existence of a fiduciary or fiduciary-like duty between Mr. Cuban and Mamma.com must be evaluated under Texas state law, which has consistently found that a confidentiality agreement alone is insufficient to create the requisite duty. Moreover, if SEC Rule 10b5-2(b)(1) creates liability in the absence of a fiduciary or fiduciary-like duty – as the SEC argues – it is an invalid exercise of the agency's rulemaking authority and cannot be applied in this case.

The Supreme Court acknowledged in *O'Hagan* that the "duty to disclose" limitation on Section 10(b) liability for insider trading may make the statute only a "partial antidote to the problems it was designed to alleviate." If the SEC wants to close a perceived gap in its enforcement capabilities, the proper forum to advocate for relief is Congress, not this Court.

## ARGUMENT

### I.     The Supreme Court's *O'Hagan* Decision Does Not Support the SEC's Position

The SEC contends that a confidentiality agreement alone is sufficient to create a fiduciary or fiduciary-like duty under the misappropriation theory. According to the SEC, the Supreme Court supported this position in *United States v. O'Hagan* by holding that (a) if the parties have a confidentiality agreement, there is no need for the court to engage in a fiduciary duty analysis, and (b) federal common law should be used to determine the existence of a fiduciary or fiduciary-like duty. SEC's Memorandum of Law in Opposition to Motion to Dismiss ("Opp.") at 14-15, 23. These arguments cannot survive even a cursory reading of the *O'Hagan* opinion.

In *O'Hagan*, the Supreme Court repeatedly states that liability for insider trading under the misappropriation theory is based on the deception to the source of the information that occurs when a *fiduciary* who has a duty to disclose his use of the information for his own personal gain fails to do so. 521 U.S. 642, 654 (1997) ("The undisclosed misappropriation of such information, in violation of a fiduciary duty … constitutes fraud akin to embezzlement – 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'") (citation omitted). The Court draws a clear distinction between fiduciaries and non-fiduciaries because *only* a fiduciary would have a duty to make this disclosure and therefore can

be said to have engaged in a "deception" if he does not disclose or abstain from trading. *Id.* at 655 ("Because the deception essential to the misappropriation theory involves feigning fidelity to the source of information, if the fiduciary discloses to the source that he plans to trade on the nonpublic information, there is no 'deceptive device' and thus no § 10(b) violation...").[1]  There is nothing about a confidentiality agreement alone that creates a fiduciary or fiduciary-like duty to "disclose to the source that [the fiduciary] plans to trade on the nonpublic information."  Indeed, the SEC does not bother to explain how a confidentiality agreement could give rise to this disclosure duty and has not cited a single case holding (or even suggesting) that a confidentiality agreement, as a matter of law, creates this disclosure duty.  Accordingly, it is simply impossible to reconcile the Supreme Court's emphasis on a fiduciary's breach of his duty of disclosure with the SEC's assertions that the existence of a confidentiality agreement means there is "no need to engage in a fiduciary duty analysis" and a "fiduciary relationship, while sufficient, is not necessary to establish a duty."  Opp. at 13, 19.

The SEC also attempts to circumvent *O'Hagan's* fiduciary or fiduciary-like duty requirement by arguing that a quotation from a law review article contained in a citation parenthetical in *O'Hagan* is somehow the *real* holding of the case.  Even if this quotation had any precedential value, it offers no support for the SEC's position.  Opp. at 15-16.  The article merely states that the misappropriation theory bars "trading on the basis of information that the wrongdoer converted to his own use in violation of some fiduciary, contractual, or similar obligation to the owner or rightful possessor of the information."  *O'Hagan*, 521 U.S. at 663 (quoting Barbara Bader Aldave, *Misappropriation: A General Theory of Liability for Trading on Nonpublic Information*, 13 Hofstra L. Rev. 101, 122 (1984)).  From the reference to "contractual" obligation, the SEC incorrectly reads an endorsement of its theory that a confidentiality agreement can create the requisite duty.  As set forth in Mr. Cuban's opening memorandum, while a contract can provide the basis for insider trading liability, the contract

---

[1] *See also Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 389 (5th Cir. 2007) (no "deception" under Section 10(b) "unless it involves breach of some duty of candid disclosure").

3

must encompass the hallmarks of a fiduciary or fiduciary-like relationship. Memorandum of Law in Support of Motion to Dismiss ("Open. Mem.") at 20 and cases cited therein.[2] Indeed, Professor Aldave confirms that is the type of contract to which she was referring, stating in the footnote to the quoted text: "Because of the *fiduciary or similar relationship* between the parties, the conversion is a deceitful or fraudulent act." Aldave, 13 Hofstra L. Rev. at 122 n.117 (emphasis added). Again, the SEC does not, because it cannot, allege that the supposed oral confidentiality agreement in this case encompassed an agreement by Mr. Cuban to assume responsibilities akin to that of a fiduciary.

