IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE        §
COMMISSION,                     §
                                §
            Plaintiff,          §
                                § Civil Action No. 3:08-CV-2050-D
VS.                             §
                                §
MARK CUBAN,                     §
                                §
            Defendant.          §

MEMORANDUM OPINION
AND ORDER

Following the court's decision granting defendant Mark Cuban's ("Cuban's") motion to dismiss,[1] he moves for an award of attorney's fees and costs under 28 U.S.C. § 2412(b) and the court's inherent power. Without suggesting a view on the merits of Cuban's motion, the court concludes that Cuban should be permitted to conduct some discovery, followed by supplemental briefing. Accordingly, by this memorandum opinion and order, the court establishes a discovery period and a supplemental briefing schedule.

I

Cuban moves for an award of attorney's fees and costs, contending that plaintiff Securities and Exchange Commission ("SEC") lacked a good faith basis for this lawsuit. Although the SEC does not question the court's authority to award relief under § 2412(b) or its inherent power, the SEC maintains that its claims

---

[1]*SEC v. Cuban*, 634 F.Supp.2d 713 (N.D. Tex.) (Fitzwater, C.J.), *appeal docketed*, No. 09-10996 (5th Cir. Oct. 13, 2009).

against Cuban were factually sufficient, that Cuban's allegations of investigative misconduct are unfounded, and that Cuban cannot meet the high standard required to recover the relief he seeks.

Cuban maintains that the facts on which the SEC relied to bring this lawsuit were insufficient to support the assertion that he entered into an agreement to keep information confidential. He posits that, because the SEC was aware of this defect before it filed suit, it could not have had a good faith basis for its insider trading claim.

Cuban also contends that the SEC engaged in misconduct during its pre-suit investigation. He contends that the "Wells process"[2] was improperly initiated before the SEC had substantially completed its own investigation; he complains about the SEC's handling of his attorneys' Wells submissions; and he argues that, during the SEC investigation, Guy Fauré ("Fauré"), CEO of Mamma.com Inc. ("Mamma.com"), was deposed twice, the second time the same week the SEC closed an investigation of Mamma.com and decided to take no action against the company. Cuban maintains that in the second deposition, the SEC attempted to solicit different answers through

---

[2]The "Wells process" refers to an established SEC procedure whereby SEC staff may notify persons under investigation of the general nature of the investigation and potential violations being investigated. At that time, the SEC also notifies persons under investigation that they may submit a voluntary statement to the SEC before the staff makes a recommendation regarding whether action should be initiated. *See* SEC Enforcement Manual of the Commission's Division of Enforcement 24-25 (Oct. 6, 2008).

leading questions.

Finally, Cuban relies on a series of emails—which Cuban describes as "harassing"—from an SEC attorney to Cuban.

Cuban maintains that the SEC's entire insider trading investigation was motivated by a bias against him. He argues that this bias is demonstrated in a speech in which the SEC Director of Enforcement lauded the SEC's pursuit of high profile insider trading cases.

II

"As a general rule, litigants must pay their own attorney's fees." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "The 'American Rule' is the starting point for fee awards: Even prevailing litigants are ordinarily not entitled to attorneys' fees from the losing party." *Blue Skies Alliance v. Tex. Comm'n on Envtl. Quality*, 265 Fed. Appx. 203, 206 (5th Cir. 2008) (per curiam) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 602 (2001)). Cuban relies on two grants of authority to recover attorney's fees and expenses from the SEC: the court's inherent power to award such relief, and 28 U.S.C. § 2412(b), a provision of the Equal Access to Justice Act ("EAJA").

> A trial court has the inherent power to award fees when it finds that a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. But this inherent power must be exercised with restraint and discretion. The inherent power is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.

*Hunting Energy Servs. LP v. Inter-Mountain Pipe & Threading Co.*, 242 Fed. Appx. 257, 260 (5th Cir. 2007) (internal quotation marks, brackets, and footnotes omitted) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991)). In addition to the court's inherent power, § 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

"Section 2412(b) incorporates the 'American rule' for fee-shifting, which permits a fee award only when the losing party acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *United States v. Medica Rents Co.*, 2008 WL 3876307, at *4 (5th Cir. Aug. 19, 2008) (per curiam) (unpublished opinion) (quoting *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir. 1992)). In sum, whether the court addresses Cuban's fee request under its inherent power,

or § 2412(b), or both, Cuban must show that the SEC acted in bad faith, vexatiously, wantonly, or for oppressive reasons. This showing may be based on the SEC's decision to file and maintain the lawsuit against him or on a sufficient demonstration of an abuse of the judicial process in the method of prosecution. *See Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986).

In his reply brief, Cuban requests leave to conduct discovery "[i]f . . . the Court believes that it also needs to consider the SEC's investigative misconduct before rendering a decision." D. Reply Br. 10. He contends there are "numerous unresolved factual issues." *Id.* Courts have allowed parties seeking relief under § 2412(b) to obtain discovery, including from government officials. *See Energy Capital Corp. v. United States*, 60 Fed. Cl. 315, 318-19 (Fed. Cl. 2004) (allowing Plaintiff who sought award of attorney's fees under EAJA after prevailing on breach of contract claim against Department of Housing and Urban Development ("HUD") to take depositions of former Secretary of HUD, and HUD's former General Counsel, where former officials had first-hand personal knowledge that no one else had relevant to whether government acted in bad faith in course of litigation). The court is unaware of any reason to deny a party reasonable discovery when seeking attorney's fees under the court's inherent power.

