**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-cv-02050 (SAF) |
| | ) | |
| MARK CUBAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW OF MARK CUBAN
## IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

**\*\*\*\*\*Please note that the following Memorandum and Appendix are corrected versions of those same documents as filed on March 29, 2010.  The Memorandum is identical to the Memorandum filed on that date in all respects, with the exception of corrections to several citations to tab numbers in the Appendix.  The only correction to the Appendix was to ensure all pages are consecutively numbered.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 3:08-cv-02050 (SAF)** |
| | ) | |
| MARK CUBAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM OF LAW OF MARK CUBAN
# IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................4

DOCUMENTS AND INFORMATION SOUGHT....................................................5

I.    Documents Regarding Personal Animus and/or Bias Against Mr. Cuban .........................5

II.   Documents Suggesting That the SEC Knew It Lacked Sufficient Evidence of a
      Confidentiality Agreement.....................................................................................6

III.  Documents Regarding Whether the HO-09900 and HO-10576 Investigations
      Were Temporally and Substantively Distinct ......................................................6

IV.   Documents Withheld on the Basis of Temporal Scope Objection ......................7

V.    Certain Interrogatory Responses...........................................................................8

ARGUMENT ..........................................................................................................8

I.    THE SEC's PRIVILEGE CLAIMS FAIL ...........................................................8

      a.    The Work Product Doctrine.........................................................................9

      b.    The Attorney Client Privilege...................................................................12

      c.    The Deliberative Process Privilege...........................................................15

      d.    The Law Enforcement Privilege ...............................................................17

II.   THE COURT SHOULD REVIEW CERTAIN DOCUMENT SUBJECT TO
      PRIVACY ACT PROTECTION IN CAMERA...................................................19

CONCLUSION.....................................................................................................20

FRCP RULE 37(a)(i) CERTIFICATE OF CONFERENCE .........................................23

CERTIFICATE OF SERVICE ...............................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Assoc. for Women in Science v. Califano,*
  566 F.2d 339 (D.C. Cir. 1977)........................................................................17, 18, 19

*Brinton v. Department of State,*
  636 F.2d 600 (D.C. Cir. 1980).......................................................................13

*Canadian Javelin, Ltd. v. Securities and Exchange Commission,*
  501 F. Supp. 898 (D.D.C. 1980)....................................................................13

*Cline v. Advanced Medical Optics,*
  No. 2:08-CV-62, 2009 U.S. Dist. LEXIS 56050 (E.D. Tex. March 6, 2009)...........................10

*Coastal States Gas Corp. v. Department of Energy,*
  617 F.2d 854 (D.C. Cir. 1980)......................................................................13

*Handguards, Inc. v. Johnson & Johnson,*
  413 F. Supp. 926 (N.D. Cal. 1976)................................................................12

*In re Int'l Systems & Controls Corp. Sec. Litig.,*
  693 F.2d (5th Cir. 1982)..........................................................................11

*In re Int'l Systems & Controls Corp. Sec. Litig.,*
  693 F.2d 1235 (5th Cir. 1982).....................................................................10

*In re U.S. Dep't of Homeland Security,*
  459 F.3d 565 (5th Cir. 2006)..................................................................18, 19

*Kockums Industries Ltd. v. Salem Equipment, Inc.,*
  561 F. Supp. 168 (D. Ore. 1983)..................................................................12

*Laxalt v. McClatchy,*
  809 F.2d 885 (D.C. Cir. 1987).....................................................................19

*Mead Data Central, Inc. v. United States Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977).....................................................................13

*Navigant Consulting, Inc. v. Wilkinson,*
  220 F.R.D. 467 (N.D. Tex. 2004)..............................................................12, 14

*Reed v. Baxter,*
  134 F.3d 351 (6th Cir. 1998)......................................................................13

*Rollins v. Dep't of Justice,*
  No. H-90-3170, 1992 U.S. Dist. LEXIS 10884 (S.D. Tex. June 29, 1992)...........................16

*Scott v. Bd. of Educ. of the City of East Orange*,
    219 F.R.D. 333 (D.N.J. 2004) ............................................................................................16

*SEC v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ..............................................................................11, 14

*Skelton v. U.S. Postal Service*,
    678 F.2d 35 (5th Cir. 1982) ..............................................................................................15

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) ....................................................................................16

*Southern Railway Co. v. Lanham*,
    403 F.2d 119 (5th Cir. 1969) ............................................................................................11

*Tri-State Hospital Supply Corp. v. U.S.*,
    226 F.R.D. 118 (D.D.C. 2005) ........................................................................................17

*United States v. Kelly*,
    569 F.2d 928 (5th Cir. 1978) ............................................................................................14

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ..........................................................................................................12

**STATUTES**

5 U.S.C. § 552a(b)(11) (1982) ......................................................................................................19

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26 ..................................................................................10, 12, 19

