# Exhibit C-3

# Document:

# MC0001928-32

| From: | Best, Stephen A. |
|---|---|
| Sent: | Thursday, January 07, 2010 5:28 PM |
| To: | 'Christopher Aguilar' |
| Cc: | Roberts, Lyle; Maria, Leslie |
| Subject: | RE: Received your call |
| Importance: | High |
| Attachments: | Affidavit.DOC |

Dear Chris:

Please find enclosed a draft affidavit which is based, in large part, on our understanding of the facts as you have informed us. If there are any relevant facts that are incorrect or missing, please feel free to edit as you deem appropriate.

Thanks very much.

Regards,
Steve Best

---

Stephen A. Best
Partner
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20005
Direct: +1 202 346 8735
General: +1 202 346 8000
Fax: +1 202 346 8102
Mobile: +1 202 422 6900
sbest@dl.com
www.dl.com

---

**From:** Christopher Aguilar [mailto:ags.law.office@gmail.com]
**Sent:** Thursday, January 07, 2010 5:17 PM
**To:** Best, Stephen A.
**Subject:** Received your call

Steve:

I received your call. I put in a call to my personal counsel on my SEC problem and want to get his input before I give you a call. I understand that I am going to either be subpoenaed or we'll meet to produce an affidavit. I just need to coordinate this with my need to request an extension to pay my fine.

I'll give you a call tomorrow once I have talked with my guy. You can send me a draft affidavit that would help to start the process.

Chris

2/23/2010

CONFIDENTIAL

MC0001928

--
Christopher Aguilar
Attorney at Law

415-505-3814 phone
ags.law.office@gmail.com
415-723-7165 fax

The information contained in this electronic mail message is confidential information intended only for use of the individual or entity named above, and is privileged.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender by reply or telephone (415-505-3814), and delete the original message.  Thank you.

2/23/2010

CONFIDENTIAL

MC0001929

## AFFIDAVIT OF CHRISTOPHER LUIS AGUILAR

STATE OF CALIFORNIA      §
COUNTY OF SAN FRANCISCO      §

      Christopher Luis Aguilar, being duly sworn, deposes and says:

1.      I am an attorney licensed to practice law in the state of California. From [date] until April 1, 2009, I was the General Counsel and Chief Compliance Officer of MCF Corporation, a holding company that provides financial services, including investment research, investment banking and asset management services, through several operating companies. One of MCF Corporation's operating subsidiaries is Merriman Curhan Ford & Co. ("Merriman Curhan").

2.      In March 2004, Merriman Curhan was engaged by Mamma.com Inc. (the "Company") to provide services in connection with a transaction known as a private investment in public equity ("PIPE"). The Company announced the PIPE to the market on June 29, 2004.

3.      At various times after the Company's PIPE transaction closed, Securities and Exchange Commission ("SEC") personnel contacted me about Merriman Curhan's involvement in the transaction. SEC personnel asked me to provide them with Merriman Curhan documents relating to the transaction. They also asked me to arrange for them to speak with Arnold Owen, who was a Managing Director in the Investment Banking Department of a broker-dealer subsidiary of Merriman Curhan. Mr. Owen had worked on the Company's PIPE transaction and had spoken with Mark Cuban regarding the PIPE on June 28, 2004. I complied with the SEC's requests.

CONFIDENTIAL

MC0001930

4.      I arranged for Mr. Daniel Chaudoin and Ms. Julie Riewe of the SEC to conduct a telephone interview of Mr. Owen on December 11, 2006. I also arranged for Mr. Owen to provide sworn testimony to the SEC on October 17, 2007.

5.      In a telephone conversation I had with Ms. Riewe several months after the SEC's December 11, 2006 interview of Mr. Owen, she made it clear to me that the SEC was opposed to Mr. Owen being made available to Mr. Cuban's counsel, and she discouraged me from giving Mr. Cuban's counsel access to him.

6.      From my experience as a former prosecutor, I understood Ms. Riewe to be engaging in a "tamp down" call – an unofficial term used to describe a government official's suggestion to an attorney not to make a witness available to counsel for an individual who is the target of an investigation or civil or criminal proceeding.

7.      Through this "tamp down" conversation I understood Ms. Riewe to be suggesting that if Merriman Curhan assisted or cooperated with Mr. Cuban or his counsel, the SEC would look with disfavor on Merriman Curhan in its future dealings with the SEC. As a registered broker-dealer, Merriman Curhan is regulated by the SEC and has frequent dealings with the SEC. In my capacity as General Counsel and Chief Compliance Officer for Merriman Curhan, I frequently provided the SEC with information it required, such as market information, and the person I usually dealt with at the SEC was Ms. Riewe. Ms. Riewe's "tamp down" and the threat to Merriman Curhan's interests it implied were therefore of great concern to me.

8.      On a few occasions in the spring and summer of 2007, I was asked by attorneys from Fish & Richardson, counsel to Mr. Cuban, if they could interview Mr. Owen.

2

CONFIDENTIAL

MC0001931

Primarily because of Ms. Riewe's "tamp down" conversation with me, I did not agree to their requests.

9.     In August 2007, I was contacted by attorneys from Dewey & LeBoeuf, also counsel to Mr. Cuban.  They asked me if they could conduct a formal, recorded interview of Mr. Owen concerning the Company's PIPE transaction and Mr. Cuban.   Again, primarily in light of Ms. Riewe's "tamp down" conversation with me, I refused Dewey & LeBoeuf's request.   I only permitted Mr. Owen to have an informal, unrecorded conversation with Dewey & LeBoeuf lawyers on September 5, 2007.  I also permitted Mr. Owen to provide a short affidavit to Dewey & LeBoeuf.

I certify and declare under penalty of perjury that the foregoing is true and correct and based on my personal knowledge.

_____
Christopher Luis Aguilar

Sworn to before me this
_____ day of December, 2009

_____
Notary Public

3

CONFIDENTIAL

MC0001932

133

# Exhibit C-4

# Document:

# MC0001913-16

| | |
|---|---|
| **From:** | Christopher Aguilar [ags.law.office@gmail.com] |
| **Sent:** | Monday, February 15, 2010 2:23 PM |
| **To:** | Best, Stephen A. |
| **Cc:** | Jeffrey L. Bornstein |
| **Subject:** | Aguilar Declaration - Cuban |
| **Attachments:** | Aguilar-Dec-Cuban 1.pdf |

Stephen:

Attached is an image of my executed declaration, dated 2-12-2010.

I have sent the original to your attentions via USPS at 1101 New York Avenue, Suite 1100 Washington DC 20005-4213.

Chris


Christopher Aguilar
Attorney at Law

415-505-3814 phone
ags.law.office@gmail.com
415-723-7165 fax

The information contained in this electronic mail message is confidential information intended only for use of the individual or entity named above, and is privileged.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender by reply or telephone (415-505-3814), and delete the original message.  Thank you.


2/23/2010

CONFIDENTIAL                                                      MCSEC0001913

## DECLARATION OF CHRISTOPHER LUIS AGUILAR

STATE OF CALIFORNIA          §
COUNTY OF SAN FRANCISCO      §

I, Christopher Luis Aguilar, declare as follows:

1.      I am an attorney licensed to practice law in the State of California. I am a member in good standing of the California State Bar and am licensed to practice before all California courts. I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto.

2.      From March 27, 2000 until April 1, 2009, I was the General Counsel of Merriman Curhan Ford Group, Inc. ("MCF Corporation"), a holding company that provides financial services, including investment research, investment banking and asset management services, through several operating companies.

3.      One of MCF Corporation's operating subsidiaries is Merriman Curhan Ford & Co. ("Merriman Curhan"). From October 2004 to November 2008, I was the Chief Compliance Officer of Merriman Curhan, a broker-dealer subsidiary of Merriman Curhan Ford Group, Inc.

4.      In March 2004, Merriman Curhan was engaged by Mamma.com Inc. (the "Company") to provide services in connection with a transaction known as a private investment in public equity ("PIPE"). The Company announced the PIPE to the market on June 29, 2004.

5.      At various times after the Company's PIPE transaction closed, Securities and Exchange Commission Staff ("SEC Staff") contacted me about Merriman Curhan's involvement in the transaction. SEC Staff asked me to provide them with Merriman Curhan documents relating to the transaction. They also asked me to arrange for them to

SF-203284 v5

speak with Arnold Owen, who was a Managing Director in the Investment Banking Department of Merriman Curhan. Mr. Owen had worked on the Company's PIPE transaction and had spoken with Mark Cuban regarding the PIPE on June 28, 2004. I complied with the SEC's requests.

6.      I spoke with Ms. Julie Riewe of the SEC to coordinate and conduct a telephone interview of Mr. Owen in December 2006. I later arranged for Mr. Owen to provide sworn testimony to the SEC in October 2007, in Washington D.C.

7      On a few occasions in the spring and summer of 2007, I was asked by attorneys from Fish & Richardson, counsel to Mr. Cuban, if they could interview Mr. Owen. I refused counsel's request because I did not believe such an interview would be in the best interests of Merriman Curhan or Mr. Owen.

6.      In August 2007, I was contacted by attorneys from Dewey & LeBoeuf, counsel to Mr. Cuban. They asked me if they could conduct a formal, recorded interview of Mr. Owen concerning the Company's PIPE transaction and Mr. Cuban. Following that request, I telephoned Ms. Riewe and told her I had been asked by Mr. Cuban's counsel to make Mr. Owen available for an interview with Mr. Cuban's counsel. I asked Ms. Riewe whether she had any objection. Ms. Riewe stated that she would prefer that I did not produce Mr. Owen to Mr. Cuban's counsel for an interview but that I could do what I wanted.

8.      My conversation with Ms. Riewe was very short and she did not explain why she preferred that I not produce Mr. Owen for an interview. In a subsequent telephone call with Dewey & LeBoeuf, I explained that I thought it could be a "tamp down" effort – an unofficial term I used to describe a government official's suggestion to

2

CONFIDENTIAL

MCSEC0001915

an attorney not to make a witness available to counsel for an individual who is the subject or target of an SEC investigation or criminal proceeding. I later decided that a formal, recorded interview with the Mr. Cuban's counsel was not in Mr. Owen's or Merriman Curhan's best interests. I did permit Mr. Owen to participate in an informal, unrecorded conversation with Dewey & LeBoeuf lawyers on September 5, 2007. I also permitted Mr. Owen to provide a short affidavit to Dewey & LeBoeuf. Mr. Owen later provided sworn testimony to the SEC Staff in October 2007.

9.     As a registered broker-dealer, Merriman Curhan is regulated by the SEC and had frequent dealings with the SEC. In my capacity as General Counsel and Chief Compliance Officer for Merriman Curhan, I frequently provided the SEC with information it required, such as market information. I often worked with Ms. Riewe at the SEC. I was concerned that producing Mr. Owen to Mr. Cuban's counsel for a more formal interview would not be in the best interests of Merriman Curhan, given its good relationship with the SEC and history of cooperation with that regulator. I also did not want Mr. Owen to give multiple statements.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this _12th_ day of February, 2010, at San Francisco, California.

Christopher Luis Aguilar

3

CONFIDENTIAL

MCSEC0001916

# Exhibit C-5

# Document:

# MC0001924-27

| | |
|---|---|
| **From:** | Christopher Aguilar [ags.law.office@gmail.com] |
| **Sent:** | Tuesday, February 09, 2010 2:58 PM |
| **To:** | Best, Stephen A. |
| **Subject:** | Aguilar Declaratoin |
| **Attachments:** | SF-#203284-v4-MERRIMAN_CURHAN_FORD___Affidavit_of_CHRISTOPHER_AGUILAR_re_Cuban-1.DOC |

Stephen:

Please have a look at this draft Declaration. Let me know if you have comments. If you do not, I will put it in final form, print and send you the original.

This states the facts as I remember them and should provide you with information upon which you can make your arguments.

Chris


Christopher Aguilar
Attorney at Law

415-505-3814 phone
ags.law.office@gmail.com
415-723-7165 fax


The information contained in this electronic mail message is confidential information intended only for use of the individual or entity named above, and is privileged. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender by reply or telephone (415-505-3814), and delete the original message. Thank you.


2/23/2010

CONFIDENTIAL

MCSEC0001924

**DRAFT**
**ATTORNEY  CLIENT PRIVILEGED COMMUNICATION**
**COMMON INTEREST and JOINT DEFENSE PRIVILEGED**

**DECLARATION OF CHRISTOPHER LUIS AGUILAR**

STATE OF CALIFORNIA              §
COUNTY OF SAN FRANCISCO          §

     I, Christopher Luis Aguilar, declare as follows:

     1.     I am an attorney licensed to practice law in the State of California.  I am a member in good standing of the California State Bar and am licensed to practice before all California courts.  I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto.

     2.     From March 27, 2000 until April 1, 2009, I was the General Counsel of Merriman Curhan Ford Group, Inc. ("MCF Corporation"), a holding company that provides financial services, including investment research, investment banking and asset management services, through several operating companies.

     3.     One of MCF Corporation's operating subsidiaries is Merriman Curhan Ford & Co. ("Merriman Curhan").  From October 2004 to November 2008, I was the Chief Compliance Officer of Merriman Curhan, a broker-dealer subsidiary of Merriman Curhan Ford Group, Inc.

     4.     In March 2004, Merriman Curhan was engaged by Mamma.com Inc. (the "Company") to provide services in connection with a transaction known as a private investment in public equity ("PIPE").  The Company announced the PIPE to the market on June 29, 2004.

     5.     At various times after the Company's PIPE transaction closed, Securities and Exchange Commission Staff ("SEC Staff") contacted me about Merriman Curhan's

SF-203284 v4

CONFIDENTIAL

MCSEC0001925

141

involvement in the transaction.   SEC Staff asked me to provide them with Merriman Curhan documents relating to the transaction.   They also asked me to arrange for them to speak with Arnold Owen, who was a Managing Director in the Investment Banking Department of Merriman Curhan.   Mr. Owen had worked on the Company's PIPE transaction and had spoken with Mark Cuban regarding the PIPE on June 28, 2004.   I complied with the SEC's requests.

6.   I spoke with Ms. Julie Riewe of the SEC to coordinate and conduct a telephone interview of Mr. Owen in December 2006.   I later arranged for Mr. Owen to provide sworn testimony to the SEC in October 2007, in Washington D.C.

