IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:08-CV-2050-D |
| VS. | § § | |
| MARK CUBAN, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

The principal questions presented by plaintiff's motion to strike are whether the affirmative defense of unclean hands is available as a matter of law when the Securities and Exchange Commission ("SEC") brings an enforcement action and, if it is, whether defendant Mark Cuban ("Cuban") has adequately pleaded unclean hands. The court concludes that this affirmative defense is not barred as a matter of law. But to the extent it is available, it is only in strictly limited circumstances when the SEC's misconduct is egregious, the misconduct occurs before the SEC files the enforcement action, and the misconduct results in prejudice to the defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury. The court holds that Cuban has not adequately pleaded the prejudice prong of unclean hands under this exacting standard, and it grants the SEC's motion to strike.

I

This is an enforcement action brought by the SEC against Cuban under the misappropriation theory of insider trading.[1]  The SEC alleges that Cuban violated § 17(a) of the Securities Act of 1933 ("Securities Act"), § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder by selling shares of stock in Mamma.com Inc. ("Mamma.com") after learning material, nonpublic information concerning a planned private investment in public equity ("PIPE") offering by the company, thereby avoiding substantial losses when the stock price later declined.  Cuban denies that he engaged in conduct that violated the Securities Act or the Exchange Act, and he asserts a number of affirmative defenses.

Cuban pleads unclean hands as an affirmative defense to the SEC's request for injunctive relief.[2]  He alleges that the SEC and its agents prejudiced him by engaging in egregious acts of misconduct in connection with the SEC's investigation because SEC staff conducted the investigation in an unfair, biased, and improper manner designed to prevent

---

[1]Because a prior opinion in this case adequately sets out the background facts and procedural history, *see SEC v. Cuban*, 634 F.Supp.2d 713, 717-18 (N.D. Tex. 2009) (Fitzwater, C.J.), *vacated*, 620 F.3d 551 (5th Cir. 2010), the court will focus on the pleadings that are pertinent to deciding the instant motion.

[2]The parties dispute whether Cuban also asserts this as a defense to the SEC's request for disgorgement.  *Compare* P. Reply Br. 4 ("The unclean hands defense is also legally insufficient because Cuban has explicitly limited the defense to the [SEC's] claims for injunctive relief.") *with* D. Br. 7 n.6 ("Cuban intended 'injunctive relief' to cover the SEC's requests for *both* an injunction and disgorgement." (emphasis in original)).  The court need not resolve this dispute because Cuban has not adequately pleaded the affirmative defense of unclean hands, regardless of the specific relief to which the defense is directed.

him from successfully persuading the SEC not to bring an enforcement action and from mounting an effective defense once the action was brought.  Cuban relies on three principal grounds in support of his unclean hands defense.

First, he asserts that SEC staff members involved in investigating him were committed to bringing the enforcement action regardless what their investigation actually revealed.  Cuban cites email correspondence among persons who have supervisory roles within the SEC Enforcement Division that he says evidences significant bias against him, including a specific email from a staff member to the Director of Enforcement and the Chief Counsel of the Enforcement Division that contained an unflattering set of photos of Cuban, and the responses to that email.  He also alleges that, before meeting with many critical witnesses in this matter, an SEC staff member responded to a comment by one of Cuban's lawyers regarding Cuban's sale of Mamma.com stock by stating, "Mr. Cuban takes irrational and silly risks every day."  Am. Ans. 7.

Second, Cuban alleges that SEC staff deliberately undermined and abused the "Wells process,"[3] under which Cuban was supposed to have been given a fair opportunity to persuade the SEC not to bring an action against him.  He avers that (1) in May 2007 SEC staff initiated a Wells call to his counsel advising that staff intended to recommend initiation

---

[3]The "Wells process" refers to an established procedure whereby SEC staff notifies a person under investigation of the general nature of the investigation and of potential violations being investigated.  At that time, the SEC also notifies the person that he may submit a voluntary statement before SEC staff makes a recommendation regarding whether action should be initiated.  *See* SEC Enforcement Manual of the Commission's Division of Enforcement 23-29 (Feb. 8, 2011).

of a civil enforcement action and that its recommendation was supported by the evidentiary record; staff stated that, during a June 28, 2004 call between Cuban and Guy Fauré ("Fauré"), Mamma.com's CEO, Cuban agreed to keep the information he received confidential, and Fauré created a contemporaneous document reflecting the existence of the agreement; in fact, the SEC did not have any evidence that Cuban had entered into a confidentiality agreement, and Fauré did not create any such contemporaneous document; and Cuban's first Wells submission assumed the existence of this supposed evidence; (2) the staff decision to recommend bringing a civil enforcement action was made before the investigation was "substantially complete," in contravention of procedures in the SEC Enforcement Manual; and (3) Cuban's counsel submitted a second Wells submission in September 2007, while SEC staff was still conducting witness interviews, yet staff informed Cuban's counsel that there could be no assurance that the submission would be given to the SEC,[4] and although staff, as part of this litigation, informed Cuban that the submission was given to the SEC, Cuban has never received confirmation that the SEC actually reviewed and considered the document as part of its deliberative process.

