## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No. 3:08-cv-02050 (SAF)** |
| MARK CUBAN, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARK CUBAN'S MOTION TO EXCLUDE OPINIONS, TESTIMONY, AND REPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S EXPERT THOMAS LEE HAZEN

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

    A.   Professor Hazen's "Rebuttal" Report ...................................................... 4

    B.   Professor Hazen's Report is Not a Proper "Rebuttal" to Professor
       Steinberg's Report ..................................................................................... 8

    C.   Professor Hazen's "Opinions" Consist of Legal Conclusions and
       Interpretations of Evidence ...................................................................... 11

    D.   Professor Hazen Cannot Rehabilitate His Report Through Testimony .............. 15

    E.   Professor Hazen's Methodology – to the Extent He Employs One at All –
       is Undisclosed .......................................................................................... 19

    F.   Professor Hazen is Unqualified to Offer Opinions on the Matters He
       Purports to "Rebut" ................................................................................. 21

III.  CONCLUSION .................................................................................................. 23

## TABLE OF AUTHORITIES

CASES                                                                                                PAGE

*Askanase v. Fatjo*,
    130 F.3d 657 (5th Cir. 1997) .............................................................................................12

*Aviall Servs., Inc. v. Cooper Indus., LLC*,
    572 F. Supp. 2d 676 (N.D. Tex. 2008) ............................................................................12

*Basic v. Levinson*,
    485 U.S. 224 (1988)...............................................................................................7, 18

*Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. "Rosvoorouzhenie"*,
    172 F. Supp. 2d 79 (D.D.C. 2001) ...................................................................................21

*Ciomber v. Coop. Plus, Inc.*,
    527 F.3d 635 (7th Cir. 2008) ....................................................................................17, 18

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................21

*Estate of Sowell v. United States*,
    198 F.3d 169 (5th Cir. 1999) ...........................................................................................12

*First Years, Inc. v. Munchkin, Inc.*,
    575 F. Supp. 2d 1002 (W.D. Wis. 2008) .........................................................................11

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................................19

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) ...........................................................................................20

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ...........................................................................................21

*Hill ex rel. Hill v. Koppers, Inc.*,
    2009 WL 4908836 (N.D. Miss. Dec. 11, 2009).............................................................17

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*,
    1995 WL 115421 (N.D. Cal. Mar. 15, 1995)..................................................................11

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
    2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) ..................................................................10

*Plumley v. Mockett*,
    836 F. Supp. 2d 1053 (C.D. Cal. 2010) ..........................................................................11

*Rolls-Royce Corp. v. Heros, Inc.*,
  2010 WL 184313 (N.D. Tex. Jan. 14, 2010) .......................................................6, 19

*SEC v. Cuban*,
  620 F.3d 551 (5th Cir. 2010) .........................................................13, 20

*SEC v. Cuban*,
  634 F. Supp. 2d 713 (N.D. Tex. 2009) ...............................................13

*Shen Wei (USA) Inc. v. Sempermed USA, Inc.*,
  2008 U.S. Dist. LEXIS 109486 (N.D. Ill. June 20, 2008) ....................................10

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*,
  73 F.3d 546 (5th Cir. 1996) ............................................................17

*Smith v. Goodyear Tire & Rubber Co.*,
  495 F.3d 224 (5th Cir. 2007) ...........................................................22

*Snap-Drape, Inc. v. Comm'r of Internal Rev.*,
  98 F.3d 194 (5th Cir. 1996) ...........................................................12

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) ..........................................................21

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999) ..........................................................22

*Woodard v. Andrus*,
  2009 WL 140527 (W.D. La. Jan. 20, 2009) ..........................................12

## RULES

Fed. R. Civ. P. 26 ............................................................3, 4, 17, 18

Fed. R. Evid. 702 .........................................................12, 19, 20, 21

Fed. R. Evid. 704 .............................................................11

## OTHER AUTHORITY

Thomas Lee Hazen, *Identifying the Duty Prohibiting Outsider Trading on Material
  Nonpublic Information*, 61 Hastings L.J. 881 (2010) ............................................13

Defendant Mark Cuban hereby moves this Court to exclude Professor Thomas Lee Hazen's expert report ("Hazen Report"),[1] opinions, and testimony from evidence in this litigation.

## I.  INTRODUCTION

It is difficult to imagine a more improper expert "rebuttal" report than that of the SEC's expert, Professor Thomas Lee Hazen.  In this Court's July 17, 2009 decision on Mr. Cuban's Motion to Dismiss, the Court made a ruling on a fundamental issue of law: that a duty sufficient to support liability under the misappropriation theory of insider trading could arise by agreement if, and only if, there is an agreement *both* to keep information in confidence *and* not to trade on the information.  That ruling, which the Court of Appeals left intact, is the law of the case.  Yet in his report, Prof. Hazen presumes to address, as though it were an open issue appropriate for resolution by an expert witness, whether the misappropriation theory requires distinct agreements not to disclose and not to trade – and, astonishingly, the conclusion that Prof. Hazen offers on this issue squarely contradicts this Court's ruling.

Prof. Hazen's misguided use of his "rebuttal" report to attempt to rebut *this Court* and its prior legal ruling is but one of countless improprieties found in Prof. Hazen's report.  Prof. Hazen purports to address the report of Mr. Cuban's expert witness, Professor Marc Steinberg, who opines only on a narrow issue regarding the reasonableness of Mamma.com's expectation of confidentiality (if any) as to the PIPE information provided to Mr. Cuban.  Inasmuch as Prof. Hazen was only designated a "rebuttal" witness by the SEC, all that Prof. Hazen properly could do in his report is attempt to "rebut" this opinion of Prof. Steinberg's.  Prof. Hazen's report reaches so far beyond that as to make a mockery of its designation as a "rebuttal" and the rules of procedure governing rebuttal expert testimony.

For example, Prof. Hazen's report offers improper legal conclusions on *all* of the following issues, even though Prof. Steinberg's report did not contain opinions on *any* of them: (1) whether Mr. Cuban undertook duties during his call with Mr. Fauré on June 28, 2004,

---

[1] The Hazen Report is attached as Attachment A to the Declaration of Lyle Roberts ("Roberts Decl."), filed contemporaneously with this Motion.

(2) whether those duties included an obligation not to trade in addition to a confidentiality obligation, (3) whether a mere confidentiality agreement imposes a duty not to trade, (4) whether the duties that Mr. Cuban undertook were "legally binding," (5) what the terms and conditions of those obligations were, (6) how other various contracts should be interpreted, (7) whether the Mamma.com PIPE information was material, (8) when the PIPE information became material, (9) whether the PIPE information was nonpublic, (10) whether Mr. Cuban's trades were proper, (11) whether Mr. Cuban traded on the basis of information that was material and nonpublic at the time of his trades, (12) what evidence should and should not be considered by the factfinder in determining whether the PIPE information was material, (13) what evidence should and should not be considered by the factfinder in determining whether the PIPE information was nonpublic, and (14) what evidence should and should not be considered by the factfinder in determining the "impropriety" of Mr. Cuban's trades.

