IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION, §
§
Plaintiff, §
§ Civil Action No. 3:08-CV-2050-D
VS. §
§
MARK CUBAN, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this civil enforcement action brought by plaintiff Securities and Exchange

Commission ("SEC") against defendant Mark Cuban ("Cuban") under the misappropriation

theory of insider trading, each party moves to exclude the testimony and reports of the other

party's experts.  For the reasons explained, the court grants in part and denies in part the

motion addressed to one expert, denies the motion as to another expert, and denies as moot

the motions addressed to the remaining two experts.

I

Stated summarily,[1] the SEC alleges that Cuban violated § 17(a) of the Securities Act

of 1933, § 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated

thereunder by selling shares of stock in Mamma.com Inc. ("Mamma.com") after learning

---

[1] Because the background facts and procedural history of this case are set out in prior opinions, the court will summarize only the facts, procedural history, and law necessary to explain this decision.

material, nonpublic information concerning a planned private investment in public equity ("PIPE") offering by the company.[2] According to the SEC, Cuban deceived Mamma.com by agreeing to maintain the confidentiality of material, nonpublic information concerning the PIPE and not to trade on the information, and then selling his stock in the company without first disclosing to Mamma.com that he intended to trade on the information, thereby avoiding substantial losses when the stock price declined after the PIPE offering was publicly announced.  Cuban denies the SEC's allegations.

The SEC moves to exclude the testimony and reports of the two expert witnesses Cuban has designated: Professor Marc I. Steinberg ("Prof. Steinberg") and Dr. Erik R. Sirri ("Dr. Sirri").  Cuban moves to exclude the reports and testimony of the SEC's two expert witnesses: Professor Thomas Lee Hazen ("Prof. Hazen") and Dr. Clemens Sialm ("Dr. Sialm").

II

The court decides these motions in its role as gatekeeper under Fed. R. Evid. 702. *See, e.g., Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).  "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable."  *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526

---

[2]In June 2007 Mamma.com changed its name to Copernic Inc.  As in prior opinions, the court will refer to the company as Mamma.com.

U.S. 137, 147 (1999)).   Neither party challenges an expert's qualifications; each is knowledgeable and experienced in his field and in the subjects on which he opines.   The parties instead challenge the opinions on grounds of unreliability or irrelevance.

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"   *Pipitone*, 288 F.3d at 245 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).   "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'"   *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'"   *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Fed. R. Evid. 702(c) (requiring that "testimony is the product of reliable principles and methods").   Expert testimony "must constitute 'more than subjective belief or unsupported speculation.'"   *Nunn*, 2010 WL 2540754, at *2 (quoting *Daubert*, 509 U.S. at 590).   The court reviews the expert's methodology, not the conclusions generated by it.   *Nunn*, 2010 WL 2540754, at *4 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)).   This review is usually conducted by considering the five nonexclusive *Daubert* factors.[3]   But these factors "'may or may not be pertinent in assessing

_____

[3]The five nonexclusive *Daubert* factors are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and

- 3 -

reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of the testimony.'" *Nunn*, 2010 WL 2540754, at *4 (quoting *Kumho*, 526 U.S. at 150).

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). If expert testimony can withstand a *Daubert* challenge, then criticism of it "affects the weight to be assigned to that opinion and should be left for the jury's consideration." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 485 (5th Cir. 2008) (citation, alterations, emphasis, and ellipses omitted).

III

The motions to exclude Prof. Steinberg and rebuttal expert Prof. Hazen are both moot. The SEC's motion to exclude Prof. Steinberg's testimony was filed before the court decided Cuban's summary judgment motion. In his opposition to the SEC's motion to exclude, Cuban maintains that

> Professor Steinberg's opinions will be relevant *if and only if:* (i) the Court were to reject the foregoing and deny the summary judgment motion, (ii) the Court's summary judgment ruling were to indicate that Mr. Cuban could be deemed to have assumed a duty to keep the PIPE information confidential even if he did not do so by "agreement," so long as Mamma.com could still be shown to have had a reasonable expectation of

---

publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

confidentiality, and (iii) as such, the jury would be asked to determine whether any expectation of confidentiality that Mamma.com had was *reasonable* even if no legally binding confidentiality agreement was formed. In these circumstances, Professor Steinberg's principal opinion, and also his other, related opinion, would be germane to whether Mamma.com's expectation of confidentiality (if any) was reasonable.