Finally, the SEC asserts that because the *O'Hagan* opinion "referenc[ed] federal fraud cases arising in other contexts," the Supreme Court must have rejected the use of state law to determine the existence of a fiduciary or fiduciary-like duty. Opp. at 23. The *O'Hagan* parties, however, did not dispute that the defendant, a partner in a law firm, owed a fiduciary duty to the law firm and its client from which he obtained the material, non-public information. The opinion therefore contains no discussion of how to determine the existence of the requisite fiduciary or fiduciary-like duty.[3]

## II.    State Law Must Be Applied to Determine the Existence of a Fiduciary or Fiduciary-Like Duty

There was no need for the Supreme Court to hold in *O'Hagan* that the legal source of the fiduciary or fiduciary-like duty analysis must be state law, because it had already done so in prior cases. Open. Mem. at 9-10. First, as a general proposition, the Court has repeatedly discouraged the formation of federal common law, finding that it should not be created absent congressional authorization or a "significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (quoting *Wallis v. Pan Am.*

---

[2] *See also* Rafael Chodos, *The Law of Fiduciary Duties* §1.1 (Blackthorne Legal Press 2001) ("A person may undertake a fiduciary duty by contract, and this contract may include an explicit agreement regarding fiduciary duty. We call the agreement 'explicit' when it includes, as one of its terms, an agreement by one party to hold something *in trust* for the other, or to act as *fiduciary* for another.")

[3] If anything, the *O'Hagan* opinion appears to have endorsed the use of state law (consistent with earlier Supreme Court decisions on the scope of Section 10(b)) by noting that even if a fiduciary were to disclose to the source of the information his intent to trade, thus removing the element of deception, he "may remain liable under *state law* for breach of a duty of loyalty." *Id.*, 521 U.S. at 655, 659 n.9 (emphasis added).

*Petroleum Corp.*, 384 U.S. 63, 68 (1966)). Second, in *Santa Fe Indus., Inc. v. Green*, the Court specifically held there was no such conflict between Section 10(b) and state fiduciary law and rejected the creation of a "federal fiduciary principle" for purposes of Section 10(b) liability. 430 U.S. 462, 478-80 (1977); *see also Croy v. Campbell*, 624 F.2d 709, 716 n.7 (5th Cir. 1980) (Congress did not intend in Section 10(b) to "'federalize' state rules of law dealing with fiduciary relationships").

The SEC's response to this controlling precedent is to ignore it. There is not a single mention of *O'Melveny* or *Santa Fe* in the entire Opposition. Instead, the SEC urges this Court to follow a few lower court decisions that have not applied state fiduciary law (Opp. at 23), despite this Court's previous holding (consistent with *Santa Fe*) that "the duty to disclose material facts arises only where there is some basis outside the securities laws, such as state law, for finding a fiduciary or other confidential relationship." *Southwest Realty, Ltd. v. Daseke*, No. CA3-89-3055-D, 1992 WL 373166, at *10 (N.D. Tex. May 21, 1992) (citation omitted).

The SEC's only affirmative argument against the application of state fiduciary law – that a federal common law approach would purportedly encourage uniformity in the law – fails as a matter of law. Opp. at 23-24. As the Supreme Court has found, "[u]niformity of law might facilitate [an agency's] nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty – but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in 'federal common law' rules." *O'Melveny*, 512 U.S. at 88, *see also Leach v. FDIC,* 860 F.2d 1266, 1274 n.14 (5th Cir. 1988) (uniformity insufficient basis for creation of federal common law).[4]

Finally, the SEC's assertions that the application of state fiduciary law is "irrelevant" (Opp. at 2), a "straw man" (Opp. at 22), and a "red herring" (Opp. at 24), are perplexing because the agency has asserted in a prior insider trading case brought under the misappropriation theory

---

[4] Moreover, in view of the large number of federal district and circuit courts, the use of "federal common law" to decide cases under the misappropriation theory will result in conflicting decisions that provide little notice to defendants of when a fiduciary relationship might exist. *Compare, e.g., SEC v. Lenfest*, 949 F. Supp. 341, 345 (E.D. Pa. 1996) (fiduciary duty between husband and wife) *with United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (no fiduciary duty between husband and wife).