III

Because there are fact issues that remain to be resolved, and because these issues require (or would benefit from) some discovery, the court grants Cuban's request for discovery.³

A

The SEC's complaint rested on the argument that Cuban agreed to keep confidential the information he received from Fauré regarding the Mamma.com planned private investment in public equity ("PIPE") offering. Fauré testified during the SEC investigation that, in response to stating that the information regarding the PIPE was confidential, he received from Cuban "some type of acknowledgment," such as "'um-hmm,' 'yes,' 'go ahead.'" P. Br. 6. Cuban argues that Fauré's testimony did not provide the SEC a sufficient factual basis to support the allegations of the complaint. Cuban maintains that Fauré's testimony makes clear that Cuban at most acknowledged Fauré's statement that the information was confidential, but that the testimony could not support the allegation that Cuban entered into a confidentiality agreement. Cuban may conduct discovery to support his allegations about the extent of the evidentiary support for the SEC's allegation that Cuban agreed to keep the information confidential.

---

³The court assumes that only Cuban seeks discovery. If the SEC desires to conduct some discovery as well, it may do so in accordance with this memorandum opinion and order.

B

Cuban also asserts that the SEC's method of conducting the investigation demonstrates its bad faith. In assessing subjective bad faith, a court may sanction parties for conducting litigation with an improper motive even if the complaint was legally adequate. *See Chambers*, 501 U.S. at 53 ("[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation."). Cuban should be allowed to obtain discovery that would enable the court to fairly judge some of his allegations regarding how the SEC conducted its investigation.

For example, Cuban points to a series of emails sent to him by a senior SEC enforcement attorney. According to Cuban, these emails "questioned Mr. Cuban's patriotism" because of "rumors that one of Mr. Cuban's companies was considering distributing a movie about the 9/11 terrorist attack." D. Br. 5-6. Some of these emails were copied to SEC Chairman Christopher Cox ("Chairman Cox").[4] The SEC responds that the attorney neither played a role in investigating Cuban nor had any relationship with any employee who participated in the investigation. Additional discovery will enable the court to resolve whether the attorney played a role in investigating Cuban.

---

[4] According to Cuban, Chairman Cox recused himself from the vote that determined that the SEC would bring an enforcement action against Cuban.

Cuban also contends that the SEC took Fauré's testimony a second time with the intention of trying to elicit more useful answers. He points to what he maintains are leading and repetitive questions, particularly relating to the creation of the alleged confidentiality agreement. Fauré testified for the second time only two days after the SEC concluded its investigation of Mamma.com, which Cuban argues suggests a *quid pro quo*. Further discovery should assist in evaluating the SEC's assertion that the Mamma.com investigation was "temporally and substantively distinct" from the investigation of Cuban. P. Br. 21. Discovery could confirm that there was no overlap of staff working on the two investigations and/or no *quid pro quo*.

IV

In allowing discovery, the court reminds the parties that "[t]he inner workings of administrative decision making processes are almost never subject to discovery." *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994) (addressing disallowance of questions relating to processes of judicial decision) (citing, *inter alia*, *United States v. Morgan*, 313 U.S. 409, 422 (1941)). "Relying on *Morgan*, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

> It is a settled rule in this circuit that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted. Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.

*In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal quotation marks, brackets, and footnotes omitted); *see also Morgan*, 313 U.S. at 422. "'[H]igh ranking government officials have greater duties and time constraints than other witnesses' and . . . without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan*, 489 F.3d at 423 (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam)). Furthermore, assuming the information in question is discoverable, "[i]f other persons can provide the information sought, discovery will not be permitted against such an official." *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (citing *In re United States (Kessler)*, 985 F.2d at 513); *see In re FDIC*, 58 F.3d at 1062 ("We think it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness.").

The court also emphasizes that today's decision to allow discovery should not be seen as sanctioning a "fishing expedition." The grounds on which Cuban relies in his motion[5] should be seen as

---

[5]The court does not suggest that any specific ground on which Cuban relies will probably support relief. It has considered the

- 9 -

the presumptive limits on the scope of discovery, not as the starting points. Absent cause, the discovery conducted should be calculated to establish the merits, if any, of the grounds asserted, not to find or develop new ones.

V

The discovery permitted by this memorandum opinion and order must be completed no later than February 1, 2010.[6] No later than 21 days after the discovery period is completed, Cuban may file a supplemental brief and evidence appendix[7] in support of his motion. No later than 21 days after Cuban files these materials, the SEC may file a supplemental brief and, if applicable, evidence appendix.[8] No later than 14 days after the SEC files its response, Cuban may file a supplemental reply brief. The court will decide the motion under the procedure allowed by Fed. R. Civ. P. 43(c). It will convene an evidentiary hearing only if necessary to resolve a controlling fact issue that involves a determination of witness

---

merits of his arguments only to the extent necessary to decide whether to allow discovery.

[6]The court has set this deadline so that these post-judgment proceedings are not unnecessarily prolonged. But because it recognizes that the holidays fall within this period, it advises the parties that they may request reasonable extensions of this deadline.

[7]To avoid confusion, the pagination of the appendix should begin with a number that succeeds the last page of the appendix that Cuban filed on August 28, 2009.

[8]*See supra* note 7 regarding paginating the appendix.

credibility.[9]

**SO ORDERED.**

December 4, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[9]Cuban has requested oral argument. If the court decides the motion under Rule 43(c), it will also decide whether to convene oral argument, which is procedurally distinguishable from an evidentiary hearing.