## <u>INTRODUCTION</u>

On December 4, 2009, this Court issued an opinion and order (the "Order") related to Defendant Mark Cuban's Motion for Attorneys' Fees and Expenses (the "Fees Motion"), finding that there were sufficient fact issues surrounding the SEC's alleged misconduct in the investigation, filing, and prosecution of its insider trading case against Mr. Cuban to warrant the conducting of discovery.  Guided by the Order and its parameters, Mr. Cuban served limited document requests and interrogatories that were targeted directly at the SEC's conduct.  The SEC's response – after requesting and receiving multiple time extensions from the Court – was to produce a mere 199 documents, many of which had already been produced *by Mr. Cuban* earlier in the litigation.  The SEC has hundreds of other responsive documents, but in an obvious attempt to shield its misconduct and frustrate the Court's Order, it has asserted various privileges over all of them.  Indeed, the two privilege logs (attached at Tab 1) provided by the SEC contain 602 entries (*i.e.*, three times the number of documents the agency actually produced) and cite privileges ranging from law enforcement to deliberative process to attorney-client to the Privacy Act.

A document "production" consisting primarily of privilege logs obviously does not accomplish any of goals articulated in the Order.  The key documents concerning the SEC's conduct during its case against Mr. Cuban remain hidden.  Nor do the SEC's privilege logs, which provide scant information about the nature of the withheld documents, permit an individual unfamiliar with those documents to determine whether the documents are, in fact, subject to any privilege.  Moreover, the privileges invoked by the SEC are not absolute and in a case involving a claim of government bad faith in the investigation, conduct, and prosecution of an enforcement action, these privilege claims must fail.

The necessity of this motion to compel is established by the discovery to date.  Despite the paucity of documents provided by the SEC, the discovery has revealed additional evidentiary support for Mr. Cuban's allegation that the "SEC acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  (Order at 5.)  First, email correspondence among those in supervisory roles

within the SEC Enforcement Division evidences a significant personal bias against Mr. Cuban, made manifest even before the SEC sought any formal action against him.  Indeed, these e-mails demonstrate a shocking lack of professionalism and strongly suggest that the Enforcement Division was committed to pursuing Mr. Cuban, no matter what the facts actually showed.  For example, on February 27, 2007, Scott Friestad, the supervisor of the Cuban investigation, sent an email montage of suggestive photos of Mr. Cuban to the Director of the Enforcement Division and the Chief Counsel of the Enforcement Division.  In response to this inappropriate behavior, these individuals reply that the pictures are "charming" and that "[t]he picture with the money is particularly helpful and certainly speaks a 1,000 words (if not more)."  *See* Tab 2.  Perhaps not surprisingly, just two weeks later the baseless formal order of investigation in this matter was issued.

Second, Mr. Cuban's counsel has uncovered evidence of witness tampering.  Mr. Cuban has provided the SEC with an affidavit from Christopher Aguilar, the former general counsel of Mamma.com's placement agent, stating that the SEC Staff discouraged him from making a key witness available to Mr. Cuban's counsel.[1]  *See* Tab 3.  The Staff's conduct is not only improper, but also per se evidence of the SEC's bad faith in conducting its investigation.  Moreover, when Mr. Cuban's counsel expressed his concerns about this witness tampering in a September 2007 letter to Mr. Friestad, the SEC apparently (based on its privilege log) never conducted an investigation into these allegations.

Third, the discovery to date raises even more concerns about the "coincidental" timing of the closing of the Mamma.com investigation less than two weeks before the re-taking of testimony of Guy Fauré, the SEC's critical fact witness in the case against Mr. Cuban.  The SEC's privilege logs and interrogatory responses indicate that there was no ethical wall between the two investigative teams (Cuban and Mamma.com) – instead, they shared information.  *See*, *e.g.*, SEC Response to Mr. Cuban's Document Request No. 10 (such Responses attached at Tab

---

[1] Although counsel for Mr. Cuban has indeed known about the witness tampering allegation for over two years, *see, e.g.*, Tab 4 (September 21, 2007 Letter from R. Ferrara to S. Friestad), until the allegation was properly sworn to, counsel for Mr. Cuban was reluctant to recklessly disseminate or accuse the SEC of this misconduct.

5.)   While the HO-09900 team decided to close the Mamma.com investigation back in 2006, it somehow never got around to informing Mamma.com until September 2007.  Accordingly, the key question is why and how the Staff came to the decision to inform Mamma.com that the investigation would be officially closed just before re-taking Mr. Fauré's testimony.  The answer presumably lies in the documents that the SEC is refusing to produce.

Finally, and perhaps most importantly, the SEC now concedes that it has *no other evidence* that Mr. Cuban agreed to keep the information he received from Mamma.com confidential.  *See, e.g.*, SEC Responses to Cuban Interrogatories Nos. 1 and 2.  (Attached at Tab 6)  As set forth in the Fees Motion, this alone is a sufficient basis for a finding of bad faith.  Moreover, it is clear that the HO-10576 staff (and perhaps the Commission) was well aware of this crucial hole in its case.  A February 2008 e-mail establishes that *after* the conclusion of the Wells process (wherein the Staff informed Mr. Cuban that it would recommend to the Commission that an action be brought against him) and *after* the Staff's drafting and transmittal of its recommendation memo to the Commission, the Staff went back to Mamma.com in a last-gasp attempt to gather more information about Mr. Cuban's supposed confidentiality agreement.  *See* Tab 7.  Mamma.com informed the Staff that it had no additional information.  The SEC nevertheless proceeded with its case, despite knowing that Mr. Fauré had never testified that Mr. Cuban entered into a confidentiality agreement.