7   On a few occasions in the spring and summer of 2007, I was asked by attorneys from Fish & Richardson, counsel to Mr. Cuban, if they could interview Mr. Owen.   I refused counsel's request because I did not believe such an interview would be in the best interests of Merriman Curhan or Mr. Owen.

6.   In August 2007, I was contacted by attorneys from Dewey & LeBoeuf, counsel to Mr. Cuban.   They asked me if they could conduct a formal, recorded interview of Mr. Owen concerning the Company's PIPE transaction and Mr. Cuban.   Following that request, I telephoned Ms. Riewe and told her I had been asked by Mr. Cuban's counsel to make Mr. Owen available for an interview with Mr. Cuban's counsel.   I asked Ms. Riewe whether she had any objection.   Ms. Riewe stated that she would prefer that I did not produce Mr. Owen to Mr. Cuban's counsel for an interview but that I could do what I wanted.

8.   My conversation with Ms. Riewe was very short and she did not explain why she preferred that I not produce Mr. Owen for an interview.   In a subsequent

2

MCSEC0001926

telephone call with Dewey & LeBoeuf, I explained that I thought it could be a "tamp down" effort – an unofficial term I used to describe a government official's suggestion to an attorney not to make a witness available to counsel for an individual who is the subject or target of an SEC investigation or criminal proceeding.  I later decided that a formal, recorded interview with the Mr. Cuban's counsel was not in Mr. Owen's or Merriman Curhan's best interests.  I did permit Mr. Owen to participate in an informal, unrecorded conversation with Dewey & LeBoeuf lawyers on September 5, 2007.  I also permitted Mr. Owen to provide a short affidavit to Dewey & LeBoeuf.  Mr. Owen later provided sworn testimony to the SEC Staff in October 2007.

9.     As a registered broker-dealer, Merriman Curhan is regulated by the SEC and had frequent dealings with the SEC.  In my capacity as General Counsel and Chief Compliance Officer for Merriman Curhan, I frequently provided the SEC with information it required, such as market information.  I often worked with Ms. Riewe at the SEC.  I was concerned that producing Mr. Owen to Mr. Cuban's counsel for a more informal interview would not be in the best interests of Merriman Curhan, given its good relationship with the SEC and history of cooperation with that regulator.  I also did not want Mr. Owen to give multiple statements.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this _____ day of February, 2010, at San Francisco, California.


_____
Christopher Luis Aguilar



3


CONFIDENTIAL                                           MCSEC0001927

143

# Exhibit C-6

# Document:

# MCSEC0002107-10

# LeBoeuf, Lamb, Greene & MacRae llp

1101 New York Avenue, N.W.
Suite 1100
Washington, DC 20005-4213

August 15, 2007

TO:        File:  C/M No:  14734-00001

FROM:    Leslie A. Maria

RE:        <u>Telephone Conversation with Chris Aguilar</u>

*Privileged and Confidential*
*Attorney Work Product*
*DRAFT*

This is a memorandum detailing a telephone conversation between Ralph Ferrara, Deirdre Johnson and Lyle Roberts of LeBoeuf, Lamb, Greene & MacRae LLP ("LeBoeuf") and Chris Aguilar, the [general counsel and chief compliance officer of Merriman Curhan Ford ("MCF")]. Also present on the call but not speaking was Leslie Maria of LeBoeuf. The call took place on August 14, 2007 at approximately 11 a.m. and lasted approximately 20 minutes. When asked, Mr. Aguilar stated that he is serving as Mr. Owen's counsel "at this point in time."

According to Mr. Aguilar, Mr. Owen was a Managing Director[1] in the Investment Banking Department of MCF's broker-dealer operating subsidiary. Mr. Owen was not a member of executive management, nor was he on the management committee. Mr. Owen "led" a small group of employees who worked on PIPE transactions; however, he did not have a Series 24 license. Mr. Owen no longer works for MCF and is now employed by C.E. Unterberg. Towbin, based in San Francisco.

Mr. Aguilar explained that [he and Mr. Owen] were somewhat "handicapped" because Mr. Owen had participated in a telephone interview with the SEC "a while back." Mr. Aguilar stated that although there was no official transcript of the call made available, he described the interview as the type of "informational interview [SEC] [E]nforcement does," explaining that two people questioned Mr. Owen, while, Mr. Aguilar believes, a third person likely took "essentially verbatim" notes on a laptop. Mr. Aguilar participated in the interview but, as he was on vacation when he spoke with LeBoeuf, did not have his notes from that interview with him. He indicated that the interview lasted approximately 30 minutes. He further noted that this interview covered a phone call (from Mr. Owen to Mr. Cuban) that Mr. Aguilar believed lasted 40-60 seconds. Mr. Aguilar stated that "anyone who has a 30 minute interview regarding [a 40-60 second] call tends to go outside the scope of what was the dialogue between the two parties [to the original call] because they are trying to make their own case"; Mr. Aguilar further stated that he did not want "different versions of a conversation from years ago."

---

[1] Seniority is ranked in the following cascading order:  President, Vice-President, Principal, Managing Director.

MCSEC0002107
Confidential

Mr. Aguilar explained that he was also reluctant to permit Mr. Owen to be interviewed again regarding the June 28, 2004 phone call with Mr. Cuban due to a call Mr. Aguilar had received from the SEC. He stated that he works regularly with a "friend" at the SEC because he is frequently providing information the SEC requires from registered broker-dealers (which MCF is), such as market information. He identified the person with whom he regularly deals as Julie Riewe.

He said that Ms. Riewe called him "about 4-5 months ago" (shortly before he was first contacted by Fish and Richardson). He stated that this call was what he, as a prosecutor, used to call a "tamp-down call." He clarified that a tamp-down call is "an unofficial don't make your witness available call." He stated that "we all know what that means and doesn't mean."

Mr. Aguilar received a second call from Ms. Riewe approximately 2-3 weeks ago, requesting Mr. Owen's testimony under oath but, according to Mr. Aguilar, only sworn testimony "under the shroud of the [SEC's] investigatory procedures," rather than a formal deposition. Mr. Aguilar recalled that Ms. Riewe expressed no time urgency regarding this testimony and that although he initially proposed a mid-September date, it conflicted with Rosh Hoshanna; no date was agreed upon before Mr. Aguilar left on vacation, nor has a date been agreed upon since.

With regard to the relationship between Mamma.com ("Mamma") and MCF, Mr. Aguilar explained that Mamma is a client of MCF as a firm; he further explained that all clients are considered clients of the firm and that MCF's engagement letters would be between the firm and the issuer. MCF's engagement letters do not assign specific individuals to work on the particular engagement at issue. He explained that Mamma had an ongoing relationship with MCF through another Managing Director, Tom O' Shea, who was an Internet-sector specific officer, whereas Mr. Owen was a product officer.[2] Mr. Aguilar believes that MCF may have done one other deal with Mamma and indicated that this information could be found on the MCF website.[3]

When asked whether the purpose of the transaction from the start was a PIPE, Mr. Aguilar stated that he would have to look at the engagement letter, explaining that MCF's engagement letters are not "all inclusive" and that he is "pretty sure it was a PIPE," noting that "in that era, it was the transaction du jour."

Mr. Aguilar has produced documents to the SEC regarding the PIPE, but said that he has produced "no documents related to Mr. Cuban at all." When asked if he would produce the PIPE transaction documents to LeBoeuf, Mr. Aguilar said that he would check his files upon returning from vacation and, if he determined that they had been properly produced to the SEC – *i.e.*, numbered sequentially – he would produce them to LeBoeuf. He added that there is an element of these documents that cannot be produced because of privacy concerns relating to the individual investors in the PIPE.

---

[2] Mr. Aguilar stated that Mr. O' Shea is no longer with MCF.
[3] MCF's website shows that, in addition to the PIPE transaction at issue, MCF also served as buy-side advisor in Mamma.com's acquisition of Copernic, Inc., and also issued a fairness opinion in connection with that acquisition.

MCSEC0002108
Confidential

Mr. Aguilar then discussed the timing of the call from Mr. Owen to Mr. Cuban. When asked if the call was made after the close of trading, with the knowledge that the press release regarding the PIPE was scheduled to go out the next morning, he replied, "Absolutely. According to Hoyt. According to standard procedure." When asked whether the PIPE was fully subscribed, Mr. Aguilar responded, "To my knowledge, absolutely." Mr. Aguilar noted that although Mr. Owen would have to answer the question of whether Mr. Owen asked Mr. Cuban if he wanted to subscribe to the PIPE on the call, "[asking him to subscribe] would not be the point of the call." Mr. Aguilar explained that the call was a courtesy call and that MCF makes these kinds of calls to large shareholders to make them aware of large transactions, "so that large shareholders aren't learning [about such a transaction] from the Dow Jones ticker." Mr. Aguilar indicated that large shareholders who aren't given a courtesy call are often angry, either because of the transaction itself and/or because they were not notified before the rest of the public. Mr. Aguilar also stated that Mr. Owen received a call from Guy Faure or another Mamma officer telling Mr. Owen that he "really should give [Mr. Cuban] a call before this hits the tape." Mr. Aguilar stated that Mr. Owen "will tell you, as he told the SEC, that it was a courtesy call." Mr. Aguilar does not believe that anyone else was called on a courtesy basis in connection with the PIPE.

Mr. Aguilar stated that MCF did not have written procedures regarding PIPE calls at the time of the PIPE and the call at issue. He explained that employees had been trained regarding these calls, but it was right on the cusp of Wall Street adopting the "PIPE letter." He believes MCF first issued a PIPE letter in July or August of 2004.

With regard to the call between Mr. Owen and Mr. Cuban, Mr. Aguilar does not know whether Mr. Owen admonished Mr. Cuban to keep the fact that Mamma was doing a PIPE confidential, but agreed that, given the fact that it was a courtesy call, there would be no need to give such an admonition.

With regard to Mr. Owen's call with the SEC, Mr. Aguilar stated that he did not recall whether the SEC asked Mr. Owen directly whether he had given Mr. Cuban this confidentiality admonishment and stated that the SEC "circled around" the issue a lot, but spent a lot of time asking Mr. Owen about how his and MCF's relevant typical operating procedures. Mr. Aguilar stated that he can try to "put a finer point" on what Mr. Owen said to Mr. Cuban regarding confidentiality, but that he would need to talk to Mr. Owen first. When asked whether Mr. Owen told the SEC that Mr. Cuban had told him he planned to sell his Mamma stock, Mr. Aguilar explained that he did not "know the specifics of the dialogue" between Mr. Cuban and Mr. Owen regarding this issue, but knew that "it was quite clear that Mr. Cuban was pissed off and that he did not like PIPE transactions."

When asked whether Mr. Cuban had a relationship with Mamma greater than that of merely a passive investor, Mr. Aguilar replied, "I know of no additional relationship."

When Mr. Ferrara inquired as to whether Mr. Aguilar would make Mr. Owen available for at least an interview with LeBoeuf prior to the September 7 ,2007 due date for the Supplemental Wells Submission, Mr. Aguilar explained that he has been resisting the same

MCSEC0002109
Confidential

request from F&R for months.  He reiterated the two reasons for doing so mentioned above:  1) the tamp-down call and 2) his desire to avoid having Mr. Owen give multiple statements.  Mr. Ferrara explained that he would prefer to do a formal, on the record interview with Mr. Owen. Mr. Ferrara explained that doing an interview on the record would protect Mr. Owen because it would take place in a controlled environment and would ensure that Mr. Owen would answer carefully; further, Mr. Ferrara explained, a formal interview would yield a transcript that Mr. Owen can and/or will give to the SEC.  Mr. Ferrara explained that an on the record interview is in Mr. Owen's best interest, noting that an informal interview likely would result in multiple note-takers generating notes that "bear no relation to the interview," and noting that "if it's important, take it on the record."

       Mr. Aguilar said that he would determine whether to make Mr. Owen available for an interview after returning to the office on August 27, 2007.  Mr. Ferrara stated that LeBoeuf would be amenable to meeting with Mr. Owen during the first week of September.  Mr. Aguilar stated that he needed to speak with Mr. Owen and the SEC before he made this decision.  Mr. Ferrara then stated that he had "no objection to [Mr. Aguilar] sharing anything from the call today with the SEC" and that Mr. Aguilar should feel "perfectly comfortable with [the SEC]." Mr. Aguilar then explained that he wanted to speak to the SEC only for coordination purposes, because he did not want Mr. Owen to end up having two interviews/transcripts, which Mr. Aguilar believes would result in Mr. Owen using the first transcript to refresh his recollection throughout any second interview.

       Mr. Ferrara concluded by explaining that it is LeBoeuf's job to put together a chronology and Mr. Aguilar stated that he understood and that "[I] do agree with you that insider trading wasn't the intention."

DC 360606.1 14734 00001 8/15/2007 09:47pm

-4-

MCSEC0002110
Confidential

148

# Exhibit C-7

# SEC Document:

# SEC-MC0000871-73

## DECLARATION OF ARNOLD OWEN

ARNOLD OWEN declares:

1.      From May 2003 to March 2007, I was a managing director of Merriman Curhan Ford & Co. ("MCF"). Since then, I have been employed by Collin Stewart, LLC (fka C. E. Unterberg Towbin) as a managing director.

2.      On March 16, 2004, MCF was engaged by a company then known as Mamma.com, Inc. (now known as Copernic Inc.) ("Mamma") to assist Mamma in placing and executing a financing transaction known as a private investment in public equity or PIPE.

3.      I was personally involved in the structuring of that PIPE transaction and in soliciting potential investors on Mamma's behalf. I contacted institutional investors to solicit their participation in the PIPE transaction. I did not discuss potential investment in the PIPE transaction with any individual investors.

4.      On June 28, 2004, David Goldman, the Chairman of Mamma, telephoned me and told me that a large investor, Mark Cuban, was upset and asked me to make a courtesy call to inform Mr. Cuban about the PIPE transaction. I did not ask Mr. Cuban to maintain information about the impending PIPE transaction in confidence. Mr. Cuban did not offer to maintain information about the impending PIPE transaction in confidence. Mr. Goldman did not ask me to solicit Mr. Cuban's participation as an investor in the PIPE transaction.

5.      At the time of Mr. Goldman's call, I understood Mr. Cuban to be a Mamma shareholder. Before June 28, 2004, I had never met or spoken to Mr. Cuban.