Third, Cuban asserts that "the SEC staff engaged in acts of outright investigative and litigation misconduct." Am. Ans. 8. He alleges that (1) a staff member discouraged counsel for a key witness from making the witness available to speak with Cuban's counsel and, after

---

[4]In this averment, Cuban actually refers to the "Commission" rather than to the "SEC." Because the court is using the convention "SEC" to refer to the Commission, it does so here as well.

- 4 -

the SEC was informed, it apparently never investigated; (2) SEC staff threatened this same witness with perjury when he was unable during sworn testimony to clearly recall certain statements he had supposedly made to the SEC in a telephone interview conducted ten months before; (3) SEC staff sent a letter to Mamma.com stating that the SEC's separate investigation of the company had been closed and, fewer than two weeks later, SEC staff took the sworn testimony of Fauré for a second time in an apparent effort to get him to change his earlier testimony concerning his June 28, 2004 call with Cuban; and (4) SEC staff filed a complaint in this action asserting that Cuban had entered into a confidentiality agreement, despite the lack of any evidentiary support for the existence of such an agreement.

The SEC moves under Fed. R. Civ. P. 12(f) to strike Cuban's affirmative defense of unclean hands. It contends that equitable defenses are generally unavailable against the government when it acts in the public interest; assuming the defense is available, Cuban cannot allege the requisite prejudice or misconduct; and failing to strike the defense would unduly prejudice the SEC and unnecessarily complicate the litigation. Cuban responds that unclean hands is available against the SEC as a matter of law and that he has adequately pleaded this defense.[5]

---

[5]Cuban also argues that, although injunctive relief is authorized by statute, it is not mandatory because the SEC acted with unclean hands. The court discusses and rejects the SEC's related argument *infra* at § III(B). In light of that conclusion, the court need not address this argument specifically.

II

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott,* 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (citing *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted).

III

The SEC initially contends in its opening brief that equitable defenses are generally unavailable against the government when it acts in the public interest. Later in the brief, and in its reply brief, the SEC refines this contention to take the unqualified position that such a defense is unavailable as a matter of law in an SEC enforcement action. *See, e.g.,* P. Br. 6 ("However, in the context of the established statutory framework and controlling precedent in the Fifth Circuit for the issuance of an injunction in an SEC enforcement case, the alleged affirmative defense is insufficient as a matter of law."); P. Reply Br. 1 ("[T]he law in this district is that unclean hands is unavailable as a defense to a civil enforcement action brought

in the public interest by the [SEC].").  It is to this argument that the court turns first.

## A

The SEC acknowledges in its reply brief that "[t]here is no Fifth Circuit 'controlling precedent' deciding the availability of an unclean hands defense against the SEC when it is acting in the public interest by bringing a civil enforcement action." P. Reply Br. 2.  Perhaps for this reason, the SEC begins its opening brief by relying heavily on *SEC v. Hayes*, 1991 WL 236846 (N.D. Tex. July 25, 1991) (Maloney, J.), which it characterizes as "the law in this District."  P. Br. 3-4 ("[T]he law in this District is that unclean hands 'may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest[.]'" (quoting *Hayes*, 1991 WL 236846, at *2));[6] *see also* P.

_____

[6]The SEC also cites *United States v. American Electric Power Service Corp.*, 218 F.Supp.2d 931 (S.D. Ohio 2002).  In *American Electric Power* the United States, various states, and certain citizen groups sued power plant operators for relief under the Clean Air Act.  *Id.* at 935.  One of many asserted affirmative defenses was unclean hands.  The plaintiffs contended that the defense was unavailable against an alleged violation of the Clean Air Act and that it could not be asserted against private citizens whom Congress had authorized to file suit.  *Id.* at 938.  The basis for the unclean hands defense is not clearly set out in the court's opinion.  But the court did hold that the defense could not be used against the United States to prevent it from enforcing its laws to protect the public interest.  *Id.* In doing so, it cited *Pan-American Petroleum & Transport Co. v. United States*, 273 U.S. 456 (1927).  In *Pan-American* the Court stated that "[t]he general principles of equity are applicable in a suit by the United States to secure the cancellation of a conveyance or the rescission of a contract.  But they will not be applied to frustrate the purpose of its laws or to thwart public policy."  *Pan-Am.*, 273 U.S. at 506 (citations omitted).  But this statement must be understood through the lens of *Heckler v. Community Health Services, Inc.,* 467 U.S. 51 (1984), discussed below.  In *Heckler* that Court declined to expand the principle that the Government may not be estopped on the same terms as any other litigant "into a flat rule that estoppel may not in any circumstances run against the Government."  *Id.* at 61.  And it did not reject completely the premise that "the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest

- 7 -

Reply Br. 1 ("[T]he law in this district is that unclean hands is unavailable as a defense to a civil enforcement action brought in the public interest by the [SEC].").

As a threshold matter, it bears emphasizing that

> [t]here is no such thing as the "law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another. Where a second judge believes that a different result may obtain, independent analysis is appropriate.