Although Prof. Hazen's report ranges far beyond the narrow scope of Prof. Steinberg's expert report, Prof. Hazen's report makes no attempt to address the limited custom-and-practice opinions that are actually contained in Prof. Steinberg's report.  Prof. Hazen's "opinions" do not use the term "custom and practice," do not identify or discuss any customs or practices, and do not otherwise constitute, on their face, opinions regarding any customs and practices.  Prof. Hazen's report also does not indicate that Prof. Hazen has any qualification to provide custom-and-practice opinions, although that is hardly surprising, since the report contains no such opinions, and Prof. Hazen is not in fact qualified to provide such opinions.

For all of the foregoing reasons, and the further reasons discussed below, the Court should exclude Prof. Hazen's expert report, opinions, and testimony from evidence in this litigation.

## II.    ARGUMENT

Early in this case, Mr. Cuban retained an expert, Professor Marc Steinberg, to offer an opinion on the following narrow and discrete issue: whether, as a matter of custom and practice, Mamma.com had a reasonable expectation of confidentiality with respect to the PIPE

information that was provided to Mr. Cuban.   In his expert report,[2] dated September 30, 2011,

Prof. Steinberg stated his complete opinion on that issue as follows:

> Under custom and practice, *Mamma.com had no reasonable expectation of confidentiality with respect to communications made to Mr. Cuban by the Company's CEO Mr. Guy Faure and by Mr. Arnie Owen*, a sales representation of Merriman Curhan Ford & Co. (MCF or Merriman) regarding the PIPE transaction.

Steinberg Report at 3-4 (emphasis added) (App'x at 33-34).   The rest of Professor Steinberg's

report, in conformance with Fed. R. Civ. P. 26(a)(2)(B)(i), lays out the reasons and bases for his

custom-and-practice opinion.   At the end of his report, Professor Steinberg also buttressed (and,

in part, restated the essence of) his custom-and-practice opinion as follows:

> . . . . By Mamma.com and/or its agent MCF not taking adequate precautionary measures to preserve the confidentiality of the information transmitted to prospective investors of the PIPE transaction, it was reasonably foreseeable that this information would be used by such prospective investors in the securities markets.   Accordingly, as of June 28, 2004, *Mamma.com had no reasonable expectation of confidentiality with respect to the communications made to Mr. Cuban regarding the Mamma.com PIPE transaction*.

Steinberg Report at 22 (emphasis added) (App'x at 52).   Professor Steinberg's report contains no

"opinions" on any other matters.   He does not opine, for example, on whether an agreement of

any kind was formed between Mr. Cuban and Mamma.com, including whether enforceable

duties of both non-disclosure and non-use arose during Mr. Cuban's and Mr. Fauré's June 28,

2004 call.

It bears emphasis that given the limited scope of Professor Steinberg's opinion, his

opinion is not necessary or relevant for purposes of Mr. Cuban's recently filed Motion for

Summary Judgment.   A core argument made in that motion is that whereas the SEC's Complaint

alleges that Mr. Cuban entered into an explicit confidentiality agreement with Mr. Fauré on their

June 28, 2004 call, the record is bereft of any evidence of any such agreement, or of an

agreement not to trade.   Absence evidence that Mr. Cuban undertook, by agreement, legally

binding duties of nonuse and non-disclosure, summary judgment is required.

---

[2] Prof. Steinberg's report ("Steinberg Report") is attached to the Roberts Declaration as Attachment C.

Professor Steinberg's opinion would take on significance only if the SEC's insider-trading claims were to somehow survive summary judgment, and it were relevant at trial whether Mamma had a reasonable expectation of confidentiality. Assuming – solely for the sake of argument and the limited purpose of this motion – that this were to occur, Mr. Cuban should be permitted to call Professor Steinberg to testify on his narrow expert opinions identified above, whereas the SEC should not be permitted to call their purported "rebuttal" witness, Professor Hazen.[3]

### A.    Professor Hazen's "Rebuttal" Report

The parties exchanged their initial expert reports, which included Prof. Steinberg's report, on September 30, 2011. On December 2, 2011, the date established for the Court for the exchange of rebuttal reports, the SEC identified Prof. Hazen as a "rebuttal" expert and disclosed his report as a "rebuttal report." *See* Order, Nov. 1, 2011, ECF No. 117 (establishing December 2, 2011, as deadline for exchange of rebuttal reports); *see also* Hazen Report at 12 (dated December 2, 2011) (App'x at 15); Email from Adam Aderton of the SEC to Messrs. Roberts and Best, counsel for Mr. Cuban (Dec. 2, 2011, 4:00pm Eastern) (App'x at 98).[4]

In stark contrast to Prof. Steinberg's straightforward and narrowly focused opinion, Prof. Hazen's "rebuttal" report sets forth a wide-ranging compendium of assertions that touch upon virtually every issue raised in this case. Professor Hazen's report begins with the following conclusions:[5] (1) Mamma.com had a reasonable expectation that information concerning the

---

[3] Although Mr. Cuban believes that the Court will never need to reach the expert issues addressed in the instant motion, Mr. Cuban is filing the motion now in accordance with the Court's most recent scheduling order. Order at 2, ECF No. 135, April 2, 2012. Counsel for Mr. Cuban and the SEC conferred and agreed that under the governing scheduling order, motions to exclude expert testimony must be filed by October 19, 2012.

[4] The email from Mr. Aderton is attached to the Roberts Declaration as Attachment E.

[5] Professor Hazen does not rigidly separate his analysis into "opinions" and the "bases and reasons for them." *Compare* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert reports must provide "a complete statement of all opinions that a witness will express and the bases and reasons for them"); *with* Deposition of Thomas Lee Hazen ("Hazen Depo.") at 79:9-15 ("I do not go through each and every statement of opinion with a citation to what portion of my expertise or what backup I am using to support that opinion because that would just – that would obscure the narrative in terms of trying to give a detail of each and every piece of – expertise or backup that I'm relying on.") (App'x at 179). The Deposition of Prof. Hazen is attached to the Roberts Declaration as Attachment F.