D. Opposition to Mot. to Exclude Steinberg 1-2 (emphasis in original); *see id.* at 5 (stating same position).  In the summary judgment ruling, the court adhered to its prior decision that, "to establish liability under the misappropriation theory of insider trading in the absence of another legal duty to refrain from trading on or otherwise using material, nonpublic information for personal benefit (such as a duty arising from a fiduciary relationship), the SEC could rely on an express or implied agreement."  *SEC v. Cuban*, 2013 WL 791405, at *1 (N.D. Tex. Mar. 5, 2013) (Fitzwater, C.J.) ("*Cuban IV*") (citing *SEC v. Cuban*, 634 F.Supp.2d 713, 725 (N.D. Tex. 2009) (Fitzwater, C.J.), *vacated*, 620 F.3d 551 (5th Cir. 2010)).  The court did not "indicate that Mr. Cuban could be deemed to have assumed a duty to keep the PIPE information confidential even if he did not do so by 'agreement,' so long as Mamma.com could still be shown to have had a reasonable expectation of confidentiality." The SEC does not allege that Cuban and Mamma.com had a fiduciary relationship or that another duty—apart from an agreement—supports its misappropriation theory claim. Professor Steinberg's opinions are therefore irrelevant, and the SEC's motion to strike is moot.

Cuban's motion to exclude the opinions, testimony, and report of Prof. Hazen is also moot.  The SEC states in response to Cuban's motion that "[i]f the [SEC's] motion to exclude

Steinberg's testimony is granted, Cuban's motion to exclude Hazen's rebuttal testimony will be moot."  P. Opposition to Mot. to Exclude Hazen 1.  Because Cuban will not be offering Professor Steinberg's opinion testimony at trial, his motion to exclude the opinions, testimony, and report of Prof. Hazen is denied as moot.

IV

Cuban moves to exclude the opinions of Dr. Sialm, the SEC's expert, regarding materiality.

A

For Cuban to be liable for insider trading, the SEC must show that he traded on material, nonpublic information.  *Cuban IV*, 2013 WL 791405, at *11 (citing *United States v. O'Hagan*, 521 U.S. 642, 652, 655 n.7 (1997)).  As the court explained in *Cuban IV*,

> to fulfill the materiality requirement there must be a substantial likelihood that the . . . fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.  A fact is material if there is a substantial likelihood that, under all the circumstances, the . . . fact would have assumed actual significance in the deliberations of the reasonable investor.

*Id.* (citations, internal quotation marks, and brackets omitted; ellipses in original).

B

Cuban objects on the grounds of reliability and relevance to Dr. Sialm's primary opinion: that a reasonable investor would consider important for investment decisions information about Mamma.com's PIPE offering because its characteristics of warrants, discounts, and hedge fund investors would be expected to result in a stock price decline when

- 6 -

the offering was announced.

1

Dr. Sialm conducted a study of the announcement effect that PIPE offerings had on the price of the issuer's common stock. He started with a sample of 355 common stock PIPE transactions that occurred between January 2003 and May 2004.[4] For all 355 PIPE offerings, he measured the effect that announcing the offering had on the issuer's stock price. He used an event study to measure this effect, which is a well-established methodology that Cuban's expert, Dr. Sirri, also uses. Dr. Sialm then narrowed the sample to the PIPE offerings that had characteristics he considered important to investors based on his review of the literature: PIPE offerings that included warrants and discounts, and whether the investors were hedge funds.[5] For each of three subsamples—warrants only, warrants and discounts, and warrants, discounts, and hedge fund investors—Dr. Sialm calculated the mean and median announcement effects. The results show that each subsample had a negative announcement effect, and with each additional characteristic, a greater average price decline. Dr. Sialm thus opines that, because Mamma.com's PIPE offering had warrants, discounts, and hedge fund

---

[4]To obtain this sample of 355 PIPE transactions, Dr. Sialm excluded issuers who had a market capitalization of less than $10 million, a stock price of less than $1 per share, or insufficient data. Cuban does not challenge this aspect of Dr. Sialm's methodology.