that the defendant's *failure* to apply *state* fiduciary law was a "*fatal flaw*." In *SEC v. Goodson*, the SEC argued that Supreme Court precedent required the district court to look to Georgia state law as the source of the requisite fiduciary duty. No. 99CV2133 (N.D. Ga.) (SEC's Lead Memorandum of Points and Authorities in Opposition to Defendants' Summary Judgment Motions, filed Dec. 19, 2000, at 13-14) (*See* Appendix, Exhibit A to Affidavit of Lyle Roberts). Of course, in *Goodson,* the application of Georgia law helped the SEC avoid dismissal, while here Mr. Cuban has conclusively demonstrated that under Texas law a confidentiality agreement alone does not create a fiduciary or fiduciary-like duty, thus establishing that the SEC's claims must be dismissed. Open. Mem. at 13-15.

## III. Even Courts Erroneously Applying Federal Common Law Have Not Found That a Confidentiality Agreement Alone Is Sufficient to Create the Requisite Duty

Having failed to find any support for its arguments in *O'Hagan* and desperate to avoid the application of state fiduciary law as required by the Supreme Court and this Court in *Southwest Realty*, the SEC resorts to quoting snippets from various insider trading decisions applying federal common law and arguing that these courts have "held" that a confidentiality agreement alone is sufficient to establish the existence of a fiduciary or fiduciary-like duty. Opp. at 16-18. But none of these cases relies exclusively on the existence of a confidentiality agreement to find that the defendant had a fiduciary or fiduciary-like duty. Open. Mem. at 17.[5] Even the *Nothern* court, which the SEC states held "that a confidentiality agreement establishes the duty," also relied on the existence of a longstanding, pre-existing confidential relationship between the source of the defendant's information and the Treasury Department (from which the source obtained the material, nonpublic information in question). *SEC v. Nothern*, No. 05-10983-NMG, 2009 WL 467535, at *5 (D. Mass. Feb. 20, 2009). The court specifically refers to this

---

[5] Two of the decisions merely state that a fiduciary relationship exists "where there is explicit acceptance of a duty of confidentiality." *United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001); *SEC v. Lyon*, 529 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quoting *Falcone*). As discussed *supra*, Mr. Cuban does not dispute that a fiduciary relationship can be formed through the explicit acceptance of a fiduciary-like duty. The SEC repeats this error throughout its Opposition, frequently misciting judicial and secondary sources for the proposition that a confidentiality agreement is sufficient to establish the requisite duty when the sources have actually referred to a contractual or other explicit acceptance of a fiduciary-like duty. Opp. at 15 (*Chestman*); 16 n.15 (*Ferrara on Insider Trading and The Wall*); 17 n.18 (defendant's argument in *Lyon*).

relationship in holding that the source may have violated a "similar relationship of trust and confidence." *Id.* at *8. The SEC alleges no such pre-existing confidential relationship in this case.

What is telling about the SEC's discussion of cases applying federal common law is its avoidance of *SEC v. Kornman*, a case decided in this district. *SEC v. Kornman*, 391 F. Supp. 2d 477 (N.D. Tex. 2005). In *Kornman*, the court reasoned that it was insufficient to examine whether there was a confidentiality agreement in determining the existence of a fiduciary or fiduciary-like duty. Even though the defendant had provided documents to the source of the information in which he pledged to keep the information confidential, the court conducted a full fiduciary duty analysis, including analyzing whether there was a relationship that gave rise to "reliance, and de facto control and dominance." *Id.* at 487-92. As set forth in Mr. Cuban's opening memorandum, if the *Kornman* analysis were applied in this case, it would require dismissal of the complaint. Open. Mem. at 18-20.

It is for good reason that federal courts have been reluctant to find the existence of a fiduciary or fiduciary-like duty based on a confidentiality agreement alone – it is impossible to reconcile that position with either the common law or common sense. The need to enter into a confidentiality agreement does not indicate a relationship of trust and confidence, but rather "arm's length dealings between co-equals." *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1049 (N.D. Cal. 2002); *see also Nolan Bros. of Texas, Inc. v. Whiteraven, L.L.C.*, No. 99 Civ. 10256(TPG), 2004 WL 376265, at *1 (S.D.N.Y. Feb. 27, 2004) (same). Consequently, a violation of a confidentiality agreement may be a breach of contract, but is not a breach of a duty of disclosure leading to securities fraud liability.

## IV.     Rule 10b5-2(b)(1) Is Invalid if Construed as Creating Liability in the Absence of a Fiduciary or Fiduciary-Like Duty

The SEC's argument that Rule 10b5-2(b)(1) creates insider trading liability based solely on the existence of a confidentiality agreement cannot salvage the SEC's claims.[6] Opp. at 6-7.