In sum, the limited discovery conducted so far suggests that even more evidentiary support for the Fees Motion exists.  The SEC's attempt to hide virtually all of its responsive documents behind privilege is yet another example of its abuse of the judicial process.  Moreover, the SEC's position is both ironic and hypocritical given that the agency actively encourages investigative targets to waive their attorney-client privilege, work product, and other legal protections as a sign of full cooperation.[2]  So as to accomplish the goals of its Order, the

---

[2] *See* "Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement of the Relationship of the Cooperation to Agency Decisions," Release No. 34-44969 (Oct. 23, 2003) ("Seaboard Report"), *available at* http://www.sec.gov/litigation/investreport/34-44969.htm.

Court, as discussed in detail below, should order the production of various categories of documents listed in the SEC's privilege logs.

## BACKGROUND

The Order holds, *inter alia*, that:

a) "Cuban may conduct discovery to support his allegations about the extent of the evidentiary support for the SEC's allegation that Cuban agreed to keep the information confidential (Order at 6.);

b) Cuban should be allowed to obtain discovery that would enable the court to fairly judge some of his allegations regarding how the SEC conducted its investigation (Order at 7.);

c) Additional discovery will enable the court to resolve whether [Norris] played a role in investigating Cuban (*Id.*); and

d) Further discovery should assist in evaluating the SEC's assertion that the Mamma.com investigation was 'temporally and substantively' distinct from the investigation of Cuban." (Order at 8.)

Mr. Cuban served targeted discovery requests on the SEC in accordance with this Order; the insufficient nature of the SEC's responses is highlighted above. Additionally, counsel for the parties held a meet-and-confer call to discuss the deficiencies in the SEC's production.[3] During this call, the SEC refused to drop any of its claims of privilege and/or to provide a more detailed privilege log. Conversely, counsel for Mr. Cuban indicated to the SEC that Mr. Cuban would no longer seek the production of any documents related to disciplinary action against Jeffrey Norris, who the SEC claims played no role in investigating Cuban. With regard to the remaining documents, however, in light of these issues identified above, and in accordance with the Order, we note the following and accordingly request the production of the categories of documents related thereto.

---

[3] Despite the fact that the Court "assume[d] that only Cuban seeks discovery," (Order at 6, n.3), the SEC did, in fact, serve document requests and interrogatories on Mr. Cuban (despite the fact that it is the SEC's, not Mr. Cuban's conduct, at issue here). Mr. Cuban responded to these discovery requests in a timely manner and in good faith.

## DOCUMENTS AND INFORMATION SOUGHT

**I.     Documents Regarding Personal Animus and/or Bias Against Mr. Cuban**

Discovery to date strongly suggests that this action was brought as a result of a personal animus and/or bias against Mr. Cuban.  Mr. Cuban requests that this Court compel the production of any additional documents related to this topic as well as documents discussing the merits of bringing the action to determine how this obvious bias played out.  (*See, e.g.*, Order at 3.) ("Cuban maintains that the SEC's entire insider trading investigation was motivated by a bias against him.")  Although, again, Mr. Cuban can only speculate as to the contents of the documents on the privilege log, it appears that documents relevant to this allegations would encompass the following categories of documents:

a.   Documents including, but not limited to:  emails discussing evidentiary bases for bringing the action against Mr. Cuban; emails requesting authorization for a formal order of investigation against Mr. Cuban; email communications among HO-10576 staff regarding the investigation of Mr. Cuban and the decision to recommend that the Commission bring an action against Mr. Cuban; email communications among the investigative staff and other SEC personnel regarding the same; "Action Memoranda" and drafts thereof; emails regarding Action Memoranda (and drafts thereof); litigation hold notices and emails related thereto, drafts of interview and testimony outlines; emails regarding the interview and testimony outlines; notes and/or memoranda regarding interviews and testimony; emails related to interviews and testimony; emails and other correspondence regarding Wells calls, Wells meetings and Wells submissions; draft and final complaints and draft and final litigation releases.

It appears that these categories encompass the documents referred to in the following privilege log entries:[4]

i.   Electronic Document Privilege Log:  18-57, 59-62, 65-79, 81-105, 108-48, 150-54, 157-58, 160-68, 172-76, 178, 181-93, 196-200, 202-275, 277, 281, 284, 286-87, 290, 297-300, 307-313, 322-24, 331-34, 337, 348-80, 386-93, 396-97, 399-406, 408, 410-19, 422, 425-27, 429-31, 437-510, 512, 514-518 and 522-25.

ii.   Hard Copy Privilege Log:  1-34, 36-63, 68-75, 79-80.

---

[4] Mr. Cuban requests these documents be produced in full, whether they were previously withheld or produced in redacted form.