SEC-MC0000871

6.      Pursuant to the request from Mr. Goldman, I called Mr. Cuban on June 28, 2004. This call took place after the close of the market that day.

7.      I placed the call, at the request of Mr. Goldman, as a courtesy to Mr. Cuban, a large shareholder. I have made courtesy calls like this in the past. In these calls, I say words to the effect of a deal is going to hit the tape. The intent of these calls is to inform such investors about a transaction and not restrict them.

8.      During my short call with Mr. Cuban on June 28, 2004, I informed him of Mamma's pending PIPE transaction.

9.      When I conveyed that information to him, it was my understanding that the press release announcing Mamma's PIPE transaction would be made public before the opening of trading the following day. I have learned that the press release describing the PIPE transaction was not issued until 5:00 pm CST on June 29, 2004. I have no personal knowledge about the reason for the delayed publication of the press release.

10.     When I spoke to Mr. Cuban on June 28, 2004, the PIPE transaction was fully subscribed. In other words, all of the shares to be offered in the PIPE transaction were committed to investors other than Mr. Cuban. At that time, it would not have been possible to issue additional shares without shareholder approval.

11.     When I advised Mr. Cuban of the PIPE transaction, he became upset that Mamma was doing such a transaction. In an effort to mollify Mr. Cuban, I asked him if he would like to participate in the PIPE transaction. I asked him this even though it would not have been possible for Mr. Cuban to participate in the PIPE transaction because no shares were available for purchase. Mr. Cuban responded that he did not want to participate.

Page 2 of 3

SEC-MC0000872

12.     At no time during the June 28, 2004 call did I inform Mr. Cuban that the information I conveyed to him was to be held in confidence.  In fact, given my understanding that the PIPE transaction was to be disclosed before trading began the following morning, there would have been no reason for me to do so.

13.     Mr. Cuban never informed me that he would maintain the information I conveyed to him in confidence.

14.     At no time before or after my conversation with Mr. Cuban on June 28, 2004, did I send him a non-disclosure agreement (NDA) or any other documentation designed to impose an obligation of confidentiality on Mr. Cuban about information concerning the PIPE transaction.

15.     Other than the information I orally conveyed to Mr. Cuban during our call on June 28, 2004, I never provided him with any information about the PIPE transaction. I never sent Mr. Cuban a confidential memorandum or any other documentation describing the PIPE transaction.

16.     I have not spoken to Mr. Cuban since June 28, 2004.

I declare that the foregoing is true and correct and based on my personal knowledge.

Arnold Owen

Date  9/5/07

SEC-MC0000873

# Exhibit C-8

# Document:

# MC0001922

**From:** Best, Stephen A.
**Sent:** Tuesday, February 09, 2010 4:01 PM
**To:** Christopher Aguilar
**Subject:** RE: Aguilar Declaratoin

Dear Chris:

Thank you for your draft affidavit. I believe on first read I caught at least one grammatical error. In paragraph 9, I think you meant to say "formal" rather than "informal" interview. Please let me know if indeed that was an error. I also did not understand that Julie caveated her preference as stated. It is snowmageddon here so I need two days or so to get back with any other comments. The key point to all of this being you and only you participated in the discussion and we are simply trying to elicit the full and complete facts as you remember them.

Best regards,
Steve


-----Original Message-----
From: Christopher Aguilar [mailto:ags.law.office@gmail.com]
Sent: Tue 2/9/2010 2:58 PM
To: Best, Stephen A.
Subject: Aguilar Declaratoin

Stephen:

Please have a look at this draft Declaration.  Let me know if you have comments.  If you do not, I will put it in final form, print and send you the original.

This states the facts as I remember them and should provide you with information upon which you can make your arguments.

Chris


Christopher Aguilar
Attorney at Law

415-505-3814 phone
ags.law.office@gmail.com
415-723-7165 fax

The information contained in this electronic mail message is confidential information intended only for use of the individual or entity named above, and is privileged.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender by reply or telephone (415-505-3814), and delete the original message.  Thank you.

1

CONFIDENTIAL

MC0001922

# Exhibit C-9

# SEC Document:

# SEC-MC0103181-82

EXECUTIVE SESSION OF THE SECURITIES AND EXCHANGE COMMISSION

Thursday, November 13, 2008 – 2:34 p.m.

<u>COMMISSIONERS PRESENT</u>:

        Kathleen L. Casey
        Elisse B. Walter
        Luis A. Aguilar
        Troy A. Paredes

- - -

The Commission entered into executive session.  Pursuant to the provisions of the Government in the Sunshine Act, the Commission's vote to close the meeting held at 2:06 p.m. remained in effect.

- - -

Mr. Curtis, Deputy Director, Mr. Friestad, Associate Director, Ms. McKown, Chief Counsel, Mr. Kaplan, Mr. Chaudoin, Ms. Riewe, and Mr. O'Rourke, of the Division of Enforcement; and Mr. Cartwright, General Counsel, Mr. Vollmer, Deputy General Counsel, and Mr. Levine, of the Office of the General Counsel, were present.

The Commission considered a memorandum, dated December 31, 2007, from the Division of Enforcement, concerning Mamma.com Financing Transactions (HO-10576).



Redacted

November 13, 2008 – 2:34 p.m.                                                    2

    The Commission voted (4-0) to approve the staff's recommendation.  (Chairman Cox was recused from this matter.)

    (*See* Release LR-20810, dated November 17, 2008.)

- - -

    In attendance during the Executive Session were the legal counsels to the Commissioners and staff from the Office of the General Counsel, and the Division of Enforcement.

    The meeting was adjourned at 1:46 p.m.

- - -

                  J. Lynn Taylor
                  Assistant Secretary

By:     Melissa M. Kimps
             Program Information Specialist

SEC-MC0103182
SEC-MC0200986

# Exhibit C-10

## SEC Documents:

## SEC-MC0300725-26

SEC-MC0300725                                        SEC-MC0300726

| | |
|---|---|
| **From:** | ORourke, Kevin <ORourkeK@SEC.GOV> |
| **Sent:** | Friday, February 8, 2008 1:33 PM (GMT) |
| **To:** | Riewe, Julie M. <riewej@SEC.GOV>; Kaplan, Robert <KaplanR@SEC.GOV> |
| **Subject:** | Fw: Copernic/Mark Cuban |

Sent from BlackBerry Wireless Handheld.

----- Original Message -----
From: Michael Storck <Mstorck@lippes.com>
To: ORourke, Kevin
Cc: Riewe, Julie M.; Michael Storck <mestorck@mac.com>; Michael Storck <Mstorck@lippes.com>
Sent: Fri Feb 08 03:04:48 2008
Subject: Copernic/Mark Cuban

Kevin:

Further to your request, we are providing a summary of the responses of the management and directors of Copernic Inc.  The Company inquired of Daniel Bertrand, David Schwartz, Irwin Kramer, Claude Forget, Guy Faure, and David Goldman as to whether any of them ◆had any notes or documentation with or containing information relative to approaching Cuban about the PIPE or the progress of negotiation/approval of the PIPE leading up to the signing and closing, especially during the last week of June 2004.◆

Messrs. Schwartz, Kramer, and Forget◆s indicated that they did not have any documentation or writings responsive to the queried subjects

Mr. Faure◆s response confirmed that his attorney had already transmitted copies of all documentation or notes responsive to the queried subjects that were in Mr. Faure◆s possession.

SEC-MC0300725

SEC-MC0300725

SEC-MC0300726

Mr. Goldman�s referenced the e-mails already forwarded to the SEC and verified that he had no other notes or documentation.

In the event you have any follow-up questions or information about which you would like the Company to inquire, please let us know.  The Company will be pleased to continue assisting you.


Best regards,


Michael

# Exhibit D-1

# SEC Other Materials:

# SEC Responses to Mark Cuban's Interrogatories

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 3-08-CV-2050-D (SAF) |
| | : | |
| MARK CUBAN, | : | |
| | : | |
| Defendant. | : | |

PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S RESPONSE TO
DEFENDANT MARK CUBAN'S INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Securities and

Exchange Commission ("Plaintiff" or "SEC") responds as follows to Defendant Mark Cuban's

Interrogatories to Securities and Exchange Commission ("Interrogatories").

GENERAL OBJECTIONS

1.      The SEC objects to the Definitions and Instructions set forth in the Interrogatories

to the extent they impose obligations that are inconsistent with or greater than those required by

the Federal Rules of Civil Procedure.

2.      The SEC objects to the temporal scope identified in Instruction A of the

Interrogatories as overly broad, unduly burdensome, and designed to seek documents protected

by attorney-client privilege, work product doctrine, law enforcement privilege, and/or

governmental deliberative process privilege.   Among other things, the SEC objects to Cuban's

request for documents or matters arising after the filing of the Complaint in this Action.

1

3.      The SEC objects to the Interrogatories to the extent they exceed the matters for which Cuban requested discovery.  Cuban requested discovery "to address the . . . unresolved factual issues discussed" in his reply brief on his request for attorneys' fees.  *See* Reply Br. of Mark Cuban in Supp. of Request for Attorneys' Fees and Expenses at 10 (Oct. 28, 2009).  Those issues, as Cuban identified them, were (1) whether Jeffrey Norris or his emails to Cuban played a role in the Commission's decision to bring this Action, (2) what evidence the SEC staff had when it issued a Wells notice to Cuban on May 23, 2007, and (3) whether the SEC staff's decision to close HO-09900 was linked to the conduct of HO-10576.  *See id.* at 8-10.  In ordering discovery, the court emphasized that it was not sanctioning a "fishing expedition," and that the grounds on which Cuban relied in his motion were the presumptive limits on the scope of discovery.

4.      The SEC objects to the Interrogatories on the grounds that they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

5.      The SEC objects to the Interrogatories because they call for the description of the substance of memos from staff attorneys to the Commissioners, minutes or transcripts of closed Commission meetings, staff attorneys' notes and internal memos analyzing the facts and law, staff attorneys' notes of telephone calls, staff attorneys' notes of witness interviews, summaries of testimony, intra-agency correspondence, correspondence with or specification of documents (if any) furnished to the Department of Justice or other government agencies, and other similar documents, as these are protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.  The SEC further

2

objects to these interrogatories to the extent they seek information protected by the Privacy Act

of 1974, 5 U.S.C. 552a ("Privacy Act").

6.      The SEC's response to each individual interrogatory is made subject to, and

without in any way waiving or intending to waive, any objections to the relevance or privilege of

any response produced in this or any other proceeding.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

Subject to and without waiving the foregoing General Objections, which are specifically

incorporated into each of the responses to specific interrogatories, the SEC responds to each

specific interrogatory as follows:

## INTERROGATORY NO. 1

Identify all documents, witness statements, and testimony and describe in detail all other
evidence that, at the time the Complaint was filed, you were aware of and believed supported,
and/or relied upon in making, the allegation in the Complaint that "Cuban agreed that he would
keep whatever information the CEO [Guy Fauré] intended to share with him confidential."

## RESPONSE

The SEC objects to Interrogatory No. 1 because it is duplicative and unduly burdensome.

The SEC further objects to the instruction in Interrogatory No. 1 to describe evidence in detail as

vague and because it calls for characterizations of factual evidence that are protected by the work

product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.

Without waiving or in any way limiting its objections, the SEC states that on March 16,

2009 (as supplemented on May 4, 2009), as part of its Rule 26 Initial Discovery Disclosures, the

SEC produced to Mr. Cuban's counsel its entire non-privileged investigative file including,

among other things, the following documents obtained in the investigation *In the Matter of*

*Mamma.com Financing Transactions*, HO-10576 (the "investigation"):  source documents

obtained from Mark Cuban, source documents and data obtained by the SEC from non-

governmental third parties, and transcripts of investigative testimony (and exhibits thereto).

Before producing these documents, the SEC scanned all third party paper productions into a

Concordance-ready format.  The SEC also converted third party electronic files from their native

format to a Concordance-ready format.  The SEC produced to Defendant Cuban a Concordance-

ready CD-Rom containing the entire non-privileged investigative file, including all electronic

documents in both Concordance and native format.  The source for each document identified

above was provided to Defendant Cuban's counsel in an index produced as Attachment B to the

SEC's Initial Discovery Disclosures.  This production contained over 11,000 pages:  SEC-

MC0000001 through SEC-MC0003187 and SEC-MC-E0000001 through SEC-MC-E0007829

(produced on March 16, 2009 on a DVD Bates-stamped SEC-MC-DVD000001) and SEC-MC-

E0007830 through SEC-MC-E0008130 (produced on May 4, 2009 on a DVD Bates-stamped

SEC-MC-DVD000002).  Additionally, the SEC produced to Defendant Cuban a list of

individuals the SEC believes may possess discoverable information related to this matter and

provided a description of the subjects of information each individual was believed to possess.

The Commission also incorporates by reference its discussion at pages 3-15 of its Memorandum

of Law in Opposition to Defendant Mark Cuban's Motion for Attorneys' Fees and Expenses

(filed October 28, 2009) ("SEC Opposition").

**INTERROGATORY NO. 2**

Identify all documents, witness statements and testimony and describe in detail all other
evidence that, at the time the Complaint was filed, you were aware of and believed supported,
and/or relied upon in making, the allegation in the Complaint that Guy Fauré told Mr. Cuban
about the PIPE offering "in reliance on Cuban's agreement to keep the information confidential."

4

**RESPONSE**

In response to Interrogatory No. 2, the SEC incorporates in full its response to Interrogatory No. 1.

**INTERROGATORY NO. 3**

Describe in detail any formal or informal SEC policy, procedure, guideline, or practice that existed as of May 23, 2007, relating to the issuance of Wells Notices, and the receipt of Wells submissions, including any formal or informal SEC policy, procedure, guideline or practice relating to (i) when or under what circumstances a Wells Notice should or should not be issued, or (ii) whether and to what extent an investigation should be completed before a Wells Notice should be issued to the target of the investigation, if at all.

**RESPONSE**

The SEC objects to Interrogatory No. 3 because it is vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence (*e.g.*, to the extent it seeks information concerning aspects of the Wells process other than as to the timing of the issuance of Wells notices), and seeks information protected by the attorney-client privilege, governmental deliberative process privilege, law enforcement privilege, or work product doctrine. The SEC also objects to the mischaracterization of subjects of an investigation as targets; the SEC does not have, and has not had, targets of its investigations. Finally, the SEC further objects to this interrogatory to the extent that it is based upon the premise that there is a fixed policy as to when Wells notices can or cannot be issued. It is within the discretion of the Commission staff to determine if and when to issue a Wells notice. The SEC also incorporates by reference the discussion at pages 18-20 of the SEC's Opposition.