*Benavides v. Irving Indep. Sch. Dist.,* 690 F.Supp.2d 451, 462 (N.D. Tex. 2010) (Fitzwater, C.J.). Therefore, although the undersigned invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them because they are usually correct and because predictability in such matters is desirable—these decisions are not binding as the "law of the district." Accordingly, if the court disagrees with *Hayes* after giving it serious and respectful consideration, the court is not bound by it.

In *Hayes*, an SEC enforcement action, Judge Maloney struck several affirmative defenses, including unclean hands. He held that "[t]he doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest." *Hayes*, 1991 WL

---

of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Id.* at 60.

236846, at *2 (citations omitted).  Judge Maloney did not explain his reasoning for this conclusion beyond citing two cases in support: *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir.1974), and *SEC v. Gulf & Western Industries, Inc.*, 502 F. Supp. 343, 348 (D.D.C.1980).

*Second National Bank* does not support the conclusion that the affirmative defense of unclean hands can never be invoked against the SEC when, to paraphrase *Hayes* and *Gulf & Western*, the SEC is attempting to enforce a congressional mandate in the public interest, such as in an enforcement action.[7]  In *Second National Bank* the defendant argued, as an alternative equal ground for relief, that actions that Internal Revenue Service ("IRS") agents took in connection with the IRS's efforts to foreclose on a tax lien were improper, even if strictly within the law.  *Second National Bank*, 502 F.2d at 547-48.  The panel began by observing that when seeking an equitable remedy, "the United States is no more immune to the general principles of equity than any other litigant."  *Id.* at 548.  It stated that these principles will not be applied to frustrate the purpose of United States's laws or to thwart public policy, but, in general, "there is no authority by which equity can come to the aid of an illegal and fraudulent scheme, regardless of the beneficence of the ultimate purpose."  *Id.* (quoting *In re Mut. Leasing Corp.*, 449 F.2d 811, 815 (5th Cir. 1971)).  "On the other hand,

---

[7]The SEC attempts to refute Cuban's reliance on *Second National Bank* by characterizing it as "yet another case arising from a government attempt to enforce commercial rights through the court's equitable powers—not a law enforcement action."  P. Reply Br. 3.  Yet *Second National Bank* serves as the immediate or ultimate predicate authority for some decisions that hold that affirmative defenses—including unclean hands—are unavailable in SEC enforcement actions.

'unless the Government did something which in good conscience it should not have done, or failed to do something fair dealing required it to do, it comes into court with clean hands and is entitled to the equitable relief it obtained.'" *Id.* (quoting *Deseret Apartments v. United States*, 250 F.2d 457, 458 (10th Cir. 1957)).

Addressing the district court's decision, the panel noted that the conduct of the IRS agents had obviously disturbed the trial judge, but "[h]e nevertheless correctly perceived the real issue to be whether the government, through the IRS agents, had a lawful right to do what it did; that is, receive the money orders in payment for taxes and request that the bank honor them." *Id.* And "[h]aving determined that the United States acted with sufficient good faith and in ignorance of the [defendant's] defenses to the money orders to attain the status of holder in due course, the court not surprisingly concluded that the United States was entitled to have its statutory lien enforced." *Id.* The panel upheld this ruling based on the evidence before the trial judge. *Id.* It did not hold that equitable defenses are categorically unavailable when the government acts to further a congressional directive. The panel affirmed the trial judge's determination that the IRS agents did what they had the right to do. Therefore, *Second National Bank* does not support the conclusion that the defense of unclean hands can never be asserted against the government, including against the SEC in an enforcement action.[8]

_____

[8]For similar reasons, the court declines to follow *United States v. Cushman & Wakefield, Inc.*, 275 F.Supp.2d 763 (N.D. Tex. 2002) (Fish, C.J.). In *Cushman & Wakefield* the United States brought an action under the False Claims Act and the common law, alleging that the manager and operator of a mail-presort business had engaged in a scheme

And *Gulf & Western*, the other case that *Hayes* cites, analyzed unclean hands as one of several affirmative defenses.  In concluding, as did *Hayes*, that "the doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest," *Gulf & Western,* 502 F. Supp. at 348, the court cited *Second National Bank* and *SEC v. Bull Investment Group, Inc.*, 1975 WL 1271, [1974-75] Fed. Sec. L. Rep. ¶ 95,010 (D. Mass. Mar. 10, 1975).  It did not offer any specific reasoning for this conclusion except to state that the three defenses were redundant and would complicate the case and waste valuable litigating time.  *Gulf & W.*, 502 F. Supp. at 348.  *Gulf & Western*'s reliance on *Second National Bank* is misplaced for reasons this court has already explained.  And in *Bull Investment Group* the defendants in an enforcement action supported an unclean hands defense with testimony at an injunction hearing that the SEC had unclean hands because it violated a promise of confidentiality with respect to testimony and exhibits obtained at depositions of two defendants.  *See Bull Inv. Group*, 1975 WL 1271, at \*8.  In rejecting the defense, the court relied on several reasons.  As one reason, essentially in the alternative and *arguendo*, it held that even if the SEC had breached an obligation of confidentiality to the defendants, "it