June 2004 PIPE would be maintained in confidence when Mr. Fauré spoke to Mr. Cuban on June 28, 2004; (2) Mr. Cuban's sales of Mamma.com shares were made on the basis of material, nonpublic information and violated Mamma.com's reasonable expectation of confidentiality; (3) Section 3.1(r) of the Mamma.com Securities Purchase Agreement ("SPA") did not affect Mamma's reasonable expectation of confidentiality concerning its PIPE because that Section does not cover information about the PIPE; (4) because Mr. Cuban never signed the SPA, the SPA cannot affect Mr. Cuban's preexisting obligation of confidentiality; and (5) pay-to-hold and similar activities by PIPE investors constituted preparation for short sales after the public announcement of the PIPE, which is different from Mr. Cuban's pre-announcement sales. *See* Hazen Report at 1-2 (App'x at 4-5).

Prof. Hazen's report then proceeds to set forth an extended legal dissertation, virtually every sentence of which either states a sweeping legal conclusion, weighs evidence, or baldly proclaims what evidence should or should not be considered relevant. By way of example, Prof. Hazen's statements of this kind include (but are hardly limited to):[6]

- "The telephone conversation . . . between Mamma's CEO and Defendant Cuban *created a duty of confidentiality and hence an obligation not to trade* . . . ." Hazen Report ¶ 1 (emphasis added) (App'x at 7).

- "Defendant Cuban *had a legally binding obligation* to keep information about the upcoming PIPE transaction confidential and an attendant obligation not to trade . . . ." *Id.* ¶ 1 (emphasis added) (App'x at 7).

- Information about the PIPE was "material, nonpublic information." *Id.* ¶¶ 1, 6, 7,

---

[6] The following bulleted points, and the conclusions summarized above, do not constitute a comprehensive list of the "opinions" that Prof. Hazen purports to offer. Prof. Hazen's report makes it impossible to construct such a list because the report fails to identify with specificity what material Prof. Hazen himself considers to be his "opinions." Prof. Hazen conceded this at his deposition. *See* Hazen Depo. at 236:21-24 ("I did not separately number or identify which sentences are opinions, which are not, but I believe the report speaks for itself.") (App'x at 336); *see also id.* at 96:15-97:6 ("I numbered paragraph by paragraph. I did not number opinion by opinion.") (App'x at 196-97). When asked in his deposition to identify his "opinions," Prof. Hazen ended up designating the majority of the sentences in his report as opinions. Given space constraints, this Memorandum identifies what would appear to be Prof. Hazen's principal as well as illustrative "opinions" of Prof. Hazen's.

9, 12, 13, 14, 15 (App'x at 7, 9-14).

- When Mr. Cuban spoke to Mr. Owen, "*he was still subject to a duty of confidentiality and attendant obligation not to trade*. . . . The confidentiality agreement *was clearly still in place*." *Id.* ¶ 2 (emphasis added) (App'x at 8).

- Mr. Owen "*did not have the authority to waive or terminate* the confidentiality obligation and attendant obligation not to trade that was created in Defendant Cuban's earlier conversation with the CEO." *Id.* ¶ 2 (emphasis added) (App'x at 8).

- The language in Section 3.1(r) of the SPA was "boilerplate language" that "*did not become operational* until the SPA was executed at the very conclusion of the PIPE closing process." *Id.* ¶ 7 (emphasis added) (App'x at 10).

- Clauses in other securities purchase agreements that are similar to Section 3.1(r) "*have absolutely no probative value* in evaluating the materiality of information about the Mamma PIPE or whether such information was covered by Section 3.1(r) of the SPA." *Id.* ¶ 8 (emphasis added) (App'x at 10).

- "Any meaningful confidentiality agreement with potential investors that covers information about a potential offering has to be put in place *prior* to the signing of the SPA." *Id.* ¶ 10 (emphasis in original) (App'x at 8).

- "[T]he absence of an express confidentiality provision . . . buttresses my conclusion that *Defendant Cuban was under a duty of confidentiality and the attendant duty not to trade . . . .*" *Id.* ¶ 10 (emphasis added) (App'x at 11).

- "[T]he SEC's purported inaction [regarding Mamma.com's Form 20-F] *is totally irrelevant to any materiality issues in this case*." *Id.* ¶ 11 (emphasis added) (App'x at 11).[7]

- "Defendant Cuban's immediate trading after obtaining the PIPE information *is*

---

[7] *See also Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *12 (N.D. Tex. Jan. 14, 2010) (Fitzwater, J.) (excluding "conclusion[s] about the legal significance of the government's conduct").

*highly pertinent evidence of the materiality of the information he obtained.*"  *Id.* ¶ 12 (emphasis added) (App'x at 12).

- "*Defendant Cuban's sell order entered on June 28, 2004 and ensuing sales in the aftermarket and on June 29 violated his confidentiality and related obligations that arose as a result of his earlier phone conversation since these sales were made on the basis of material nonpublic information.*"  *Id.* ¶ 12 (emphasis added) (App'x at 12).

- "[T]he PIPE offering *was a material fact that was not disclosed to the public* at the time of Defendant Cuban's sale of Mamma stock and remained so until the time of the public announcement at approximately 6:00 p.m., Eastern Time, on June 29, 2004."  *Id.* ¶ 12 (emphasis added) (App'x at 12).

- "*Nothing in [Mamma.com's] Form 20-F had any impact on Defendant Cuban's confidentiality agreement* nor did it in any way alter *the impropriety of his sales* of Mamma.com stock on June 28 and June 29."  *Id.* ¶ 12 (emphasis added) (App'x at 12-13).

- "[T]he purported materiality of the general advisory agreement *in no way affects the impropriety of Defendant Cuban's trades* on June 28 and June 29."  *Id.* ¶ 13 (emphasis added) (App'x at 13).

- "By June 28, 2004, the near certainty of the PIPE offering was material under the test articulated by the Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988)."  *Id.* ¶ 13 (App'x at 13).

- "The PIPE remained material nonpublic information until [it] was publicly disclosed at 6:00 p.m. Eastern Time on June 29 – *after* Defendant Cuban's sale of Mamma stock."  *Id.* ¶ 13 (emphasis in original) (App'x at 13).

- "The upcoming PIPE offering was *not public information, not widely disseminated, and was not generally known to investors* until after the close of business on June 29, 2004."  *Id.* ¶ 14 (emphasis added) (App'x at 13).

7

As further explained below, these types of assertions might be appropriate in a memorandum of law filed by the SEC, but they are certainly not appropriate in a rebuttal expert report that is supposed to offer opinions that are on matters *outside* the expertise of the Court and the jury, and that respond directly to the opinions of Prof. Steinberg.

### B.   Professor Hazen's Report is Not a Proper "Rebuttal" to Professor Steinberg's Report

Prof. Steinberg's report offers one core opinion (based on custom and practice) on the subject of the reasonableness of Mamma.com's expectation of privacy (if any), and he also provides the reasons and bases for that core opinion. *See supra* § II.  Although the SEC designated Prof. Hazen as a rebuttal expert, his report makes no attempt to rebut Prof. Steinberg's conclusions regarding custom and practice.  Prof. Hazen identifies no contrary customs and practices, nor does he take issue in any way with Prof. Steinberg's identification of the controlling custom and practice.  In fact, Prof. Hazen's report says nothing whatsoever about the customs and practices of maintaining confidentiality agreements.   Nor does the report even contain the phrase "custom and practice," or refer to any customs or practices in any other terms.