[5]Cuban asserts that Dr. Sialm should be excluded from opining based on the characteristic regarding hedge fund investors because there is no evidence that Cuban learned the identity of the investors in the Mamma.com PIPE offering. Because this objection depends on predicate evidence, the court declines to exclude it on Cuban's motion. Instead, Cuban can address this by objection at trial.

investors, a reasonable investor would have expected a negative announcement effect and therefore would have considered information about the PIPE offering "important for investment decisions." D. Mot. to Exclude Sialm App. 24.

The results of Dr. Sialm's study provide circumstantial evidence that the involvement of warrants, discounts, and hedge fund investors result in a negative announcement effect because the results show a correlation between the two. Based on evidence that investors consider such characteristics important—shown by the decline in stock price that follows the announcement of PIPE offerings with such characteristics—Dr. Sialm opines that information about Mamma.com's PIPE offering would be important to a reasonable investor. His opinion is based on the importance to investors of different characteristics of Mamma.com's PIPE offering. Dr. Sirri, Cuban's expert, takes a different, *ex post* approach. He determines whether a reasonable investor would have considered the information important by analyzing Mamma.com's stock price following the PIPE offering announcement.[6]

2

Cuban maintains that Dr. Sialm errs in considering only three characteristics to form his opinion about materiality. He posits that Dr. Sialm should account for the total mix of information available to the investor because, otherwise, there is no way to tell whether the

---

[6]Cuban also contends that Dr. Sialm's opinion is wrong because Dr. Sirri's study shows that investors did not view the information as material. Assuming *arguendo* that Dr. Sirri's event study is correct, it is not grounds for excluding Dr. Sialm's analysis.

PIPE offering information substantially alters the total mix of information available about Mamma.com. Cuban asserts that no peer-reviewed literature supports Dr. Sialm's methodology of considering information that is less encompassing than the total mix of information.

Cuban does not challenge Dr. Sialm's calculations in the event study of the 355 PIPE offerings or in determining the mean and median announcement effects of offerings in the sample that had warrants, discounts, and hedge fund investors. He instead attacks Dr. Sialm's opinion that, because the results show that certain characteristics are important, and Mamma.com's PIPE offering had these characteristics, the PIPE offering information would be important to a reasonable investor. Cuban maintains that the opinion misleadingly assumes that these three characteristics alone are all a reasonable investor would need to know. He posits that, if Dr. Sialm had also limited his sample by Mamma.com's industry, there would have been no statistically significant announcement effect.

The court declines to exclude Dr. Sialm's opinion on this basis. The opinion relates to the significance of the information—a component of the materiality inquiry—not to the materiality inquiry in all its dimensions. As the SEC recognizes, the opinion "is one aspect of the total mix of information for the jury to consider in making a determination." P. Opposition to Mot. to Exclude Sialm Br. 10. "Cuban is free to identify other relevant facts for the jury, if any, that he believes should be considered when assessing any alteration of the total mix of information." *Id.* Cuban's objection therefore goes to the weight, not the

admissibility, of the evidence.[7]

The SEC has demonstrated by a preponderance of the evidence that Dr. Sialm's opinion is reliable and relevant. His calculations are not challenged, and Cuban has not pointed to any authority that supports barring an expert from opining about the importance of particular information that can assist the jury in determining materiality.[8]

3

Cuban maintains that Dr. Sialm's opinion is irrelevant because investors did not have access to his study to conclude that certain features of PIPE offerings were important or caused a negative announcement effect, and there is no evidence that investors intuitively knew this to be true based on experience. Cuban essentially argues that Dr. Sialm's opinion is so novel that a reasonable investor would not have known it beforehand. The court disagrees. Dr. Sialm's study is a reflection of investor behavior. The theory behind

---

[7]Cuban's objection that Dr. Sialm narrowed the sample size of the 355 PIPE offerings by cherry-picking the characteristics of discounts, warrants, and identity of investors also goes to the weight, rather than the admissibility, of the evidence.