---

[6] Strikingly, the SEC cannot identify a single case in which a court relied on Rule 10b5-2(b)(1) as an independent ground for deciding an insider trading claim. The SEC suggests *Nothern* is such a case, but the *Nothern* court

As shown above and in Mr. Cuban's opening memorandum, under either state or federal law, a confidentiality agreement alone does *not* establish a fiduciary or fiduciary-like duty. Therefore, Rule 10b5-2(b)(1), as construed by the SEC, conflicts with the Supreme Court's interpretation of "deceptive" conduct within the meaning of Section 10(b) and exceeds the SEC's rulemaking authority.

Citing *Brand X*, the SEC suggests this Court should defer to Rule 10b5-2(b)(1) *even if* the Court finds (as it should) that the Rule conflicts with *O'Hagan*, because where an "*ambiguous statute [is] delegated to [an] administrative agency for enforcement, [the] agency's interpretation is entitled to Chevron deference even where courts have previously interpreted [the] statute differently from [the] agency.*" Opp. at 13 (citing *National Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-85 (2005) (emphasis added)). Despite acknowledging *Chevron* deference applies only to "ambiguous" statutes, however, the SEC fails to show how "deception" within the meaning of Section 10(b) is ambiguous.[7] By contrast, Mr. Cuban's opening memorandum plainly demonstrated that the Supreme Court has found that a breach of a fiduciary or fiduciary-like duty is *required* by the plain text of Section 10(b) for liability under the misappropriation theory. Open. Mem. at 22-25. Accordingly, to the extent Rule 10b5-2(b)(1) imposes potential liability upon any person who merely breaches a confidentiality agreement, *Brand X* compels the conclusion that the Rule is invalid.

Even if Section 10(b)'s deception requirement were somehow ambiguous, the SEC does not (and cannot) explain how the SEC's limited authority to "proscribe manipulative or deceptive devices" (*O'Hagan*, 521 U.S. at 671) gives the SEC license to create, through Rule

---

explicitly determined that "*it is not entirely clear whether the SEC may rely on [Rule 10b5-2(b)(1)].*" *Nothern*, 2009 WL 467535, at *6. Similarly, while the SEC argues that Rule 10b5-2(b)(1) was dispositive of the issues raised in *Kornman*, the court chose *not* to rely on the Rule and based its holding on other grounds. *Kornman*, 391 F. Supp. 2d at 485-92.

[7] Moreover, in its proposing release, the SEC *concedes* that courts "*previously interpreted*" Section 10(b) for purposes of misappropriation theory "*differently from*" the SEC's interpretation. *Brand X*, 545 U.S. at 982-83. The release candidly states that Rule 10b5-2(b), which was promulgated more than three years after *O'Hagan,* "*does not enumerate relationships that existing case law already recognizes as providing a clear basis for misappropriation liability.*" Selective Disclosure and Insider Trading, 64 Fed. Reg. 72590, 72603 n.109 (proposed rule, Dec. 28, 1999) (emphasis added).

10b5-2(b)(1), new principles of fiduciary duty and fraud law pursuant to which a confidentiality agreement alone gives rise to a fiduciary-like duty and the breach of such an agreement constitutes fraud. Under the application of Rule 10b5-2(b)(1) urged by the SEC, the agency is not "proscribing" fraudulent conduct; it is "making law," which it lacks the authority to do. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 212-14 (1976).

## V.  Rule 10b5-2(b)(1) Does Not Apply to Business Relationships

Relying upon the SEC's proposing and adopting releases and the decisions in the *Kim* and *Talbot* cases*,* Mr. Cuban's opening memorandum showed that even assuming Rule 10b5-2(b)(1) is valid, the Rule cannot save the SEC's insider trading claim against Mr. Cuban because it does not apply to *business relationships*. Open. Mem. at 20-22. The SEC's strained efforts to minimize *Kim* and *Talbot* do not alter the fact they are the only two cases to expressly consider whether the Rule applies to business relationships; both conclude it does not. Open. Mem. at 21.

The SEC's citation to *Kornman* is likewise unavailing, because nowhere in the passage cited by the SEC (nor anywhere else in the case) does the *Kornman* court expressly consider whether the Rule applies to business relationships. Opp. at 8-9. The SEC's assertion that the *Kornman* court addressed "defendant's argument that Rule 10b5-2(b)(1) did not apply to business relationships" is demonstrably false. The defendant made only the narrow argument that a "*prospective* business relationship" cannot create a fiduciary or fiduciary-like duty, and the court's two-page analysis of that issue does not once mention Rule 10b5-2(b)(1). *Kornman*, 391 F. Supp. 2d at 490-92.