**II.     Documents Suggesting That the SEC Knew It Lacked Sufficient Evidence of a Confidentiality Agreement**

Mr. Cuban also requests production of the above categories of documents on the grounds that documents produced suggest that the SEC knew that it did not have sufficient evidence of a confidentiality agreement yet brought its action notwithstanding this fact.  *See, e.g.*, Tab 7, *supra.*  Privilege log entries also indicate email discussions regarding the evidence available against Mr. Cuban.  Review of these documents is necessary in order to determine "the extent of the evidentiary support for [your] allegation that Cuban agreed to keep the information confidential."  (Order at 6.)

**III.    Documents Regarding Whether the HO-09900 and HO-10576 Investigations Were Temporally and Substantively Distinct**

The documents produced by the SEC provide further support for Mr. Cuban's allegations regarding the timing of the closing of the HO-09900 investigation and the SEC's notification to Mamma.com of the closure - *e.g.*, the decision supposedly was made in October 2006, yet the letter notifying Mamma.com that the investigation was to be closed with a recommendation of no enforcement action was not sent until September 19, 2007.  *See*, *e.g.*, Exhibit 6, *supra* (SEC Response to Interrogatory No. 13).  In fact, this letter was sent not long after several calls to the SEC from Mamma.com's attorney, as evidenced by the documents already produced.  *See, e.g.*, Tab 8.  Additionally, there are privilege log entries regarding the decision to send the HO-09900 investigation closure letter that are in close proximity to entries describing documents related to the scheduling and outline of the taking of Guy Fauré's testimony for the second time.  *See, e.g.*, Electronic Document Privilege Log Entries 177-180, 190-195 and 197-203.

The privilege log also indicates that members of the HO-09900 team received the litigation hold notice related to HO-10576.  *See*, *e.g.*, Electronic Document Privilege Log

6

entries 303-05, 314-15. 319, 326-27 and 329-30.  All of this bolsters the notion of a

connection between the closing of the HO-09900 investigation and the taking of Mr. Fauré's

testimony for the second time and the strong likelihood that these two investigations were

thus not "temporally and substantively distinct."  (Order at 8.)  Although, as noted, Mr.

Cuban can only speculate as to the contents of the documents on the privilege log, it appears

that the documents relevant to this allegation would include (noting that all privilege log

entries and documents requested are <u>subsequent</u> to the date when the sale of Mr. Cuban's

shares at issue took place and to the call placed by a member of the HO-09900 team to Mr.

Cuban requesting his trading records related to such sale):

> a.  Documents, including email communications, regarding the taking of testimony
>     of third-parties interviewed or from whom testimony was taken in both
>     investigations; documents, including email communications regarding the
>     decision to close HO-09900; documents, including email communications,
>     regarding the process of closing HO-09900 and email communications between
>     members of the HO-09900 teams and the HO-10576 teams.
>
> It appears that this encompasses the documents referred to in the following
> privilege log entries:[5]
>
> > i.  Electronic Privilege Log:  1-17, 58, 149, 177, 179-80, 194-95, 201, 276,
> >     303-05, 314-15, 319, 325-30, 343-45, 382-85, 394-95, 398, 407, 409, 423-
> >     24, 513, 519-21.

## IV.    Documents Withheld on the Basis of Temporal Scope Objection

Any responsive documents withheld due to the SEC's objection to the temporal scope of

Mr. Cuban's Requests – specifically, those documents arising after the filing of the

Complaint in this Action (*see* SEC General Objection 2 to Mr. Cuban's interrogatories) – are

necessarily relevant to Mr. Cuban's allegations, as SEC's ongoing misconduct and animus

toward Mr. Cuban logically did not cease the moment the Complaint was filed.  Mr. Cuban

---

[5] Mr. Cuban requests these documents be produced in full, whether they were previously withheld or had been
produced in redacted form.

respectfully suggests that a production cut-off date of August 28, 2009 – when Mr. Cuban

filed his Fees Motion – would be appropriate.

**V.     Certain Interrogatory Responses**

Interrogatory No. 6 asks the SEC to state whether Mr. Cuban's second Wells submission

was provided to, and reviewed and considered by, the SEC Commissioners before the

decision was made to initiate the Action against Mr. Cuban.  The SEC responded that the

second Wells submission was provided to the Commission for its consideration, but did not

state whether it was considered.  Given that the privilege log appears to indicate that the Staff

played a role in directing the Commissioners' attention to what evidence to consider, Mr.