Without waiving or in any way limiting its objections, the SEC states that it issued guidance on the Wells process in Securities Act Release No. 5310 (Sept. 27, 1972). *See* SEC-MC02000714-16. The SEC also states that a 2002 document included in its 2004-05 Enforcement Orientation Manual contained a section on the investigative process that discussed

5

Wells submissions.  *See* SEC-MC0201933-36.  In addition, the Division of Enforcement issued

privileged internal guidance on confirmation of Wells notices, authored by then-Director of

Enforcement Richard Walker and then-Deputy Director of Enforcement Steven Cutler.

## INTERROGATORY NO. 4

Identify each person whom, as of May 23, 2007, you either (i) had already deposed or
interviewed in connection with your investigation of Mr. Cuban, and specify for each person
whether the person was interviewed or deposed and the date of each interview or deposition; or
(ii) intended to interview or depose *after* May 23, 2007, again or for the first time, in connection
with your investigation of Mr. Cuban.

## RESPONSE

The SEC objects to Interrogatory No. 4 because it is vague and plainly seeks the

production of information protected by the work product doctrine, the law enforcement privilege,

and the governmental deliberative process privilege, and, therefore, is improperly designed to

seek a listing of documents subject to such privileges.  The SEC also objects to the extent this

interrogatory seeks to ask the SEC to speculate what, if any, additional interviews it intended to

conduct as of May 23, 2007.  The SEC further responds that testimony taken by the SEC in

connection with its investigations is not deposition testimony and is not subject to the rules of

procedure governing deposition testimony.

Without waiving or in any way limiting its objections, the SEC states that on January 11,

2007, the SEC staff took the sworn, voluntary testimony of Mamma.com's CEO.  On April 3,

2007, the SEC staff took Cuban's sworn testimony pursuant to subpoena because he refused to

cooperate with the investigation.  Notably, the Mamma.com CEO and Cuban were the only two

parties to the telephone conversation wherein the SEC alleges that Cuban agreed to keep the

PIPE information confidential.

In addition to the Mamma.com CEO's voluntary testimony and Cuban's involuntary, compelled testimony, the SEC staff had interviewed the following people on the dates indicated by May 23, 2007:

a) Arnold Owen (December 11, 2006)

b) Guy Fauré (December 18, 2006)

c) Mark Cuban (December 18, 2006)

d) David Goldman (March 2, 2007)

**INTERROGATORY NO. 5**

Identify the documents, statements, or testimony that as of May 23, 2007, SEC enforcement staff was aware of, and believed supported, or relied upon in making, the recommendation that the Commission bring an enforcement action against Mr. Cuban.

**RESPONSE**

The SEC objects to this interrogatory as proceeding on the erroneous premise that the SEC enforcement staff on May 23, 2007 recommended that the Commission bring an enforcement action against Cuban.  On that date, the staff told Cuban's counsel that it "intended to recommend" enforcement action, and invited Cuban to respond.   The SEC enforcement staff did not recommend that the Commission bring an enforcement action against Cuban until December 31, 2007.

Without waiving or in any way limiting its objections, the SEC states that all documents created before May 23, 2007 that were produced on March 16, 2009 (as supplemented on May 4, 2009) supported the Division of Enforcement's decision to notify Cuban on May 23, 2007 that it intended to recommend that the Commission bring an enforcement action against him.  The SEC also incorporates by reference its discussion of these documents, statements and testimony at pages 3-15 of the SEC Opposition.

## INTERROGATORY NO. 6

State whether Mr. Cuban's second Wells submission, dated September 21, 2007, was provided to, and reviewed and considered by SEC Commissioners before the decision was made to initiate the Action against Mr. Cuban, and if not, why not.

## RESPONSE

Without waiving or in any way limiting its objections, the SEC states that on September 30, 2009, an SEC Assistant Director stated under penalty of perjury in a document filed with the Court that "Cuban's untimely Wells submission and all of the interview transcripts that Cuban submitted therewith, along with his first Wells submission, were provided to the Commission for its consideration when deliberating the recommended enforcement action." The SEC again states that Cuban's second Wells submission was provided to the SEC Commissioners for their consideration when deliberating whether to initiate the Action against Cuban. *See* privilege log entry for SEC-MC0200987-1602 (listing materials provided to the Commission).

## INTERROGATORY NO. 7

Identify (i) each person who was in charge of or supervised any part of or the entirety of your investigation of Mamma.com (HO-09900) (and for each such person state the dates that person was in charge or played a supervisory role); and (ii) each other person who was assigned to or performed any work on or for your investigation of Mamma.com.

## RESPONSE

The SEC objects to Cuban's mischaracterization of investigation HO-09900 as an "investigation of Mamma.com." The SEC also notes that the term "the entirety of your investigation" is ambiguous. While investigative activity had ceased in HO-09900 well before HO-10576 was opened in December 2006, and the SEC staff told counsel for Mamma.com in September 2007 that it would not recommend that the Commission file an enforcement action, a closing memorandum has not yet been finalized.

8

Without waiving or in any way limiting its objections, the SEC states that the following individuals were assigned to, or had supervisory responsibility over, the staff attorney assigned to, investigation HO-09900:

a) Antonia Chion, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549 (beginning May 2004);

b) Yuri Zelinsky, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (beginning May 2004);

c) Kara Brockmeyer, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (May 2004 - October 2005);

d) Michael Ungar, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (Alton Turner was assigned to his branch in October 2007);

e) Alexander Koch, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (in October 2007, assumed role of branch chief supervising Alton Turner in closing of HO-09900);

f) Alton Turner, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549;

g) Paul Harley, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549;

h) James Fanslau, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549.

## **INTERROGATORY NO. 8**

Identify (i) each person who was in charge of or supervised any part of or the entirety of your investigation of Mr. Cuban (and for each such person state the dates that person was in charge or played a supervisory role); and (ii) each other person who was assigned to or performed any work on or for your investigation of Mr. Cuban.

9

170

**RESPONSE**

Without waiving or in any way limiting its objections, the SEC states that the

investigation that gave rise to this Action was assigned internal reference number HO-10576.

During the dates indicated, the following individuals had a supervisory role over, and/or worked

on, investigation HO-10576:

  a) Scott W. Friestad, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549 (December 2006 - Present)

  b) Robert B. Kaplan, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (December 2006 - Present)

  c) Daniel T. Chaudoin, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (on matter from December 2006 - April 2007, limited involvement thereafter)

  d) Julie M. Riewe, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549  (December 2006 - Present)

  e) Kevin P. O'Rourke, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, D.C. 20549 (trial counsel, July 2007 - Present)

**INTERROGATORY NO. 9**

Identify each communication concerning Mr. Cuban or your investigation of Mr. Cuban that any person you identify in response to Interrogatory No. 7 sent to or received from any person you identify in response to Interrogatory No. 8.

**RESPONSE**

The SEC objects to Interrogatory No. 9 because it seeks information protected by the

attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental

deliberative process privilege.  The SEC also objects to this interrogatory as vague, overbroad

and not reasonably calculated to lead to the discovery of admissible evidence.  Among other

things, it seeks communications unrelated to the alleged *quid pro quo* between the closing of

HO-09900 and Guy Fauré's testimony in HO-10576.  The SEC notes that there are no

10

communications between the two investigative teams concerning that topic, because there was no such *quid pro quo.*

Without waiving or in any way limiting its objections, the SEC states that, upon a reasonable search for and review of information within its possession, custody and control, it identifies the following documents that constitute or reflect communications by the persons identified in Interrogatory No. 7 that were sent to or received from any person identified in response to Interrogatory No. 8 concerning Cuban or HO-10576:

**a)** SEC-MC0300877 (January 22, 2007); and

**b)** emails between January 2008 and May 2008 concerning the litigation hold in HO-10576, and responses thereto. Those documents are listed in the SEC's privilege log. *See, e.g.,* entries for SEC-MC0300000-03, SEC-MC0300007-09, SEC-MC0300043-44, SEC-MC0300046-47, SEC-MC0300058-61, SEC-MC0301009-10, SEC-MC0301012-16, SEC-MC0301027-29, SEC-MC0301032-39, and SEC-MC0301906-10.

In addition, the SEC states that in December 2006, Chaudoin and/or Riewe contacted someone on the HO-09900 team to inquire about the scope the HO-09900 investigation. After learning that the HO-09900 team was not investigating trading in connection with the 2004 Mamma.com PIPE offering, the staff opened the HO-10576 investigation. Also, in July 2007, the HO-10576 team obtained copies of transcripts of testimony taken in the HO-09900 investigation from the HO-09900 team.

**INTERROGATORY NO. 10**

Identify each communication concerning your investigation of Mamma.com (HO-09900) that any person you identify in response to Interrogatory No. 8 sent to or received from any person you identify in response to Interrogatory No. 7.

**RESPONSE**

The SEC incorporates by reference its response to Interrogatory No. 9.

11

172

## INTERROGATORY NO. 11

Identify (i) each person who was in charge of or supervised any part of or the entirety of your investigation of Irving Kott (and for each person state the dates that person was in charge or played a supervisory role); and (ii) each other person who was assigned to or performed any work on or for your investigation of Mr. Kott.

## RESPONSE

The SEC objects to Interrogatory No. 11 because it is overbroad, vague, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.

Without waiving or in any way limiting its objections, the SEC states that it had no investigation that was titled an "investigation of Irving Kott." The investigation to which it appears Cuban is referring *is* HO-09900. Therefore, the SEC incorporates in full its response to Interrogatory No. 7.

## INTERROGATORY NO. 12

Describe in detail the reasons you opened an investigation of Mr. Cuban that was separate from, or in addition to, your investigation of Mamma.com (HO-09900).

## RESPONSE

The SEC objects to Interrogatory No. 12 because it seeks information protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege. The SEC also objects to Interrogatory No. 12's characterization of HO-09900 as an "investigation of Mamma.com."

Without waiving or in any way limiting its objections, the SEC states that its investigation into Cuban was in no way connected with or otherwise related to investigation HO-09900. Rather, it opened the HO-10576 investigation into Cuban's trading in Mamma.com after

12

the Enforcement staff not involved in HO-09900 discovered a document questioning whether

Cuban's sales of his Mamma.com shares may have been unlawful.  *See* SEC-MC0301785.

**INTERROGATORY NO. 13**

Identify the person(s) who made the decision to close your investigation of Mamma.com (HO-09900), state when that decision was made, and describe in detail the reasons that decision was made, and when Mamma.com personnel or their counsel were informed of the decision.

**RESPONSE**

The SEC objects to Interrogatory No. 13's characterization of HO-09900 as an "investigation of Mamma.com."  The Commission also objects to this interrogatory to the extent it seeks information protected by the law enforcement privilege, the work product doctrine, or the governmental deliberative process privilege.

Without waiving or in any way limiting its objections, the SEC states the staff on HO-09900 were "plan[ning] on closing the matter" no later than October 17, 2006, *see, e.g.*, SEC MC-0300136-40, well before investigation HO-10576 was initiated.  The final decision not to recommend any enforcement action arising out of HO-09900 was made by Antonia Chion in late August-early September 2007.  Counsel for Mamma.com was informed of this decision in a letter dated September 19, 2007.  *See* SEC-MC0200444-46, SEC-MC0201826-28, SEC-MC0201829-74, and SEC-MC0201875-78.

HO-09900 had been opened in March 2004 to determine whether the dramatic price and volume spikes in Mamma.com's stock, following the issuance of a March 1, 2004 press release, was the result of market manipulation, or if the March 1 press release contained false and misleading financial information.  The decision was made not to recommend an enforcement action after the investigation did not find sufficient evidence of such manipulation or of

13

Mamma.com having misrepresented its fiscal 2003 financial results in the March 1, 2004 press release or in its filings with the Commission.

## INTERROGATORY NO. 14

Identify all communications and documents concerning the closing of your investigation of Mamma.com (HO-09900).

## RESPONSE

The SEC objects to Interrogatory No. 14 because it is overbroad, unduly burdensome, and calls for the production of documents protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege. The SEC also objects to Interrogatory No. 14's characterization of HO-09900 as an "investigation of Mamma.com."

Without waiving or in any way limiting its objections, the SEC incorporates by reference its response to Interrogatory No. 13, above. The SEC also states that multiple documents further demonstrate that the staff on HO-09900 planned in 2006 to close that investigation. *See, e.g.,* SEC-MC0300136-40. Other documents concerning the closing of HO-09900 include SEC-MC0300049, SEC-MC0300379-83, SEC-MC0300385-89, SEC-MC0300585-88, SEC-MC0300604-08, SEC-MC0300655, SEC-MC0300964-65, SEC-MC0300966, SEC-MC0301884-88, SEC-MC0301889-95, and SEC-MC0301918-20.

In addition, the SEC identifies the following documents on its privilege log, which are drafts of a memorandum to memorialize the closing of HO-09900, along with related communications: SEC-MC0300613, SEC-MC0300614-16, SEC-MC030617-19, SEC-MC0300620, and SEC-MC0300621-23.

14

## INTERROGATORY NO. 15

Identify all communications and documents concerning any deposition or interview of Guy Fauré, or concerning any meeting, conversation, telephone call, or correspondence with him or his counsel.

## RESPONSE

The SEC objects to Interrogatory No. 15 because it seeks information protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.  The SEC also objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence, to the extent it seeks information predating the initiation of HO-10576 because such information is simply not relevant to the issues for which discovery was requested by defendant in support of its motion for attorneys' fees and expenses.  The SEC also objects to this interrogatory as unduly burdensome to the extent it requires the SEC staff to recover or recall every communication regarding Fauré.

Without waiving or in any way limiting its objections, the SEC states that it has not identified any communications concerning any alleged *quid pro quo* for Fauré's testimony, as none exist.  The SEC further states that on March 16, 2009 (as supplemented on May 4, 2009), the SEC produced documents with its Initial Discovery Disclosures.  That production included all non-privileged documents reflecting communications with Fauré or his counsel.  Beyond that, the SEC states that, based on its best efforts to identify such communications, it has identified the following documents that it is producing concerning communications with Fauré and/or his counsel: SEC-MC0300133-35; SEC-MC0300881-905; SEC-MC0301288-1353; SEC-MC0301448-67; and SEC-MC0201879-1932.