---

to defraud the United States Postal Service. *Id.* at 766.  The government moved, *inter alia*, to strike the affirmative defense of unclean hands, contending that the defense was unavailable against the government in suits to vindicate the public interest. *Id.* at 773.  Chief Judge Fish appeared to rely on the cases the government cited—one of which was *Second National Bank*—to hold that several affirmative defenses, including unclean hands, should be stricken.  *See id.* at 774 (stating that court was striking affirmative defenses "for the reasons stated above," some of which included positions taken by the United States in its briefing).

would not be in the public interest, in which interest this suit was brought, to have such conduct on the part of the SEC bar the present proceedings. The public interest must still be protected." *Id.* *Bull Investment Group* did not hold that the defense of unclean hands is *never* available in an enforcement action.

B

In addition to *Hayes*, the SEC also relies on the Supreme Court's conclusion in *Heckler v. Community Health Services, Inc.,* 467 U.S. 51 (1984), that "'it is well settled that the Government may not be estopped on the same terms as any other litigant' because such would undermine 'the interest of the citizenry as a whole in obedience to the rule of law.'" P. Br. 3 (quoting *Heckler*, 467 U.S. at 60). The *Heckler* Court declined, however, to "expand this principle into a flat rule that estoppel may not in any circumstances run against the Government." *Heckler*, 467 U.S. at 60. It held that the claimant could not prevail for failure to demonstrate the traditional elements of estoppel. *Id.* at 61. But it did not reject completely the premise that "the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Id.* at 60-61. In other words, *Heckler* does not support the conclusion that an affirmative defense like unclean hands can *never* be asserted against a government agency bringing an enforcement or similar action. To the contrary, it supports this court's conclusion today that, as the law presently stands, the defense is not barred as a matter of law, although, to the extent it is recognized, it is only available in strictly limited

circumstances when the party asserting the defense satisfies an exacting standard.

The SEC next cites a number of district court decisions to contend that the doctrine of unclean hands cannot be invoked against the SEC: *SEC v. Rivlin*, 1999 WL 1455758, at *5 (D.D.C. Dec. 20, 1999); *Sonowo v. United States*, 2006 WL 3313799, at *3 (D. Del. Nov. 13, 2006); *United States v. New York Metropolitan Transportation Authority*, 2006 WL 708672, at *2 (E.D.N.Y. Jan.12, 2006); *United States v. Philip Morris Inc.*, 300 F.Supp.2d 61, 75 (D.D.C. 2004); and *United States v. American Electric Power Service Corp.*, 218 F.Supp.2d 931, 938 (S.D. Ohio 2002).  And it posits that its research "has identified no case where a defendant successfully invoked an unclean hands defense to an SEC injunctive enforcement action."  P. Br. 4.  The SEC also cites the following cases as examples of decisions where courts have regularly granted motions to strike unclean hands defenses: *United States v. Cushman & Wakefield, Inc.*, 275 F.Supp.2d 763, 774 (N.D. Tex. 2002) (Fish, C.J.); *Rivlin*, 1999 WL 1455758, at *5; *Hayes*, 1991 WL 236846, at *2; and *SEC v. Lorin*, 1991 WL 576895, at *2 (S.D.N.Y. June 18, 1991).  Although the cases on which the SEC relies do support the conclusion that the unclean hands defense is precluded as a matter of law when the SEC brings an enforcement action, in some respects these decisions cite each other without explaining their reasoning, some rely on opinions that can be traced to a misplaced interpretation of *Second National Bank*, and others reach this result without explaining in more than conclusory terms the rationale for holding that the defense is

unavailable as a matter of law.[9]  Moreover, in the court's view, the apparent absence of any

case where a defendant has successfully invoked an unclean hands defense against the SEC