Instead, Prof. Hazen's view that Mamma.com *did* have a reasonable expectation of confidentiality regarding the PIPE information derives from a series of unexplained, purely legal conclusions – conclusions as to issues that Prof. Steinberg's report never addressed and has had no opportunity to rebut.  *See* Hazen Report ¶¶ 1-3 (App'x at 7-8).  Prof. Steinberg addresses Mamma.com's reasonable expectation of confidentiality; he at no point offers opinions that (1) any call between Mr. Cuban and Mr. Fauré did *not* create a duty of confidentiality, (2) Mr. Cuban did *not* have an "attendant duty not to trade" on the information, (3) the PIPE information was *not* material, (4) an such duty was *not* legally binding, (5) any obligation placed upon Mr. Cuban had *lapsed* by the time that Mr. Cuban spoke to Arnold Owen, (6) Mr. Owen had the authority to *waive* any such obligation, (7) oral confidentiality agreements are invalid or legally unenforceable, or (8) the better practices that Prof. Steinberg identifies "establish legal standards."  Prof. Hazen's "rebuttal" report, in contrast, freely opines as to all these issues and many more.  *See* Hazen Report ¶¶ 1-3 (App'x at 7-8).

The entire report of Prof. Hazen continues in similar fashion – *i.e.*, taking some factual point raised by Prof. Steinberg and using it as the basis to offer legal opinions that go far beyond anything addressed in Prof. Steinberg's report.  For example, Prof. Steinberg points to Section 3.1(r) of the Mamma.com SPA, which discloses, among other things, that Mamma.com "confirms that neither it nor any other Person acting on its behalf has provided any of the Purchasers or their agents or counsel with any information that constitutes or might constitute material nonpublic information."  Steinberg Report at 4 (App'x at 34) (quoting Mamma.com SPA at § 3.1(r) (App'x at 432)).[8]  No party disputes that at the time when the investors signed the SPA, Mamma.com had provided the investors with detailed information about the not-yet-disclosed PIPE.  Prof. Steinberg concludes on the basis of these facts that, taking the customs and practices surrounding confidentiality into account, it is unlikely that Mamma.com would have made this representation if it reasonably expected the PIPE information to remain confidential.  Steinberg Report at 4-5 (App'x at 34-35).

Prof. Hazen, in contrast, offers *legal conclusions* about the *significance* of Prof. Steinberg's opinions.  For example, Prof. Hazen offers a legal construction of Section 3.1(r) of the SPA that is completely untethered to Prof. Steinberg's opinions as to custom and practice. Prof. Hazen opines that Section 3.1(r) "references information provided to investors about the company but not the existence and details of the upcoming PIPE offering."  Hazen Report ¶ 6 (App'x at 9).  He further opines that Prof. Steinberg's "unsupported interpretation" would lead to undesirable results, *id.*, and that because Section 3.1(r) was "boilerplate," "not specifically tailored to the Mamma SPA," and "only operational for a matter of, at most, hours" before the PIPE was announced, it did not refer to PIPE information.  *Id.* ¶¶ 6-8 (App'x at 9-10). Furthermore, he states that Mr. Cuban did not sign the SPA and therefore, the SPA "has no impact" on Mr. Cuban's conversations with Messrs. Fauré and Owen "or Defendant Cuban's resulting duty of confidentiality and attendant obligation not to trade."  *Id.* ¶ 8 (App'x at 10).

But none of these supposed opinions are actual rebuttals to Prof. Steinberg's opinions,

---

[8] The Mamma.com SPA is attached to the Roberts Declaration as Attachment H.

which focused not on the legal interpretation or consequences of the SPA as the Prof. Hazen's report does, but rather on what light the contrast between Mamma.com's conduct and the customs and practices of the industry sheds on the reasonableness of Mamma.com's expectation of confidentiality (assuming, *arguendo*, that it had any such expectations to begin with).

As another example, Prof. Steinberg's report observes that Mamma.com and its agents failed to secure confidentiality agreements from potential PIPE investors when it provided the PIPE information to those investors, who then went out into the marketplace and used the information in transactions. Prof. Steinberg concludes from this that Mamma.com and its agents' conduct was inconsistent with that of a party who reasonably expects confidentiality in such information. Steinberg Report at 20-22 (App'x at 50-52).

Prof. Hazen's report does not rebut these conclusions, presumably because it cannot. It does not dispute that Mamma.com and its agents, in fact, failed to obtain confidentiality agreements or that the PIPE investors went out into the marketplace and engaged in pay-to-hold or borrow transactions on the basis of the PIPE information. Instead, Prof. Hazen's report simply weighs this evidence, applies law to fact, and concludes that Mamma.com's failure to seek confidentiality agreements "does not in any respect impact Defendant Cuban's duty of confidentiality and attendant obligation to refrain from trading in Mamma.com stock" and that the pay-to-hold transactions also "did not in any way impact the defendant's duty of confidentiality and attendant obligation not to trade." Hazen Report ¶¶ 14-15 (App'x at 13-14). Once again, Prof. Hazen makes no attempt to rebut the actual conclusions that Prof. Steinberg draws from the customs and practices of participants in securities transactions, opting instead to cram his "expert" report full of legal arguments and conclusions upon which Prof. Steinberg never opined.

"A rebuttal report may not 'offer new substantive expert opinions unless there is substantial justification for failing to timely offer the new opinions or that the new opinions are harmless.'" *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *8 (S.D. Tex. Oct. 9, 2010) (quoting *Shen Wei (USA) Inc. v. Sempermed USA, Inc.*, 2008 U.S. Dist. LEXIS 109486, at *5-6 (N.D. Ill. June 20, 2008)). "Those portions of an expert's rebuttal that opine on

subjects that were not addressed in the expert report purportedly being rebutted should be excluded." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1065 (C.D. Cal. 2010); *see also First Years, Inc. v. Munchkin, Inc.*, 575 F. Supp. 2d 1002, 1008-09 (W.D. Wis. 2008) (granting motion to strike portions of rebuttal report because they were not proper rebuttals); *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) (excluding custom-and-practice expert as an improper rebuttal witness to experts opining on defective machinery and lost profits; the testimony of rebuttal experts "is limited to rebutting or contradicting the expert testimony initially designated by the opposing party" and such experts "cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts").