[8]Cuban also objects that Dr. Sialm lacks any basis to opine that investors would find the magnitude of the warrants and discounts important. Although Dr. Sialm's report mentions that Mamma.com's PIPE offering had higher warrants, discounts, and percentage of hedge fund investors than most PIPE offerings, he does not rely on these differences in opining about the importance of the Mamma.com PIPE offering information. *See* D. Mot. to Exclude Sialm App. 21-22 (Dr. Sialm report) (basing opinion that information about PIPE offerings with comparable characteristics to Mamma.com's would be considered important for investment decisions "on the fact that the [Mamma.com] PIPE provided its hedge fund investors valuable incentives in the form of warrants and discounts," and not referring to the magnitude of Mamma.com's warrants and discounts). Because Dr. Sialm does not opine that investors would consider the magnitude of the discounts and warrants significant, Cuban's objection to the report on this basis is moot.

announcement-effect studies (which both Dr. Sialm and Dr. Sirri use) is that the importance to investors of a particular PIPE offering can be determined by analyzing its announcement effect. Accordingly, by following essentially the same logic employed by Dr. Sirri, Dr. Sialm's study shows a negative announcement effect for PIPE offerings with certain characteristics, and is thus circumstantial evidence that investors considered the characteristics important.[9]

Cuban also maintains that, because Dr. Sirri's analysis of Dr. Sialm's study showed that only 35 of the total sample of 355 PIPE offerings resulted in a statistically significant effect on price, Dr. Sialm lacks a basis to opine that a reasonable investor would have expected a negative announcement effect. This argument goes to the weight of Dr. Sialm's opinion.

C

Cuban objects to other parts of Dr. Sialm's report and rebuttal report.

1

Cuban seeks to exclude Dr. Sialm's opinions about Cuban's understanding and opinion about PIPE offerings. In the "Background" section of his expert report, Dr. Sialm quotes public statements Cuban made about PIPE offerings. He concludes that "[t]hese

---

[9]Cuban challenges Dr. Sialm's opinion on another basis. He posits that studies at the time of Mamma.com's PIPE offering showed that private placements of equity, which are similar to PIPE offerings, were associated with positive, not negative, effects on stock price. This argument goes to the weight of Dr. Sialm's opinion. Moreover, information with negative *or* positive effects on stock price can be material.

statements by [Cuban] indicate that he understood that PIPE transactions with warrants and discounts have a dilutive effect to existing shareholders and an expected negative price effect." D. Mot. to Exclude Sialm App. 14. Dr. Sialm refers to these public statements as further support for his opinion that a reasonable investor would consider the Mamma.com PIPE offering information important.

Cuban objects that Dr. Sialm is improperly opining about Cuban's state of mind. He maintains that his public statements do not support Dr. Sialm's opinion because materiality is an objective inquiry about the "reasonable investor," and he knew additional, nonpublic information (e.g., an investigation into Mamma.com's connection with a known stock swindler).

The SEC contends that Dr. Sialm's discussion about Cuban's public statements is appropriate. It posits that Dr. Sialm was not opining about Cuban's understanding but was noting the statements as corroboration for Dr. Sialm's expert analysis. The SEC refers to Cuban's statements as admissions of fact that provide Dr. Sialm with additional evidentiary support for the conclusion that warrants and discounts are important characteristics of PIPE offerings. The SEC maintains that Cuban's objection can be cured by adjusting Dr. Sialm's testimony to omit mention of what Cuban "understood" and instead simply to state the fact that Cuban made these statements. Cuban agrees with this approach, provided that Dr. Sialm does not opine about Cuban's state of mind or knowledge.