The SEC also does not reconcile its arguments with its own proposing release, which "makes clear" the Rule only applies to "family 'or other non-business relationships.'" *United States v. Kim*, 184 F. Supp. 2d 1006, 1015 (N.D. Cal. 2002) (citation omitted). Nor does the SEC explain why the Rule should *not* be interpreted in light of the SEC's proposing and adopting releases, or identify any cases holding that the SEC's releases have no interpretative value. Instead, the SEC cites *In re Abbott Labs*, which is inapposite – relying on the plain language of

the SEC's proposing and adopting releases hardly requires this Court to "search legislative history for congressional intent." *In re Abbott Labs*, 51 F.3d 524, 528 (5th Cir. 1995).

Indeed, the "plain language of a regulation … will not control if 'clearly expressed [administrative] intent … to the contrary'" is found "in the published notices that accompanied the rulemaking processes." *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1097-98 (9th Cir. 2007) (citations omitted). If an agency could express one view of a rule in the promulgating documents, but then adopt a different view in the enforcement of the rule once enacted, an agency would effectively deprive the public of both fair notice of unlawful conduct and meaningful opportunity to comment on proposed regulations required by the Administrative Procedure Act, 5 U.S.C. §§ 552(a)(1), 553(b). *See Chamber of Commerce v. SEC*, 443 F.3d 890, 908 (D.C. Cir. 2006) (vacating in part SEC rule based on procedural deficiencies in rulemaking); *Alaska Prof. Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1033-34 (D.C. Cir. 1991) ("Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking." (citation omitted)).[8]

\*   \*   \*

For all of the reasons discussed above and in Mr. Cuban's opening memorandum, the claims against Mr. Cuban should be dismissed with prejudice.[9] Mr. Cuban requests oral argument on this motion.

---

[8] That appears to be exactly what happened in this instance. Given the discussion in the proposing release, commentators on the proposed Rule uniformly understood that it only applied to family and personal relationships. *See* Comment letters from the Corporation, Finance and Securities Law Section of the District of Columbia Bar (April 28, 2000), *available at* http://www.sec.gov/rules/proposed/s73199/dcbar1.htm, Ad Hoc Task Force of the Sections of Business Law and Litigation of the American Bar Association (May 8, 2000), *available at* http://www.sec.gov/rules/proposed/s73199/keller1.htm, and Committee on Securities Regulation of the Association of the Bar of the City of New York (June 19, 2000), *available at* http://www.sec.gov/rules/ proposed/s73199/schulte2.htm.

[9] The only amicus brief filed in this case fully supports Mr. Cuban's arguments. *See Brief of Amici Curiae In Support of Defendant's Motion to Dismiss*. The SEC notes the "49 pages of attached credentials" of the amici (Opp. at 25), but avoids the obvious conclusion to be drawn from those credentials: five of the most distinguished securities law professors in the country agree with Mr. Cuban that "a confidentiality agreement alone is insufficient to create a fiduciary or similar relationship of trust and confidence between the parties" and that the SEC's proposed application of Rule 10b5-2(b)(1) "impermissibly expand[s] the scope of Section 10(b) liability."

Respectfully submitted,

**DEWEY & LEBOEUF LLP**

/s/ Lyle Roberts

By: _____

Lyle Roberts (*pro hac vice*)
D.C. Bar No. 464789
Ralph C. Ferrara (*pro hac vice*)
D.C. Bar No. 156380
Stephen A. Best
D.C. Bar No. 428447
Henry W. Asbill
D.C. Bar No. 938811
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
rferrara@dl.com
sbest@dl.com
hasbill@dl.com
lroberts@dl.com

Christopher J. Clark (*pro hac vice*)
N.Y. Bar No. 2854222
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
cjclark@dl.com

*Attorneys for Mark Cuban*

OF COUNSEL:

Stephen M. Ryan
Texas Bar No. 24002881
DEWEY & LEBOEUF LLP
1000 Main Street, Suite 2550
Houston, Texas 77002
Telephone 713-287-2025
Facsimile: 713-445-2125
sryan@dl.com

11

Paul Coggins
Texas Bar No. 04504700
Kip Mendrygal
Texas Bar No. 24041472
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: 214-747-5070
Facsimile: 214-747-2091
coggins@fr.com
mendrygal@fr.com

## CERTIFICATE OF SERVICE

On March 20, 2009, I electronically submitted the Reply Brief of Mark Cuban in Support of Motion to Dismiss with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Lyle Roberts

_____

Lyle Roberts