Cuban requests this Court to order the SEC to respond to this interrogatory by stating

whether the Commissioners actually *considered* Mr. Cuban's second Wells submission.[6]

<u>**ARGUMENT**</u>

**I.     THE SEC's PRIVILEGE CLAIMS FAIL**

The SEC makes claims to privilege – or claims to multiple privileges – for 602

documents.  It is of note that, as discussed below, all of the privileges claimed by the SEC are

qualified, narrowly construed privileges and, therefore, the protection of these documents from

disclosure is not absolute.  Indeed, under circumstances where a government agency is accused

of misconduct, it is far from it.  The deliberative process privilege has been held inapplicable

where the party seeking discovery has made a *prima facie* showing of misconduct by the party

from whom it seeks documents.  And, the work product doctrine does not protect documents in

the case of "extraordinary circumstances."  Further, the attorney-client privilege is to be narrowly

construed and it has been noted that in some cases, its applicability is tempered where it conflicts

---

[6] The SEC has indicated it will provide supplemental responses to Interrogatories 9 and 21 as early as possible during the week of March 29, 2010.  To the extent the SEC fails to do so or does so insufficiently, Mr. Cuban reserves the right to supplement this motion to seek the Court to compel the information sought in those interrogatories.

with the goals of "open and honest" government.  The overriding theme surrounding the applicability of these privileges is clear:  they should not be applied when they restrict the production of relevant evidence.  Given the unique nature of the discovery at issue, all evidence for which the SEC claims privilege is relevant and the claims to privilege must fail.

Mr. Cuban has sought information regarding potential bad faith on the part of the SEC in investigating and bringing this action against him.  Your Honor issued an order permitting Mr. Cuban access to this information.  The SEC has refused to abide by this Order.  Unlike most civil cases, where documents containing the facts at issue generally are created long before attorneys are involved and/or before litigation is anticipated, here the privileged documents are part and parcel of the circumstances this Court has ordered be examined.  There is only one broad topic at issue here:  whether the SEC acted in bad faith and/or engaged in misconduct.  There is truly only one way to find out:  through the SEC itself.  Mr. Cuban respectfully submits that the only way to accomplish the goals of the Order and resolve the open factual issues in Mr. Cuban's Fees Motion is for this Court to determine that under the extraordinary circumstances surrounding this discovery, SEC's claims to the various privileges it asserts must fail.

### a.   The Work Product Doctrine

Because of the extraordinary circumstances of this case – as well as the fact that Mr. Cuban can show substantial need for documents that he is unable to obtain elsewhere without undue hardship (or at all, in fact) – this Court should order production of the documents the SEC has withheld under the work product doctrine. [7]

---

[7] As discussed herein, the vague nature of the privilege log is such that it is essentially impossible to ascertain the full nature of a document from the description on the entry – *i.e.*, as regards the work product, whether it is "factual" or "opinion" work product.  With regard to the SEC's claims of work product, however, because the higher standard of "extraordinary circumstances" is met, the lower standard applicable to "factual" work product is logically met as well and the Court should order production of all documents for which a claim for work product is made.

While the Fifth Circuit recognizes the work product doctrine, it is significant to note that Federal Rule of Civil Procedure 26 ("Rule 26") offers only a limited or qualified protection for "documents and other tangible things" prepared in anticipation of litigation or trial.

Specifically, Rule 26 recognizes two types of work product – opinion and non-opinion work product and affords more protection to opinion work product.  The level of protection from disclosure depends on whether the work-product is classified as "ordinary" or "opinion" work-product.  *Cline v. Advanced Medical Optics*, No. 2:08-CV-62, 2009 U.S. Dist. LEXIS 56050 at *12 (E.D. Tex. March 6, 2009).  When materials are found to be ordinary work product, a court may compel discovery if the party seeking the materials demonstrates a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship.  *In re Int'l Systems & Controls Corp. Sec. Litig*., 693 F.2d 1235,1240 (5th Cir. 1982).  Work product immunity only protects documents and not the underlying facts; if a party can procure the information sought through other avenues, such as depositions, then undue hardship has not been shown.  *Id*.  However, a party can show undue hardship if a witness cannot recall the events in question, or is unavailable for deposition.  *Id*.  The SEC has indicated by letter that it will refuse to produce for deposition those individuals already noticed and subpoenaed by Mr. Cuban in late January/early February, *see* Tabs 9 and 10**,** and, therefore, to date, this avenue does not exist for Mr. Cuban and the documents the SEC claims are covered by the work product doctrine should be produced.   Moreover, to the extent this Court permits deposition testimony, "the real question is whether [Mr. Cuban] can obtain the facts without production of the documents containing the original" information.  *Southern Railway Co. v. Lanham*, 403 F.2d 119, 127 (5th Cir. 1969).  Given the lapse in time between when this large volume of documents were created and when the creators of the documents would be deposed, the answer is that Mr. Cuban "cannot obtain the substantial equivalent of the [information] he seeks to obtain through production."  *Id.*

("[I]t is "doubtful that appellees could presently obtain a full and accurate disclosure of the facts .
. . . [when] ten months elapsed [between the witness statements and the filing of the suit], and
almost another year intervened before the interrogatories were answered and the motion to
produce was entertained by the Court" and that "many courts have held that the mere lapse in
time itself is enough to justify production of [witness statements]") (internal citations omitted).

Likewise, Mr. Cuban can make a showing of substantial need for the documents in
question.  "[S]ome cases have found substantial need by emphasizing the importance of the
materials themselves.  For example, if material facts known by the opposite party can only be
ascertained through privileged documents, then that may suffice as substantial need of those
documents."  *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006).  The email correspondence
among, and other documents created by, the SEC staff are critical because they provide virtually
the <u>only</u> way to ascertain the exact nature and extent of the SEC's misconduct.