In addition, the SEC identifies the following privileged documents responsive to this interrogatory:  SEC-MC0300268; SEC-MC0300269-78; SEC-MC0300279; SEC-MC0300280-

15

89; SEC-MC0300444-50; SEC-MC0300624-35; SEC-MC0300636-47; SEC-MC0300907-08;

SEC-MC0300910-23; SEC-MC0300924; SEC-MC0300926-37; SEC-MC0300940; SEC-

MC0300941; SEC-MC0300942; SEC-MC0300943; SEC-MC0300948; SEC-MC0301710-20;

SEC-MC0301721-30; SEC-MC0301872; and SEC-MC0301873.

**INTERROGATORY NO. 16**

Identify all communications and documents dated between August 15, 2007 and October 15, 2007 concerning any deposition or interview that you conducted during that period of time of any Mamma.com personnel relating in any way to Mr. Cuban.

**RESPONSE**

The SEC objects to Interrogatory No. 16 because it is vague and because it seeks

information protected by the attorney-client privilege, work product doctrine, law enforcement

privilege, and/or governmental deliberative process privilege. On March 16, 2009 (as

supplemented on May 4, 2009), the SEC produced documents with its Initial Discovery

Disclosures. The SEC's March 16, 2009 (as supplemented on May 4, 2009) production included

all non-privileged documents reflecting communications with Mr. Fauré or his counsel. The

SEC further responds that it takes testimony, not depositions, in its investigations, and in this

response assumes that when defendant refers to "depositions" between August 15, 2007 and

October 15, 2007, he means to refer to "testimony." The SEC also objects to this interrogatory

as unduly burdensome to the extent it requires the SEC staff to recover or recall every

communication regarding all testimony and interviews in HO-10576.

Without waiving or in any way limiting its objections, the SEC incorporates by reference

its response to Interrogatories Nos. No. 4 and No. 15 and further responds that no later than April

20, 2007, the staff had contacted Mamma.com's counsel to begin scheduling interviews or

investigative testimony of other Mamma.com personnel (many of whom had personal counsel).

16

Those communications – with Mamma.com counsel and/or individuals' counsel – continued on, among other possible dates, May 1, 2007, May 23, 2007, June 13, 2007, June 20, 2007, June 25, 2007, July 18, 2007, July 19, 2007, July 20, 2007, July 23, 2007, July 24, 2007 (the date on which the staff notified company counsel that it needed to postpone its August 3, 2007 interview trip to Montreal due to the State Department's inability to complete the staff's travel authorization because of its general passport backlog), July 25, 2007 (the date on which the staff was attempting to arrange interviews on Montreal for September 6-7, 2007 or September 10-11, 2007, assuming timely State Department travel authorization), and August 6, 2007 and August 8, 2007. *See generally* SEC-MC0301275-79.  The staff interviewed former Mamma.com board member Robert Raich on August 3, 2007 in New York, NY.

In addition, the SEC (based on its best efforts) identifies the following additional responsive documents that it is producing:  SEC-MC0201879-1932; SEC-MC0200001-212; SEC-MC0300830-36; SEC-MC0301275-79; and SEC-MC-0301479-80.

The SEC has also listed on its log privileged documents responsive to this request, including:  SEC-MC0201776; SEC-MC0300236-50; SEC-MC0300451-54; SEC-MC0300475-84; SEC-MC0300799-800; SEC-MC0300803; SEC-MC0300808-10; SEC-MC0300822-23; SEC-MC0300827; SEC-MC0300868-70; SEC-MC0300872-73; SEC-MC0300875; SEC-MC0300880; SEC-MC0300939; SEC-MC 0301042-64; SEC-MC0301096-99; SEC-MC0301481; SEC-MC0301483; SEC-MC0301794; and SEC-MC0301797-98.

**INTERROGATORY NO. 17**

Describe in detail the procedures you followed or safeguards you employed, if any, to ensure that your investigation of Mamma.com (HO-09900) and your investigation of Mr. Cuban were kept distinct from each other.

17

178

**RESPONSE**

The SEC objects to Interrogatory No. 17 because it is vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving or in any way limiting its objections, the SEC responds that, as a factual matter, (i) the investigations were temporally and substantively distinct, and (ii) the investigations were conducted by two different teams of investigators. *See* Responses to Interrogatories Nos. 7-8. Because the investigations were temporally and substantively distinct and were conducted by different teams of investigators, no efforts were necessary to keep the two investigations distinct. Moreover, Interrogatory No. 17 proceeds from a false premise that it is desirable or necessary for the SEC to act to keep investigations distinct. While the investigations were distinct in this instance, there is no reason that, as a general matter, it would be improper for there to be interactions or coordination between investigative teams. Finally, the SEC objects to Interrogatory No. 17's characterization of HO-09900 as an "investigation of Mamma.com."

**INTERROGATORY NO. 18**

State whether Jeffrey Norris was involved in any respect in your investigation of Mr. Cuban, and if so, describe in detail his involvement.

**RESPONSE**

The SEC has repeatedly and unequivocally stated that Mr. Norris was not involved in any respect in the investigation of Cuban. On September 24, 2007, the SEC stated that Mr. Norris "has not had, and will not have, any role in the investigation" in a letter from an SEC Associate Director to Cuban's counsel. On June 8, 2009, in response to Cuban's Request for Production of Documents, the SEC stated that "Jeffrey B. Norris did not participate in the Commission's investigation, HO-10576, nor has he had any role in the review or litigation of this case." On September 30, 2009 in a declaration filed with the court, an SEC Assistant Director stated under

18

penalty of perjury that "Jeffrey Norris…did not participate in the Commission's investigation and had no role in the review, recommendation, or litigation of this case.  Further, Norris had no direct or indirect supervisory relationship or role with anyone working on the investigation." Nonetheless, for at least the fourth time, the SEC states that Jeffrey Norris was not involved in any respect in the investigation of Cuban.

**INTERROGATORY NO. 19**

Identify all communications Jeffrey Norris sent or received mentioning or concerning Mr. Cuban or your investigation of Mr. Cuban.

**RESPONSE**

The SEC objects to Interrogatory No. 19 as not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it asks the SEC to identify communications by Norris to persons outside the SEC, with no relation to Mamma.com or Cuban, who played no role in HO-10576 or the decision to authorize the action against Cuban.  The SEC further objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, to the extent it seeks documents concerning Jeffrey Norris that contain no information regarding the issue of whether he played a role in HO-10576 or the decision to bring this action. The SEC also objects to the extent that this interrogatory seeks information protected by the Privacy Act of 1974.

Without waiving or in any way limiting its objections, the SEC states that, among other things, Norris had email communications with Cuban on March 28, 2007, March 29, 2007, and May 5, 2007, which are already in Cuban's possession and which were attached to the September 21, 2007 letter from Ralph Ferrara to Scott Friestad.  Norris also emailed Cuban on April 28, 2007.  In addition, on March 31, 2007, Norris emailed Steve Korotash, his supervisor in the SEC's Fort Worth Regional Office (who was unaware of the existence of HO-10576)

19

about his March 2007 emails with Cuban, and on April 2, 2007 Korotash responded that Norris should not be sending such emails from the SEC email system. *See* SEC-MC0301993-2001.

The SEC also states that on May 9, 2007, Norris sent an email to Friestad and others at the SEC attaching text from some of his emails with Cuban. Friestad immediately emailed Norris to tell Norris that he should not be having communications like that with Cuban, and that Norris needed to call Friestad as soon as possible. *See* SEC-MC0301941-44. On the call, Friestad informed Norris about the existence of the Washington, D.C. office's investigation relating to Cuban and reiterated that Norris should not be sending emails to Cuban. Norris responded that he was unaware of the investigation and promised to stop communicating with Cuban.

In addition, it appears that Norris may have sent Cuban a communication in the fall of 2009, not from the SEC or through an SEC computer, concerning Norris's lack of a role in HO-10576, and forwarded this communication to certain personnel in the SEC not involved in the HO-10576 investigation. *See* SEC-MC0301592-95. Finally, the SEC states that the HO-10576 team sent communications regarding the litigation hold in HO-10576 to Norris, among others. Those communications are listed on the SEC's privilege log. *See, e.g.*, entries for SEC-MC0302286, SEC-MC0302287, SEC-MC0302179, SEC-MC0302180-81, SEC-MC0302197, SEC-MC0300975, SEC-MC0300993, SEC-MC0300994-95, SEC-MC0300997, SEC-MC0300998-99, and SEC-MC0301563.

The SEC states that documents being produced responsive to this request include, beyond those enumerated above, SEC-MC0301923-36, SEC-MC0301938-40, SEC-MC0301948-52, SEC-MC0301953-62, SEC-MC0301963-70, SEC-MC0301971-75, SEC-MC0302012-23, SEC-MC0302031-34, SEC-MC0302040, SEC-MC0302045-56, SEC-MC0302059-67, SEC-

20

MC0302068-76, SEC-MC0302077-79, SEC-MC0302080-83, SEC-MC0302106, SEC-

MC0302109-17, SEC-MC0302119-23, SEC-MC0302124-28, SEC-MC0302129-38, SEC-

MC0302142-44, SEC-MC0302182-83, SEC-MC0302184-85, SEC-MC0302205, and SEC-

MC0302619-22.

The SEC also incorporates by reference its response to Interrogatories Nos. 20-21, below.

**INTERROGATORY NO. 20**

State whether you undertook any investigation into Mr. Norris that related in any way to Mr. Cuban, and if so, (i) identify each person who was involved in any respect whatsoever in the investigation, (ii) describe in detail each such person's involvement, (iii) state when the investigation took place, and (iv) describe in detail the investigation, including the date of the investigation and the results of the investigation.

**RESPONSE**

The SEC objects to Interrogatory No. 20 as not reasonably calculated to lead to the

discovery of admissible evidence, to the extent that it asks the SEC to identify investigative

activity unrelated to whether Norris played a role in HO-10576 or the decision to authorize the

action against Cuban. The SEC also objects to this interrogatory to the extent it seeks

information protected from disclosure by the attorney-client privilege, the work product doctrine,

or the Privacy Act.

Without waiving or in any way limiting its objections, the SEC states that, as the

supervisors over HO-10576 knew that Norris played no role in that investigation, there was no

need to investigate whether he played a role in that investigation. The SEC further states that,

after being advised by Michael Loesch in Chairman Cox's office in June 2007 that Chairman

Cox had been copied on Cuban-Norris email exchanges, Friestad and Thomsen contacted the

Office of the Inspector General ("OIG"), and subsequently Norris's supervisors in the Fort

Worth Regional Office, for them to consider whether to investigate Norris's conduct. The SEC

states that information from any investigation into Norris's conduct would be protected from

disclosure under the Privacy Act.

In addition, with regard to any investigation by the OIG relating to the sending of

inappropriate emails by an Enforcement attorney, the SEC states that details of any such

investigation are also protected from disclosure by the law enforcement privilege and the

governmental deliberative process privilege, along with the limitations on disclosure set forth in

the Privacy Act.

## INTERROGATORY NO. 21

Describe in detail any actions taken, and identify any communications made, by or on
behalf of former SEC Chairman Christopher Cox in response to or concerning Chairman Cox's
receipt of e-mails from Jeffery Norris regarding Mr. Cuban.

## RESPONSE

The Commission objects to Interrogatory No. 21 to the extent it seeks information

protected from disclosure by the attorney-client privilege or the attorney work product doctrine.

The Commission also objects to the extent the question seeks information restricted from

disclosure by the Privacy Act.

Without waiving or in any way limiting its objections, the SEC states that, Friestad and

Thomsen in February 2008 transmitted a report to Chairman Cox's office on the chronology of

events concerning the HO-10576.  In addition, in 2007 Chairman Cox had emailed Deborah

Balducchi (who then directed the SEC's EEO Office) regarding Norris's emails to Cuban.  *See*

privilege log entry for SEC-MC0302587-613.

The SEC further states that to avoid any potential appearance issues, Chairman Cox

recused himself from the Commission vote at the November 13, 2008 Closed Commission

meeting, where the Commissioners voted 4-0 to authorize the filing of the action.  *See* SEC-MC0200985-86.  The SEC also incorporates by reference its response to Interrogatory No. 20.

**INTERROGATORY NO. 22**

Describe in detail the reasons former SEC Chairman Christopher Cox recused himself from the consideration of the recommendation to institute an action against Mr. Cuban.

**RESPONSE**

The SEC incorporates by reference its response to Interrogatory No. 21.

**INTERROGATORY NO. 23**

Describe in detail your document retention policies with respect to documents created in the ordinary course of business, and state whether or not your document retention policies were followed with respect to all of the documents related to the Action.  If not, describe in detail those documents related to the Action that were not treated according to the policy, and explain the reason for the exception or exceptions.

**RESPONSE**

The SEC objects to Interrogatory No. 23 as overbroad and not reasonably calculated to

lead to the discovery of admissible evidence.  The SEC notes that there are no allegations in

Cuban's Motion for Attorneys Fees, or reply thereto, that allege the failure to abide by applicable

document retention policies.

Without waiving or in any way limiting its objections, the SEC states that it is unaware of

any instance where individuals who possessed documents related to the Action had not retained

them in accordance with SEC policy, except that the SEC is aware of one individual, not

involved in the investigation or litigation, who failed to preserve non-unique copies of certain

electronically stored documents.  Based on reasonable inquiry, the SEC states that copies of

those electronically stored documents have been preserved on other media, including backup

tapes, and were collected and reviewed in connection with this action.  *See* Response to Request

23

No. 9, Plaintiff Securities and Exchange Commission's Response to Defendant Mark Cuban's

First Request to Plaintiff for Production of Documents (June 8, 2009).

    The SEC further states that litigation holds in this matter, were issued to those involved in

the HO-09900 and HO-10576 investigations, as well as certain other SEC staff members,

beginning in January 2008.