---

[9]*Rivlin* cited *Gulf & Western*.  *See Rivlin*, 1999 WL 1455758, at *5.  *Sonowo* addressed an ineffective assistance of counsel claim based on the lawyer's failure to assert an unclean hands defense.  The court held that because unclean hands was equitable in nature, the defendant could not have asserted this defense and, even had the defense been available, as a matter of law, it could not have been asserted against the government when it acts in the public interest.  *Sonowo*, 2006 WL 3313799, at *3.  *Sonowo* cited *Philip Morris*. *Id.  New York Metropolitan Transportation Authority* held that the defendant had waived its affirmative defenses, including unclean hands, by failing to plead them.  *N.Y. Metro. Transp. Auth.*, 2006 WL 708672, at *2.  It held, essentially in the alternative, that the government could not be subject to this defense when it acted in the public interest.  The court cited in support  *EEOC v. Recruit U.S.A., Inc.,* 939 F.2d 746, 752 (9th Cir. 1991), *Philip Morris*, *American Electric Power*, and *Rivlin*.  *Id.  Philip Morris* held that the defense was not available in a civil RICO action brought by the government against tobacco-related entities. *Philip Morris*, 300 F. Supp. 2d at 75.  It cited in support *Gulf & Western*, *SEC v. Sprecher*, 1993 WL 544306, at *2 (D.D.C. 1993), and *Rivlin*.  *Id.*  In *American Electric Power* the United States, various states, and certain citizen groups sued power plant operators under the Clean Air Act.  The court held that the defense of unclean hands could not be used against the United States to prevent it from enforcing its laws to protect the public interest.  *Am. Elec. Power*, 218 F.Supp.2d at 938.  The court cited *Pan-American Petroleum*. *Id.  Cushman & Wakefield* held that the affirmative defense of unclean hands was unavailable because the government had acted in public interest in a False Claims Act prosecution.  *Cushman & Wakefield,* 275 F.Supp.2d at 773.  It relied for this holding on *Second National Bank*.  *Id. Lorin* addressed whether the defendant in an SEC enforcement action could rely on unclean hands based on the SEC's having obtained a copy of a defendant's deposition in another lawsuit, in violation of a stipulation of confidentiality.  *Lorin*, 1991 WL 576895, at *1.  The court held that an unclean hands defense generally was not available in an SEC enforcement action.  It noted that courts were reluctant to invoke the doctrine against a government agency seeking to enforce a congressional mandate in the public interest, and it cited *Gulf & Western* and *SEC v. Musella,* 1983 WL 1297 (S.D.N.Y. Apr. 4, 1983).  *Id.*  Lorin distinguished *Gulf & Western* and *Wellman v. Dickinson,* 79 F.R.D. 341 (S.D.N.Y.1978), on the basis that the SEC's "alleged conduct neither violate[d] a constitutional right nor constitute[d] egregious misconduct."  *Id.* at *2.

.

in an injunctive enforcement action is indicative of the fact that the defense is only recognized when a defendant satisfies an exacting standard, not irrefutable proof that the defense is unavailable as a matter of law.

Finally, the SEC argues that "[t]he total shut-out of the unclean hands defense in SEC enforcement actions is unsurprising," P. Br. 4, because an SEC enforcement action is about enforcing the Congressional mandate to protect the public interest from defendants who violate the securities laws, and the criteria for granting of injunctive relief therefore focus exclusively on the defendant; where there is a finding of liability based on a statutory violation and the SEC establishes the statutory conditions for entry of an injunction, such injunctive relief must be granted; and because the issuance of an injunction is mandatory in an SEC enforcement action when the statutory conditions are met, and an affirmative defense is not valid if it appears to a certainty that the plaintiff would succeed despite any set of facts that could be proved in support of the defense, the unclean hands defense must be stricken as a matter of law.  In support of its contention that injunctive relief is mandatory where the statutory conditions are met, the SEC cites *SEC v. Caterinicchia*, 613 F.2d 102, 105 (5th Cir. 1980), and *SEC v. Mize*, 615 F.2d 1046, 1051 (5th Cir. 1980). Neither case, however, nor any other decision on which the SEC relies in its opening or reply brief, holds that injunctive relief is mandatory even when a defendant establishes an affirmative defense.  Accordingly, absent support for this fundamental assumption, this ground of the SEC's motion fails.

The court therefore concludes that, under the present state of the law, the affirmative defense of unclean hands is not barred as a matter of law in an SEC enforcement action.

IV

The court now considers the circumstances under which the defense of unclean hands

is available and, in turn, what is required to plead the defense in an SEC enforcement action.

A

The courts that explicitly or implicitly recognize that such a defense is available in an

enforcement action do so in strictly limited circumstances.[10]  "[E]quitable defenses against

government agencies are strictly limited."  *SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53,

73 (D. Conn. 1988) (collecting cases), *aff'd sub nom. SEC v. Calvo*, 891 F.2d 457 (2d Cir.

1989).  "Where courts have permitted equitable defenses to be raised against the government,

they have required that the agency's misconduct be egregious and the resulting prejudice to

the defendant rise to a constitutional level."  *Id.* (citing *SEC v. Musella,* 1983 WL 1297

(S.D.N.Y. Apr. 4, 1983); *Gulf & W.,* 502 F. Supp. at 347); *accord United States v. KPMG*

*LLP*, 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) (stating that although generally

the doctrine of unclean hands cannot be invoked against a government agency attempting to

enforce a congressional mandate in the public interest, it can be raised where the agency's

misconduct is egregious and the resulting prejudice to the defendant rises to a constitutional

level).  "Recognizing the need to deter governmental abuses, courts do allow the defense of

government misconduct to be invoked where it appears that the government may have

---

[10]The court does not rely on cases in which the SEC or the government itself is acting
as a private suitor.  The court agrees with the SEC that these cases are distinguishable from
enforcement actions brought in the public interest.

engaged in outrageous or unconstitutional activity." *Lorin,* 1991 WL 576895, at *1. The defense applies "only where there is a direct nexus between the misconduct and the right which is the basis of the suit." *Elecs. Warehouse,* 689 F. Supp. at 73 (collecting cases). "Conduct which occurs during the litigation of a lawsuit, rather than during the accrual of the action, cannot form the basis of an equitable defense." *Id.* "Moreover, courts have permitted the defense only where the alleged misconduct occurred during the investigation leading to the suit and the misconduct prejudiced the defendant in his defense of the action." *Id.; accord SEC v. Follick,* 2002 WL 31833868, at *8 (S.D.N.Y. Dec. 18, 2002) ("[C]ourts have permitted the defense only where the alleged misconduct occurred during the investigation leading to the suit and the misconduct prejudiced the defendant in his defense of the action." (quoting *Elecs. Warehouse,* 689 F. Supp. at 73)).