All of Prof. Hazen's conclusions that are not direct rebuttals to specific opinions in Prof. Steinberg's report must be excluded on this basis. The SEC has offered no justification for presenting a report that offers wide-ranging legal conclusions with only the faintest relationship to Prof. Steinberg's report's custom-and-practice opinions. Moreover, the SEC's introduction of Prof. Hazen's report is not harmless. In the event that the Court permits Prof. Hazen to instruct the jury as to the legal conclusions it should reach, *see infra* § II.C.1, Mr. Cuban will have been deprived of an opportunity to rebut Prof. Hazen's new substantive "opinions" by designating his own corresponding "expert" to instruct the jury how it should apply the law to the facts in Mr. Cuban's favor.

### C.    Professor Hazen's "Opinions" Consist of Legal Conclusions and Interpretations of Evidence

Expert testimony that consists purely of legal conclusions runs afoul of the Federal Rules of Evidence, as it cannot possibly assist the jury in "understanding the evidence" or "determining a fact in issue," Fed. R. Evid. 702(a); it can only encourage the jury to reach conclusions as a result of expert fiat. *See* Fed. R. Evid. 704 advisory committee's note (Federal Rules of Evidence "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach"). Courts in the Fifth Circuit and elsewhere have consistently held that expert testimony on issues of law must be excluded. *See, e.g., Askanase v. Fatjo*, 130 F.3d

11

657, 672-73 (5th Cir. 1997) (affirming exclusion of expert testimony as to whether and to what extent certain officers and directors breached their fiduciary duties to a corporation because "[s]uch testimony is a legal opinion and inadmissible"); *see also Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (affirming exclusion of expert testimony on what a hypothetical party, faced with the facts underlying the dispute, would have done if it had acted reasonably); *Woodard v. Andrus*, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009) (Vance, J.) (granting motion to exclude expert whose opinions focused solely on whether legal standards were satisfied).  Exclusion is required because expert testimony on legal issues usurps the role of the *judge*, who alone may determine what the law is.  Permitting expert testimony on matters of law fosters the possibility that jurors will decide that the expert is more reliable than the judge, and it also presents the risk that the parties will present conflicting testimony as to the applicable law, further confusing the jury.  *See Askanase*, 130 F.3d at 673.

Virtually every single "opinion" in Prof. Hazen's report is a straightforward pronouncement of a legal conclusion that the SEC hopes the Court and the factfinder will adopt in this case.  Prof. Hazen opines widely (and with no factual foundation) on whether the parties were under legal duties, whether such duties were legally enforceable, the proper interpretation and meaning of various contracts and the application of the securities laws, whether certain evidence is or is not relevant to issues in this case, and numerous other such issues.  *See* Hazen Report ¶¶ 1-16 (App'x at 7-14).  As is apparent from even the most cursory reading of Prof. Hazen's verbiage, the "expert opinions" presented in the report consist of "nothing more than legal arguments" based on Prof. Hazen's own interpretation of the law as well as his own interpretation of the evidence.  *See Snap-Drape, Inc. v. Comm'r of Internal Rev.*, 98 F.3d 194, 198 (5th Cir. 1996) (affirming exclusion of expert testimony that consisted of "nothing more than legal arguments"); *see also Aviall Servs., Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 695 (N.D. Tex. 2008) (Fitzwater, J.).

Remarkably, some of Prof. Hazen's legal conclusions, in addition to being inappropriate, are in direct conflict with the law of this case as determined by this Court.  This Court has ruled that an agreement may serve as the predicate duty for liability under the misappropriation theory

of insider trading as long as the defendant "agree[d] to maintain the confidentiality of the information *and* not to trade on or otherwise use it."  *SEC v. Cuban*, 634 F. Supp. 2d 713, 725 (N.D. Tex. 2009).  This ruling was left intact by the Fifth Circuit.  *See  SEC v. Cuban*, 620 F.3d 551, 558 (5th Cir. 2010) (disclaiming any suggestion that it disrupted this Court's determination of whether a sufficient duty existed or what the contours of liability arising from such duty would be).

Prof. Hazen, however, disagrees with this Court's determination that two separate agreements are needed, and his report repeatedly suggests that a duty not to trade flows *automatically* from any duty of confidentiality without the need for a separate agreement.  *See, e.g.,* Hazen Report ¶¶ 1-3, 12, 14 (App'x at 7-8, 11-14).  His deposition testimony confirms this, as Prof. Hazen stated that "as I stated in my report, a – you don't necessarily need two separate agreements, that the duty not to trade can follow from or be implicit in or be included in a confidentiality agreement even though the confidentiality agreement does not explicitly say do not trade."  Hazen Depo. at 46:18-24 (App'x at 146).

Prof. Hazen's public disagreement with the Court's determination of the law dates back to at least 2010, when Prof. Hazen published an article entitled "Identifying the Duty Prohibiting Outsider Trading on Material Nonpublic Information" in the *Hastings Law Journal*.  In that article, Prof. Hazen wrote that this Court had "accepted the questionable defense that a confidentiality agreement, as opposed to a nonuse agreement, cannot be sufficient by itself to invoke the disclose or abstain rule with respect to securities trading."  61 Hastings L.J. 881, 906 (2010) (App'x at 410).[9]  The Court's conclusion that "nondisclosure and non-use are logically distinct," *Cuban*, 634 F. Supp. 2d at 725, in Prof. Hazen's view, was "highly questionable."  61 Hastings L.J. at 906 (App'x at 410).  Prof. Hazen went on to declare that this Court "took a much too narrow view of the misappropriation theory" because "[i]t seems reasonable to presume or infer nonuse from a confidentiality agreement in much the same way that courts have presumed use of nonpublic information from trading while in possession of the information."  *Id.* at 910-12

---

[9] Prof. Hazen's article, "Identifying the Duty Prohibiting Outsider Trading on Material Nonpublic Information," is attached to the Roberts Declaration as Attachment G.

(App'x at 414-16).

Prof. Hazen testified in this case that he still holds these views that he expressed in his 2010 article, and he confirmed in his deposition that these views are expressed in his report. Hazen Depo. at 43:8-46:14 (App'x at 143-46); *see also* Hazen Depo. at 185:2-10 (before Prof. Hazen was retained by the SEC, his "view was that based on the facts as alleged, Mr. Cuban had violated Rule 10b-5 and engaged in improper trading") (App'x at 285). Thus, not only are Prof. Hazen's legal conclusions inappropriate, they are in express, admitted conflict with the controlling law of this case as articulated by this Court.