The court declines to exclude Dr. Sialm's opinion and testimony regarding Cuban's public statements about PIPE offerings, provided they are modified in the manner Cuban

proposes and to which the SEC appears to agree.

2

Cuban moves to exclude Dr. Sialm's rebuttal opinion that Dr. Sirri's study is "unreliable," contending that it is based on an *ex post* perspective. Dr. Sialm opines that Dr. Sirri's event study is in part flawed and unreliable because analyzing the actual announcement effect does not capture what a reasonable investor would have expected. Cuban posits that Dr. Sialm fails to cite any authority to support this opinion.

The SEC retreats from Dr. Sialm's characterization that Dr. Sirri's report is "unreliable"; it maintains that Dr. Sialm was merely making the point that, because the price reaction to Mamma.com's announcement of the PIPE offering is not an *ex ante* analysis, it does not capture the price effect that a reasonable investor would have expected.

As refined, Dr. Sialm's opinion is a relevant and reliable criticism of Dr. Sirri's study. Cuban's motion is therefore denied.

3

Cuban moves to exclude Dr. Sialm's rebuttal opinion that the change in Mamma.com's stock price after the PIPE offering announcement was "economically significant." Dr. Sialm opines that, even if Dr. Sirri did not consider the 9.7% decline in stock price to be statistically significant, the test of statistical significance has limited power here because Mamma.com's stock had a volatile price. Dr. Sialm opines that the decline in stock price is "economically meaningful or highly important to a reasonable investor." D. Mot. to Exclude Sialm App. 101. He also opines that Cuban's avoided loss of $714,000 is

economically meaningful.

Cuban maintains that "economic significance" has no scientific meaning and that such a characterization cannot be tested. The SEC acknowledges that "economic significance" is not an empirical test, but it asserts that it is a term commonly used by economists.

Dr. Sialm uses the terms "economically significant" and "economically meaningful" in the section of his rebuttal report that criticizes Dr. Sirri for opining only about the statistical significance of the announcement effect on Mamma.com stock. *See* D. Mot. to Exclude Sialm App. 101-02. Cuban objects specifically to the terms "economically significant" or "economically meaningful," and not to Dr. Sialm's critique of the narrowness of Dr. Sirri's opinion. This objection relates to the weight to be given Dr. Sialm's opinion. And because Cuban's other objections relate to the weight to be given Dr. Sialm's rebuttal opinion, the court denies Cuban's motion.

V

The SEC moves to exclude the testimony and reports of Cuban's expert, Dr. Sirri. Dr. Sirri opines that the PIPE offering information Cuban received was immaterial and had become public by the time he sold his shares.

A

1

Regarding whether the information on which Cuban allegedly traded was nonpublic, Dr. Sirri opines that the information Cuban possessed "was likely already incorporated into the price of the [Mamma.com stock]" by the time Cuban sold his shares on the eve of the

PIPE's announcement.  P. Mot. to Exclude Sirri App. 11.  As the court held in *Cuban IV*,

> [i]nformation becomes public when disclosed to achieve a broad dissemination to the investing public generally and without favoring any special person or group, or when, although known only by a few persons, their trading on it has caused the information to be fully impounded into the price of the particular stock.

*Cuban IV*, 2013 WL 791405, at *10 (quoting *SEC v. Mayhew*, 121 F.3d 44, 50 (2d Cir. 1997)).

Dr. Sirri provides four reasons to support his opinion.  First, he relies on the Form 20-F that Mamma.com publicly filed in May 2004 and that states that Mamma.com retained Merriman Curhan Ford & Co. ("Merriman") to "provide investment banking services to [Mamma.com] which may include" a PIPE, another type of capital raising transaction, an acquisition of Mamma.com, or acquisitions by Mamma.com.  P. Mot. to Exclude Sirri App. 75.  Dr. Sirri opines that the form "conveyed information about the upcoming PIPE offering to the marketplace."  *Id.* at 11; *see also id.* at 22 (stating that the Form 20-F filing "made this information concerning a possible PIPE publicly available to all market participants").