With regard to opinion work product "a court may compel discovery only if the party
seeking the materials demonstrates a compelling need for the information."  *Id.*; *see also In re
Int'l Systems & Controls Corp. Sec. Litig.*, 693 F.2d at 1240 (5th Cir. 1982) (implying that
discovery of opinion work product requires a higher showing of need than required for an order
to produce ordinary work product).  Although this is a heightened protection, the protection is
not absolute.  *SEC v. Brady*, 238 F.R.D. at 443 (N.D. Tex. 2006).  Courts have found that
opinion work product can still be subject to production in cases where extraordinary
circumstances exist.  *See*, *e.g.*,  *Kockums Industries Ltd. v. Salem Equipment, Inc.*, 561 F. Supp.
168, 173 (D. Ore. 1983) (opinion work product is discoverable where information sought "is
directly at issue and the need for production is compelling"); *Handguards, Inc. v. Johnson &
Johnson*, 413 F. Supp. 926, 931 (N.D. Cal. 1976) (no absolute immunity for opinion work
product required under Rule 26).

As discussed above, there can be no question that extraordinary circumstances exist in the instant case that justify the production of material that otherwise might be protected by the work product doctrine.  The documents for which the work product doctrine is asserted are the very documents that this Court ordered produced.  The astonishing evidence of misconduct already shown on the part of the SEC further underscores why this discovery should be compelled.

### b.  The Attorney Client Privilege

The SEC's claims to protection under the attorney client privilege fail because the SEC cannot meet its burden of proving the applicability of a narrowly construed privilege.  In this case, it is precisely the privileged communications themselves that are at issue in the search for the truth.  Moreover, the assertion of the privilege stands in conflict with the strong public interest in open and honest government.

The underlying purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  However, because "assertion of privileges inhibits the search for truth," the attorney-client privilege must be narrowly construed.  *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (internal citations omitted).  Moreover, some courts have questioned whether the *Upjohn* rationale applies with the same force in cases involving assertion of the attorney-client privilege by a government agency.  *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) ("The governmental privilege stands squarely in conflict with the strong public interest in open and honest government.").

For a federal agency such as the SEC to demonstrate that the attorney–client privilege justifies the withholding of documents, it must establish that the information in those documents was communicated to or by an attorney as part of a professional relationship in order to provide

the agency with advice on the legal ramifications of its actions.  *Mead Data Central, Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).  In addition, the agency must show that the information is confidential; there must be confidentiality both at the time of the communication in question and since that time.  *Id.*  Accordingly, there must be limited access to the documents within the agency itself.  *Canadian Javelin, Ltd. v. Securities and Exchange Commission,* 501 F. Supp. 898, 902 (D.D.C. 1980).  The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).  To prove the continued confidential nature of the documents, the agency must "demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'"  *Id*., *quoting Mead Data Central*, 566 F.2d at 253 n. 24.  If the communication was shared with third parties, the privilege is lost.  *Mead Data Central,* 566 F.2d at 254.  Documents based on facts acquired from outside persons and sources are not covered by the exemption.  *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).

The foregoing inquiry is highly fact-specific, and the party asserting the privilege bears the burden of proving its applicability. *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978); *SEC v. Brady*, 238 F.R.D. at 439 ("burden is on the party asserting privilege to demonstrate how each document satisfies all the elements of the privilege).  A general allegation of privilege is insufficient to meet this burden.  *Navigant Consulting,* 220 F.R.D. at 473.  Instead, "a clear showing must be made which sets forth the items or categories objected to and the reason for that objection." *Id.*  (internal citations omitted).  The proponent must provide facts by way of detailed

affidavits or other evidence sufficient to enable the court to determine whether the privilege exists. *Id.* Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id.* at 473-74 (internal citations omitted). In fact, "resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Id.* at 474 (quoting *Caruso,* 1995 WL 384602 at *1 (emphasis original)).

Again, the SEC's privilege log does not state specific and precise reasons for the claim of privilege that would enable one to ascertain whether the documents withheld are, in fact, covered by this privilege. Although the SEC provided a glossary of most individuals named in the privilege logs (such glossary attached at Tab 1), for purposes of a privilege analysis, it is difficult, if not impossible, for someone unfamiliar with the inner workings and hierarchy of the SEC to truly understand what role each individual plays and, thus, whether the protection sought is truly legitimate. The SEC's privilege log does not substantiate its claims that communications for which the privilege is sought were communications made to provide the Commission with advice on the legal ramifications of its actions  Further, the SEC's barebones privilege log does nothing to demonstrate that the documents for which the attorney client privilege is claimed "were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'"

Because the SEC has not met the requisite showing that the privilege a) exists and/or b) has not been waived, Mr. Cuban requests either that the Court order the production of documents for which this privilege is claimed (and for which documents are requested) or that it order the SEC to provide more detailed information regarding its claims to this privilege, conduct an *in*

*camera* review of the documents and order production of those documents to which Mr. Cuban is entitled.