24

Dated:  March  9, 2010

Respectfully submitted,

**SECURITIES AND EXCHANGE
COMMISSION**

By:

*Thomas J. Karr*

Kevin P. O'Rourke (*pro hac vice*)
D.C. Bar No. 254920
Julie M. Riewe (*pro hac vice*)
D.C. Bar No. 472470
Adam S. Aderton (*pro hac vice*)
D.C. Bar No. 496247
Thomas J. Karr (*pro hac vice*)
D.C. Bar No. 426340
(202) 551-5163 (Karr)
(202) 772-9263 (fax) (Karr)
karrt@sec.gov
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549

Toby M. Galloway
Texas Bar No. 00790733
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
(817) 978-6447
(817) 978-2700 (fax)
*Attorneys for the Securities and Exchange
Commission*

<u>CERTIFICATION</u>

I, Leslie Wharton, this 9th day of March, 2010, hereby declare under penalty of perjury that the foregoing responses to defendant's interrogatories are true and correct to the best of my knowledge, information and belief.

*Leslie Wharton*

Leslie Wharton
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549-9612

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2010, I caused a true and correct copy of the foregoing interrogatory responses to be served to the following Counsel for Mark Cuban:

**BY FEDERAL EXPRESS**
Paul E. Coggins, Esq.
Fish & Richardson LLP
1717 Main Street
Suite 5000
Dallas, TX  75201

**BY HAND and ELECTRONIC MAIL**
Lyle Roberts, Esq.
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, DC  20005

*Attorneys for Defendant Mark Cuban*

Thomas J. Karr
_____
Thomas J. Karr

# Exhibit D-2

## SEC Other Materials:

## SEC Responses to Mark Cuban's Requests for Production

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No.: 3-08-CV-2050-D (SAF) |
| | : |
| **MARK CUBAN,** | : |
| | : |
| Defendant. | : |
| | : |

**PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S RESPONSE TO
DEFENDANT MARK CUBAN'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Securities and

Exchange Commission ("Plaintiff" or "SEC") responds as follows to Defendant Mark Cuban's

Requests for Production of Documents to Securities and Exchange Commission ("Requests").

## GENERAL OBJECTIONS

1.      The SEC objects to the Definitions and Instructions set forth in the Requests to

the extent they impose obligations that are inconsistent with or greater than those required by the

Federal Rules of Civil Procedure.

2.      The SEC objects to the temporal scope identified in Instruction A of the Requests

because it is overly broad, unduly burdensome, and crafted to seek documents protected by

attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental

deliberative process privilege.   Among other things, the SEC objects to Cuban's request for

documents or matters arising after the filing of the Complaint in this Action.

1

3.      The SEC objects to the Requests to the extent they exceed the matters for which Cuban requested discovery.  Cuban requested discovery "to address the . . . unresolved factual issues discussed" in his reply brief on his request for attorneys' fees.  *See* Reply Br. of Mark Cuban in Supp. of Request for Attorneys' Fees and Expenses at 10 (Oct. 28, 2009).   Those issues, as Cuban identified them, were (1) whether Jeffrey Norris or his emails to Cuban played a role in the Commission's decision to bring this Action, (2) what evidence the SEC staff had when it issued a Wells notice to Cuban in March 2007, (3) whether the SEC staff's decision to close HO-09900 was linked to the conduct of HO-10576.  *See id.* at 8-10.  In ordering discovery, the court emphasized that it was not sanctioning a "fishing expedition," and that the grounds on which Cuban relied in his motion were the presumptive limits on the scope of discovery.

4.      The SEC objects to the Requests because they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

5.      The SEC objects to the Requests because they call for the description of the substance of memos from staff attorneys to the Commissioners, minutes or transcripts of closed Commissioner meetings, the staff's notes and internal memos analyzing the facts and law, staff attorneys' notes of telephone calls, staff attorneys' notes of witness interviews, summaries of testimony, intra-agency correspondence, correspondence with or specification of documents (if any) furnished to the Department of Justice or other government agencies, and other similar documents, as these are protected by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.  The SEC further objects to these requests to the extent they seek information protected by the Privacy Act of 1974, 5 U.S.C. 552a ("Privacy Act").  Any responsive documents restricted from disclosure under the Privacy Act are listed on the SEC's privilege log.

2

190

6.      The SEC's response to each individual request is made subject to, and without in any way waiving or intending to waive, any objections to the relevance or privilege of any response produced in this or any other proceeding.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

Subject to and without waiving the foregoing General Objections, which are specifically incorporated into each of the responses to specific document requests, the SEC responds to each specific document request as follows:

### REQUEST NO. 1

All documents that, at the time the Complaint was filed, you were aware of and believed supported, and/or relied upon in making, the allegation in the Complaint that "Cuban agreed that he would keep whatever information the CEO [Guy Fauré] intended to share with him confidential."

### RESPONSE

The SEC incorporates its response and objections to Interrogatory No. 1 as its response to Request No. 1.

### REQUEST NO. 2

All documents that, at the time the Complaint was filed, you were aware of and believed supported, and/or relied upon in making, the allegation in the Complaint that Guy Fauré told Mr. Cuban about the PIPE offering "in reliance on Cuban's agreement to keep the information confidential."

### RESPONSE

The SEC incorporates its response and objections to Interrogatory No. 2 as its response to Request No. 2.

### REQUEST NO. 3

All documents concerning your meeting with Mr. Cuban's counsel, Fish & Richardson on July 19, 2007.

3

191

**RESPONSE**

The SEC objects to Request No. 3 because it is duplicative, not reasonably calculated to lead to the discovery of admissible evidence, and plainly seeks the production of information protected by attorney-client privilege, the work product doctrine, the law enforcement privilege, and the governmental deliberative process privilege, and, therefore, is improperly designed to seek a listing of documents subject to such privileges.  Without waiving these objections, the SEC states that it produced its non-privileged investigative file, consisting of source documents obtained from Mark Cuban, source documents and data obtained by the SEC from non-governmental third parties, and transcripts of investigative testimony (and exhibits thereto), on March 16, 2009 (as supplemented on May 4, 2009).

**REQUEST NO. 4**

All documents concerning or containing any SEC policies, procedures, guidelines, or rules that were in effect as of May 23, 2007 relating to Wells Notices, Wells submissions, or the Wells process.

**RESPONSE**

The SEC objects to Request No. 4 because it is overbroad, unduly burdensome, vague, not reasonably calculated to lead to the discovery of admissible evidence, and plainly seeks documents covered by the attorney-client privilege, law enforcement privilege, and/or governmental deliberative process privilege, and, therefore, is improperly designed to seek a listing of documents subject to such privileges.  The SEC also objects to this request as overbroad to the extent it seeks documents that concern parts of the SEC's policies relating to the Wells process unrelated to the issue raised in defendant's Motion – that is, under SEC policy how close to complete an investigation must be before a Wells notice can issue – and seeks documents concerning Wells notices issued in every Commission investigation since 2004.

4

192

Without waiving or in any way limiting its objections to this request, the SEC incorporates its response to Interrogatory No. 3 as its response to Request No. 4.

**REQUEST NO. 5**

All documents concerning your reasons for issuing a Wells Notice to Mr. Cuban on May 23, 2007.

**RESPONSE**

The SEC objects to Request No. 5 because it is overbroad, unduly burdensome, and plainly seeks documents covered by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege, and, therefore, is improperly designed to seek a listing of documents subject to such privileges.

Without waiving or in any way limiting its objections to this request, the SEC states that it produced its non-privileged investigative file, consisting of source documents obtained from Mark Cuban, source documents and data obtained by the SEC from non-governmental third parties, and transcripts of investigative testimony (and exhibits thereto), on March 16, 2009 (as supplemented on May 4, 2009). The Commission notes that its reasons for deciding to issue its Wells notice to Cuban are discussed at pages 3-15 of its Memorandum of Law in Opposition to Defendant Mark Cuban's Motion for Attorneys' Fees and Expenses (filed October 28, 2009) ("SEC Opposition"). In addition, the SEC has listed on its privilege log any documents responsive to this request that are subject to any of the aforementioned privileges.

**REQUEST NO. 6**

All documents concerning the handling or review by the SEC of Mr. Cuban's second Wells submission, dated September 21, 2007.

5

193

**RESPONSE**

The SEC objects to Request No. 6 because it is vague and plainly seeks documents covered by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege, and, therefore, is improperly designed to seek a listing of documents subject to such privileges.

Without waiving or in any way limiting its objections, the SEC reiterates that Cuban's second Wells submission and all of the interview transcripts that Cuban submitted therewith, along with his first Wells submission, were provided to the Commissioners for their consideration when deliberating whether to authorize the filing of this Action.   In addition, the SEC has listed on its privilege log any documents responsive to this request that are subject to any of the aforementioned privileges.

**REQUEST NO. 7**

All documents presented to, reviewed, or considered by SEC Commissioners in deciding to initiate the Action.

**RESPONSE**

The SEC objects to Request No. 7 because it plainly seeks documents covered by the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege, and, therefore, is improperly designed to seek a listing of documents subject to such privileges.

The SEC also objects to this request to the extent is asks it to produce to Cuban responsive documents that are already in his possession, such as his second Wells submission (which the SEC noted, in response to Interrogatory No. 6 and to Request No. 6, was provided to the Commissioners for their consideration in deciding whether to authorize the filing of this Action).   In addition, included on the SEC's privilege log are the documents that were

6

transmitted to the Commissioners for their consideration in determining whether to authorize the filing of this action.  *See* entries for SEC-MC0200987-1602; SEC-MC0201609-12.

## REQUEST NO. 8

All documents concerning any actions you took to address or investigate the allegations of misconduct set forth in the letter dated September 21, 2007 from Mr. Cuban's counsel to you that accompanied Mr. Cuban's second Wells submission.

## RESPONSE

The SEC objects to Request No. 8 to the extent it seeks the production of documents subject to the attorney-client privilege, work product doctrine, law enforcement privilege, governmental deliberative process privilege, or the limitations on disclosure under the Privacy Act.  The SEC further objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, to the extent it seeks documents concerning issues outside those raised in defendant's attorneys' fees motion and reply.

Without waiving or in any way limiting its objections to this request, the SEC states that it did not need to investigate the suggestion that the emails between Cuban and Jeffrey Norris played a role in the decision to give a Wells notice to Cuban, since the HO-10576 staff knew that Norris had played no role in the investigation and had no influence on that decision.  As to the allegation that "[a]t least one entity indicated" that a member of the HO-10576 team had "expressly discourage[ed] it from making a witness available," *see* Sept. 21, 2007 letter at 4 -- an allegation of misconduct not raised in Cuban's motion papers -- the SEC notes that this allegation is expressly refuted by the Declaration of Christopher Aguilar (the only person whom Cuban has identified in connection with the allegation).  Even assuming Aguilar accurately recounts that a member of the HO-10576 team discussed whether his client should speak with Cuban's counsel, Aguilar states that the SEC staff member told Aguilar "I could do what I wanted" regarding

7

making his client available to speak to Cuban's counsel, but that it was *Aguilar* who later

decided that "a formal interview with Mr. Cuban's counsel was not in [my client's] interest. *See*

MC0001911-12.

## REQUEST NO. 9

All documents relating to Mr. Cuban or the Action that were given or provided to the SEC Office of Inspector General by any SEC personnel.

## RESPONSE

The SEC objects to Request No. 9 because it is unduly burdensome, and seeks the

production of documents subject to the attorney-client privilege, work product doctrine, law

enforcement privilege, and/or governmental deliberative process privilege. The SEC also objects

to the extent it seeks the production of documents subject to the restrictions on disclosure set

forth in the Privacy Act. The SEC also objects to this request as duplicative.

Without waiving or in any way limiting its objections, the SEC states that documents

responsive to this request either have already been produced to Cuban in the SEC's March 16,

2009 and May 4, 2009 productions, are being produced in response to the other requests made

concurrent with this one, or are being withheld as privileged and will be listed in a privilege log.

## REQUEST NO. 10

All documents that evidence the procedures you followed or safeguards you used, if any, to ensure that your investigation of Mamma.com (HO-09900) and your investigation of Mr. Cuban were kept temporally and substantively distinct from each other.

## RESPONSE

The SEC incorporates its response and objections to Interrogatory No. 17 as its response

to Request No. 10.

8

**REQUEST NO. 11**

Any SEC manual or other document containing or evidencing SEC policies, rules, practices, or procedures relating to insider trading investigations.

**RESPONSE**

The SEC objects to Request No. 11 because it is overbroad, vague, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks documents subject to the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.

**REQUEST NO. 12**

All documents concerning your reasons to initiate an investigation of Mr. Cuban separate from, or in addition to, your Mamma.com investigation (HO-09900).

**RESPONSE**

The SEC objects to Request No. 12 because it is contains the false and misleading premise that the Cuban investigation, HO-10576, is derivative of investigation HO-09900. The investigations were temporally and substantively distinct. The SEC further objects to this request because it plainly seeks the production of documents subject to the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege. Finally, the SEC states that it produced its non-privileged investigative file, consisting of source documents obtained from Mark Cuban, source documents and data obtained by the SEC from non-governmental third parties, and transcripts of investigative testimony (and exhibits thereto), on March 16, 2009 (as supplemented on May 4, 2009).

Without waiving or in any way limiting its objections to this request, the SEC states that it is producing documents concerning when and how HO-10576 was opened, separate from and unrelated to HO-09900. *See* Response to Interrogatory No. 12.

9

**REQUEST NO. 13**

All documents concerning the decision or the reasons for the decision to close the investigation of Mamma.com (HO-09900), or otherwise concerning the closing of your investigation of Mamma.com, including all documents containing, evidencing, or reflecting any communications between you and (i) any Mamma.com personnel, (ii) any of their respective counsel, or (iii) counsel for Mamma.com concerning the closing of the investigation.

**RESPONSE**

The SEC objects to Request No. 13 because it plainly seeks the production of documents subject to the attorney-client privilege, work product doctrine, law enforcement privilege, and/or governmental deliberative process privilege.

Without waiving or in any way limiting its objections to this request, the SEC states that it will produce non-privileged documents responsive to Request No. 13. *See* SEC Response to Interrogatory No. 13.

**REQUEST NO. 14**

All documents concerning any deposition or interview of Guy Fauré, or concerning any meeting telephone call, conversation, correspondence, or other communications with him or his counsel.

**RESPONSE**

The SEC incorporates its response and objections to Interrogatories Nos. 1, 2, and 15 and to Requests Nos. 1 and 2 as its response to Request No. 14.