Courts have specifically rejected the defense where the defendant failed to demonstrate prejudice. *See Follick,* 2002 WL 31833868, at *8 (holding that unclean hands defense failed because defendant did not demonstrate prejudice where "[n]othing the SEC or any other Government actor [was] alleged to have done [would] prevent [defendant] from putting forth his defenses to this suit."); *SEC v. Rosenfeld,* 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997) (defendant pleaded in answer that alleged misconduct was severely prejudicial, but did not state particulars about how he had been prejudiced, the prejudice alleged was entirely non-specific and conclusory, and answer lacked concrete and specific allegations of how defendant's ability to defend himself or his access to witnesses or evidence to aid in his defense had been compromised by the SEC's actions; concluding

defendant would not be permitted to use the affirmative defense to engage in fishing expedition to discover any potential prejudice).  They have also rejected the defense where the defendant failed to demonstrate that the SEC acted unconstitutionally, and relied on their own unsupported interrogatory responses, *SEC v. Sands,* 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) (striking defense where, after completion of discovery, defendants had not produced evidence that the SEC acted unconstitutionally in prosecuting action); where the defendant relied entirely on non-specific and conclusory allegations and there was a total failure to demonstrate prejudice, *Musella,* 1983 WL 1297, at *2 (striking "government misconduct" affirmative defense where allegation was entirely non-specific and conclusory, and there was a failure to demonstrate prejudice, and stating that "Government misconduct requires the dismissal of adverse civil proceedings only where the misconduct was egregious, and the resulting prejudice to defendant rises to a constitutional level."); or where the defendant did not, and could not, contend that the SEC's failure to identify a GAAP violation constituted egregious misconduct or prejudice that rose to a constitutional level,  *KPMG,* 2003 WL 21976733, at *3 (holding that doctrine of unclean hands was inapplicable because SEC was acting to further its congressional mandate to investigate potential violations of the securities laws, and defendants did not, and could not, contend that SEC's failure to identify GAAP violation constituted egregious misconduct or prejudice that rose to constitutional level).

Although other courts have declined in SEC enforcement actions to strike the defense, they appear to have been concerned primarily about doing so in the context of a motion to strike—which is addressed to the sufficiency of a pleading—based on an undeveloped factual

record. *See, e.g., SEC v. Nacchio,* 438 F.Supp.2d 1266, 1287 (D. Colo. 2006) (declining to strike unclean hands defense based on claim that SEC improperly commingled civil investigation with Department of Justice criminal investigation; although generally agreeing that coordination served important public purposes, court could not say that jointly-conducted civil and criminal investigation could never justify defense of unclean hands, and concluding that "[w]hether this case presents such a circumstance is a matter that cannot be adjudicated on the face of the pleadings, and must therefore await development of a more complete factual record."); *Wellman*, 79 F.R.D. at 354 (holding that although SEC's position on motion to strike seemed well taken, there appeared to be factual dispute, and concluding that court could not address underlying facts in deciding motion to strike and that "rather than making a broad ruling in the abstract," it would defer determination until facts were presented at trial); *SEC v. Downe,* 1994 WL 67826, at *2 (S.D.N.Y. Mar. 3, 1994) ("However, as in *Wellman,* this Court concludes that these issues would be better addressed in a concrete factual setting. Accordingly, the Court denies the SEC's motion to strike[.]"). In the few other instances where courts have denied motions to strike without mentioning the procedural posture of the case, their reasoning has been unclear.[11]

---

[11]In *SEC v. Keating*, 1992 WL 207918, at *6 n.1 (C.D. Cal. July 23, 1992), the court declined to strike the unclean hands affirmative defense without explaining its reasoning in any detail, stating only that the defense had "possible merit, albeit dubious." In *SEC v. Mintz*, No. 4:07-CV-01027 (S.D. Tex. Apr. 9, 2008), a case that Cuban cites in opposition to the SEC's motion, the Southern District of Texas issued a one-sentence order denying the SEC's motion to strike the affirmative defense of unclean hands. This court cannot determine from the *Mintz* order why that court denied the motion.

Accordingly, based on the current state of the law, and absent binding Fifth Circuit authority, the court holds that, to the extent the defense of unclean hands is available in an SEC enforcement action, it is in strictly limited circumstances. The SEC's misconduct must be egregious, the misconduct must occur before the SEC files the enforcement action, and the misconduct must result in prejudice to the defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury.