Moreover, although on their face certain of Prof. Hazen's "opinions" may not appear to be legal conclusions, in fact they derive in a very direct sense from legal conclusions. For example, Prof. Hazen opines that the PIPE investors' pay-to-hold transactions "contrast sharply" with Mr. Cuban's sales because the pay-to-hold transactions were "merely preparatory steps for possible shorting activity *after* the public announcement . . . ." Hazen Report at 2 (App'x at 5). Prof. Hazen's report makes clear, however, that the key difference between Mr. Cuban's sales and the pay-to-hold transactions arises because the pay-to-hold transactions took place "when the existence of the PIPE offering was no longer nonpublic information" but Mr. Cuban's sales "took place *before* the public disclosure of the upcoming PIPE offering, and thus his trades were made on the basis of material nonpublic information." *Id.* ¶ 15 (App'x at 14). Assuming, *arguendo*, that there will be a trial in this case, the jury will be asked to decide whether the PIPE information was material and nonpublic at the time of Mr. Cuban's trades; Prof. Hazen should not be permitted to smuggle through his legal conclusions in the guise of explaining to the jury what pay-to-hold transactions purportedly signify.

The legal conclusions that Professor Hazen reaches are not peripheral to this case. Indeed, Prof. Hazen's report comes close to resolving *all* issues of liability in this case *in a single sentence*: "Defendant Cuban's sell order entered on June 28, 2004 and ensuing sales in the aftermarket and on June 29 violated his confidentiality and related obligations that arose as a result of his earlier phone conversation since these sales were made on the basis of material nonpublic information." Hazen Report ¶ 13 (App'x at 13). While this sentence might be

appropriate in the SEC's closing argument if there were a trial in this case, it is hardly appropriate for an expert to set forth an all-encompassing "opinion" such as this – especially not a mere "rebuttal" expert.

Not only does Prof. Hazen simply provide legal conclusions in his report, he at one point criticizes Professor Steinberg for focusing on customs and practices and *not* providing legal conclusions.  Prof. Steinberg's report observed that, under prevailing customs and practices, if a company wished to communicate confidential information to another person who was not a fiduciary and who did not have a relationship of trust and confidence with the company, the "better practice" would be to get the person to sign a confidentiality or non-disclosure agreement.  Mamma.com, in contrast, did not even attempt do this.  Steinberg Report at 14 (App'x at 44).  Instead of properly trying to rebut this custom-and-practice opinion, Prof. Hazen instead admonishes Prof. Steinberg for invoking practices that "do[] not establish legal standards."  After rejecting Prof. Steinberg's opinion because it focused on "industry practices regarding written nondisclosure agreements," Prof. Hazen concludes that, regardless of such practices, "it is clear that confidentiality obligations arising from oral conversations, like those in this case, are valid and legally enforceable."  Hazen Report ¶ 3 (citing legal authorities) (App'x at 8).  Prof. Hazen goes on to apply his view of the legal standards to the facts and to provide a legal conclusion for the jury.  *Id.*

Prof. Hazen's report makes clear that instead of providing proper rebuttal expert testimony, Prof. Hazen has been offered by the SEC simply to usurp the role of both the judge and the jury.  Prof. Hazen's supposed opinions consist almost exclusively of, and are inextricably permeated with, legal conclusions, interpretations of evidence, decisions as to what evidence is relevant or probative to issues in this case, and bald pronouncements that certain elements of Mr. Cuban's liability are satisfied.  The Court should exclude his report, opinions, and testimony on this basis.

### D.      Professor Hazen Cannot Rehabilitate His Report Through Testimony

As shown above, Prof. Hazen's opinions suffer from, *inter alia*, two fundamental defects: they are not proper rebuttal opinions and they consist almost exclusively of improper legal

conclusions.  At some point before Prof. Hazen's deposition, the SEC and Prof. Hazen apparently grew concerned about these problems, and in particular, about the obvious disconnect between the narrow opinions set forth in Prof. Steinberg's report and the expansive legal conclusions set forth in Prof. Hazen's.  Accordingly, at his deposition, Prof. Hazen attempted to essentially rehabilitate in certain ways the improper opinions that make up his report.

In contrast to the Hazen Report's complete silence regarding customs and practices, Prof. Hazen deployed the phrase "custom and practice" more than *fifty* times during his deposition.  In his deposition Prof. Hazen claimed that virtually all the conclusions he offers in the Hazen Report derive from his understanding of customs and practices.  As Prof. Hazen put it: "I wanted to clarify at the beginning that this is not just my legal experience but that this is based on my experience with the custom and practice."  Hazen Depo. at 79:23-80:10 (App'x at 179-80).

Prof. Hazen even acknowledged that many of the so-called opinions in the report might be considered inadmissible as legal conclusions, but in his deposition (and for the first time) he stated that those *exact same conclusions* are supported by his understanding of customs and practices.  Hazen Depo. at 77:14-78:2  ("I anticipate that my testimony will be on – my expert opinion based on custom and practice.  Some of these conclusions are parallel conclusions that could be legal opinions . . . .") (App'x at 177-78).  For example, Prof. Hazen's report opined that Mr. Cuban's duty of confidentiality and "attendant" duty not to trade was still in effect when Mr. Cuban spoke to Mr. Owen.  *See* Hazen Report ¶ 2 (App'x at 8).  Prof. Hazen described this view as "a combination of a legal opinion, a recitation of facts, and an opinion based on custom and practice."[10]  Hazen Depo. at 99:10-15 (App'x at 199).

Prof. Hazen made clear at numerous other points in his deposition that the "custom-and-practice opinions" in his report are no different from what he would conclude by applying law to

---

[10] As another example, Prof. Hazen provided two bases for his view that Mr. Cuban was under a "legally binding" duty of confidentiality and an "attendant" duty not to trade.  He stated that one basis for his views is a purely legal conclusion, which was inadmissible.  *See* Hazen Depo. at 36:19-37:10 (App'x at 136-37).  But Prof. Hazen also stated that the exact same view was supported because "the other basis for the opinion that I have expertise in as well [is] the *custom and practice*, that the understanding is that once you make an agreement to keep this type of information confidential that includes an agreement not to trade."  *Id.*

fact. *See, e.g., id.* at 21:25-22:12, 28:1-29:3, 37:11-38:19, 101:23-102:20, 205:5-22, 205:25-207:14, 219:8-220:10, 238:6-22, 247:9-249:14 (App'x at 121-22, 128-29, 137-38, 201-02, 305-07, 319-20, 338. 347-49).  When asked to explain the difference in his mind between a legal conclusion and an opinion based on custom and practice, Prof. Hazen could not do so.  He stated that he "cannot tease out with a bright-line test the distinction between what's custom and practice and what is the law" because "they are so intertwined," and the issue of at what point a custom-and-practice opinion becomes an issue of law is "an area outside [his] expertise."  *Id.* at 99:16-101:12 (App'x at 199-201); *see also id.* at 205:25-206:21 (App'x at 305-06).  Prof. Hazen never identifies a single opinion based on custom and practice that differs from what his conclusion would be applying only the law.