Second, Dr. Sirri opines that the PIPE offering information likely seeped into the market and was reflected in the stock price because the hedge funds informed about Mamma.com's PIPE likely discussed the information with other traders and investors.  As support, Dr. Sirri cites evidence that hedge funds received information about Mamma.com's PIPE offering approximately three months before it was announced, they were not asked to keep the information confidential, and they did not consider the information to be nonpublic

or confidential.  Dr. Sirri also points out that one hedge fund learned of the PIPE offering from another hedge fund instead of from Merriman or Mamma.com.

Third, Dr. Sirri opines that certain activity by the hedge funds who knew of the PIPE offering indicated to certain market participants information about the upcoming offering. In the months leading up to the offering, a few of the hedge funds that invested in Mamma.com's PIPE offering engaged in pre-borrowing arrangements, which are essentially reservations of shares so that, when an investor wants to sell short, there will be available shares.  Pre-borrowing arrangements reduce the number of shares available for other market participants to sell short, and therefore other market participants can infer that some investors are planning to sell short.  Dr. Sirri cites one example of an investor's noticing the reduction in the Mamma.com shares available for short selling.  Dr. Sirri opines that, in conjunction with Mamma.com's Form 20-F, the pre-borrowing arrangements "served to further incorporate the information of the upcoming PIPE offering into the price of the [stock]."  P. Mot. to Exclude Sirri App. 12.

Fourth, Dr. Sirri opines that there was a statistically significant increase in the volume of short sales on the day before the PIPE offering was announced.[10]  He states that this abnormal increase in volume of short selling is consistent with an awareness by market participants (other than the hedge funds participating in the PIPE offering) of the impending

_____

[10]Dr. Sirri calculates that the average daily short sale volume of Mamma.com shares from June 1, 2004 to June 27, 2004 was approximately 200,000.  On June 28, 2004 there were 1,329,904 shares sold short.

PIPE offering, and because selling short is a strategy to profit based on this information.  He thus concludes that the PIPE offering information was already incorporated into the price of Mamma.com's stock when the short sales were made.

The SEC maintains that Dr. Sirri's ultimate opinion that the PIPE offering information was incorporated into the price before Cuban sold his shares lacks sufficient basis because the four grounds on which he relies are flawed or provide only speculation in support of his opinion.

2

Generally, challenges "to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  This rule does not apply when the bases are "'of such little weight that the jury should not be permitted to receive that opinion,'" which occurs when "'that testimony would not actually assist the jury in arriving at an intelligent and sound verdict.'"  *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (quoting *Viterbo*, 826 F.2d at 422).  Even a credentialed expert like Dr. Sirri must have reliable support for his opinions; a bare, subjective opinion is inadmissible. *See Viterbo*, 826 F.2d at 424 (affirming exclusion of credentialed expert's opinion that was unsupported by reliable evidence).

The court declines to exclude Dr. Sirri's ultimate opinion that the PIPE offering information was likely incorporated into Mamma.com's stock price, because his second ground provides sufficient support.  The second ground—that hedge funds likely discussed

the PIPE offering information with market participants beyond those informed by Merriman or Mamma.com—has an evidentiary basis and is within his expertise concerning equity markets.  Dr. Sirri is a professor of finance and has held positions with the SEC, such as Chief Economist and Director of the Division of Trading and Markets. The SEC does not challenge his asserted expertise in topics such as equity markets and insider trading. Combined with this experience and specialty knowledge, Dr. Sirri relies on evidence showing that the hedge funds whom Merriman informed of the PIPE offering were not given confidentiality agreements, and that one hedge fund told another hedge fund about the offering.  Evidence that the PIPE offering information was discussed with market participants not covered by confidentiality agreements is reliable support for Dr. Sirri, with his experience, to opine that the information was likely incorporated into the stock price.