### c.  The Deliberative Process Privilege

The SEC has improperly withheld many documents pursuant to the deliberative process privilege.  The Fifth Circuit has held that the deliberative process protects pre-decisional materials "reflecting deliberative or policy-making processes," but not materials that are "purely factual."  *Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982) quoting *EPA v. Mink*, 410 U.S. 73, 87-89 (1973).  The purpose of the privilege is to protect the decision-making process from the "inhibiting effect that disclosure of pre-decisional advisory opinions and recommendations might have on the frank discussion of legal or policy matters' in writing." *Skelton v. U.S. Postal Service*, 678 F.2d at 38 (internal quotes omitted).

In determining whether a document is covered under the pre-decisional deliberative process privilege a court should consider: (1) whether the document is "so candid or personal in nature that public disclosure is likely to stifle honest and frank communication within the agency," (2) whether the document "is recommendatory in nature or is a draft," (3) whether the document "weighs the pros and cons of agency adoption of one point or another," and (4) even if the document was pre-decisional at the time it was prepared, it is "adopted, formally or informally, as the agency position on an issue or is used by the agency in dealings with the public."  *Rollins v. Dep't of Justice*, No. H-90-3170, 1992 U.S. Dist. LEXIS 10884 at *23 (S.D. Tex. June 29, 1992).  The deliberative process privilege only exempts documents describing the pre-decisional process.  *Id.* at *22.  The relevant "decision" related to HO-10576 occurred on December 31, 2007 when the applicable staff sent to the Commissioners a "signed Action Memorandum to Commission presenting material facts, discussing legal issues and seeking Commission authorization to initiate civil action."  *See* Electronic Document Privilege Log entry

15

266   Therefore no documents regarding communications among, to or from the staff after December 31, 2007 are covered by this privilege.  Based on the documents/evidence available to date, it seems unlikely that to the extent any document is "candid or personal" its disclosure is likely to stifle honest and frank communication within the agency – unless documents regarding whether to bring an action, facts-be-damned, are considered to be "candid and personal" in nature and worthy of protection.

The SEC invokes the deliberative process privilege to cover what appear to be merely the routine communications and documents one would clearly expect to see as a part of the decision-making process that occurs during any SEC investigation.  The deliberative process privilege does not cover these types of documents.  *Scott v. Bd. of Educ. of the City of East Orange*, 219 F.R.D. 333, 337 (D.N.J. 2004) ("The Privilege is properly limited to 'communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials.'") (citation omitted).  *See also*, *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) ("The deliberative process privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy.")

Further, the deliberative process privilege is a qualified privilege, and some courts have stated that when government misconduct has occurred, the deliberative process privilege disappears.  *See Tri-State Hospital Supply Corp. v. U.S.*, 226 F.R.D. 118, 135 (D.D.C. 2005).  In *Tri-State*, the court found that it was impossible to determine whether the documents in question were in fact privileged and whether they had lost their privileged status because they contained information about the government's misconduct.  Accordingly, the court ordered the government to submit the responsive documents, along with a privilege log, to the court for an *in camera* review.  *Id*. at 135-36.  Given the astounding extent of the misconduct that already appears

16

evident, Mr. Cuban submits that the deliberative process privilege should be pierced in its entirety. To the extent the Court disagrees, based on the inability to fully evaluate the nature of the multitude of withheld documents for which the privilege is claimed, Mr. Cuban requests that the Court conduct an *in camera* review of these documents to evaluate whether they have been properly withheld.

### d.  The Law Enforcement Privilege

The SEC should be compelled to produce the documents for which it asserts a law enforcement privilege (Electronic Document Privilege Log entries 13, 22, 276 and 513) because the privilege is not applicable to civil enforcement actions.

The law enforcement evidentiary privilege is a privilege unique to the government, based primarily on specific governmental interests rather than constitutional principles. *Assoc. for Women in Science v. Califano,* 566 F.2d 339, 343 (D.C. Cir. 1977). The privilege strives to prevent the harm to law enforcement efforts that might arise from the public disclosure of government investigatory files. *Id.* Assertion of the law enforcement privilege requires: "(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." Nonetheless, the actual head of the agency does not need to be the one who asserts the privilege; the responsibility can be delegated to an appropriate person within the organization. *Id.* In any case, the SEC has not provided the requisite formal claim of privilege but, again, merely vague entries on its privilege log.

Putting aside the SEC's procedural errors, the law enforcement privilege is inapplicable because it only protects "documents relaing to an ongoing criminal investigation." *In re U.S.*

17

*Dep't of Homeland Security*, 459 F.3d 565, 570 n.2 (5th Cir. 2006).  The SEC does not – and cannot – claim that the documents it seeks to protect are related to an ongoing criminal investigation.  Obviously, the investigation of Mr. Cuban (the apparent subject of Electronic Privilege Log Entry 22) is neither "ongoing," nor was it "criminal."  Similarly, the HO-09900 investigation (the apparent subject of Electronic Privilege Log Entries 13, 276 and 513) is not "ongoing" (*See* Tab 6) (Answer to Interrogatory 13, stating that the HO-09900 action was closed on September 19, 2007), nor is there any assertion or indication that it was ever a criminal investigation.