**REQUEST NO. 15**

All documents dated between August 15, 2007 and October 15, 2007 concerning any deposition or interview that you conducted during that time period of any Mamma.com personnel relating in any way to Mr. Cuban.

**RESPONSE**

The SEC incorporates its response and objections to Interrogatories Nos. 1, 2 and 16 and to Requests Nos. 1 and 2 as its response to Request No. 15.

10

**REQUEST NO. 16**

All documents concerning any investigation by you of Jeffrey Norris relating to Mr. Cuban.

**RESPONSE**

The SEC incorporates by reference its response and objections to Interrogatory No. 20 as its response to Request No. 16.

**REQUEST NO. 17**

All documents concerning any involvement of Mr. Norris in your investigation of Mr. Cuban.

**RESPONSE**

The SEC incorporates its responses and objections to Interrogatories Nos. 18-19. Without waiving or in any way limiting its objections to this request, the SEC states that, because Norris was in no way involved in investigation HO-10576, there are no documents concerning any involvement in that investigation. The SEC is producing documents that further establish that Norris had no involvement in HO-10576, and was not aware of that investigation when he had his email exchanges with Cuban in March-May 2007. *See, e.g.*, SEC-MC0302142-44; SEC-MC0302209-16.

**REQUEST NO. 18**

All documents concerning any effect or influence that Mr. Norris or his conduct had upon your investigation of Mr. Cuban or your decision to initiate the Action.

**RESPONSE**

The SEC incorporates its responses and objections to Interrogatory No. 18 and Request No. 17 as its response to Request No. 18.

11

199

**REQUEST NO. 19**

All documents concerning Linda Thomsen's public statements about the SEC's focus on "high-profile insider trading cases," or concerning the SEC's focus on "high-profile insider trading cases."

**RESPONSE**

The SEC objects to Request No. 19 because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The SEC further objects to this request to the extent that it seeks information covered by the governmental deliberative process privilege or work product protection.

Without waiving or in any way limiting its objections to this request, the SEC states that public statements by Linda Thomsen that discussed (in whole or in part) insider trading and that are publicly available on its website include the following: a March 1, 2007 statement concerning *SEC v. Guttenberg*; a May 4, 2007 speech before the 27th Annual Ray Garrett, Jr. Corporate and Securities Law Institute; a June 26, 2007 speech before the Stanford Law School Directors' College 2007; a February 19, 2008 speech before the Australian Securities and Investments Commission 2008 Summer School; a March 26, 2008 speech at the U.S. Chamber of Commerce's Second Annual Capital Markets Summit; a March 27, 2008 speech before the Minority Corporate Counsel 2008 CLE Expo; May 19, 2008 Opening Remarks to the SIFMA Regulatory Symposium on Insider Trading; a June 4, 2008 speech at the Compliance Week Conference; and November 6, 2008 remarks at the Ninth Annual A.A. Sommer, Jr. Corporate, Securities and Financial Law Lecture.

**REQUEST NO. 20**

All documents concerning Mr. Cuban's (i) net worth or wealth, (ii) reputation, fame, notoriety, or status as a public figure or celebrity, or (iii) public statements regarding the SEC.

12

**RESPONSE**

The SEC objects to Request No. 20 because it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The SEC also objects to this request as seeking discovery in areas outside those for which Cuban requested discovery in his reply brief in support of the motion for attorneys' fees. The SEC further objects to the request for documents concerning Cuban's "public statements regarding the SEC" as seeking irrelevant information to the extent it seeks documents concerning any public statements by Cuban or third parties following the filing of the Complaint in this action. The SEC also objects to the extent that it seeks the production of documents subject to the attorney-client privilege, work product doctrine, and/or governmental deliberative process privilege.

Without waiving or in any way limiting its objections to this request, the SEC notes that several of the communications by Norris, which either Cuban already possesses or which are being produced by the SEC, are responsive to this request. In addition, the SEC identifies the following produced documents responsive to this request:  SEC-MC0300820; SEC-MC0300858 -64; SEC-MC0301789-93; SEC-MC0302497-500; SEC-MC03022501-04; and SEC-MC0302576. In addition, the following documents responsive to this request are on the SEC's privilege log:  SEC-MC0300747-50; SEC-MC0301447.

**REQUEST NO. 21**

All documents concerning the drafting or publication of the SEC's press release dated November 17, 2008 concerning the initiation of the Action.

**RESPONSE**

The SEC objects to Request No. 21 because it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The SEC further objects to this request because

13

it seeks the production of documents subject to the work product doctrine and/or governmental

deliberative process privilege.

Without waiving or in any way limiting its objects to this request, the SEC identifies the

following documents produced in response to this request:  SEC-MC0300035; SEC-

MC0300036; SEC-MC0300038; SEC-MC0300658-59; SEC-MC0300770; SEC-MC0300773;

SEC-MC0302520-21; and SEC-MC0302564-65.  In addition, privileged drafts of press releases

are identified on the SEC's privilege log.

## REQUEST NO. 22

All documents concerning former SEC Chairman Christopher Cox's recusal from any
decisions concerning Mr. Cuban.

## RESPONSE

The SEC incorporates its objections and responses to Interrogatory Nos. 21 and 22 as its

response to Request No. 22.

## REQUEST NO. 23

All documents identified by you in response to any of Mr. Cuban's Interrogatories.

## RESPONSE

Without waiving or in any way limiting its objections to Cuban's Interrogatories or its

general objections above, the SEC states that it will produce responsive documents identified in

response to any of Cuban's Interrogatories to which it has not objected to producing, or which it

has already produced in this litigation.

## REQUEST NO. 24

All documents evidencing your document retention policies with respect to documents
created in the ordinary course of business.

14

**RESPONSE**

The SEC objects to Request No. 24 as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.  Among other things, the

request goes far beyond the allegations of bad faith found in Cuban's motion for attorneys' fees.

Without waiving or in any way limiting its objection to this request, the SEC incorporates

its response to Interrogatory No. 23.

Dated:  March 9, 2010                              Respectfully submitted,

                                                   **SECURITIES AND EXCHANGE**
                                                   **COMMISSION**

                    By:        *Thomas J. Karr*

                                                   Kevin P. O'Rourke  *(pro hac vice)*
                                                   D.C. Bar No. 254920
                                                   Julie M. Riewe *(pro hac vice)*
                                                   D.C. Bar No. 472470
                                                   Adam S. Aderton *(pro hac vice)*
                                                   D.C. Bar No. 496247
                                                   Thomas J. Karr *(pro hac vice)*
                                                   D.C. Bar No. 426340
                                                   (202) 551-5163 (Karr)
                                                   (202) 772-9263 (fax) (Karr)
                                                   karrt@sec.gov
                                                   Securities and Exchange Commission
                                                   100 F Street, N.E.
                                                   Washington, D.C.  20549

                                                   Toby M. Galloway
                                                   Texas Bar No. 00790733
                                                   Securities and Exchange Commission
                                                   Burnett Plaza, Suite 1900
                                                   801 Cherry Street, Unit 18
                                                   Fort Worth, TX  76102
                                                   (817) 978-6447
                                                   (817) 978-2700 (fax)
                                                   *Attorneys for the Securities and Exchange*
                                                   *Commission*

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2010, I caused a true and correct copy of the foregoing document request responses to be served to the following Counsel for Mark Cuban:

**BY FEDERAL EXPRESS**
Paul E. Coggins, Esq.
Fish & Richardson LLP
1717 Main Street
Suite 5000
Dallas, TX 75201

**BY HAND and ELECTRONIC MAIL**
Lyle Roberts, Esq.
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, DC 20005

*Attorneys for Defendant Mark Cuban*

Thomas J. Karr

7

204

# Exhibit D-3

# SEC Other Materials:

# Letter Memorializing Meet & Confer



**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
*Office of the General Counsel*

*Thomas J. Karr*
*Assistant General Counsel*

March 26, 2010

**VIA EMAIL**

Lyle Roberts, Esq.
Dewey & LeBoeuf LLP
1101 New York Avenue, NW
Suite 1100
Washington, DC 20005-4213

      Re:     *SEC v. Cuban*, Civil Action No. 3:08-cv-02050 (SAF) (N.D. Tex.)

Dear Lyle:

     I write to memorialize the conference on Wednesday, March 24, 2010 concerning Defendant Mark Cuban's ("Cuban") responses to Plaintiff Securities and Exchange Commission's ("Commission" or "SEC") interrogatories and document requests and the SEC's responses to Cuban's interrogatories and requests for production in the above-referenced matter.[1]

     During the conference, the participants discussed the following and reached the following conclusions concerning Cuban's responses to the SEC's interrogatories and document requests:

    1)    The parties failed to reach agreement concerning the scope of relevant documents. Cuban's counsel represented that Cuban's position is that neither his or his counsel's conduct nor his or his counsel's interpretation of the facts that they believe support the claims in Cuban's motion for fees ("Motion") are relevant subjects for discovery. In so stating, Cuban's position appears to be that evidence relevant to the SEC's defense of his claims of bad faith conduct - that is, information that might tend to show that the SEC was not acting in bad faith - is not relevant and therefore would not be produced or logged in response

---

[1]    The participants in the telephone conference were Thomas J. Karr, Leslie Wharton, and Adam S. Aderton on behalf of the SEC and Stephen A. Best, Lyle Roberts, and Leslie A. Maria on behalf of Cuban.

March 26, 2010
Lyle Roberts, Esq.
Page 2

to the SEC's discovery requests.  The SEC disagreed with Cuban's unilateral and self-serving determination of the scope of relevant documents.  The parties failed to reach agreement.

2) Cuban's counsel represented that Cuban has provided the SEC with all documents he contends support the allegations contained in Cuban's Motion.

3) Cuban's counsel represented that, based on their determination of relevance, Cuban possesses no relevant privileged documents, including no privileged documents that characterize or style relevant facts.

4) Cuban's counsel confirmed that Cuban has withheld no documents based on his objection to the SEC's definition of "[t]he investigation that led to the filing of this action."

5) Cuban's counsel represented that Cuban has withheld no documents based on his objection to the temporal scope identified in the SEC's interrogatories and requests.

6) Cuban's counsel agreed to provide additional information concerning responsive oral communications, such as the approximate date of each communication, the persons involved in each communication, and the subject matter of each communication.

7) Cuban's counsel agreed to place certain documents on a privilege log, e.g., redacted memoranda and existing hand-written notes related to documents provided to third parties.  Cuban refused to produce a log encompassing all responsive documents based on his unilateral determination that certain responsive documents are irrelevant.

8) Cuban's counsel agreed to remove certain redactions in an August 2007 memo reflecting a witness interview.  While the SEC will review the newly redacted version, it intends to move to compel production of the entire memo because the sharing of the memo with the witness has destroyed any claims of privilege.

9) Cuban's counsel confirmed that Cuban has provided all documents upon which Ralph Ferrara relied in making the allegations in his September 21, 2007 letter to Associate Director Scott W. Friestad.

10) The parties failed to reach agreement concerning Cuban's obligation to produce communications between Cuban and his agents or third parties related to his communications with former SEC employee Jeffrey Norris.  Cuban's position is that any communications or documents that may exist containing statements by Cuban or his agents expressing his or their belief or knowledge that Norris was

March 26, 2010
Lyle Roberts, Esq.
Page 3

not involved in the investigation are irrelevant.  The SEC disagrees and believes
that any communications by Cuban to anyone concerning Norris are responsive
and relevant.  Such communications may show that Cuban or his agents knew or
learned at some point before the filing of Cuban's Motion that Norris was not
involved in the investigation, raising serious questions about Cuban's intent in
pursuing the Norris – and other – allegations of bad faith.

11) The parties failed to reach agreement concerning Cuban's obligation to produce
communications and documents reflecting Cuban's communications with
Mamma.com personnel, including releases provided to Mamma.com personnel
in exchange for providing statements to Cuban.  Cuban's position is that these
documents are irrelevant.  The SEC disagrees and believes that these
communications may be informative in demonstrating that SEC discussions
with Mamma.com personnel were related to the issue of whether the SEC or
Cuban would have the first opportunity to take a witnesses statement and not
any SEC misconduct.  Nonetheless, Cuban's counsel represented that the SEC
has all documents responsive to this request that Cuban has unilaterally deemed
relevant.

12) Cuban's counsel confirmed that he has not withheld any documents responsive
to Requests No. 1-4 or 6-8 because those documents were also responsive to
Request No. 5.

13) Cuban's counsel stated that they cannot locate notes concerning the
Commission's May 23, 2007 Wells call to Cuban.  Cuban's counsel further
confirmed that no drafts exist of a May 23, 2007 memorandum purporting to
memorialize that call.

14) Cuban's counsel stated that they cannot obtain notes concerning a July 19, 2007
meeting between Cuban's counsel and the SEC.  These notes are referenced in a
January 2009 affidavit produced in this case.  The affidavit states that the
current counsel of record for Cuban in this matter "maintain[ed] a copy of those
notes" to the date of the affidavit.  Nonetheless, Cuban's counsel stated that,
because the attorney who took the notes has changed firms, the notes can no
longer be recovered by Cuban.  The SEC flatly disagrees that Cuban is unable to
produce documents simply because the attorney who made the notes, an attorney
who is still counsel of record for Cuban in this action, has changed employers.

During the conference, the participants discussed the following and reached the
following conclusions concerning the SEC's responses to Cuban's interrogatories and requests
for production:

(a) The SEC informed Cuban's counsel that it , in the event you choose in your
motion to compel to challenge our assertion of law enforcement privilege for

March 26, 2010
Lyle Roberts, Esq.
Page 4

any document, we will obtain the necessary declaration from the appropriate delegee.

(b)   The SEC informed Cuban that he was welcome to ask the Court to perform an *in camera* review of materials withheld in whole or in part based on the SEC's objection pursuant to the Privacy Act. The parties agreed that Cuban would not seek an *in camera* review of documents related to disciplinary actions that had no relation to Cuban. Finally, the SEC confirmed the identity of the individual for whom the SEC withheld documents on the basis of the Privacy Act.

(c)   With respect to piercing the attorney-client, deliberative process, and work product privileges, the SEC represented that it disagrees with Cuban's assertion that there is any evidence of misconduct, far less sufficient evidence to pierce the privileges. The parties did not reach agreement on this issue.