B

There are compelling reasons for setting a high bar so that the defense is available only when needed to deter governmental abuses.[12] The government and its agencies are not like private litigants when they bring enforcement actions. These actions are intended to promote the interests of the public, and subjecting them to the same defenses as apply to private litigants would undermine the interest of the citizenry as a whole in obedience to the rule of law. *Cf. Heckler,* 467 U.S. at 60. Unlike a private litigant who may seek injunctive relief as an equitable remedy to enforce a private right, when a regulatory agency like the SEC requests injunctive relief, it typically does so because Congress has provided this statutory remedy for the public's benefit as a mechanism for effective law enforcement. *See, e.g.,* 15 U.S.C. § 78u(d)(1) (authorizing SEC to seek injunctive relief for violations of the

---

[12]*See, e.g., Lorin*, 1991 WL 576895, at *1 ("Recognizing the need to deter governmental abuses, courts do allow the defense of government misconduct to be invoked where it appears that the government may have engaged in outrageous or unconstitutional activity.").

Exchange Act).  As a matter of principle, except where there is a demonstrable need to deter

governmental abuses, enforcement actions should not be subjected to an array of affirmative

defenses—defenses that might not at all be relevant were the agency not seeking statutory

equitable relief—that could undermine their efficacy as a law enforcement tool.

　　　And there are practical reasons as well.  Affirmative defenses that are only

conceivably relevant because the agency seeks a statutory equitable remedy can easily

become instruments to challenge, and thereby to effectively derail, the enforcement action.

The defense of unclean hands is a prime example.  When this affirmative defense is asserted,

rather than simply litigating whether the SEC is entitled to an injunction, the parties can

become embroiled in a wide-ranging and intrusive dispute about how the SEC has conducted

the enforcement action.  When the focus of the litigation shifts from the defendant's alleged

misconduct to the conduct of *both* the defendant and the SEC, delay and increased litigation

expense are virtually certain to follow.  The public's interest in effective law enforcement

can be compromised, not because the public is at fault, but because a government agency

seeking a statutory equitable remedy has been accused of wrongdoing.  As the Court

explained in *Heckler*, the public interest in the rule of law is undermined when the conduct

of public agents prevents the government from enforcing the law.  *Heckler*, 467 U.S. at 60.

And courts have recognized that the costs associated with litigating affirmative defenses in

tandem with the enforcement action are sufficient to make the defenses unavailable as a

matter of law, or to allow them only in narrow circumstances.  *See, e.g., KPMG*, 2003 WL

21976733, at *3 ("The SEC has also shown that it will be prejudiced by allowing these

affirmative defenses to remain in this litigation.  The defendants have already given notice that they will seek to discover the internal workings of the SEC investigations of Xerox and KPMG to support these defenses.").

Therefore, to the extent an affirmative defense such as unclean hands is available, it is only in strictly limited circumstances where the agency's misconduct is egregious, and the misconduct results in prejudice to the defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury.

V

The court now considers whether Cuban has adequately pleaded the affirmative defense of unclean hands.[13]

While continuing to disagree with the district courts that decline to bar altogether the

---

[13]Cuban maintains that the SEC cannot rely on a heightened pleading standard, such as the plausibility standard of *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), because it did not raise this issue in its opening brief.  It is not apparent, however, that the SEC relies on the pleading standards of *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Moreover, this court has declined so far to apply the plausibility standard to affirmative defenses.  *See EEOC v. Courtesy Bldg. Servs., Inc.,* 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) (Fitzwater, C.J.) (declining "in the absence of complete briefing and guidance from the Fifth Circuit or the Supreme Court, to extend the *Iqbal* and *Twombly* plausibility standard to the pleading of affirmative defenses.").  Instead, the court has continued to apply the "fair notice" standard of *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999). *Id.* at * 1. This requires that the party asserting the affirmative defense allege sufficient facts to give the opposing party fair notice of the nature of the affirmative defense and prevent unfair surprise.  *Id.*  The court will apply that standard in this case, within the context of the exacting standard for pleading the affirmative defense of unclean hands in an SEC enforcement action.

defense of unclean hands, the SEC contends that Cuban has failed to adequately plead extreme or constitutional prejudice.  It maintains that his allegations of prejudice are conclusory, and that he has pleaded no facts that would permit a factfinder to conclude that he suffered actual prejudice much less prejudice rising to a constitutional level.  Cuban responds that he has pleaded sufficient facts to give the SEC fair notice of his defense. Concerning his obligation to plead prejudice, he maintains that his answer adequately alleges prejudice by detailing how the misconduct of SEC staff prevented him from successfully persuading the SEC not to bring the action, and that the staff's misconduct, including improper interference with a witness, may prevent him from being able to mount an effective defense to the SEC's claims.[14]  He points out that, unlike cases that have rejected the unclean hands defense, he is alleging that the SEC gathered tainted evidence and engaged in other serious misconduct, and that these improprieties prejudiced his ability to litigate this action. He therefore contends that his allegations satisfy for pleading purposes the standard of egregious misconduct and prejudice rising to a constitutional level.