Prof. Hazen's attempt to rehabilitate his legal conclusions by pretending that they are actually custom-and-practice opinions should be rejected.  A designated expert witness must submit a report containing "a *complete* statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).  An expert witness cannot fill in gaps in an expert report at a later time, such as through deposition testimony, because "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.  The purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition – as to what the expert witness will testify."  *Hill ex rel. Hill v. Koppers, Inc.*, 2009 WL 4908836, *5 (N.D. Miss. Dec. 11, 2009) (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) (affirming decision to exclude expert reports that were submitted with significant gaps at initial deadline and "supplemented" later).  Exclusion of such later-supplied testimony is "automatic and mandatory" unless the failure to comply with the Federal Rules of Civil Procedure is substantially justified or harmless.  *See Ciomber*, 527 F.3d at 641.

Prof. Hazen's eleventh-hour adoption of "custom and practice" terminology – even though he made no reference whatsoever to "custom and practice" in his report – amounts to a bald attempt to supplement Prof. Hazen's report.  The SEC has not offered any justification for

17

the supplementation of Prof. Hazen's report during Prof. Hazen's deposition, nor is the SEC's attempt to add bases to Prof. Hazen's report harmless, as Mr. Cuban had no opportunity to review the bases for Prof. Hazen's "opinions" that supposedly derive from custom and practice until *after* the Hazen deposition had begun.  *See Ciomber*, 527 F.3d at 642 ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel – *before the deposition* – as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony.") (emphasis added; citations omitted). Every reference to customs and practices in Prof. Hazen's deposition is therefore an improper supplementation of his report.

Moreover, regardless of Prof. Hazen's transparently self-serving and belated deposition testimony, many of the conclusions expressed in Prof. Hazen's report cannot seriously be characterized as opinions that derive from custom and practice.  For example, Prof. Hazen's report opines not only that Mr. Cuban was under a duty of confidentiality and a duty not to trade Mamma.com stock, but that these duties were "*legally binding*."  Hazen Report ¶ 1 (emphasis added) (App'x at 7).  Whether a party has a duty that is legally binding is a conclusion of law. There is no such thing as a duty that is "*legally* binding" as a matter of custom and practice.  The same is true with respect to Prof. Hazen's views as to Mamma.com's failure to obtain a written confidentiality agreement from Mr. Cuban, in which Prof. Hazen explicitly argues that customs and practices should be ignored because oral confidentiality agreements "are valid and *legally enforceable*."  Hazen Report ¶ 3 (citing legal authorities) (emphasis added) (App'x at 8).  Prof. Hazen also opines that "[b]y June 28, 2004, the near certainty of the PIPE offering was material under the test articulated by the Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988)." Hazen Report ¶ 13 (App'x at 13).  The test from *Basic v. Levinson* – to which Prof. Hazen specifically cites – is not a test derived from custom and practice.  It is a rule of law as articulated by the Supreme Court of the United States.  It is difficult to conceive how an expert report could make it any clearer that it is doing nothing more than applying legal authorities to the facts of the case.  Prof. Hazen's "opinions" are unavoidably conclusions of law, and any attempt by SEC to pretend that they are something else must be rejected.

18

Prof. Hazen cannot rehabilitate the inadmissible opinions presented in his report simply by mouthing the words "custom and practice" as many as times as possible during a deposition. His report, opinions, and testimony must therefore be excluded.

### E.     Professor Hazen's Methodology – to the Extent He Employs One at All – is Undisclosed

Leaving aside all of its other flaws as set forth above, Prof. Hazen's report also does not make clear how he reached his various conclusions.  To the extent that Prof. Hazen's report sheds any light on how he reached his conclusions, it strongly suggests that his methods are highly questionable.[11]

To take one example, Prof. Hazen's report concludes that Mr. Cuban's conversation with Mr. Fauré created "a duty of confidentiality and hence an obligation not to trade on the basis of the material, nonpublic information about the PIPE offering and its imminent closing."  Hazen Report ¶ 1 (App'x at 7).  Typically, in determining whether a party had accepted a duty by agreement, the language or conduct of the parties would be paramount.  Prof. Hazen's report, however, contains no reference whatsoever to the language that Mr. Cuban and Mr. Fauré exchanged on their June 28, 2004 telephone call or any of their conduct whatsoever.  Rather, Prof. Hazen's report *begins* with the unexplained conclusion that Mr. Cuban accepted various duties.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").  This unexplained conclusion is characteristic of much of Prof. Hazen's report.

Moreover, the reliability of Prof. Hazen's unexplained conclusions are substantially open to doubt.  Prof Hazen stated in his deposition that in his report "I describe what I reviewed and I

---

[11]  Moreover, certain of the conclusions in Prof. Hazen's report will not assist the jury because they require the application of no expertise.  *See* Fed. R. Evid. 702(a) (expert's knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue").  Many of Prof. Hazen's conclusions – such as his view that Mamma.com followed its code of ethics and its attorney's advice, or his views as to what Mamma.com's advisory agreement with MCF or its Form 20-F say, *see* Hazen Report ¶¶ 4, 5, 7, 12 (App'x at 9-13) – will not help the factfinder.  *See Rolls-Royce Corp.*, 2010 WL 184313, at *10 ("if an expert in stating an opinion is going to do what is essentially nothing more than what a lay jury normally does (i.e., evaluate circumstantial evidence), he must have a reliable basis for stating an *expert* opinion") (emphasis in original).

applied my knowledge and expertise to the facts as I understand them and came to conclusions."
Hazen Depo. at 81:17-20 (App'x at 181); *see also id.* at 82:2-3 ("I did not use any scientific
methodology or et cetera.") (App'x at 182).   It is clear that an expert must base his opinion on
"sufficient facts or data."  Fed. R. Evid. 702(b).  However, Prof. Hazen's report and his
deposition testimony provide no reason to think that that Prof. Hazen properly based any of his
so-called opinions on sufficient facts or data.  He stated in his deposition that his conclusions are
based on "the opinion in particular of the Fifth Circuit in this case and its recitation of the *facts*."
Hazen Depo. at 12:24-13:10 (App'x at 112).  While Prof. Hazen acknowledged during his
deposition that the Fifth Circuit was only reciting allegations from the SEC's Complaint that it
was required to assume were true, Prof. Hazen nevertheless made it clear that in forming many
of the conclusions in his report he relied in part on these exact same allegations.  *Id.* at 13:14-
14:3, 18:3-19:12, 25:16-26:6, 29:18-30:1, 33:22-34:8, 83:1-22, 101:23-102:20, 185:2-19,
229:12-230:16 (App'x at 113-14, 118-19, 125-26, 129-30, 133-34, 183, 201-02, 285, 329-30).

 The SEC's allegations, of course, are not "facts."  When the Fifth Circuit recited these
"facts," it simply assumed all the SEC's allegations to be true and interpreted them in a light
most favorable to the SEC.  *Cuban*, 620 F.3d at 553.  This does not, however, render the SEC's
allegations "facts" for any purpose.  Accordingly, there is no assurance that Prof. Hazen's
conclusions are based on anything more than the SEC's surmise of what the evidence in this case
might show, nor is there any assurance that the allegations upon which Prof. Hazen relied have
any basis in fact or evidence.  *See, e.g., Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th
Cir. 1996) ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence
based on no research at all.  Both analyses result in pure speculation.  We find the testimony
properly excluded on this ground.").

 Prof. Hazen's legal conclusions also appear to be informed by his own personal views or
even assumptions about what the law might be.  As mentioned above, his views as to the
necessity of a separate non-use agreement are contrary to the law as determined by this Court.
*See supra* § II.C.1.  As another example, Prof. Hazen straightforwardly opines that Arnold Owen
"*did not have the authority* to waive or terminate the confidentiality obligation and attendant

obligation not to trade that was created in Defendant Cuban's earlier conversation" with Mr. Fauré.  Hazen Report ¶ 2 (emphasis added) (App'x at 8).  Prof. Hazen appears to be opining on the scope of Mr. Owen's agency to his principal Mamma.com.  Mamma.com was a Quebec corporation.  Prof. Hazen could point neither to any specific research he had done into Quebec agency law nor any identifiable principle of Quebec law that he relied upon.  Instead, he stated that "I assume it is a general common law jurisdiction" and that he was "sure" that he knew some law there because he has done some "comparative research."  Hazen Depo. at 104:22-105:12 (ultimately recalling no knowledge of the law of agency in Quebec "other than I assume adherence to general common law principles which would include the law of agency as we have it here") (App'x at 204-05); *compare, e.g., Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. "Rosvoorouzhenie,"* 172 F. Supp. 2d 79, 92 (D.D.C. 2001) ("To make matters more complicated, *Quebec is the lone Canadian province that follows a civil code, rather than the common law*.") (emphasis added).

It thus appears that, in reaching certain conclusions, Prof. Hazen has simply assumed what the applicable law is.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) ("the word 'knowledge' [in Fed. R. Evid. 702] connotes more than subjective belief or unsupported speculation"); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. 'Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'") (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).  Even if Prof. Hazen's legal conclusions were proper, expert opinions such as Prof. Hazen's that are rooted in assumptions and hypothetical allegations instead of a reliable methodology and concrete facts must be excluded.

### F.   Professor Hazen is Unqualified to Offer Opinions on the Matters He Purports to "Rebut"

Federal Rule of Evidence 702 requires that, before an expert may testify as an expert witness, the expert must be qualified "by knowledge, skill, experience, training, or education . . . ."  "A district court should refuse to allow an expert witness to testify if it finds that the

witness is not qualified to testify in a particular field or on a given subject."  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  Experts are often found to be unqualified to express views on subjects outside their areas of expertise, even when the subject is related to the expert's area of expertise.  *See, e.g., id.* at 937-38 (mechanical engineer not qualified as expert in accident reconstruction; expert's "'expertise' in accident reconstruction was no greater than that of any other individual with a general scientific background"); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 226-27 (5th Cir. 2007) (polymer scientist whose "only experience with tires is as a consumer" not permitted to testify as to design and manufacture of tires, even if polymer science could be applied to tire construction).

The customs and practices of securities transactions fall squarely outside Prof. Hazen's area of expertise.  Prof. Hazen is a professor of securities law with expertise in the substance of securities law and regulation and related fields of law.  Hazen Report at 2-4 (App'x at 5-7).  The Hazen Report does not identify any qualification relating to custom and practice.  *See id.* at 2-4 (including, in a section entitled "Basis of Expert Opinions," that Prof. Hazen relies on his "many years of experience as an expert on securities and fiduciary law generally, and insider trading in particular") (App'x at 5-7).  The "qualifications" section does not even use the term "custom and practice."  *Id.*  Nor does the Hazen Report identify any practical experience that Prof. Hazen has that would have exposed him to customs and practices relating to securities transactions.  Prof. Hazen's deposition testimony makes clear that his limited exposure to customs and practices comes from, for example, reading case law and chatting with actual legal practitioners at continuing-education courses.  Hazen Depo. at 21:25-24:9 (App'x at 121-24).  Put another way, to the extent that Prof. Hazen has any familiarity in customs and practices surrounding securities transactions whatsoever, it is *not* his self-identified area of expertise, and it appears to be nothing more than an incidental by-product of his acquisition of expertise in substantive securities law.[12]

## III.    CONCLUSION

---

[12] Prof. Hazen's utter lack of practical experience contrasts sharply with the practical experience of Prof. Marc Steinberg, who spent several years practicing at the Securities and Exchange Commission as well as serving as of counsel to law firms and providing consulting services.  Curriculum Vitae of Marc Steinberg (Roberts Decl. Attachment D) at 2-4 (App'x at 56-58).

For the foregoing reasons, all of Prof. Hazen's opinions and testimony should be excluded from this matter.

Dated: October 19, 2012
Washington, D.C.

By:      _/s/  Lyle Roberts_____
Lyle Roberts (*pro hac vice*)
D.C. Bar No. 464789
George E. Anhang (*pro hac vice*)
D.C. Bar. No 461936
Kyle P. Reynolds
D.C. Bar. No. 999815
COOLEY LLP
777 Sixth St., NW, Suite 1100
Washington, D.C. 20001
Tel. (202) 842-7855
Fax (202) 842-7899
lroberts@cooley.com
ganhang@cooley.com
kreynolds@cooley.com

Stephen A. Best
D.C. Bar No. 428447
Brian D. Nysenbaum (*pro hac vice*)
D.C. Bar No. 977191
BROWNSTEIN HYATT FARBER
SCHRECK LLP
1350 I Street NW, Suite 510
Washington, D.C. 20005
Tel. (202) 747-0500
Fax (202) 296-7009
sbest@bhfs.com
bnysenbaum@bhfs.com

Leslie A. Maria (*pro hac vice*)
D.C. Bar No. 484806
SCHIFF HARDIN LLP
901 K Street, NW
Washington, D.C. 20001
Tel. (202) 778-6419
Fax (202) 778-6460
lmaria@schiffhardin.com

Christopher J. Clark (*pro hac vice*)
LATHAM & WATKINS LLP

885 Third Avenue
New York, New York 10022
Tel. (212) 906-1200
Fax (212) 751-4864
christopher.clark2@lw.com

*Attorneys for Defendant Mark Cuban*

*OF COUNSEL:*
Thomas M. Melsheimer
Texas Bar No. 13922550
Steven H. Stodghill
Texas Bar No. 19261100
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Tel. (214) 747-5070
Fax (214) 747-2091
melsheimer@fr.com
stodghill@fr.com