The court also declines to exclude Dr. Sirri's testimony regarding the first and third bases, even though they do not of themselves provide sufficient support for his ultimate opinion.  Dr. Sirri avers that his ultimate opinion is based on all four reasons "[t]aken together," P. Mot. to Exclude Sirri App. 12, and the first and third reasons have reliable sources and do provide some support. Form 20-F neither specifies that a PIPE offering will occur nor identifies when, but it does publicly disclose the possibility of a PIPE offering. Similarly, Dr. Sirri does not explain how the reduction in shares caused by pre-borrowing arrangements indicates specifically that a PIPE offering is about to occur, but it does indicate that investors are preparing to engage in short selling, which could be motivated by an impending PIPE offering.  These bases, while not specific indications of an impending PIPE

offering, are based in fact and offer some support for Dr. Sirri's ultimate opinion.

The court grants the SEC's motion to exclude, however, as to Dr. Sirri's fourth ground: the increased volume of short sales the day before the PIPE offering was announced. Citing Dr. Sialm's rebuttal report, the SEC contends that the increase in volume of short sales is not statistically significant because the entire volume of sales increased on June 28, 2004, resulting in roughly the same proportion of short sales to total sales.[11]  In response to this argument, Dr. Sirri testified at his deposition that the fact that the proportion of short sales to total sales remained roughly the same did not alter his conclusion, because he knew of no basis to expect that, when total volume rose, short sale volume would also rise.  Dr. Sirri maintained that the increase in volume of short sales "speaks for itself," and that the increase in total sales is also consistent with the PIPE offering information's coming into the marketplace.  D. Opposition to Mot. to Exclude Sirri App. 62.

Cuban has failed to meet his burden of demonstrating that Dr. Sirri's opinion is reliable in this respect.  Dr. Sirri is opining about behavior: that the increase in short sales shows that the PIPE offering information was available to market participants other than the participating hedge funds.  He reasons that, because there was no new information that would have caused this increase in short sale volume, the increase is consistent with an awareness of the impending PIPE offering by market participants seeking to profit by short selling

_____

[11]While the volume of short sales rose to 1,329,904, there were 9,383,591 total sales that day.  Dr. Sialm calculates that the ratio of the volume of short sales to total sales was 13.7% from June 1, 2004 to June 25, 2004, and on June 28, 2004 was 14.2%.

before the announcement.  But Dr. Sirri's ability to interpret the meaning of the increase in short sale volume is undermined because the volume of total sales also rose, and the proportion remained roughly the same.  Dr. Sirri maintains that he knows of no literature holding that proportionality between the volume of short sales and total shares should naturally remain the same when the volume of total sales changes, and thus does not agree that the increase in volume of total sales undermines his conclusion.  But the proponent of an expert opinion bears the burden of proving reliability, and Cuban has failed to provide support to justify Dr. Sirri's interpretation of the increased volume of short sales in light of the alternative view that the volume rose simply because the volume of total sales increased. It is insufficient for Dr. Sirri to make the *ipse dixit* assertion that a statistically significant increase in volume of short sales "speaks for itself" when the proportion of short sales remains roughly the same.

Dr. Sirri's opinion is also flawed in that he fails to identify who engaged in short selling on June 28, 2004.  He relies on the increased volume to opine that market participants other than the hedge funds participating in PIPE offering were aware of the impending offering and engaged in short selling.  But he fails to specify that the increased short selling was not by the participating hedge funds. There is therefore no evidence that other market participants engaged in short selling, which is Dr. Sirri's basis for opining that market participants were aware of the impending PIPE offering.

Because Cuban has failed to meet his burden to prove the reliability of Dr. Sirri's fourth basis for his ultimate opinion that the PIPE offering information was incorporated into

Mamma.com's stock price when Cuban sold his shares, the court grants the SEC's motion to exclude in this respect.

B

The SEC also moves to exclude Dr. Sirri's opinion regarding materiality.  Dr. Sirri conducted a study to determine whether Mamma.com's announcement of its PIPE offering had an effect on the price of its stock.  He opines that there was not a statistically significant price reaction, and that, "[b]ased on this statistical analysis, the information Cuban was given concerning the PIPE was not material at the time of the public announcement."  P. Mot. to Exclude Sirri App. 17.

1

The SEC contends that Fifth Circuit case law precludes the use of *ex post* price reaction analysis as evidence of materiality.  The SEC relies on cases describing materiality as "what a reasonable investor *would have expected* when information becomes known by the market, i.e., the likely potential effect of the information."  P. Mot. to Exclude Sirri Br. 12 (emphasis added).  Although this description is essentially correct, it does not follow that an *ex post* study cannot be probative of whether a reasonable investor would have viewed particular information as significantly altering the total mix of available information.  And the Fifth Circuit has not rejected the probative value of *ex post* studies.  In fact, it recently noted that "price impact evidence . . . is probative of materiality," and that "evidence that a stock's price was unaffected by a misrepresentation is convincing evidence that a

- 21 -

misrepresentation was not material."[12] *Erica P. John Fund, Inc. v. Halliburton Co.*, ___ F.3d

____, 2013 WL 1809760, at *6 & n.7 (5th Cir. Apr. 30, 2013) (citing *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997)).  The cases on which the SEC relies

simply state that, in the separate context of fraud-on-the-market theory, the *requirement* that

certain information affect the stock price applies to the element of reliance, not materiality.

*See, e.g., Nathenson v. Zonagen Inc.*, 267 F.3d 400, 415 (5th Cir. 2001); *Milano v. Perot Sys.*

*Corp.*, 2006 WL 929325, at *5 (N.D. Tex. Mar. 31, 2006) (Fitzwater, J.).

2

The SEC also maintains that Dr. Sirri's opinion is an improper legal conclusion that

would inappropriately instruct the jury to accept Cuban's position that the PIPE offering

information was immaterial unless a statistically significant announcement effect is proved.

Cuban responds that Dr. Sirri does not generally opine about materiality; instead, he qualifies

his opinion by introducing it with "[*b*]*ased on this statistical analysis*, the information Cuban

was given concerning the PIPE was not material at the time of the public announcement."

P. Mot. to Exclude Sirri App. 17 (emphasis added).  Despite this qualification, the SEC

objects to Dr. Sirri's use of the term "material."

The court concludes that any jury confusion arising from Dr. Sirri's qualified use of

---

[12]Although the absence of a drop in stock price is evidence that a misrepresentation
was not material, "[s]o far as this court can determine, the Fifth Circuit has never held that
a drop in stock price necessarily reflects the significance that a reasonable investor would
have attached to the information, thereby making the decline in price sufficient of itself to
demonstrate materiality."  *Milano v. Perot Sys. Corp.*, 2006 WL 929325, at *5 (N.D. Tex.
Mar. 31, 2006) (Fitzwater, J.).

the term "material" can be addressed at trial, such as through cross-examination or an appropriate instruction.

3

The SEC also objects to Dr. Sirri's characterization of the results of his study.  The study concluded that the price reaction to Mamma.com's announcement was not statistically significant.  Based on this analysis, Dr. Sirri opines that the PIPE offering information Cuban received was not material, and "not different from movements due to normal stock-specific fluctuations."   P. Mot. to Exclude Sirri App. 17.   The SEC maintains that these characterizations are scientifically inaccurate because Dr. Sirri's study only proves that the price reaction was not statistically significant, but does not prove that the information was not material or that there was no price reaction or no difference from normal price fluctuations.

At bottom, the SEC seeks to limit Dr. Sirri to testifying only about the precise result of his statistical analysis.  The court declines to exclude Dr. Sirri's characterizations of his results because they have a reliable basis in his statistical analysis and any imprecision in his testimony can be addressed by objection or on cross-examination.

Accordingly, except as stated above, the court declines to exclude Dr. Sirri's opinions regarding the materiality or public nature of the PIPE offering information Cuban received.

\* \* \*

For the reasons explained, the court denies as moot the motions to exclude the opinions and reports of Prof. Steinberg and Prof. Hazen, denies the motion to exclude the opinions and reports of Dr. Sialm, and grants in part and denies in part the motion to exclude the opinions and reports of Dr. Sirri.

**SO ORDERED.**

July 23, 2013.


SIDNEY A. FITZWATER
CHIEF JUDGE