Rather, the materials at issue are precisely those of the type that "would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions."  *In re U.S. Dep't of Homeland Security*, 459 U.S. at 571.  Furthermore, the privilege lapses after a reasonable period of time.  *See id.*  (citing *Brown v. Thompson,* 430 F.2d 1214, 1215 (5th Cir. 1970); *Am. Civil Liberties Union v. Finch,* 638 F.2d 1336, 1344 (5th Cir. 1981) ("Even the files of active law enforcement agencies lose their privileges after particular investigations become complete.") (dicta)).  Courts have found that the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document.  *Id.*

The law enforcement privilege clearly does not apply to the SEC's documents.  Mr. Cuban requests that the SEC comply with the requirements of *Califano* regarding the assertion of the privilege and that this Court conduct an *in camera* review to confirm that the privilege does not apply to the documents at issue and order the production of such documents.

18

## II.     THE COURT SHOULD REVIEW CERTAIN DOCUMENT SUBJECT TO PRIVACY ACT PROTECTION *IN CAMERA*

Although the SEC has claimed that certain of the documents listed on its privilege logs are protected from disclosure under the Privacy Act, an exemption under the Privacy Act permits disclosure pursuant to the order of a court of competent jurisdiction.  *See* 5 U.S.C. § 552a(b)(11) (1982).  In *Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987), the District of Columbia Circuit held that a party does is not required to make a showing of specific need, but is entitled to discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and that evaluation of discoverability is done in accordance with the Rule 26(b) relevance standard.  *Id*. at 889.  The court did, however, recognize that if the records sought are subject to the Privacy Act, the district court's supervisory responsibilities may, in many cases, be weightier than in the usual discovery context and the court must consider the use of protective orders and the possibility of an *in camera* inspection.

Therefore, Mr. Cuban requests that the Court conduct an *in camera* review of the a limited number of documents for which the Privacy Act protection is claimed and, if warranted, issue an order requiring disclosure of these documents.  *See Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987).  Mr. Cuban notes, however, that to the extent the materials for which the SEC claims Privacy Act protection relate <u>solely</u> to the disciplinary action taken against Jeffrey Norris, Mr. Cuban will not seek production of those documents.  To the extent a document contains both relevant information and information regarding the above-referenced disciplinary action, Mr. Cuban requests only the production of the portion of the document <u>not</u> related to such disciplinary action.  Because Mr. Cuban cannot specifically identify these documents or portions thereof, it is his understanding that the SEC will identify those documents

or portions thereof relating solely to disciplinary action against this employee.[8]  Mr. Cuban

requests *in camera* review only of other documents for which the SEC has claimed protection

from disclosure under the Privacy Act.  *See, e.g.*, Tab 11.

## CONCLUSION

For all of the reasons discussed above, Mr. Cuban respectfully requests that the Court

order the SEC to provide full, accurate and complete answers to the Interrogatories identified

herein and to order production of the documents requested or, in the alternative, conduct an *in*

*camera* review of such documents to determine whether they should be protected by the

privileges the SEC claims, in light of the investigative misconduct and bad faith already shown.

---

[8] To the extent documents enumerated in the "Documents Sought" section are identified by the SEC as falling within the category related to disciplinary action, Mr. Cuban's request for these documents is intended to comport with the parameters he identifies here.

Respectfully submitted,

**DEWEY & LEBOEUF LLP**

/s/ Stephen A. Best

By: _____

    Stephen A. Best
    D.C. Bar No. 428447
    Ralph C. Ferrara (*pro hac vice*)
    D.C. Bar No. 156380
    Lyle Roberts (*pro hac vice*)
    D.C. Bar No. 464789
    DEWEY & LEBOEUF LLP
    1101 New York Avenue, NW
    Washington, D.C. 20005
    Telephone:  (202) 346-8000
    Facsimile:  (202) 346-8102
    lroberts@dl.com
    rferrara@dl.com
    sbest@dl.com

    Christopher J. Clark (*pro hac vice*)
    N.Y. Bar No. 2854222
    DEWEY & LEBOEUF LLP
    1301 Avenue of the Americas
    New York, New York 10019
    Telephone:  (212) 259-8000
    Facsimile:  (212) 259-6333
    cjclark@dl.com

    *Attorneys  for Mark Cuban*

OF COUNSEL:

Stephen M. Ryan
Texas Bar No. 24002881
DEWEY & LEBOEUF LLP
1000 Main Street, Suite 2550
Houston, Texas 77002
Telephone 713-287-2025
713-445-2125 – Fax
sryan@dl.com

21

Paul Coggins
Texas Bar No. 04504700
Kip Mendrygal
Texas Bar No. 2404147
Locke Lord Bissell & Liddell
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201

## <u>CERTIFICATE OF SERVICE</u>

On March 30, 2010, I electronically submitted a corrected version of the Memorandum of Law of Mark Cuban in Support of Mr. Cuban's Motion to Compel and a corrected Appendix with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Lyle Roberts

_____

Lyle Roberts