(d)   The parties discussed Cuban's assertion that the SEC failed to provide specific and precise reasons for its claims of attorney-client privilege. The SEC requested examples of such alleged failures, and Cuban's counsel agreed to provide examples, and has subsequently done so by email. The SEC has responded by supplying additional information to support its claim of attorney-client privilege.

(e)   With respect to Cuban's allegation that "this action was brought as a result of a personal animus and/or bias against Mr. Cuban," the parties failed to agree on Cuban's demand that the SEC produce all privileged materials identified in Lyle Roberts' March 23, 2010 letter to Thomas J. Karr. The SEC denied that its production (and log) contained any documents suggestive of bias.[2]

(f)   With respect to Cuban's Request No. 2 for the production of privileged materials based on his assertion that the SEC brought this action despite knowledge of insufficient evidence, the parties failed to reach agreement. The SEC declined to produce privileged materials in response to Cuban's request and stated that it had already produced all responsive, non-privileged documents in its document production in the underlying litigation.

(g)   With respect to Cuban's Request No. 3 for the production of privileged documents based on his assertion that the timing of the closing of an unrelated

---

[2]   With respect to their bias allegations, Cuban's counsel stated that Cuban would have an "entire day in front of Fitzwater on [the issue of bias]" and that it would be a "very embarrassing event" when Cuban's counsel showed the Court emails containing publicly available photos sent by enforcement staff to identify Cuban to staff who were unfamiliar with him. When the SEC informed Cuban that these documents were not evidence of animus but were sent to certain enforcement staff to identify Cuban, Cuban's counsel reiterated that these emails would be part of a "whole day before Fitzwater on bias."

March 26, 2010
Lyle Roberts, Esq.
Page 5

investigation is questionable, the parties failed to reach agreement.  When asked
to send a list of documents that raise such questions, Cuban's counsel said they
would, and did so subsequently by email. The SEC denies that any of the
identified communications show any connection between the closing of the HO-
09900 investigation and the ongoing HO-10576 investigation.

(h)    The SEC confirmed that it is not withholding documents based on its objection
to the temporal scope, except that it has objected to producing documents after
the date of the filing of the Complaint initiating this action.  The SEC explained
that none of Cuban's allegations of misconduct relate to events occurring after
the filing of the Complaint.  Cuban's counsel said that they believe there was a
continuing course of conduct and are therefore entitled to any documents
reflecting the SEC's internal analysis and deliberations regarding the issues
raised in their motion.  The parties failed to reach an agreement.

(i)    The SEC confirmed that it has not withheld responsive documents based on any
narrowing of the issues from those identified in the Court's order granting
discovery.

(j)    The SEC stated that it was comfortable with its response to Cuban's
Interrogatory No. 6 concerning whether Cuban's untimely second Wells
submission was provided to, and reviewed and considered by, the SEC
Commissioners before the decision was made to initiate the action against
Cuban.  In that response, the SEC stated that Cuban's untimely "second Wells
submission was provided to the SEC Commissioners for their consideration
when deliberating whether to initiate the Action against Cuban."[3]  The SEC said
that any discovery beyond this is fishing.

(k)    The SEC confirmed that the only oral communications it had identified between
the distinct investigative teams in HO-09900 and HO-10576 were the two
communications referenced in the SEC's response to Cuban's Interrogatory No.
9.  The SEC also stated that the investigative teams were in different Associate
Director groups.  The SEC stated that some people involved in the
investigations have left the SEC, but that it would follow up and confirm that
SEC counsel spoke to everyone involved in either investigation to "double
check" that the communications identified are the only known responsive
communications.

(l)    The SEC stated that it would provide unredacted versions of responsive portions
of Electronic Document Privilege Log entries 18 and 428 to demonstrate further
that investigation HO-10576 was not derivative of and was opened separately

---

[3] *See, e.g.*, The Commission's Hard Copy Privilege Log, SEC-MC0200987/1602 for the Official
Commission Record identifying the materials provided to the Commission for its deliberation on whether to
authorize the filing of a civil action against Mark Cuban for insider trading.

March 26, 2010
Lyle Roberts, Esq.
Page 6

from HO-09900.  Cuban's counsel agreed that production of unredacted versions of responsive portions of these documents would not be used to assert any waiver of privilege.

(m)   In response to inquiries about the completeness of its disclosures in response to Cuban's Interrogatory No. 16, the SEC pointed to its written responses and the redacted handwritten investigative notes produced at SEC-MC0201879-1932. The SEC indicated that it would review its privilege logs and identify any other responsive communications.

(n)   The SEC noted Cuban's statement about Norris's alleged involvement in HO-10576 and stated again and unequivocally that it is the "absolute truth" that Norris was not involved in that investigation.

(o)   The SEC confirmed that former SEC Chairman Christopher Cox was not in attendance at the Closed Commission meeting wherein the participating Commissioners voted 4-0 to authorize the action and referred Cuban's counsel to the minutes of the Executive Session reflecting this fact.  When asked to confirm that Chairman Cox did not participate in any way in any pre-vote discussion of whether to authorize the action, the SEC represented that, based on reasonable inquiry, it was not aware of anything suggesting that Cox participated in such discussions with the other Commissioners.  Nonetheless, the SEC said that it would check further on this fact.

Please notify me immediately if you believe that any part of this letter inaccurately memorializes your position with respect to any issue discussed during the conference.

Sincerely,

Thomas J. Karr

Thomas J. Karr
Assistant General Counsel

cc:(by email):  Ralph Ferrara, Esq.
                Stephen A. Best, Esq.

# Exhibit D-4

# SEC Other Materials:

# March 25-26, 2010 Email Exchange about Attorney-Client Privilege Claims for Action Memoranda

# Karr, Thomas J.

| | |
|---|---|
| **From:** | Maria, Leslie [LMaria@deweyleboeuf.com] |
| **Sent:** | Wednesday, March 24, 2010 7:02 PM |
| **To:** | Karr, Thomas J. |
| **Cc:** | Roberts, Lyle; Best, Stephen A. |
| **Subject:** | SEC v. Cuban - follow up on meet and confer re AC privilege |

Tom,

During our meet and confer call today, you asked us to provide examples of entries for which we found the assertion of attorney-client privilege lacking specific and precise reasons for your claim of that privilege.   Below are several examples:

-See, *e.g.*, Electronic Privilege Log Entries 24, 25 and 28.

   #24 is described as "email string dicussing draft memorandum seeking authorization to open formal investigation for HO-10576." It was sent from D. Chadouin to J. Riewe.  ("Other email participants" are listed as J. Bush and J.M. Carr; however, neither is listed on the Glossary of Names you provided, nor is there any definition of the term "other email participants.")  The log identifies this as covered by the work product and deliberative Process privileges.

   #25 is described as a "draft formal order of investigation for HO-10576 attached to SEC-MC0300365."  It was sent from J. Riewe to S. Friestad, copying D. Chadouin and R. Kaplan.  The log identifies it as covered by the work product, deliberative process and attorney-client privileges.

   #28 is described as an "email forwarding draft Action Memorandum requesting formal order of investigation in HO-10576."  It was sent from R. Kaplan to J. Riewe. The log identifies it as covered by the work product privilege.

   There is nothing in the description for entry #25 that is specific and precise enough to allow one to conclude that the document referred to is subject to the attorney-client privilege.  Underscoring this point is the fact that the differences between the descriptions of entries #24, #25 and #28 give no indication as to why the attorney client privilege is claimed for #25, but not for #24 or #28 (note that this is not to suggest or concede that such privilege is applicable to any).  (Also please note that this email only addresses your request for examples as relate to the attorney-client privilege issue we discussed and does not address the variance in other privilege claims.)

-See, *e.g.*, Electronic Privilege Log Entries 41 and 42

   #41 is described as an "email discussion among investigative counsel discussing legal decision and its application to HO-10576."  It was sent from J. Riewe to D. Chadouin.  The log identifies it as covered by the work product privilege.

   #42 is described as a "Draft Action Memorandum to Commission presenting material facts, discussing legal issues and seeking formal order of investigation."  It was sent from J. Riewe to R. Kaplan.  The log identifies it as covered by the work product, deliberative process and attorney client privileges.

   Again, there is nothing specific and precise enough in entry #42 to allow one to conclude that the document referred to is subject to the attorney-client privilege.  And, as with the above-described documents, the differences between the descriptions of entries #41 and #42 give no indication as to why the attorney client privilege is claimed for #42 but not for #41 (note that both communications were sent solely from one member of the HO-10576 team to another).


Please note that these are just examples and we continue to reserve our argument that no privilege log entry for which the attorney-client privilege is claimed is specific and precise enough to permit a determination of whether the document described is covered by the attorney-client privilege.

Regards,
Leslie

--------------------------------------------------------

Leslie A. Maria
Counsel
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005
Direct: +1 202 346 8065
General: +1 202 346 8000
Fax: +1 202 956 3268
www.dl.com

==============================================================
Pursuant to U.S. Treasury Department Circular 230, unless we
expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.

Dewey & LeBoeuf in London and Paris is a multinational
partnership, regulated by the Solicitors Regulation Authority;
SRA No. 184760.

Dewey & LeBoeuf LLP in Doha is licensed by the Qatar
Financial Centre Authority, QFC License Number 00102.

This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
==============================================================

## Wharton, Leslie

| | |
|---|---|
| **From:** | Karr, Thomas J. |
| **Sent:** | Friday, March 26, 2010 6:48 PM |
| **To:** | 'Maria, Leslie' |
| **Cc:** | 'Best, Stephen A.'; 'Roberts, Lyle'; Wharton, Leslie |
| **Subject:** | RE: Follow-up on Meet & Confer |
| **Attachments:** | SEC-MC0300095.pdf; SEC-MC0301785.pdf |

Dear Leslie:

Regarding your points below, on item (1), I indicated that, if in your motion to compel you challenge the assertion of the law enforcement privilege, in response we will get a declaration from the appropriate delegee.  On items (2) and (4), we will get you that information as soon as possible next week.

On item (3), you actually asked for two documents, both which we agreed to provide, after you all agreed not to argue that this production waived any privilege for other materials.  Both documents are attached.

With regard to the level of detail in certain privilege claims, and with regard to the specific examples you gave us, here is an explanation – please let me know if you have any questions about it:

> Regarding the claims of attorney-client privilege for Electronic Log documents 25 and 42 (in contrast to the other documents you listed), those two documents are draft memoranda recommending that the Commission take a particular action and advising the Commission of the factual and legal basis for that action.  Thus they contain the legal advice of counsel and are protecting by the attorney-client privilege. The other communications you listed are communications among enforcement attorneys are covered by the work product protection (one is also a pre-decisional deliberative document, as noted on the log).  Although these other documents may contain legal analysis, they are not attorney-client communications (or drafts of such communications) and thus we have not sought protection under the attorney-client privilege.
>
> We had a number of people working on the privilege log.  Having reviewed the draft action memoranda and knowing that they contain the legal advice of enforcement attorneys to the Commission, on occasion the person drafting the log may have forgotten to make that explicit in the description on the log.

In addition, I wanted to inform you that in following up on our production of March 9, 2010, we have located one additional document which we believe is responsive to Mr. Cuban's requests for production.  The document is privileged and we will provide a supplemental privilege log as soon as we are able to have the document added to our bates-labeled set.  We will send you a revised last page of electronic document privilege log by Monday a.m. - - this document is entry number 526.  In the meantime, the relevant information on the document is:

| | |
|---|---|
| **Date:** | **July 17, 2007** |
| **Author:** | **Julie Riewe** |
| **Recipient:** | **Robert Kaplan** |
| **Other Email** | |
| **Participants:** | **Scott Friestad** |
| **Description:** | **Email string discussing Mamma.com knowledge of Cuban's sale of his Mamma.com stock** |
| **Privilege:** | **Work Product** |

Please let me know if you have any questions regarding the foregoing.

Regards,

Tom Karr

4/9/2010

---

**From:** Maria, Leslie [mailto:LMaria@deweyleboeuf.com]
**Sent:** Friday, March 26, 2010 5:04 PM
**To:** Karr, Thomas J.
**Cc:** Best, Stephen A.; Roberts, Lyle
**Subject:** Follow-up on Meet & Confer

Dear Mr. Karr,

I wanted to follow-up with you on the materials you agreed to provide us during our March 24, 2010 meet and confer call.  The materials we are expecting include the following:

    (1) Information (affidavit from appropriate delegee) required for your assertion of the law enforcement privilege;

    (2) Confirmation that we have received full identifications of each oral communication concerning Mr. Cuban or your investigation of Mr. Cuban between any member of the HO-09900 team member and the HO-10576 team;

    (3) An unredacted version of the document referred to in your response to Interrogatory No. 12;

    (4) Confirmation that you "triple checked" and can confirm that Mr. Cox did not participate in any discussions regarding the filing of the action against Mr. Cuban.

Additionally, you had asked us to provide you with examples regarding our discussion about the fact that your claims of attorney-client privilege were not specific or detailed enough to allow determination of whether the assertion of the privilege was valid.  We provided this information to you a few hours after the call and are interested in whether you plan to provide more detailed entries and, if so, when. We also provided, at your request, examples of documents we believe suggest an overlap between HO-09900 and HO-10576 and we also provided you this information a few hours after the call.  We are interested in whether you plan to produce any additional documents based on our discussion and these examples and, if so, when.

We look forward to your response and to guidance as to when we should expect to receive the promised materials.  Thank you for assistance.

Regards,
Leslie

----------------------------------------------------------
Leslie A. Maria
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005
Direct: +1 202 346 8065
General: +1 202 346 8000
Fax: +1 202 956 3268
www.dl.com

==============================================================
Pursuant to U.S. Treasury Department Circular 230, unless we

4/9/2010

Page 3 of 3

expressly state otherwise, any tax advice contained in this
communication (including any attachments) was not intended
or written to be used, and cannot be used, for the purpose
of (i) avoiding tax-related penalties or (ii) promoting,
marketing or recommending to another party any matter(s)
addressed herein.

Dewey & LeBoeuf in London and Paris is a multinational
partnership, regulated by the Solicitors Regulation Authority;
SRA No. 184760.

Dewey & LeBoeuf LLP in Doha is licensed by the Qatar
Financial Centre Authority, QFC License Number 00102.

This e-mail message, including attachments, is confidential,
is intended only for the named recipient(s) above and may
contain information that is privileged, attorney work product,
proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
=====================================================================

4/9/2010