The court holds that Cuban has failed to allege facts that give the SEC fair notice that the misconduct on which he relies resulted in prejudice to his defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury.  This is fatal to his unclean hands defense.  *See,*

---

[14]Cuban also disagrees with the SEC's analysis of what is required to plead prejudice. In view of the court's decision today, it need not resolve this dispute because it is applying the prejudice standard adopted in this memorandum opinion and order.

*e.g., Elecs. Warehouse*, 689 F. Supp. at 72 ("[C]ourts have permitted the defense only where the alleged misconduct . . . prejudiced the defendant in his defense of the action." (citations omitted); holding that the defense applies "only where there is a direct nexus between the misconduct and the right which is the basis of the suit." *Id.* at 73 (collecting cases)).

Of the three grounds on which his defense of unclean hands relies, only the third merits discussion.[15] In this ground—which is based on the allegation that SEC staff engaged in acts of outright investigative and litigation misconduct—he alleges, first, that a staff member discouraged counsel for a key witness from making the witness available to speak with Cuban's counsel and, after the SEC was informed, it apparently never investigated. He does not allege that this resulted in any prejudice in his defense of this enforcement action much less prejudice that rises to a constitutional level. Second, he asserts that SEC staff threatened the same witness with perjury when he was unable during sworn testimony to clearly recall certain statements he had supposedly made to the SEC in a telephone interview conducted ten months before. As before, Cuban does not allege that the SEC's conduct in any way impaired his ability to defend the enforcement action—for example, that he was thereafter unable to obtain truthful, favorable evidence from the witness—or that this conduct resulted in prejudice that rose to a constitutional level. And, third, he asserts that SEC staff sent a letter to Mamma.com stating that the SEC's separate investigation of the company had

---

[15]To the extent that the first and second grounds hint at or suggest prejudice, they do not plead facts that give the SEC fair notice of the prejudice element of the exacting standard for asserting this defense.

been closed and, fewer than two weeks later, SEC staff took the sworn testimony of Fauré for a second time in an apparent effort to get him to change his earlier testimony concerning his June 28, 2004 call with Cuban. Cuban does not specifically allege that Fauré changed his testimony, that any changed testimony impaired his ability to defend the enforcement action, or, critically, that this resulted in prejudice that rose to a constitutional level. These three grounds are therefore insufficient to give the SEC fair notice of prejudice under the exacting standard. *See, e.g., Musella*, 1983 WL 1297, at *2 (holding that no prejudice existed where witness did not change testimony to incriminate defendant based on SEC investigators' pressure).

The court need not address the fourth allegation: that SEC staff filed a complaint in this action asserting that Cuban had entered into a confidentiality agreement, despite the lack of any evidentiary support for the existence of such an agreement. The misconduct on which Cuban relies must occur before the SEC filed the enforcement action, and this is an allegation of misconduct in filing the action itself. Moreover, if a defendant could assert an unclean hands defense in response to the SEC's prima facie case—i.e., if he could contend that the SEC engaged in egregious misconduct by bringing an enforcement action without evidentiary support—the egregious misconduct component of the standard would be feckless, since virtually any defendant presumably can allege that the SEC lacks proof that he violated the securities laws.

Accordingly, the court holds that Cuban has failed to adequately plead the prejudice

prong of his unclean hands defense.[16]  Because his failure to satisfy this requirement is alone

sufficient to support striking this defense, the court need not address whether he has

adequately pleaded that the SEC engaged in egregious misconduct.

VI

Although the court often permits parties to replead when it dismisses a claim or

defense on the pleadings alone,[17] it will not do so here.  In his response to the SEC's motion,

Cuban does not request leave to amend or replead.  Moreover, although he explicitly

disagrees in his brief with cases like *Electronics Warehouse*, he nevertheless maintains that

his "allegations would satisfy, for pleading purposes, the 'egregious misconduct' and

'prejudice rising to a constitutional level' standard."  D. Br. 11.  This means that he was

aware of the decisions that strictly limit the defense and that he could have alleged the facts

necessary to plead unclean hands if there were such facts.  Finally, allowing him to amend

on the chance that he *might* be able to plead the defense, and adjudicating anew whether he

has adequately pleaded it, would prolong the uncertainty over whether, and under what

---

[16]In his amended answer, Cuban states in a footnote that many of the acts of misconduct are detailed more fully in the record of the case, including in papers related to the motion for attorney's fees and expenses that he filed after this case was dismissed initially.  Even if the court assumes that Cuban has properly incorporated these allegations into his amended answer, he refers in this footnote to allegations of misconduct rather than of prejudice that rose to a constitutional level.

[17]*See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford [parties] at least one opportunity to cure pleading deficiencies . . ., unless it is clear that the defects are incurable or the [parties] advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)).

parameters, Cuban would be permitted to litigate an unclean hands defense. Considering the intrusive impact that litigating such a defense could have on the SEC's prosecution of this enforcement action, the court concludes in its discretion that it should resolve without further delay, and on the basis of Cuban's current amended answer, whether the defense should be stricken.

*   *   *

Accordingly, for the reasons explained, the court grants the SEC's motion to strike the affirmative defense of unclean hands.

**SO ORDERED**.

July 18, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE