**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:08cv2050** |
| **MARK CUBAN,** | |
| **Defendant.** | |

**APPENDIX IN SUPPORT OF**
**DEFENDANT MARK CUBAN'S MOTION FOR USE OF JURY QUESTIONNAIRE**
**AND ADDITIONAL ATTORNEY VOIR DIRE AND SUPPORTING BRIEF**

| EXHIBIT | DESCRIPTION | PAGE NUMBER |
|---|---|---|
| A | Local and national media articles | 1 |
| B | Defendant Mark Cuban's Proposed Juror Questionnaire | 51 |
| C | Juror Questionnaire used in Cf. U.S. v. Black, No. 5 CR 727 (N.D. Ill. 2007) | 53 |

Dated:  August 12, 2013                    Respectfully submitted,


                                           By:  */s/ Thomas M. Melsheimer*_____
                                                Thomas M. Melsheimer
                                                State Bar No. 13922550
                                                melsheimer@fr.com
                                                FISH & RICHARDSON P.C.
                                                1717 Main Street, Suite 5000
                                                Dallas, TX  75201
                                                (214) 747-5070 (telephone)
                                                (214) 747-2091 (facsimile)

                                                Lyle Roberts (*pro hac vice*)
                                                D.C. Bar No. 464789
                                                George E. Anhang (*pro hac vice*)
                                                D.C. Bar No. 461936
                                                COOLEY LLP
                                                1299 Pennsylvania Ave NW, Suite 700
                                                Washington, DC 20004
                                                (202) 842-7855 (telephone)
                                                (202) 842-7899 (facsimile)
                                                lroberts@cooley.com
                                                ganhang@cooley.com

Stephen A. Best
D.C. Bar No. 428447
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, DC 20005
(202) 536-1700 (telephone)
(202) 536-1701 (facsimile)
sbest@brownrudnick.com

Angela M. Papalaskaris (*pro hac vice*)
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
(212) 209-4800 (telephone)
apapalaskaris@brownrudnick.com

Leslie A. Maria (*pro hac vice*)
D.C. Bar No. 484806
SCHIFF HARDIN LLP
901 K Street, NW
Washington, DC 20001
(202) 778-6419 (telephone)
(202) 778-6460 (facsimile)
lmaria@schiffhardin.com

Christopher J. Clark (*pro hac vice*)
N.Y. Bar No. 2854222
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200 (telephone)
(212) 751-4864 (facsimile)
christopher.clark2@lw.com

*Attorneys for Mark Cuban*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of August, 2013, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sends a "Notice of Electronic Filing" to all counsel who have consented in writing to accept this Notice as service of this document by electronic means.


*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer

# EXHIBIT A

# DEALBREAKER

05 Mar 2013 at 5:39 PM

## Even So, Mark Cuban Is Probably Glad He Got Rid Of His Mamma.com Stock
By Matt Levine

To get a sense of how old and long-drawn-out the SEC's insider trading lawsuit against Mark Cuban is, consider this: the company in which he allegedly insider traded was Mamma.com. The .com was *right there in the name*. Future generations – hell, present generations – will indiscriminately add ".com" to the end of words to create an old-timey feel, the way we doeth with "-eth."[1]

Actually it happened in 2004, and I don't even need the "allegedly": there's no dispute that Cuban insider traded. Everyone agrees that:

- Mamma.com was planning to sell some stock in a PIPE offering which would, inevitably, drive down its stock price;
- Mamma.com's CEO called Cuban and told him about the planned PIPE offering in advance, hoping to get Cuban to buy more stock;
- Cuban instead sold the stock he already had, prior to the public announcement of the PIPE deal; and
- Then the PIPE was announced and the stock dropped.

So he had material nonpublic information, and he traded on it, and he avoided losses by doing so. INSIDER TRADING. The only debate is whether he insider traded illegally, which, as I often find myself reminding people, is a separate question. The SEC's lawsuit[2] turns not on the facts above, but on whether Cuban *agreed not to trade* before learning the inside information. Here the evidence is less clear, but there's enough evidence that he did for the SEC to survive summary judgment today and take the case to trial. Here is that evidence:[3]

> There is evidence in the summary judgment record that, on June 28, 2004, on the eve of the PIPE offering, Mamma.com's CEO, Guy Fauré ("Fauré"), emailed Cuban asking to speak with him as soon as possible. Cuban telephoned within five minutes. When Fauré answered the call, he told Cuban, "I've got confidential information." Cuban responded, "Um hum, go ahead," or "Okay, uh huh, go ahead," or something to that effect. Fauré then informed Cuban of the planned PIPE offering. Cuban reacted angrily to this news, and near the end of the conversation said something like, "Now I'm screwed. I can't sell."

Fans of American hedge fund managers or British pub chains may recognize a fact pattern similar to that of David Einhorn's call with Punch Taverns, where Punch asked Einhorn to participate in a capital raise, Einhorn said no, and Einhorn dumped the stock. This got Einhorn in trouble, which took him by surprise, because he clearly did *not* promise not to trade – he was asked to, and said no – and in the U.S. that would be enough to keep him out of trouble. In the U.K. it was not, so, live and learn.

Whenever the SEC tenaciously goes after someone for nine years – and they've had some real ups and downs in this case – it's worth asking what important goal they're trying to accomplish. In the narrow sense, Cuban was at the very least being kind of a dick by dumping Mamma.com's stock after the CEO came to him asking him to support a capital raise. Of course being a dick is the normal method of operations in the capital markets, so it's not much to go on, though if the SEC is right and he'd agreed to keep it confidential and knew that meant he couldn't trade, then, sure, that's bad and he should get sued.

The broader issue, and it's an important one, is that big investors shouldn't be tipped off before PIPE deals and have the opportunity to sell. And this problem is very easily avoided. If you don't want to have these misunderstandings, just get the confidentiality agreement in writing. This doesn't need to be a lengthy negotiated agreement; a one-line email saying "you agree to keep this under your hat and not trade on it until it's public" generally does the trick. And in fact that has become the market standard in the U.S. You don't call someone up and say "hey, we're announcing an equity deal tomorrow, want in?" You have your banker call them up and wall-cross them, with a careful log and preferably an email acknowledgement, before you tell them about the deal.[4]

This has become the market standard in part because of Regulation FD, which forbids companies from telling investors material nonpublic information without getting them to agree to keep it confidential and not trade on it. So, if Cuban is right and the SEC is wrong here, Mamma.com should be in trouble for violating Reg FD by telling him about the PIPE without wall-crossing him. Which I guess gives Fauré et al. some incentive to support the SEC's story.

But, to be fair, it's also the market standard in part because of the SEC's pursuit of Mark Cuban: nine years of litigation isn't much fun for most investors, so many investors want to be wall-crossed for their own protection nearly as much as issuers want to wall-cross them to prevent them from front-running. Part of the reason that this case looks so old-timey in 2013 is that, just by litigating it for nine years, the SEC has done a lot to solve the problem that caused it.

SEC v. Mark Cuban [N.D. Tex.]
Mark Cuban Loses Bid for Judgment Ending SEC Insider Suit [Bloomberg]
SEC Case Against Mavericks Owner Cuban to Proceed [WSJ]

1. *"We doeth" chaps.com my kids too – it's really just a 3rd person singular – but as a vague old-timey indicator its use has expanded beyond its grammar.com.*

2. *GUYS. In my travels I discovered that Mark Cuban is named as a defendant in at least two federal lawsuits in the Northern District of Texas. One is this SEC thing. The other thing ... requires quotation at length. Its entire length:*

> JONATHAN NOWITZKI,
> PLAINTIFF
>
> V.
>
> MARK CUBAN ...

CASE NO. 3-12CV2049-1

MARK CUBAN, D/B/A OWNER NATIONAL
BASKETBALL ASSOCIATION'S DALLAS
MAVERICKS,
DEFENDANT

PRELIMINARY INJUNCTION
TEMPORARY RESTRAINING ORDER
————————————

COMES NOW , THE PLAINTIFF, JONATHAN NOWITZKI, MOVES THIS HONORABLE
COURT TO ISSUE AN ORDER FOR THE DEFENDANT IN THIS SUIT TO RESPOND.
PLAINTIFF FACES IMMINENT DANGER AND BODILY HARM FROM THE DEFEN-
DANT MARK CUBAN , WHO IS OWNER OF THE NBA DALLAS MAVERICKS.PLAIN-
TIFF SEEKS A RESTRAINING ORDER AGAINST MARK CUBAN.
MY NAME IS JONATHAN NOWITZKI, AND I'M THE YOUNGER BROTHER OF
DALLAS MAVERICKS BASKETBALL STAR DIRK NOWITZKI. I CURRENTLY LIVE
IN WURZBURG GERMANY . ON 6/21/2012, I FLEW TO AMERICA TO VISIT MY
BROTHER DIRK WHO TOLD ME THAT HE AND I WERE GOING TO MARK CUBANS
PRESTON HOLLOW MANSION OFF OF DELOACHE AVE TO WATCH GAME 5
OF THE NBA FINALS, HEAT V. THUNDER. AT 7PM, ME & DIRK ARRIVED AT
CUBAN'S MANSION. CUBAN TOOK US TO THE ENTERTAINMENT ROOM AND
WE WERE WATCHING THE GAME, AT HALF TIME MY BROTHER DIRK GOT
UP AND LEFT THE ROOM TO GO TO THE KITCHEN TO MAKE SOME NACHOS.
I WAS LEFT ALONE IN THE ROOM WITH CUBAN. CUBAN WAS INTOXICATED
FROM MILLER LIGHT, HE DRANK 6 BEERS FROM THE BEGINNING OF THE GAME
TO HALF TIME, HIS SPEECH WAS SLURRED, AND HE WAS STUMBLING AROUND.
WHEN DIRK LEFT, MARK CUBAN CAME OVER TO ME AND PUT HIS ARM
AROUND MY SHOULDER AND STARTING KISSING ME ON MY NECK. I SAID
"WHOA CUBAN" " I'M STRAIGHT DUDE, I'M JUST HERE TO WATCH THE GAME"
CUBAN THEN SAID " YOU KNOW YOU WANT ME" AND " I CAN BE YOUR SUGAR
DADDY" AND HE PUT HIS TOUNGE IN MY EAR AND PUT HIS HANDS DOWN MY
PANTS. I JUMPED UP HUMILIATED AND TOLD HIM I'M NOT GAY, CUBAN THEN
SAID I'M JUST LIKE THE REST OF THEM ,AND I SAID "WHO" AND HE SAID "
BARACK OBAMA" AND I SAID "WHAT DO YOU MEAN", AND THEN CUBAN
STARTING YELLING AT ME IN A DRUNKEN RAGE , SAYING I DON'T BELONG
IN THIS COUNTRY LIKE BARACK OBAMA. I SAID "WHAT DO YOU MEAN".
CUBAN TOLD ME WHEN CUBAN WAS AT THE WHITE HOUSE AFTER THE MAV-
ERICKS WON THE CHAMPIONSHIP TO MEET THE PRESIDENT, CUBAN AND

ERICKS WON THE CHAMPIONSHIP TO MEET THE PRESIDENT, CUBAN AND
BARACK WENT INTO THE OVAL OFFICE AND CUBAN TOLD ME THAT BARACK
TOLD CUBAN THAT HE WAS NOT A U.S. CITIZEN , BUT IN FACT BORN IN
KENYA, AND THEN CUBAN POINTED AT ME WITH A MILLER IN HIS HAND AND
SAID " YOU DONT DESERVE TO BE IN THIS COUNTRY" AND SAID " YOU PEOPLE
KILLED MY FAMILY IN AUCHOWITZ" AND SCREAMED AT ME " YOU GERMANS
KILLED JEWS" AND CALLED ME A HOLOCAUST SYMPATHIZER AND THEN
THREW THE MILLER LIGHT AT MY HEAD, WHICH HIT MY TEMPLE AND I
STAGGERED BACK , FELL TO THE FLOOR , AND CUBAN JUMPED ON TOP OF
ME, PUT HIS HANDS AROUND MY NECK AND STRARTED CHOKING ME AND HE
SLAPPED ME, I BEGGED FOR HIM TO GET OFF, AND HE WAS ON TOP OF ME FOR
2 MINUTES AND GOT UP, TOLD ME TO CLEAN MYSELF UP , AND GAVE ME A
STERN WARNING SAYING" IF YOU TELL ANYONE ABOUT THIS INCIDENT, I
WILL CUT DIRK FROM THE TEAM, HE WILL BE JOBLESS, I WILL AMENSTY
HIS CONTRACT" " DO YOU UNDERSTAND ME" AND POINTED AT MY FACE,
AND TOLD ME HE GOT ALL THE MONEY IN THE WORLD TO HUNT ME DOWN
LIKE A DOG IN GERMANY, AND FURTHER SAID " PAYBACK ,ALSO FOR WHAT
YOU PEOPLE DID TO MY FAMILY. I WAS SHOCKED, SCARED , HUMILIATED,
AND BY THEN DIRK CAME BACK IN THE ROOM WITH NACHOS, BUT I WAS TOO
SCARED TO TELL HIM , WE WATCHED THE GAME, AND I LEFT. NOW I'M AT
THE GERMAN EMBASSY IN WASHINGTON SCARED FOR MY LIFE. I FEAR
CUBAN WILL ASSUALT ME AGAIN. I SEEK A RESTRAINING ORDER.

RESPECTFULLY,

6-28-12

JONATHAN NOWITZKI
2300 M ST NW
WASHINGTON, D.C 20037

*SO THERE'S THAT.*

*3. This evidence is not undisputed; Cuban disagrees and the judge suggests that Faure's memory might not be so hot.*

*4. This is not foolproof:*

- *Banker: Want to take a walk-cross in Mamma.com?*
- *Investor: No I certainly do not!*
- *Banker: Okay, pleasure not doing business with you!*
- *Investor: [Hangs up, sells all Mamma.com stock]*

*But that's the price you pay for certainty.*

Tags: David Einhorn, insider-trading, Mamma.com, Mark Cuban, SEC

APP. 2

APP. 3



# Mark Cuban Faces Insider Trading Trial

by Nate Wooley | March 6, 2013 11:19 am



[1]Mark Cuban will go on trial in June concerning accusations of insider trading.

Cuban — who made his money in technology and owns the NBA's Dallas Mavericks — is accused by the Securities and Exchange Commission of using confidential information to profit from the sales of his shares of **Mamma.com**, reports *The New York Times*[2].

In a civil action, the SEC alleges that Cuban took information about a new stock offering that Mamma's CEO asked him about, then sold his shares. The following day, the shares dropped sharply. Cuban's sale helped him avoid a loss estimated to be around $750,000.

Cuban's lawyers have been battling the SEC in the courts since the 2008 filing. In 2009, Judge Fitzwater threw out the case but was overruled by a federal appeals court. While the judge is on record as saying he thought the case was close, he has now decided that the SEC will get its chance to make its argument in court.

Cuban's lawyer, Christopher Clark, issued a statement saying, "Judge Fitzwater was constrained by governing law to accept as true, evidence that the judge himself explained is incomplete and flawed, and we very much look forward to trial where we will demonstrate that the S.E.C.'s 'evidence' is nothing but fabrication and speculation."

## More stories about the SEC:

- SEC Investigating Chesapeake, Aubrey McClendon[3]
- Insider Trading Suspected in Heinz Buyout[4]
- Federal Insider Trading Investigation Expands[5]

**Endnotes:**

APP. 4

1. [Image]: http://investorplace.com/wp-content/uploads/2013/03/mark-cuban.jpg
2. reports *The New York Times*: http://dealbook.nytimes.com/2013/03/05/mark-cuban-may-face-s-e-c-insider-trading-trial/
3. SEC Investigating Chesapeake, Aubrey McClendon: http://investorplace.com/2013/03/sec-investigating-chesapeake-aubrey-mcclendon/
4. Insider Trading Suspected in Heinz Buyout: http://investorplace.com/2013/02/insider-trading-suspected-in-heinz-buyout/
5. Federal Insider Trading Investigation Expands: http://investorplace.com/2012/12/federal-insider-trading-investigation-expands/

**Source URL:** http://investorplace.com/2013/03/mark-cuban-faces-insider-trading-trial/
**Short URL:** http://investorplace.com/?p=317365

Copyright ©2013 InvestorPlace Media, LLC. All rights reserved. 700 Indian Springs Drive, Lancaster, PA 17601.

𝕿𝖍𝖊 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐 𝕿𝖎𝖒𝖊𝖘

# DealB%k

Edited by Andrew Ross Sorkin

---

MARCH 5, 2013, 2:37 PM

## Mark Cuban May Face S.E.C. Insider Trading Trial

*By PETER LATTMAN*

With the Dallas Mavericks having a subpar season, it is unlikely that the basketball team's charismatic owner, Mark Cuban, will find himself courtside during the N.B.A. finals in June.

But with a judge's ruling on Tuesday, Mr. Cuban will have his hands full during the playoffs.

A Federal District Court judge in Dallas denied a request by Mr. Cuban to dismiss a nearly five-year-old insider-trading lawsuit brought against him by federal securities regulators. A trial is scheduled for June.

Judge Sidney A. Fitzwater decided that the Securities and Exchange Commission's civil action against Mr. Cuban could proceed to trial. Mr. Cuban has maintained that he has done nothing wrong.

The S.E.C. filed a civil lawsuit against Mr. Cuban in 2008, accusing him of trading on confidential information when he sold his stake in Mamma.com, a small Internet search company, in June 2004, just before it announced news that caused its stock price to plummet.

Mamma.com's chief executive had asked Mr. Cuban, who already owned about 6 percent of the company, if he was interested in participating in a new share offering. According to the S.E.C., Mr. Cuban declined. The commission says that the next day, Mr. Cuban dumped all of his shares, avoiding a $750,000 loss.

The S.E.C. said that Mr. Cuban knew or was reckless in not knowing that he had received confidential information about Mamma.com. (Mamma.com, based in Canada, has since changed its name to Copernic.)

Mr. Cuban, famous for mixing it up with referees during Mavericks games, mounted an aggressive defense. His lawyers have argued, among other things, that the insider trading laws did not prohibit him from selling his stock.

Mr. Cuban also accused the S.E.C. of acting with bias in bringing the case against him. But last year, the S.E.C. inspector general — an internal watchdog for the agency — cleared the agency of any misconduct.

APP. 6

Judge Fitzwater originally threw out the lawsuit in 2009, but a Federal Appeals Court reversed and sent the case back to him. In his decision issued Tuesday, Judge Fitzwater said the case was "in some respects a close one," but that the S.E.C. was entitled to present its case to a jury.

"We respect Judge Fitzwater's decision," Mr. Cuban's lawyers, Christopher J. Clark of Latham & Watkins and Stephen Best of Brownstein Hyatt Farber Schreck, wrote in an e-mailed statement. "Judge Fitzwater was constrained by governing law to accept as true, evidence that the judge himself explained is incomplete and flawed, and we very much look forward to trial where we will demonstrate that the S.E.C.'s 'evidence' is nothing but fabrication and speculation."

This summer is shaping up to be a busy one for the S.E.C. Already on the docket for mid-July is the trial of Fabrice Tourre, the former Goldman Sachs executive facing civil charges brought by the commission that relate to the bank's sale of a complex mortgage-backed security called Abacus.

Cuban Opinion by

Copyright 2013 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018

APP. 7

CNET News

# Judge won't dismiss insider-trading suit against Mark Cuban

The court schedules a June trial for the tech mogul and Dallas Mavericks' owner, accused of using confidential information.

by **Donna Tam**| March 5, 2013 12:43 PM PST



Mark Cuban at CNET's Next Big Thing panel at CES 2013.

(Credit: Josh Miller/CNET)

A Federal judge decided today that a five-year-old lawsuit accusing tech mogul Mark Cuban of insider-trading is going to trial, **The Wall Street Journal [http://online.wsj.com/article/SB10001424127887324678604578342374165548436.html]** reported.

The Securities and Exchange Commission **filed suit in 2008 against Cuban [http://www.zdnet.com/blog/btl/oh-mamma-com-sec-charges-mark-cuban -with-insider-trading-cuban-responds/10881]** , owner of the Dallas **Mavericks [http://reviews.cnet.com/apple-os-x-10.9-mavericks/]** and former Yahoo and Broadcast.com executive, for allegedly relying on confidential information when he sold his stake in search engine Mamma.com and avoided a $750,000 loss.

APP. 8

Cuban has **stated in the past [http://blogmaverick.com/2008/11/17/the-sec/]** that he has done nothing wrong, saying, "The government's claims are false and they will be proven to be so."

## Related stories

- **NBA makes Mark Cuban pay $50k over critical tweet [http://www.cnet.com/8301-17938_105-57562899-1/nba-makes-mark-cuban-pay-$50k-over-critical-tweet/]**

- **Facebook caters to businesses, others with separate news feed [http://www.cnet.com/8301-1023_3-57549960-93/facebook-caters-to-businesses-others-with-separate-news-feed/]**

- **Mark Cuban: An Apple box designed for TV would be game-changer [http://www.cnet.com/8301-13579_3-57542359-37/mark-cuban-an-apple-box-designed-for-tv-would-be-game-changer/]**

Judge Sidney Fitzwater denied Cuban's request to dismiss the suit and has scheduled the trial for June.

The SEC said Cuban sold his Mamma.com stake after learning the company was about to issue new shares in a private offering, news that often leads to stock prices plummeting.

Cuban's layers have argued that the insider trading laws did not prohibit him from selling his stock, according to **The New York Times [http://dealbook.nytimes.com/2013/03/05/mark-cuban-may-face-s-e-c-insider-trading-trial/?smid=tw-nytimesdealbook&seid=auto]** .

**[http://www.cnet.com/profile/DonnaTam/]**



**[http://www.cnet.com/profile/DonnaTam/]**

f writer for CNET News and a native of San Francisco. She enjoys ng, checking her Gmail, and reading on her Kindle. Before landing for daily newspapers, including the Oakland Tribune, The Spokesman-Review, and the Eureka Times-Standard.

○ **[http://plus.google.com/103655164337914369912/]**

○

○

# You May Also Like

@CBS Interactive. All rights reserved. CNET



close



Pentagon readying anti-missile blimps for D.C.

CNET

[http://news.cnet.com/8301-11386_3-57595200-76/pentagon-readying-anti-missile-blimps-for



-d.c/]                              With The Sandman: Overture, the book that ...

CNET

[http://news.cnet.com/8301-10797_3-57594713-235/with-the-sandman-overture-the-book-



that-launched-a-business-returns/]                       The 15 Most Overpriced Gadgets of All Time

Tech Media Networks



[http://blog.laptopmag.com/most-overpriced-gadgets?cmpid=527724]

Donald Trump Tells Americans to Prepare for "Financial Ruins"

Money News

[http://www.moneynews.com/Archives/Trump-Aftershock-American-Economy/2012/11/06/id/462985?PROMO_CODE=103FC-1]

about these links

APP. 10

⌐

## Member Comments

3 Comments/

1 person following    Log in []

### Commenting FAQs [http://www.cnet.com/2706-1_1-1954.html] / Guidelines [http://www.cnet.com/2706-1_1-1947.html]

Newest [] /Oldest [] /Top Comments []

+ Follow conversation    Post Comment As...

### hananias [http://www.cnet.com/profile/hananias]

Mar 5, 2013

@Donna Tam in the last paragraph "Cuban's layers" Correct me if I'm wrong, but unless Mark Cuban lives in a swamp, and skin tone is Green as in OGRE!!!... then he shouldn't have LAYERS! LOL

I'm guessing you were aiming for "lawyer". "Cuban's lawyer have argued..." Very cute mistake, mine are not so cute or funny.

/ **like [] reply []**

### lamarUSC [http://www.cnet.com/profile/lamarUSC]

Mar 5, 2013

This is a joke. Does anyone honestly believe that millionaires and billionaires invest in companies and Wall St without inside information?

/ **like [] reply []**

### biffhenerson [http://www.cnet.com/profile/biffhenerson]

Mar 5, 2013

I'm guessing that 99% of all big trades are based on inside information.

The government uses this law to make examples of people they don't like for other reasons.

APP. 11

Fact is that the government exempted themselves from the law. Congress and Senate often trade on inside information. This has been in the news over the past year. Makes me sick.

/ **like [ ]reply []**

## Add Your Comment [#postComments]

# Forbes

**The Insider**

Morvillo
Abramowitz    WE COVER WHITE COLLAR DEFENSE AND SECURITIES ENFORCEMENT.

BUSINESS | 3/07/2013 @ 10:23AM | 4,323 views

# Twists, Turns, PIPEs, And Screws: Insider Trading And Mark Cuban

**Robert Anello**, Contributor

On Tuesday, March 5, the SEC's insider trading case against billionaire Dallas Mavericks owner Mark Cuban took a new twist when a federal district court in Texas declined to end the 2008 civil enforcement action.  The SEC alleges that Cuban engaged in insider trading when he sold 600,000 shares of Mamma.com Inc., a company in which he was the largest shareholder, after learning the company intended to offer a private investment in public equity (PIPE).  Although the Court characterized the evidence against Cuban as "spotty," "brief," and "ambiguous," it nevertheless concluded that the case should be allowed to proceed to trial because, according to the Court, certain understandings that Cuban would not disclose or trade based upon confidential information he received, may have been "implicit" in the communications between Cuban and company insiders. Unfortunately, the Court's decision, a self-proclaimed "close" call, further muddies the waters of insider trading law.  Indeed, from the very beginning, the case against Cuban has been an example of the author's previous assertion that insider trading, which is not defined by statute, but by an amalgamation of judicial opinions, has morphed into an area of unsettled law, leaving potential traders at a loss for what behavior is permissible.

The SEC's case is based on the misappropriation theory of insider trading pursuant to which a defendant can be liable if he misappropriates confidential information for trading purposes in breach of a duty owed to the source of the information.  According to the SEC's interpretation of its Rule 15b5-2(b), misappropriation cases can be brought even if a defendant has no fiduciary relationship with a firm, but agrees not to disclose the confidential information and not to trade or use the information to his own advantage.  The SEC alleges

APP. 13

Cuban deceived the company by promising not to disclose information about the PIPE or sell his stock, but selling anyway and avoiding losses incurred by the company after the placement was publicly announced. In 2009, the district court dismissed the SEC's complaint because the agency failed to allege that Cuban had agreed not to trade based on the information imparted to him. The Fifth Circuit reversed and remanded the case back to the lower court without reaching the legal merits, finding instead that the SEC's complaint was sufficient.



Photo credit: Wikipedia

PIPE deals, which often have the effect of diluting the value of existing shares in the company, are typically offered in lieu of a second public offering when a company is seeking an infusion of new equity. Evidence submitted to the Court indicates that when Cuban was contacted by Mamma.com Inc.'s CEO, he reacted angrily to the news of the PIPE and "said something like, 'Now I'm screwed. I can't sell.'" According to the SEC, in another call between Cuban and Arnold Owen, the head of the investment bank that was handling the PIPE, Cuban requested more information about the PIPE and failed to disclose his intent to sell his stock in the company. Cuban asserts that although he was invited to learn additional information about the PIPE, he informed Owen that he was not going to participate and that he would sell his shares. Thus, the primary issue in the case is whether Cuban entered into an agreement with the company to maintain the confidentiality of the PIPE and not to sell his shares in Mamma.com during the course of these conversations.

In this week's decision denying summary judgment, the Court rejected Cuban's argument based on contract law that the agreement could only be established with proof of an offer, acceptance, and bargained-for exchange, asserting instead that the SEC only needed to show that Cuban *implicitly* agreed to maintain the confidentiality of the PIPE deal and not trade on it, seemingly suggesting that an *implicit* agreement is somehow different than a typical binding contractual agreement.

Perhaps the Court used the term "implicit" to define Cuban's expression of his intentions or perhaps it was used to characterize the nature of the conversations between the parties. Regardless, the Court's lack of clarity on this point, along with the still open issue of whether the SEC's broad application of Rule 15b5-2(b) to non-fiduciary relationships is acceptable, tees up for appellate review questions about the type of agreement required to support a misappropriation case. We have not heard the last of the insider trading case against Mark Cuban.

To read more from Robert Anello please visit www.maglaw.com

APP. 14

This article is available online at:
http://www.forbes.com/sites/insider/2013/03/07/twists-turns-pipes-and-screws-insider-trading-and-mark-cuban/

In cooperation with



# LEXOLOGY®

**Register Now** As you are not an existing subscriber please register for your *free* daily legal newsfeed service.

If you have any questions about the service please contact customerservices@lexology.com or call Lexology Customer Services on +44 20 7234 0606.

Register

## District Court denies Mark Cuban summary judgment in SEC's insider trading case

Cadwalader Wickersham & Taft LLP
Bradley J. Bondi and Brett A. Sisto

Cuba, USA
March 18 2013





Author page »

On March 5, 2013, the United States District Court for the Northern District of Texas issued a Memorandum Opinion and Order in the case *Securities and Exchange Commission v. Mark Cuban*,1 denying Cuban's motion for summary judgment. While the court observed that it was a close question in some respects, it rejected Cuban's argument that no reasonable jury could find that he violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 by trading on material, nonpublic information in violation of the misappropriation theory of insider trading.

**Procedural Background**

Author page »

The SEC charged Mark Cuban ("Cuban"), the owner of the Dallas Mavericks and an investor in start-up companies, with insider trading under the misappropriation theory when Cuban sold his shares of stock in Mamma.com Inc. ("Mamma.com") after allegedly receiving material, nonpublic information concerning a planned private investment in public equity ("PIPE") offering by the company. The SEC alleged that Cuban agreed to maintain the confidentiality of the material, nonpublic information concerning the planned PIPE offering, and accordingly, he was not allowed to trade on that information. The SEC further alleged that, after receiving the information, Cuban sold all of his stock in the company before the public announcement of the PIPE offering without first disclosing his intention to Mamma.com. As a result of his trades, he avoided substantial losses when the stock price declined after the PIPE offering was announced publicly.

According to the summary judgment record, on the eve of the PIPE offering, the CEO of Mamma.com emailed Cuban and asked to speak to him as soon as possible. When Cuban called, the CEO told Cuban, "I've got confidential information," to which Cuban replied, "Um

hum, go ahead."2 The CEO then informed Cuban about the PIPE offering. Cuban reacted angrily, and near the end of the conversation said, "Now I'm screwed. I can't sell."3 Cuban claimed that he "told [the CEO] that [he] was not going to participate and [he] was going to sell [his] shares."4 After this conversation, Cuban contacted the head of the private placement group at the investment bank that was handling the PIPE to obtain the terms and conditions of the deal.

The court initially dismissed the SEC's action against Cuban for failure to state a claim upon which relief can be granted because the complaint did not assert that the CEO of Mamma.com intended to obtain from Cuban an agreement to refrain from trading on the PIPE information, as opposed to an agreement merely to maintain the confidentiality of the information.5 On appeal, the Fifth Circuit vacated and remanded the decision, holding that the understanding between the CEO of Mamma.com and Cuban provided more than a plausible basis to find that Cuban agreed not to trade on the information.6

**The Order Denying Cuban Summary Judgment**

On remand, Cuban moved for summary judgment, contending that the SEC failed to show: 1) that he agreed to keep the PIPE transaction confidential; 2) that he agreed not to trade on the information; 3) that he did not disclose his intention to sell his Mamma.com stock; and 4) that the PIPE information was material and nonpublic. The district court rejected each of Cuban's arguments.

First, the court ruled there was sufficient evidence for a reasonable jury to find that Cuban agreed to keep the PIPE information confidential and therefore agreed not to trade. The court held that under the misappropriation theory, an agreement does not need to be explicit and that contract law requiring a "valid offer and acceptance plus a meeting of the minds supported by consideration" does not necessarily apply.7 The court explained that Cuban's "I can't sell" statement, made in the context of a telephone call with Mamma.com's CEO, would enable a reasonable jury to find that Cuban at least implicitly agreed to keep the information confidential.8 It could be inferred that Cuban would not have considered himself foreclosed from trading unless he believed that he had agreed to treat the information as confidential.9 The court concluded there was a genuine issue of fact as to whether "Cuban agreed at least implicitly to refrain from trading on or otherwise Contact Raymond Banoun 202 862 2426 ray.banoun@cwt.com Team Members Awards & Honors Case Studies Events Publications using for his own benefit the nonpublic PIPE information."10

Second, the court ruled that there was a genuine issue of fact whether Cuban failed to disclose his intention to trade on the PIPE information. Under the misappropriation theory, if the fiduciary discloses to the source his plans to trade on nonpublic information, there is no "deceptive device" and thus no Section 10(b) violation.11 Cuban argued that he made full disclosure of his intention to trade, and he pointed to evidence from three separate individuals confirming his intention to sell his shares in Mamma.com after learning of the PIPE. The court nonetheless held that a reasonable jury could find that Cuban merely disclosed that he "was going to sell," not that he would sell before Mamma.com publicly announced the PIPE.12

Third, the court ruled that a reasonable jury could find that the PIPE information that Cuban received was both confidential and material. Cuban argued that the SEC failed to address his

arguments that the information was not confidential and that only confidential information could serve as a basis for the misappropriation theory. The court rejected that notion and explained, "[I]n the context of the misappropriation theory of insider trading, the terms *confidential* information and *nonpublic* information essentially have the same meaning. Therefore, the SEC's evidence that the PIPE information was *nonpublic* is sufficient to defeat the summary judgment argument that the information was not *confidential*."13 The court went on to rule that a jury reasonably could find that information about the Mamma.com PIPE was nonpublic and rejected Cuban's arguments that certain documents related to the transaction had made the information public.14 Although Cuban argued that the information concerning the PIPE was public because the engagement letter between Mamma.com and its investment bank was public, the court disagreed and explained that the engagement letter did not disclose the PIPE transaction that Mamma.com was contemplating or even state that a PIPE transaction definitely was being considered.15 As the court observed, the engagement letter merely stated that a PIPE offering was one of several possible investment banking services that the investment bank might provide for Mamma.com.16 The court also rejected Cuban's argument that the Securities Purchase Agreement established that he had not received any nonpublic information because that agreement expressly stated that Mamma.com had not provided to the purchasers any material, nonpublic information.17 That language, the court explained, referred only to the fact that the prospective purchasers had not been provided with any material, nonpublic information *about the company*; the fact of the PIPE offering itself, however, was clearly nonpublic.18

The court also ruled that a jury reasonably could find that the nonpublic information about the PIPE offering was also material. The court explained that a reasonable investor would expect that a PIPE offering with incentives to investors would have the result of diluting shareholder value, and the court observed that the amount Mamma.com sought to raise via the PIPE offering significantly exceeded the funds it had received from its past four years of operations and stock issuance combined.19 For purposes of assessing materiality, the court was not persuaded by an event study, prepared by Cuban's expert witness, showing that the price reaction of Mamma.com stock to the PIPE announcement was not statistically significant.20

**Practical Implications of the Order**

Unlike past decisions in the case, this Order denying Cuban's motion for summary judgment does not stand for any novel proposition when it comes to insider trading law. Instead, the Order reinforces the prevailing belief that insider trading cases are dominated by fact-based questions that ultimately are decided by the jury. The fact that the court acknowledged that its decision was a close question in some respects likely foreshadows a hard-fought battle ahead at trial.21

The Order hints at some practical guidance for companies contemplating a PIPE offering and for prospective investors in such an offering. A company contemplating a PIPE offering should obtain a signed confidentiality agreement from prospective investors *before* divulging any mention of the PIPE offering. That confidentiality agreement should contain an explicit representation by the prospective investor not to disclose the information and also should contain an explicit prohibition on trading. Investors who are approached by a company seeking to share nonpublic information should be aware that even the slightest agreement - written or oral - to maintain the confidentiality of information may bar future trading in the security. Of

APP. 18

course, if a prospective investor rejects signing a confidentiality agreement and does not have a duty to maintain confidentiality, the investor may be able to trade without violating insider trading laws.

To view all formatting for this article (eg, tables, footnotes), please access the original here.

**Tags** Cuba, USA, Capital Markets, Litigation, White Collar Crime, Cadwalader Wickersham & Taft LLP

If you are interested in submitting an article to Lexology, please contact Andrew Teague at ateague@lexology.com.

"I make an effort to read at least several articles each day and regularly share the particularly relevant or interesting articles with my colleagues. I greatly appreciate the inclusion of the Lexology service by the State Bar of...

**Edward J. Willey III**
**Corporate Counsel**
**Huawei Technologies (USA)**

© Copyright 2006-2013Globe Business Publishing Ltd |Cookies |Disclaimer |Privacy policy

# Bloomberg

# Mark Cuban Again Seeks End to SEC Insider Trading Case

By Andrew Harris and Thomas Korosec - Jan 18, 2013

Mark Cuban, the Texas billionaire and pro basketball team owner, went to the federal courthouse in Dallas today, seeking to persuade a judge to throw out for a second time a U.S. lawsuit accusing him of insider trading.

U.S. District Judge Sidney Fitzwater in Dallas will hear arguments on Cuban's request, filed with the court in July, and on the Securities and Exchange Commission's opposition registered with the court a month later. The year after Fitzwater dismissed the case in 2009, a federal appeals court inNew Orleans reinstated the litigation against Cuban, the owner of the Dallas Mavericks.

The SEC sued Cuban in 2008. The agency accused him of making illegal trades in shares of Internet search company Mamma.com Inc. in June 2004 based on inside information from its then-chief executive officer, Guy Faure.

Cuban claims what Faure told him wasn't secret.

"After years of the SEC's investigation of Mr. Cuban and discovery in this case, there is not a shred of evidence of a confidentiality agreement between Mr. Cuban and Mamma," defense lawyers argued in a court filing on July 13.

The SEC claims Cuban, upset upon learning of the company's imminent plans for a below-market private placement, sold his 6.3 percent stake for about $7.9 million within hours of talking to Faure.

This followed his telling Faure during a June 28, 2004, telephone call, "Well, now I'm screwed. I can't sell," according to the SEC.

The Montreal-based Internet search company is now known as Copernic Inc.

## 'Confidentiality Agreement'

SEC lawyers argued in court papers that Fitzwater should deny Cuban's request to dismiss the case because the parties disagree about underlying facts.

In addition to his National Basketball Association franchise, Cuban, 54, owns the HDNet high-definition television channel and the Landmark Theater chain.

Earlier this month, the NBA fined Cuban $50,000 for making critical comments about game officials on his Twitter.com page.

Arriving at the courthouse today, Cuban was asked whether he intended to fight the SEC allegations to their legal conclusion.

"You'll just have to stay tuned," he replied.

The case is Securities and Exchange Commission v. Cuban, 08-cv-2050, U.S. District Court, Northern District of Texas (Dallas)

To contact the reporter on this story: Andrew Harris in Chicago at aharris16@bloomberg.net

To contact the editor responsible for this story: Michael Hytha at mhytha@bloomberg.net

©2013 BLOOMBERG L.P. ALL RIGHTS RESERVED.





**Liz Moyer**, Forbes Staff

9/21/2010 @ 1:55PM | 2,146 views

# SEC's Insider Trading Case Against Mark Cuban is Back On

Dallas Mavericks owner and occasional television dancing celebrity Mark Cuban has to face insider trading charges by the Securities and Exchange Commission, after all.

A federal appeals court said Tuesday that there was a "plausible" basis to find that the billionaire understood he shouldn't sell his shares in a fledgling internet company in 2004 after finding out the terms



Image via CrunchBase

of an upcoming fundraising deal for the company.  A lower court had earlier ruled in favor of Cuban, dismissing the case in July 2009 after finding Cuban didn't agree not to sell his shares in the company, of which he held a 6% stake.

The battle between Cuban and the SEC focuses on what understandings existed between Cuban and a senior representative of the internet company, mamma.com. The chief executive of mamma.com had gone to Cuban with details of a private investment in public equity deal, which is a way for companies to raise capital. Cuban agreed to keep the information confidential. Cuban contends he didn't say he wouldn't trade on the information, however. His opponents say he and the CEO had an understanding he wouldn't. Cuban did end up selling his stake, avoiding losses when the deal was made public.

The SEC has been trying to spruce up its image as Wall Street's top cop, and the Cuban case is just one of a few high profile insider trading cases it is focused on. Galleon Group founder Raj Rajaratnam is at the center of an even higher profile case brought by the SEC and the Department of Justice. He has denied wrongdoing. In May, Art Samberg, founder of the now shuttered Pequot Capital, settled SEC insider trading allegations that had dogged him for the previous five years. But insider trading is a murky area with a mixed track record of success for regulators.

The Court of Appeals for the Fifth Circuit, based in Louisiana, said in its order Tuesday that there are a few variations on the classical theory of insider trading, which is when a company insider trades based on information that is

APP. 22

not publicly available. Even an individual who is not a classic insider could become a "temporary" insider, the court said. Underwriters, accountants, lawyers, consultants all fall into this category. And individuals who gets information from a corporate insider may be but are not always prohibited from trading on that information. As for Cuban, it really depends on whether he and the CEO of mamma.com had an understanding about Cuban trading his shares after the information was conveyed and what obligations or duties Cuban had, if any, to the company. This, the Appeals Court said, should be litigated in the lower court.

Back to square one. Cuban wasn't immediately available, though the Wall Street Journal quotes him Tuesday saying the SEC's case is "utterly meritless." SEC spokesman John Nester said in an emailed statement, "We are pleased with the court's decision and look forward to presenting our case."

---

**This article is available online at:**
http://www.forbes.com/sites/lizmoyer/2010/09/21/secs-insider-trading-case-against-mark-cuban-is-back-on/

Case 3:08-cv-02050-D   Document 205   Filed 08/12/13   Page 29 of 104   PageID 10064

Court revives SEC's insider-trading lawsuit vs. Mark Cuban - USATODAY.com          Page 1 of 2

Cars » Auto Financing » Event Tickets » Jobs » Real Estate » Online Degrees » Business Opportunities »Shopping

Search                          How do I find it?                                    Subscribe to paper

  Home   News   Travel   Money   Sports   Life   Tech   Weather

**Money » Executive Suite**   Company News   Company Calendars   Annual Reports

GET A QUOTE:   Enter symbol(s) or Keywords   (GO)   ■ DJIA 15,430.66 ▼ -124.95   ■ NASDAQ 3,591.47 ▼ -13.72   as of 11:26 AM ET

# Court revives SEC's insider-trading lawsuit vs. Mark Cuban

Featured video

Updated 9/21/2010 9:20 PM | Comment | Recommend

By Matt Krantz, USA TODAY

E-mail | Print | Reprints & Permissions | RSS



Enlarge                                  US PRESSWIRE

Dallas Mavericks owner Mark Cuban reacts during the second half of a basketball game against the Phoenix Suns in January 2010.

**Share**





Add to Mixx
Facebook
Twitter
More

**Subscribe**

myYahoo
Google
More
Netvibes

myAOL

A federal Appeals Court reopened an insider-trading case against outspoken billionaire Mark Cuban Tuesday, deciding there's enough evidence of potential wrongdoing to warrant the Securities and Exchange Commission's lawsuit to go forward.

The SEC charged Cuban in November 2008 with using insider information to avoid a $750,000 loss in June 2004. Cuban, the owner of the NBA's Dallas Mavericks, sold his 6.3% stake in Mamma.com after the search engine's CEO told him it planned to sell additional stock at terms that were unfavorable to existing shareholders, the SEC says.

A U.S. District Court dismissed the lawsuit in July 2009, supporting Cuban's assertion that while he may have agreed to keep the information confidential, he said nothing about whether he could trade on the information.

**READ THE LAWSUIT:** SEC vs. Mark Cuban

The Appeals Court, though, rejected the lower court's support of Cuban's assertion, says Gregory Lawrence, attorney at Conti Fenn & Lawrence, when it said in its decision: "Under Cuban's reading, he was allowed to trade on the information but prohibited from telling others — in effect providing him an exclusive license to trade on the material non-public information."

The appellate court's decision also raises issue with Cuban's initial reaction to the conversation he had with the Mamma.com CEO, when Cuban said, " 'Well, now I'm screwed. I can't sell,' " says Christopher Bebel of the Christopher Bebel law firm.

"Cuban's own language," Bebel says, "is a crucial piece of evidence that supports the SEC's theory of the case." He adds that Cuban's impromptu comment showed the information was relevant to his opinion of the stock.

Furthermore, the Appeals Court in its decision highlighted a phone call that Cuban made to Merriman Curhan Ford, the investment bank handling the additional issuance of stock. During the eight-minute call, the Merriman representative gave Cuban additional information about the planned offering. The conversation showed Cuban "was on a mission to solidify his determination to sell," Bebel says.

Separately Tuesday, Cuban's lawsuit against the SEC to recoup his legal fees was denied pending the outcome of the insider-trading charges against him.

Cuban's attorneys, Chris Clark and Stephen Best of Dewey & LeBoeuf, said they would have liked the case to have ended, but said the Appeals Court supports their assertion that the SEC must show Cuban had a duty to not trade.

In a statement, SEC spokesman John Nester said, "We are pleased with the court's decision and look forward to presenting our case."

The case's return is a setback for Cuban, Bebel says. Cuban has been a long-standing critic of stock investing, pointing to how investors are shortchanged, writing on his blog, "The stock market is still for suckers."



Get the 10 questions every investor should ask themselves.

START ASKING >

What's this?

**Real estate**
Real solutions for your real estate needs.

Choose from the selections below:

• Customized financial solutions
• Search properties nationwide
• Full service relocation assistance
• Apartments for rent in your area
• Home improvement options


Click here to begin

powered by [real estate logo]

**Financing Options:**
Need help financing or refinancing a home? Click here

More: Video

Royal family
Can wedding boost monarchy's popularity?

Charlie Sheen
Actor seeks custody of twins.

**You might also be interested in:**

Smelly Washer Class-Action Lawsuit Tumbles to the Supreme Court *(Washer Dryer Info)*

Selected for you by a sponsor:

Employee Rights After a Job Termination *(Lawyers.com)*

APP. 24

Case 3:08-cv-02050-D   Document 205   Filed 08/12/13   Page 30 of 104   PageID 10065

Court revives SEC's insider-trading lawsuit vs. Mark Cuban - USATODAY.com          Page 2 of 2





Personal Finance E-mail Newsletters

**Sign up to get:**
- Tips on managing money
- Latest financial news
- Jobs, economy, taxes and more

Posted 9/21/2010 5:41 PM

Updated 9/21/2010 9:20 PM          E-mail | Print | Reprints & Permissions | RSS

*To report corrections and clarifications, contact Standards Editor Brent Jones. For publication consideration in the newspaper, send comments to letters@usatoday.com. Include name, phone number, city and state for verification. To view our corrections, go to corrections.usatoday.com.*

**Guidelines:** You share in the USA TODAY community, so please keep your comments smart and civil. Don't attack other readers personally, and keep your language decent. Use the "Report Abuse" button to make a difference. Read more.

Sign Up Now



**Newspaper Home Delivery - Subscribe Today**

Home • News • Travel • Money • Sports • Life • Tech • Weather

**About USATODAY.com:** Site Map | FAQ | Contact Us | Jobs with Us | Terms of Service
Privacy Policy/Your California Privacy Right | Advertise | Press Room | Developer | Media Lounge | Reprints and Permissions

**News Your Way:** Mobile News | Email News | Add USATODAY.com RSS feeds | Twitter | Podcasts | Widgets

**Partners:** USA WEEKEND | Sports Weekly | Education | Space.com | Travel Tips

Copyright 2011 USA TODAY, a division of Gannett Co. Inc.



Sept. 21, 2010, 2:52 p.m. EDT

# Mark Cuban's inside-trading case revived

## Appeals court rules in SEC's favor in case involving Mamma.com

By John Letzing, MarketWatch

**SAN FRANCISCO (MarketWatch) — A federal appeals court revived the Securities and Exchange Commission's insider-trading case against Mark Cuban on Tuesday, more than a year after it had been dismissed by a lower court.**

In a ruling filed with the U.S. Court of Appeals for the Fifth Circuit in Texas, Judge Patrick Higginbotham wrote that the court is vacating an earlier judgment dismissing the case and remanding it for further proceedings, including a possible trial.



**Need a job? Bring your SAT scores**

Kyle Stock notes that in this buyer's market for finance jobs, some firms are asking job seekers to fork over standardized-test scores.

"We are pleased with the court's decision and look forward to presenting our case," SEC spokesman John Nester said in a statement from the agency.

The SEC filed suit against Cuban, the high-profile investor and owner of the Dallas Mavericks professional-basketball team, in late 2008. The suit alleged that Cuban sold shares of the Internet company Mamma.com based on nonpublic information and in the process spared himself hundreds of thousands of dollars in losses.

In its suit, the SEC alleged that Cuban in 2004 promised to keep information about a planned secondary stock offering by Mamma.com confidential, even as he sold his stake prior to the public disclosure of the offering and a subsequent decline in Mamma.com's share price.

Stephen Best, an attorney representing Cuban, said his client is "naturally disappointed in the court's decision," though he is also "mindful of the fact that the decision does not mean that he is liable for anything."

Cuban "will immediately be considering all ... appeal options," Best added, arguing the facts of the case will "show that the SEC alleged facts that it knew it could never prove."



Reuters

Dallas Mavericks owner Mark Cuban reacts during a game against the San Antonio Spurs in March 2009.

In his own court filing early last year, Cuban asked for the insider-trading charges to be dropped. "Although the SEC has often argued that any recipient of material, nonpublic information has potential insider-trading liability, the U.S. Supreme Court has repeatedly rejected the SEC's view," Cuban said in the January 2009 filing.

A federal judge granted Cuban's motion for dismissal roughly seven months later.

Mamma.com, an online search engine, was founded in the 1990s. The company changed its name to Copernic Inc. in 2007, and later sold its search assets to closely held Empresario Inc.

According to court filings, Cuban acquired a 6.3% stake in Mamma.com in early 2004. Company executives later informed him of the planned secondary stock offering, which would issue shares at a discount to market prices, and Cuban sold his stake in June of that year. The subsequent public announcement of the offering sent Mamma.com shares nearly 40% lower, according to filings.

Cuban avoided over $750,000 in losses as a result of his sale, according to filings.

Copyright © 2013 MarketWatch, Inc. All rights reserved.
By using this site, you agree to the Terms of Service and Privacy Policy - UPDATED 10/18/2011.

Intraday Data provided by SIX Financial Information and subject to terms of use. Historical and current end-of-day data provided by SIX Financial Information. Intraday data delayed per exchange requirements. S&P/Dow Jones Indices (SM) from Dow Jones & Company, Inc. All quotes are in local exchange time. Real time last sale data provided by NASDAQ. More information on NASDAQ traded symbols and their current financial status. Intraday data delayed 15 minutes for Nasdaq, and 20 minutes for other exchanges. S&P/Dow Jones Indices (SM) from Dow Jones & Company, Inc. SEHK intraday data is provided by SIX Financial Information and is at least 60-minutes delayed. All quotes are in local exchange time.



The Harvard Law School Forum on
Corporate Governance and Financial Regulation

# Court Reinstates Insider Trading Claim Against Mark Cuban

Posted by Scott Hirst, co-editor, HLS Forum on Corporate Governance and Financial Regulation, on Saturday
October 23, 2010 at 10:26 am

> **Editor's Note:** This post comes to us from Todd Cosenza of Willkie Farr & Gallagher LLP, and is based on
> a Willkie Farr & Gallagher client memorandum by Mr. Cosenza and Tariq Mundiya. This post discusses the
> recent opinion by the U.S. Court of Appeals for the Fifth Circuit in *S.E.C. v. Cuban*, which is available here.

On September 21, 2010, in *S.E.C. v. Cuban*, 2010 WL 3633059, No. 09-10996 (5th Cir.), a federal appeals
court vacated a lower court decision that had dismissed the SEC's well-publicized insider trading lawsuit
against Mark Cuban. The Fifth Circuit held that it was at least "plausible," based on the SEC's allegations, that
Cuban had violated a duty not to trade on material, nonpublic information and remanded the case for further
proceedings.

**Factual and Procedural Background**

In November 2008, the SEC brought a civil enforcement action against Mark Cuban, the owner of the NBA's
Dallas Mavericks franchise. The action arose from Cuban's June 2004 sale of his entire 6.3 percent ownership
interest (600,000 shares) in Mamma.com Inc. (now Copernic, Inc.), a Canadian internet search company.
According to the SEC's complaint, during the spring of 2004, Mamma.com's executives decided to initiate a
private investment in public equity ("PIPE") offering to raise additional capital. Because such offerings tend to
dilute the value of existing shares, the company expected Cuban, its largest known shareholder at the time, to
be unhappy. The company's CEO telephoned Cuban, informing him of the PIPE offering. Cuban orally
agreed to keep the information regarding the PIPE offering confidential, but allegedly ended his call with the
CEO by saying, "Well, now I'm screwed. I can't sell." Nevertheless, following this telephone conversation
and another discussion with the investment bank conducting the PIPE offering, Cuban instructed his broker to
sell his entire stake in Mamma.com. The next day, the company publicly announced the PIPE offering, and the
stock price of Mamma.com declined. By selling on the nonpublic information, Cuban avoided over $750,000
in losses.

The district court found (on a motion to dismiss) that, even assuming the SEC's allegations were true, Cuban
only agreed to keep confidential the information he received from the company's CEO. According to the
court, he never agreed to refrain from trading on it and could not be liable under the antifraud provisions of the
Securities Exchange Act of 1934 for insider trading. The district court held that a third party (such as Cuban)
who accepts material, nonpublic information from an issuer on a confidential basis is not precluded from
trading on that information absent a specific agreement with the issuer not to trade. *S.E.C. v. Cuban*, 2009 WL
2096166 (N.D. Tex. July 17, 2009). After the court dismissed the action, the SEC appealed to the Fifth
Circuit.

**Fifth Circuit's Decision**

Reviewing the district court's ruling *de novo*, the Fifth Circuit noted its disagreement with the lower court's
interpretation of the facts. It commented that only **after** Cuban told the company's CEO "I can't sell" did the
company send him more information about the PIPE offering.

APP. 27

According to the appellate court, that factual allegation, among others, provided "more than a plausible basis to find that the understanding between the CEO and Cuban was that he was not to trade." The Fifth Circuit thus concluded that it was premature for the lower court to dismiss the action based on one plausible interpretation of the facts alleged in the SEC's complaint. In remanding the case to the district court, the court acknowledged the "paucity of jurisprudence" on the question of what constitutes a "relationship of trust and confidence" and the "inherently fact-bound nature of determining whether" Cuban's interaction with the company had created a duty to abstain from trading on nonpublic information.

**Conclusion**

Although each case will obviously turn on its facts and circumstances, any person in possession of what might be material, nonpublic information should exercise great caution before engaging in securities trading — even in the absence of an explicit agreement to keep the information confidential or other restrictions concerning its use. Corporate insiders and related parties similarly should continue to exercise caution when providing confidential information to outsiders because that, too, creates a risk of "tipper" liability. Lastly, while the appellate court's decision has generated much publicity, it remains unclear how the lower court will ultimately resolve this case as it now proceeds into formal discovery.

0 Comments

*All copyright and trademarks in content on this site are owned by their respective owners. Other content ©
2013 The President and Fellows of Harvard College.*

Printed from:
http://blogs.law.harvard.edu/corpgov/2010/10/23/court-reinstates-insider-trading-claim-against-mark-cuban/

APP. 28

# Bloomberg

# SEC's Cuban Insider-Trading Suit Is Revived by Court

By Thom Weidlich and Joshua Gallu - Sep 21, 2010

Mark Cuban, the billionaire owner of the Dallas Mavericks, must face insider-trading allegations by the U.S. Securities and Exchange Commission that were thrown out last year by a lower-court judge, an appeals court ruled.

The U.S. Court of Appeals in New Orleans overturned the lower-court ruling in a decision today. In a 2008 lawsuit, the SEC accused Cuban of trading on confidential information when he sold his stake in Mamma.com Inc., a Canadian Internet search company, just before it announced a private placement of shares.

Cuban argued he had no legal obligation not to sell the stock after Guy Faure, then Mamma.com's chief executive officer, told him of the impending private offering of below-market shares in a 2004 telephone call. Cuban sold ahead of the deal, which diluted the company's shares by 8.5 percent.

"The allegations, taken in their entirety, provide more than a plausible basis to find that the understanding between the CEO and Cuban was that he was not to trade, that it was more than a simple confidentiality agreement," the appellate panel said.

The agency claimed Cuban agreed with Faure at the beginning of their call to keep the information confidential and told Faure after learning details of the plan, "Well, now I'm screwed. I can't sell."

The appeals judges stopped short of saying that a confidentiality agreement implicitly contains a duty not to trade and said the final outcome of the case depends on the evidence to be gathered.

'Paucity of Jurisprudence'

"Given the paucity of jurisprudence on the question of what constitutes a relationship of 'trust and confidence' and the inherently fact-bound nature of determining whether such a duty exists, we decline to first determine or place our thumb on the scale in the district court's determination of its presence," the panel wrote in its decision.

APP. 29

Stephen Best, one of Cuban's attorneys at Dewey & LeBoeuf LLP, said it appears the appeals court accepted the argument that a confidentiality agreement alone isn't proof of wrongdoing.

"The uncontradicted record in this case is devoid of any information suggesting any agreement imposing a fiduciary-like responsibility on Cuban," he said.

The SEC is "pleased" with the decision, spokesman John Nester said in a statement.

Avoided Losses

Cuban avoided $750,000 in losses by ordering the sale of his 6.3 percent stake in the Montreal-based company now called Copernic Inc. within hours of talking to Faure, the SEC alleged. The stock fell 8.5 percent on June 30, 2004, the first trading day after the private placement was announced, and 15 percent the day after Cuban's sales were disclosed in a regulatory filing made public July 2, according to Bloomberg data.

U.S. District Judge Sidney A. Fitzwater in Dallas threw out the case in July 2009, ruling that Cuban didn't agree not to trade on the information, only to keep it confidential.

"Under Cuban's reading, he was allowed to trade on the information but prohibited from telling others -- in effect providing him an exclusive license to trade on the material nonpublic information," the appeals judges said.

Cuban owns the HDNet high-definition television channel and the Landmark Theater chain. He made his fortune through the sale of Broadcast.com, the multimedia Web service he co-founded and that Yahoo! Inc. bought for $4.7 billion in 1999.

The next year, Cuban purchased the Mavericks from Ross Perot Jr. for $280 million, a record at the time for a National Basketball Association team.

The case is SEC v. Cuban, 09-10996, 5th U.S. Circuit Court of Appeals (New Orleans).

To contact the reporters on this story:Thom Weidlich in Brooklyn, New York, federal court at tweidlich@bloomberg.net;Joshua Gallu in Washington at jgallu@bloomberg.net.

To contact the editors responsible for this story David E. Rovella at drovella@bloomberg.net; Lawrence Roberts at lroberts13@bloomberg.net.

®2013 BLOOMBERG L.P. ALL RIGHTS RESERVED.

APP. 30



# THE WALL STREET JOURNAL
WSJ.com

September 21, 2010, 12:51 PM ET

# Mark Cuban's Insider-Trading Charges: A Refresher

By Shira Ovide

Mark Cuban's on-again, off-again insider trading charges are on again.

A federal appeals court effectively restarted the SEC's civil lawsuit against Cuban, the owner of the Dallas Mavericks basketball team and enfant terrible of the sports world.  In July 2009, a federal judge threw out charges connected to Cuban's sale of his 6% stake in Canadian Internet company Mamma.com in 2004 just before an equity offering that would have diluted Cuban's holdings. The SEC says Cuban 's inside information helped him avoided $750,000 in losses by selling his shares early.



Bloomberg News
Insider-trading charges against
Mark Cuban were reinstated by
an appeals court on Tuesday.

Cuban has denied the charges. But the Fifth Circuit Court of Appeals said Tuesday there was "more than a plausible" basis to find Cuban wasn't permitted to freely sell the shares. The appeals court sent the case back for further proceedings.

With the case starting up again, let's reach back in the memory banks and recap what the SEC alleges Cuban did:

On June 28, 2004, the SEC said Cuban was angry when he heard Mamma.com was planning a PIPE deal, or a private investment in a public entity, which tends to trigger declines in a company's stock price. "Well, now I'm screwed. I can't sell," the SEC alleges Cuban said when Mamma.com CEO Guy Faure informed him about the planned PIPE deal.

The next day, the feds say in their November 2008 complaint, Cuban sold all his 600,000 shares at about $13 each, benefiting from the confidential information.

Mamma.com announced the PIPE financing on the evening of June 29, 2004, sparking a next-day decline of about 9% in its stock price to $11.89. (Mamma.com, now called Copernic, trades at about $2.70 today.)

On his blog, BlogMaverick.com, the never-shy Cuban has kept a running log of gripes against the SEC case. "The SEC knows their case centers on one telephone conversation between two individuals- 4

APP. 31

years ago," Cuban wrote in November 2008. Cuban has said there was no agreement to hold onto his shares after learning of the PIPE deal — a central point in the SEC's charges.

Cuban said he bought shares in Mamma.com because he thought it had good search technology and a good business model. But Cuban considered the PIPE financing "a huge red flag," he wrote in 2005.

"I don't like the idea of selling in a private placement, stock for less than the market price, and then to make matters worse, pushing the price lower with the issuance of warrants. So I sold the stock."

"Cuban knew or was reckless in not knowing that he had received material, non-public information from Mamma.com," the SEC's 2008 complaint says.

Copyright 2013 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

APP. 32

🖶 Print this page

# TULSA WORLD

## Mark Cuban's dismissal request should be denied, SEC says

BY TOM KOROSEC Bloomberg News
Wednesday, August 22, 2012
8/22/12 at 3:15 AM

Billionaire Mark Cuban's request for dismissal of an insider-trading lawsuit by the Securities and Exchange Commission should be denied, the SEC told a judge.

"The completion of discovery has strengthened rather than weakened the basis for a jury to find Cuban liable," SEC lawyers said in an Aug. 17 filing in U.S. District Court in Dallas.

The SEC sued Cuban in 2008, accusing the Dallas Mavericks owner of trading on confidential information when he sold his stake in Mamma.com just before it announced a private placement of shares in 2004. The Montreal-based Internet search company is now known as Copernic Inc.

Last month, Cuban asked U.S. District Judge Sidney Fitzwater to dismiss the case, arguing that there was no evidence that Cuban agreed to keep information about the private placement confidential when he learned about it from then- Mamma.com CEO Guy Fauve.

Cuban won an earlier effort to have the suit dismissed on legal grounds. The SEC appealed the ruling and won, reinstating the case. A trial is scheduled for April.

In its filing, the SEC quoted e-mails from Mamma.com executives that were sent on the day Cuban learned of the private placement. In one, Chairman David Goldman told other executives, "Today, after much discussion, Guy spoke to Mark Cuban about the equity raise and whether or not he would be interested in participating."

"As anticipated he initially 'flew off the handle' and said he would sell his shares (recognizing that he was not able to do anything until we announce the equity raise.),'" Goldman wrote.

Christopher Clark, a lawyer for Cuban, said the SEC has alleged nothing new since the judge threw out the case on the previous motion for dismissal.

APP. 33

Besides the National Basketball Association team, Cuban owns the HDNet high-definition television channel and the Landmark Theater chain.

Original Print Headline: Case against Cuban called strong

**Associated Images:**



**Cuban**

Copyright © 2013, Tulsa World All rights reserved.

APP. 34



 

dallasnews    SportsDay    GuideLIVE    FD Luxe    neighborsgo

OBITS    CLASSIFIEDS    AUTOS    JOBS    REAL ESTATE    SHOPPING

# dallasnews BUSINESS

80°

Powered by *The Dallas Morning News*

FORECAST    TRAFFIC

WALL STREET    AIRLINES    TECHNOLOGY    PERSONAL FINANCE    TOP 100    REAL ESTATE    AUTOS

Home > Biz Beat Blog

## Mark Cuban to give deposition before SEC, Bloomberg says

By Brendan Case/Reporter
bcase@dallasnews.com
9:09 am on February 10, 2012 | Permalink

0    0    0    comments (0)

Bloomberg News is reporting that Mark Cuban has been ordered to appear at the U.S. Securities and Exchange Commission's office in Fort Worth this morning to answer questions about the agency's insider-trading allegations against the Dallas billionaire.

That's the latest wrinkle in the long-running legal battle between the nation's securities cop and the owner of the Dallas Mavericks. In a 2008 lawsuit, the SEC alleged that Cuban avoided $750,000 in losses by improperly selling his shares in a Canadian company called Mamma.com using inside information. Cuban denied the allegations and a federal judge in Dallas dismissed the case in 2009.

An appeals court reversed the dismissal in 2010, sending the case back to court. As Bloomberg points out, Cuban has accused the SEC of "egregious acts of misconduct" in its investigation of his trades. In a report last year, an internal SEC watchdog found "insufficient evidence" to substantiate Cuban's claims.

### From the web

YouTube 📹 From Searching to Closing, Learn Everything You Need to Buy a New Home

Earth911 Decommissioned Sea Fort Reborn as Luxury Island Retreat

HGTV 12 Clever Uses For Old Furniture

First to Know Belize's Largest Mayan Pyramid Destroyed

Parent Society Get To Know KaBoom!

### More From *Dallasnews.com*

BusinessDeveloper has a new mixed-use project in the works in North Dallas on U.S. Highway 75

BusinessMissouri bank expands to Dallas-area with leases downtown and in Frisco

Biz Beat BlogChoice Plano property is up for grabs thanks to auto dealership move

Crime BlogPolice say Dallas man promised 13-year-old girl drugs, sexually assaulted her behind trash bin

Biz Beat BlogDowntown Dallas residents will soon have a new grocery, liquor store and restaurant

Recommended by

This entry was posted in Uncategorized and tagged insider trading, Mark Cuban, SEC by Brendan Case/Reporter. Bookmark the permalink [http://bizbeatblog.dallasnews.com/2012/02/mark-cuban-to-give-deposition.html/] .

## Comments

Dallasnews.com is now using Facebook Comments. To post a comment, log into Facebook and then add your comment below. Comments are subject to Facebook's Privacy Policy and Terms of Service on data use. If you don't want your comment to appear on Facebook, uncheck the 'Post to Facebook' box. To find out more, read the FAQ.

Add a comment...

☑ Post to Facebook          Posting as Andrea Olive (Not you?)    Comment

Facebook social plugin

APP. 35

| DALLASNEWS | | ADVERTISING | CONTACT US | RELATED SITES |
|---|---|---|---|---|
| Home | Autos | View ads | Careers | AlDiaTX.com |
| Blogs | Real estate | Place a Classified ad | News tips | FDLuxe.com |
| Business | Jobs | Media kit | 2013 DMN Intern Program | GuideLive.com |
| eBooks | Shopping | Special sections | Feedback/questions | neighborsgo.com |
| Entertainment | Classifieds | | | eEdition |
| Investigations | Business listings | | | Parade |
| Life | Legal notices | | | Pegasusnews.com |
| Local | Obituaries | SUBSCRIBER SERVICES | NEWSPAPER ARCHIVES | DentonRC.com |
| Nation & World | Pets | Home delivery | DMN story archive | Local business listings |
| Opinion | Mobile Apps | Pay bill | Obituary archive | The Texas Wedding Guide |
| Sports | --------- | Vacation stop | 1885-1982 archive | Design Guide Texas |
| Traffic | Site map | | | |
| Weather | | | | |

CELEBRATIONS
Submit a Celebration ad
View Celebration ads

## The Dallas Morning News

©2013, The Dallas Morning News Inc. All Rights Reserved | Terms of Service | Privacy Policy

http://bizbeatblog.dallasnews.com/2012/02/mark-cuban-to-give-deposition.html/

7/26/2013

**From the Dallas Business Journal
:http://www.bizjournals.com/dallas/news/2013/03/05/mark-cuban-unable-to-
shake-sec-insider.html**

Mar 5, 2013, 3:30pm CST Updated: Mar 6, 2013, 7:00am CST

# Mark Cuban unable to shake SEC insider trading lawsuit



Candace Carlisle
      Staff Writer- *Dallas Business Journal*
      Email | Twitter | Twitter | Google+

**Dallas Mavericks** owner Mark Cuban has lost his bid to get a **U.S. Securities and
Exchange Commission** civil fraud lawsuit thrown out that accuses him of insider trading,
according to numerous media reports.

A Dallas federal judge said the SEC could continue to press the fraud case against Cuban,
which alleges that he avoided more than $750,000 of losses by selling his 600,000 shares in
**Mamma.com Inc.** with insider information.

Cuban allegedly sold the shares in June 2014 after learning that an equity offering would
dilute his 6.3 percent stake in the search engine company.

U.S. District Judge Sidney Fitzwater in Dallas told Cuban the question of dismissing the case
was a close one, but the SEC deserved the right to present the case to a jury, according to
reports.

      Candace covers commercial and residential real estate and sports business.

APP. 37

– The Daily Caller - http://dailycaller.com –

# Mark Cuban charges against SEC unfounded: source

Posted By Kells Hetherington On 4:08 PM 09/17/2011 In Business | No Comments

(Reuters) – The internal watchdog at the Securities and Exchange Commission has concluded that the accusations of investigative misconduct against the enforcement division by Dallas Mavericks basketball team owner Mark Cuban have no merit, according to a person familiar with the matter.

The SEC sued Cuban in 2008 for insider trading, alleging that he had sold his 6.3 percent stake in Mamma.com in June 2004 after learning confidentially that the Montreal-based search engine company was planning a stock offering. The SEC said Cuban's sale allowed him to avoid more than $750,000 of losses.

The case was initially dropped in July 2009 by a federal judge who ruled that Cuban did not qualify as an insider. But last September, Cuban was ordered to face the charges by a federal appeals court, reviving the high-profile insider trading case.

Full story: Mark Cuban charges against SEC unfounded: source | Reuters.

Article printed from The Daily Caller: **http://dailycaller.com**

URL to article: **http://dailycaller.com/2011/09/17/mark-cuban-charges-against-sec-unfounded-source/**

Copyright © 2011 Daily Caller. All rights reserved.

  




Powered by Limelight

# Mark Cuban charged with insider trading

**SEC charges Dallas Mavericks owner with insider trading related to sales of Mamma.com.**

By David Goldman, CNNMoney.com staff writer
Last Updated: November 17, 2008: 4:03 PM ET



NEW YORK (CNNMoney.com) -- Billionaire entrepreneur Mark Cuban, Basketball Association's Dallas Mavericks, was charged Monday by th Commission with insider trading.

The civil suit was filed by the SEC in a federal court in Dallas.

According to the SEC, Cuban sold 600,000 shares of Internet search company Mamma.com in June 2004 using non-public information.

Cuban is accused of calling his broker and instructing him to sell all of his stock from Mamma.com after receiving the confidential information from the company.

The SEC said Cuban learned that the company would raise money through a public offering, and he knew the stock price was about to fall.

When the offering was made public, the stock fell 9.3%, and Cuban avoided losses in excess of $750,000 by selling stock the day before, the SEC report said.

"I am disappointed that the Commission chose to bring this case based upon its Enforcement staff's win-at-any-cost ambitions," said Cuban in a statement released by his legal counsel, Dewey & LeBoeuf. "The staff's process was result-oriented, facts be damned. The government's claims are false and they will be proven to be so."

An SEC official said Cuban was given the public offering information from Mamma.com in confidence, and Cuban made illegal use of that knowledge.

"As we allege in the complaint, Mamma.com entrusted Mr. Cuban with nonpublic information after he promised to keep the information confidential," Scott W. Friestad, Deputy Director of the SEC's Division of Enforcement, said in the report. "Less than four hours later, Mr. Cuban betrayed that trust by placing an order to sell all of his shares."

APP. 39

Mamma.com has since changed its name to Copernic Technologies (CNIC), and now produces Internet search-advertising services in addition to search software. Copernic's stock currently trades for less than $1 per share.

According to Phillip Stern, a former SEC attorney and current lawyer at Neal, Gerber & Eisenberg, Cuban will likely face a fine of twice the losses he would have incurred, or about $1.5 million. The SEC's lawsuit is a civil case, and Cuban does not face any criminal charges.

Stern does not believe Cuban will have to divest his ownership stake in his other companies, including cable network HDNet.

In an ironic twist, Cuban is also the majority owner of Sharesleuth.com, an investigative blog designed to sniff out and expose securities fraud, according to site editor Christopher Carey.

Cuban has been identified as one of the bidders for Major League Baseball's Chicago Cubs for about a year, after the team was put up for sale by owner Sam Zell, chief executive of the Tribune Co. But baseball sources told the *Chicago-Sun Times* last week that Cuban is unlikely to get the league's blessing despite his deep pockets.

"These allegations really say something about his integrity," said Stern. "Baseball was already concerned about him, and now it will be difficult to persuade them otherwise." ∎

First Published: November 17, 2008: 11:51 AM ET

/div>

**Find this article at:**
http://money.cnn.com/2008/11/17/news/newsmakers/cuban_insider_trading

▣ Check the box to include the list of links referenced in the article.

© 2007 Cable News Network LP, LLP.

APP. 40

The New York Times
# DealB%k
Edited by Andrew Ross Sorkin

NOVEMBER 17, 2008, 11:49 AM

## S.E.C. Accuses Mark Cuban of Insider Trading

*By DEALBOOK*

### Updated at 3:18 p.m.

The Securities and Exchange Commission said Monday that it had charged Mark Cuban, the billionaire Internet entrepreneur and owner of the Dallas Mavericks basketball team, with insider trading for selling 600,000 shares of an Internet search engine company.

The S.E.C. said Mr. Cuban sold the stock in the company, **Mamma.com**, based on nonpublic information about an impending stock offering. The commission asserted that Mr. Cuban avoided losses in excess of $750,000 by selling his stock prior to the public announcement of the offering.

The commission filed a civil lawsuit against Mr. Cuban in Federal District Court for the Northern District of Texas, accusing him of violating federal securities laws. It said it was seeking to impose financial penalties and confiscate gains from the trades.

"As we allege in the complaint, Mamma.com entrusted Mr. Cuban with nonpublic information after he promised to keep the information confidential," Scott W. Friestad, deputy director of the S.E.C.'s enforcement division, said in a statement. "Less than four hours later, Mr. Cuban betrayed that trust by placing an order to sell all of his shares. It is fundamentally unfair for someone to use access to nonpublic information to improperly gain an edge on the market."

Mr. Cuban's lawyer, Ralph C. Ferrara of **Dewey & LeBoeuf**, argued that the S.E.C.'s lawsuit "has no merit and is a product of gross abuse of prosecutorial discretion."

"Mr. Cuban intends to contest the allegations and to demonstrate that the commission's claims are infected by the misconduct of the staff of its enforcement division," Mr. Ferrara said in a statement posted on Mr. Cuban's blog.

The statement quoted Mr. Cuban as saying: "I am disappointed that the commission chose to bring this case based upon its enforcement staff's win-at-any-cost ambitions. The staff's process was result-oriented, facts be damned. The government's claims are false and they will be proven to be so."

In an aside, Mr. Cuban said on his blog, "I wish I could say more, but I will have to leave it to this, and let the judicial process do its job."

APP. 41

In its complaint, the S.E.C. asserted that Mamma.com invited Mr. Cuban to participate in the stock offering in June 2004 after he agreed to keep the information confidential. The S.E.C.'s complaint asserted that Mr. Cuban knew that the offering would be conducted at a discount to the prevailing market price and that it would be dilutive to existing shareholders.

Within hours of receiving this information, the S.E.C. alleged in its complaint, Mr. Cuban called his broker and instructed him to sell his entire position in the company.

When the offering was publicly announced, the commission said, Mamma.com's stock price opened at $11.89, down $1.215 or 9.3 percent from the prior day's closing price of $13.105.

Mamma.com is now owned by **Copernic**, a Montreal-based company that provides search software and online advertising services.

"Insider trading cases are a high priority for the commission," Linda Chatman Thomsen, director of the commission's enforcement division, said in the S.E.C. statement. "This case demonstrates yet again that the commission will aggressively pursue illegal insider trading whenever it occurs."

A lawyer familiar with securities law and insider trading cases said the commission must think it has a strong case against Mr. Cuban. "It does take a fair amount of time to develop these cases," said Phil Stern, the co-chairman of white-collar criminal, regulatory and internal investigative services at the law firm of **Neal Gerber Eisenberg**. "They felt they had the case. If anything, they would be more cautious with a high-profile person."

Another lawyer who previously worked at the S.E.C. said the commission's action on Monday was "the beginning of a long process."

"There is going to have to be discovery, depositions, lots of conferences with the court, pretrial hearings," said John Carney, a partner at the law firm of **Baker Hostetler** and a former senior counsel at the S.E.C. and a former chief of the securities fraud unit of the United States attorney's office in New Jersey. "A trial in a case like this could drag out for years."

Earlier this year, Mr. Cuban made a bid to buy the Chicago Cubs, reportedly offering $1.3 billion. It was not immediately clear how the S.E.C.'s charges would affect his chances of being approved by Major League Baseball if his bid were to succeed.

But Mr. Stern of Neal Gerber Eisenberg said the charges would hurt Mr. Cuban's chances to buy the Cubs.

Mr. Cuban, whose properties include the **HDNet** cable television network, is already a controversial basketball team owner. He is known for sitting conspicuously behind his own bench in a Mavericks T-shirt and arguing against the referees.

APP. 42

Off the court and on his own blog, Mr. Cuban has been a frequent critic of the National Basketball Association and its commissioner, David Stern, particularly on the issue of officiating, where he once claimed the chief of referees could not run a Dairy Queen. Mr. Cuban then ran a Dairy Queen for a day; even in retribution, he was seeking attention.

Asked about the S.E.C.'s allegations against Mr. Cuban, Mike Bass, an N.B.A. spokesman said, "We don't comment on matters such as this."

Mr. Cuban was the first N.B.A. owner to write a blog, posting his opinions almost daily, from topics as diverse as appeals to fans, criticism of the opposing team (particularly the Mavericks' rival San Antonio Spurs), and treatises on business and politics. A recent post discusses hedge funds.

Although he has been both insightful and contentious within league ownership circles, in eight years since being approved owner of the N.B.A.'s Dallas Mavericks, Mr. Cuban did transform the franchise from a laughingstock to an N.B.A. championship contender. The Mavericks made the finals in 2006, only to collapse and lose the final four games to the Miami Heat.

During those 2006 playoffs, Mr. Cuban was fined $450,000, including $250,000 for several acts of misconduct after the penultimate loss, including yelling at a referee, staring down Mr. Stern and for uttering profanities to reporters in two separate post-game tirades.

In his eight years of ownership, Mr. Cuban has amassed nearly $1.7 million in fines. He has also matched each fine with a donation to charity.

Mr. Cuban has outfitted his team's spiffy locker rooms in the American Airlines Center with the latest technology (televisions, computers) to attract free agents to come to Dallas. Mr. Cuban often worked out in his team's weight room before games, talking to reporters with sweat dripping down his body as he climbed a Stairmaster and challenged reporters' views.

The image seemed a parallel to his own life as a suburban Pittsburgh-born self-made billionaire.

*— Jack Lynch and Liz Robbins*

S.E.C.'s Insider Trading Lawsuit Against Mark CubanGet your own at Scribd or explore others: Businessinsider tradingdallas mavericks

Go to Statement from the Securities and Exchange Commission>>
Go to Statement from Mark Cuban's Lawyer via Mr. Cuban's Blog>>

APP. 43

Copyright 2013 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018



# Billionaire Mark Cuban Slapped With Insider Trading Charges By SEC

 **ERICK SCHONFELD**

**Monday, November 17th, 2008**

When you are a billionaire and you know a stock is going to down, your instinct might be to sell it. But if you know that the stock is going to tank because you are privy to insider information, it's probably not a good idea to sell that stock. Entrepreneur Mark Cuban, who owns the Dallas Mavericks and is chairman of HDNet, finds himself facing insider trading charges from the SEC because of doing just that. Back in June, 2004, he sold 600,000 shares of search engine **Mamma.com (http://www.mamma.com/)** after he was asked by the company to participate in a dilutive follow-on offering.



Maybe he didn't read the boilerplate agreement he (presumably) signed that characterized the details of the follow-on as insider information. But once he got that information, the SEC says he was not legally allowed to act on it until it became public. According to an **SEC press release (http://sec.gov/news/press/2008/2008-273.htm)** :

> *The Commission's complaint, filed in the U.S. District Court for the Northern District of Texas, alleges that in June 2004, Mamma.com Inc. invited Cuban to participate in the stock offering after he agreed to keep the information confidential. The complaint further alleges that Cuban knew that the offering would be conducted at a discount to the prevailing market price and that it would be dilutive to existing shareholders.*

> *Within hours of receiving this information, according to the complaint, Cuban called his broker and instructed him to sell Cuban's entire position in the company. When the offering was publicly announced, Mamma.com's stock price opened at $11.89, down $1.215 or 9.3 percent from the prior day's closing price of $13.105. According to the complaint, Cuban avoided losses in excess of $750,000 by selling his stock prior to the public announcement of the offering.*

APP. 45

Cuban's profit on the trade was only $750,000. He's likely going to spend a lot more than that on legal fees. Why did he do it? His normally voluble blog is silent on the SEC charges, but back in 2004 he did write a **post (http://blogmaverick.com/2004/03/17/today-was-a-very-good-day/)** on why he bought the shares. And then in 2005, in a post about **another topic (http://blogmaverick.com/2004/03/17/today-was-a-very-good-day/)** , he had this to say about why he sold Mamma.com as an aside:

> . . . I wanted to reference Mamma.com. I had purchased stock in Mamma.com in hope that it could be an up and coming search engine. I thought I had done some level of due diligence. Talked to the company management. Talked to some employees who worked in sales. Read the SEC Filings. I knew that they had a checkered past and had been linked to stock promoter Irving Kott, and that their law firm still handled some of Kotts business, but the CEO, Chairman, lawyers all said that things were reformed and the company was focused on its business.
>
> Then the company did a PIPE financing. Im [sic] not going to discuss the good or bad of PIPE financing other than to say that to me its a huge red flag and I dont [sic] want to own stock in companies that use this method of financing .
>
> Why? Because I dont [sic] like the idea of selling in a private placement, stock for less than the market price, and then to make matters worse, pushing the price lower with the issuance of warrants.So I sold the stock.

He is pretty clear about why he sold the stock. He saw the PIPE financing as a red flag. Did he even consider that knowledge to be insider information? Only he can tell us. Why did he do it? The title of the top post on his blog right now, which is about the Mavs, kind of says it all: **"I Hate To Lose" (http://blogmaverick.com/2008/11/14/i-hate-to-lose/)**

**Update**: Cuban has **posted on his blog (http://blogmaverick.com/2008/11/17/the-sec/)** the statement below. He is obviously limited in what he can say for legal reasons:

> I wish I could say more, but I will have to leave it to this, and let the judicial process do its job.
> November 17, 2008
> RE: SEC Civil Action in the United States District
>
> for the Northern District of Texas, Dallas Division
>
> Mark Cuban today responded to a civil complaint filed by the United States Securities and Exchange Commission in the United States District for the Northern District of Texas, Dallas Division. In its complaint, the Commission charges that Mr. Cuban engaged in violations of the federal securities laws in connection with transactions in the securities of Mamma.com Inc.
>
> This matter, which has been pending before the Commission for nearly two years, has no merit and is a product of gross abuse of prosecutorial discretion. Mr. Cuban intends to contest the allegations and to demonstrate that the

APP. 46

> *Commission's claims are infected by the misconduct of the staff of its*
> *Enforcement Division.*
>
> *Mr. Cuban stated, "I am disappointed that the Commission chose to bring this*
> *case based upon its Enforcement staff's win-at-any-cost ambitions. The staff's*
> *process was result-oriented, facts be damned. The government's claims are*
> *false and they will be proven to be so."*

Wow, it took the SEC two years to make its case. Maybe it's not so open-and-shut.

# blog maverick
## the mark cuban weblog

## I Hate to Lose
Nov 14th 2008 10:48AM

No question the start of the season has been a struggle for the Mavs and all of our fans. I guess the good news is that hopefully we are getting the bad part of the season out of the way at the beginning rather than during the end of the year, as we have the last several years.

I hate to lose, and we are going to do everything we can to get everyone on the same page so we can finish games the same way we have been starting them.

Thanks to all Mavs fans for hanging in there with us. I hate to lose games as much as you do, but the

**RSS Newsfeed**
Add to My AOL
Add to MyYahoo
Add to Google Read
Add to Bloglines

**Blogs I Read**
Fallen Patriot Fund
Great Mobile Links

## CrunchBase Information (http://www.crunchbase.com/)
## Mark Cuban (http://www.crunchbase.com/person/mark-cuban)
Information provided by **CrunchBase (http://www.crunchbase.com/)**

« PREVIOUS STORY                                                                      NEXT STORY »

**Target's Black Friday ad leakedInfoaxe Records Your Browsing Sessions, Lets You Search Your Web History**

ADVERTISE HERE




## 21 comments                                                                  0

      Leave a message...

Best        Community                                                          Share 

APP. 48



## U.S. Securities and Exchange Commission

### SEC Files Insider Trading Charges Against Mark Cuban

**FOR IMMEDIATE RELEASE**
**2008-273**

*Washington, D.C., Nov. 17, 2008* — The Securities and Exchange
Commission today charged Dallas entrepreneur Mark Cuban with insider
trading for selling 600,000 shares of the stock of an Internet search engine
company on the basis of material, non-public information concerning an
impending stock offering.

### Additional Materials

- Litigation Release No. 20810
- SEC Complaint

The Commission's complaint, filed in the U.S. District Court for the Northern
District of Texas, alleges that in June 2004, Mamma.com Inc. invited Cuban
to participate in the stock offering after he agreed to keep the information
confidential. The complaint further alleges that Cuban knew that the
offering would be conducted at a discount to the prevailing market price
and that it would be dilutive to existing shareholders.

Within hours of receiving this information, according to the complaint,
Cuban called his broker and instructed him to sell Cuban's entire position in
the company. When the offering was publicly announced, Mamma.com's
stock price opened at $11.89, down $1.215 or 9.3 percent from the prior
day's closing price of $13.105. According to the complaint, Cuban avoided
losses in excess of $750,000 by selling his stock prior to the public
announcement of the offering.

"Insider trading cases are a high priority for the Commission. This case
demonstrates yet again that the Commission will aggressively pursue illegal
insider trading whenever it occurs," said Linda Chatman Thomsen, Director
of the SEC's Division of Enforcement.

Scott W. Friestad, Deputy Director of the SEC's Division of Enforcement,
said, "As we allege in the complaint, Mamma.com entrusted Mr. Cuban with
nonpublic information after he promised to keep the information
confidential. Less than four hours later, Mr. Cuban betrayed that trust by
placing an order to sell all of his shares. It is fundamentally unfair for
someone to use access to nonpublic information to improperly gain an edge
on the market."

The complaint alleges that Cuban violated Section 17(a) of the Securities
Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and

Rule 10b-5 thereunder. The Commission's complaint seeks to permanently enjoin Cuban from future violations of the federal securities laws, disgorgement (with prejudgment interest), and a financial penalty.

# # #

For more information, contact:

Scott W. Friestad
Deputy Director, SEC's Division of Enforcement
(202) 551-4962

Robert B. Kaplan
Assistant Director, SEC's Division of Enforcement
(202) 551-4969

*http://www.sec.gov/news/press/2008/2008-273.htm*

Home | Previous Page                                          Modified: 11/17/2008

# EXHIBIT B

## JUROR QUESTIONNAIRE

**If you need additional space for an answer, please use space provided on page 2**

1. Name_____ Age: _____   Male   Female   Mr.   Mrs.   Ms.   Dr.   Other:____

2. Marital Status:   Single   Married   Separated   Divorced   Widowed   Long Term Relationship   Other
   Number of Children:_____

3. Last level of education completed: **[Check ONE]** If applicable, specify major or field: _____
   Grammar School   High School   GED   Some College/Trade or Technical School   Associate Degree
   Undergraduate Degree   Post-Graduate Degree

4. What is your current employment status? **[Check ALL that apply]**   Full-time Employment   Part-time Employment
   Self-employed   Homemaker   Unemployed, Looking for work   Unemployed, Not looking for work   Disabled
   Worker's Comp.   Retired   Student   Other _____

5. Please list your employment history for the past ten (10) years:  [**Begin with the MOST RECENT**]:

| Dates | Employer | Job Title | Duties/Responsibilities | Industry |
|-------|----------|-----------|-------------------------|----------|
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |

6. Spouse's or Partner's most recent Employer and Job Title: _____
   Children's most recent Employer(s) and Job Title(s) (if applicable): _____

7. Do you (or does anyone you know well) have any training, education, or experience in the following areas?
   **[Check ALL that apply]**   Business   Finance   Law Enforcement   Stock Brokerage
   Shareholders' Rights   Banking   Legal Industry   Board of Directors Policies and Procedures

8. Do any of the following apply to you, or anyone close to you?

|   |   |   |   |
|---|---|---|---|
| a. | Been a party or a witness in a lawsuit? | Yes | No |
| b. | Considered filing a lawsuit? | Yes | No |
| c. | Served on jury duty in a civil case? | Yes | No |
| d. | Served as a foreperson on a jury? | Yes | No |
| e. | Worked for local, state, or federal government (or any related agency)? | Yes | No |
| f. | Been involved in a union, labor organization or other interest group? | Yes | No |
| g. | Been involved in buying or selling stocks? | Yes | No |
| h. | Been lied to or mislead in a business deal? | Yes | No |
| i. | Own any stocks, including mutual funds? | Yes | No |
| j. | Ever served in the military? | Yes | No |
| k. | Work for, currently or previously, a law enforcement agency? | Yes | No |
| l. | Follow the stock market or Wall Street news closely? | Yes | No |
| m. | Work for, previously or currently, a financial institution? | Yes | No |
| n. | Been audited by the IRS? | Yes | No |
| o. | Lost a significant amount of money on an investment? | Yes | No |
| p. | Served on a company's or charity's Board of Directors? | Yes | No |
| q. | Supported or advocated for Wall Street reform? | Yes | No |
| r. | Been a party to a confidentiality or non-disclosure agreement? | Yes | No |

**If YES** to any of the above, please describe: _____
_____
_____
_____
_____

9. Do you use a computer?   Yes   No   **If YES**, where? **[Check ALL that apply]**   Work   Home   Mobile
   How often?   Daily   Weekly   Monthly or less

1

10. Do you use the Internet?     Yes    No
   **If YES**, for what? **[Check ALL that apply]**       E-mail       Check the stock market     Read Financial News
       Social Networking       Sports      Work
   How often?      Daily       Weekly       Monthly or less
   How long have you been using the Internet? **[Check ONE]**      Less than 1 yr.    2-5 yrs.    5-10 yrs.    10+ yrs

11. Do you think of yourself as a(n):  **[Check ALL that apply]**      Leader     Follower     Team Player     Independent Thinker

12. Are you familiar with the term "insider trading"?     Yes     No **If YES**, please explain: _____
_____
_____
_____

13.  Have you ever heard of Mark Cuban?    Yes     No **If YES**, please explain any impressions or opinions you have about
Mark Cuban: _____
_____
_____

14.  Have you ever heard of Mamma.com?     Yes     No **If YES,** please explain any impressions or opinions you have
about Mamma.com:_____
_____
_____

15. Have you ever heard of the Securities & Exchange Commission also known as the SEC?   Yes    No **If YES,** please
explain any impressions or opinions you have about the SEC: _____
_____
_____

16. Have you seen, read, or heard anything about the case the SEC has brought against the defendant, Mark Cuban?
    Yes    No **If YES**, please describe the information you learned about this case before today: _____
_____
_____

17.  Is there any other information about you or your ability to serve as a juror in this case that you want the Court or the
parties to know?     Yes    No **If YES**, please explain below. If you would like to discuss the information privately, please
answer "Privately"  below:_____
_____
_____


**Additional Space for any answer or explanation if needed:**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____


Signature: _____          Date: _____

APP. 52

# EXHIBIT C

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 CR 727 - 1,2,3,5 | **DATE** | 3/16/2007 |
| **CASE TITLE** | USA vs. Conrad Black, John Boultbee, Peter Atkinson and Mark Kipnis | | |

**DOCKET ENTRY TEXT**

Juror Questionnaire filed.

■[ For further details see text below.]                                            Notices mailed by Judge's staff.

---

### STATEMENT

### NAME: _____

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 05 CR 727** |
| | ) | |
| **CONRAD M. BLACK, et al.** | ) | **Hon. Amy J. St. Eve** |

### JUROR QUESTIONNAIRE

You have been summoned by this Court for jury selection. The case for which you have been summoned for jury selection is a criminal case entitled *United States of America v. Conrad M. Black, John A. Boultbee, Peter Y. Atkinson, Mark S. Kipnis, and The Ravelston Corporation Limited ("Ravelston")*. In the indictment, defendants Black, Boultbee, Atkinson, Kipnis, and Ravelston are charged with various alleged offenses related to the conduct of the affairs of Hollinger International, Inc. Each of the defendants has pled not guilty to the charges alleged.

As part of the jury selection process, each of you must complete this juror questionnaire. The questions on this form are asked to assist the Court and the attorneys in the jury selection process for this trial. This questionnaire is designed to obtain information about your background as it relates to your possible service as a fair and impartial juror in this case. Its use will avoid the necessity of asking each prospective juror every one

Page 1 of 45

## STATEMENT

of these questions in open Court, thereby substantially shortening the jury selection process.  Unless the question states otherwise, the fact that a particular question is asked does not imply that the subject matter of the question is an issue in this case.  As you read the questions, you are not to draw any inferences about the issues which must be decided in this case.

The questions are not meant to invade your privacy, but to help select a fair and impartial jury for this case.  If there is any reason why you might not be able to give both sides a fair trial in this case, it is important to say so.  Please answer each question as fully as you can.  Your complete honesty is essential.  Do not leave any questions blank.  If a question does not apply to you in any way, write "N/A" (for "not applicable"), rather than leaving the form blank.  If you do not understand the question, please write that in the space for the answer. If you feel the answer is too personal, please say so in the space provided.  You will have the opportunity to discuss your answer privately.  If you do not understand a question, need more space for your response, or wish to make further comments about any question, please use the extra sheet attached to the back of the questionnaire. If you use the explanation sheets, please make sure to indicate which numbered question you are answering. **DO NOT WRITE ON THE BACK ON ANY PAGE.**

## STATEMENT

You are instructed not to discuss this case or questionnaire with anyone, including your family or fellow jurors. It is important that your answers be yours and yours alone.

Your answers are confidential. They will be reviewed by the judge and the lawyers in this case. Following jury selection, the original questionnaire will be kept under seal and will be disclosed, if at all, with names and other identifying information removed. There may be some questions that touch on matters that you consider personal, private or other wise sensitive. In order to select a fair and impartial jury, however, it is important that the Court and the lawyers have your complete and truthful answers to these kinds of questions. If there are certain questions you prefer not to answer in writing (even though the document remains confidential), please so indicate and the judge will discuss it with you in private at a later time.

Please print your name on the cover page, and upon completion, sign your name on the last page where indicated. If possible print your answers and use ink only. <u>You are expected to sign your questionnaire, and your answers will be given the same effect as a statement given to the Court under oath.</u>

An indictment is merely an accusation. It is proof of nothing. You may draw no inference against any defendant from the fact that he has been indicted. Each defendant has pleaded "not guilty" to each of the charges against him/it and he/it is presumed innocent. A defendant does not have to prove anything. The government bears the burden of proving the guilt of each defendant beyond a reasonable doubt.

Judge Amy St. Eve is the trial judge in this case. Once the jury is selected, generally this case will be tried from approximately 9:30 a.m. to 5:00 p.m., Monday through Thursday each week. You typically will have Fridays off from court. If you are expected to be here on a Friday, Judge St. Eve will let you know in advance. The next phase of the jury selection process will begin on March 14, 2007 at 9:00 a.m., and will continue until completed. During this phase, you will likely be asked follow-up questions by the judge based on your responses to this questionnaire. You will have the opportunity to answer any of these questions in private. To determine whether you will be required to report on Wednesday, March 14, or one day shortly thereafter, you must call 1-800-572-4210 and key in your participant number when indicated (your participant number is located to the right of your name on the summons.) The message will inform you which day and time to appear. The opening statements and presentation of the evidence in the trial will begin after the jury selection process is completed. The trial is expected to last 12 to 16 weeks from the commencement of opening statements. This is just an estimate and the time frame could change a bit depending on the circumstances of the case.

Thank you for your time and cooperation.

1.    Name : _____
                        (First)         (Middle Initial)        (Last)   (Maiden, if applicable)

2.        Sex: _____

## STATEMENT

3.    Date of Birth: _____    Age: _____

4.    Where were you born and raised? _____

5.    What city/town/village and county do you currently live in?

       _____      _____    _____

         (city/town)              (zip code)      (county)

6.    If you live in the Chicago area, what is the name of your neighborhood, if any (for example, Streeterville, Jefferson Park, etc.)? _____

7.    Are you currently: (check all that apply)

        Married __ (Since _____)    Divorced ____ (Since _____)

        Separated _ (Since _____)    Widowed ____ (Since _____)

        Single, Never Married __

        Living With a Partner/Significant Other _ (Since _____)

8.    Do you have any medical issues, mental impairments or physical problems (for example, sight, hearing, or back) that may affect your ability to understand the evidence or would make it difficult for you to sit for long periods?

    ☐ Yes ☐ No

    If yes, please describe:

9.    If you have children or stepchildren, please list for each child (include children and stepchildren who do not live with you), his or her sex, age, where they reside, education level, and (if applicable) occupation.

**Sex**  **Age**

       **City of Residence**

       **Education Level**

       **Occupation and Employer (or if in college, their school attended and degree sought)**

Page 4 of 45

**STATEMENT**

10.    Please provide the following information about your parents (and your stepparents, if any):

**City of Residence    R    e    t    i    r    e    d    ?**
**Occupation/Employment? (before retirement or death, if applicable)**
**Father**
**Mother**
**Stepfather**
**Stepmother**

11.    (a)    How long have you lived at your current address? ____ years

       (b)    Which of the following best describes your type of residence?

              _____ Rental apartment    _____ Own home
              _____ Rental house         _____ Own apartment/condo/townhome
              _____ Rental (other)       _____ Own mobile home
              _____ Other (specify) _____

12.    In what other cities, towns, or areas have you lived during the past 10 years, and how long did you live there? (Please note if you have lived in another country or state.)

| STATEMENT |
|---|

13.     If you live with persons other than your spouse/partner and/or children/stepchildren, please explain their relationship to you (for example, roommate or parent) and their occupation:

14.     What is the name of your current employer, your job title and job description? (Or, if you are no longer employed, list your last employer, job title and job description.)

        (a)     How many years have you worked at your current/last job? _____ Years

        (b)     Regarding your employment, please check all that apply to you at this time:

              _____Part-time         _____Unemployed
              _____Full-time          _____Self-employed
              _____Work at home       _____Family Farm
              _____Homemaker        _____Own Business
              _____Retired            _____Disabled
              _____Student            _____Other (please describe)_____

        (c)     Please briefly describe what you do on the job on a typical work day:

        (d)     Do/did you have management or supervisory duties? □ Yes □ No

        (e)     Are you/were you supervised by others at your job? □ Yes □ No

        (f)     Do/did you have authority to hire and fire employees? □ Yes □ No

        (g)     Will you be paid by your employer during jury service? □ Yes □ No

| STATEMENT |
|---|

If yes, for how many days? _____

15.    Please list prior occupations and employers, if any during the last ten years:

**Job   Employer    How long employed there?**

16.    Have you or anyone close to you ever worked for any of the following?

_____State, City or County office/dept./agency      _____Police department
_____Illinois Department of Corrections            _____Law firm
_____Federal government office/dept./agency        _____State or Federal court
_____Other government agency/office                _____Other Law Enforcement

If you checked any of the above, please describe the person involved, the agency or organization involved and the nature of the employment:

17.    Have you or anyone close to you ever owned a business?

□ Yes □ No

(a)    If Yes, briefly describe the type and size of the business:

Page 7 of 45

APP. 59

| STATEMENT |
|---|
| (b)    If Yes, was the business ever bought or sold by you or anyone close to you ?<br><br>□ Yes □ No<br><br>If Yes, briefly describe:<br><br><br><br>18.  Have you or anyone close to you ever had any training, education, or been employed in the newspaper industry?<br><br>□ Yes □ No<br>If yes, please explain:<br><br><br><br>19.  Have you or anyone close to you ever been employed in or had any training or education in any aspect of the legal field?<br><br>□ Yes □ No<br>If yes, please explain:<br><br><br><br>(a)    Have you ever hired or consulted with a lawyer for any reason?<br><br>□ Yes □ No<br>If yes, please describe:<br><br><br><br>(b)    If yes, were you satisfied with your representation?<br><br>□ Yes □ No<br>If your answer is yes OR no, please describe: |

Page 8 of 45

**STATEMENT**

    (c)    Do you have business dealings with attorneys in the normal course of your work?

        ☐ Yes ☐ No
        If yes, please describe:

    (d)    How many attorneys have you known fairly well?_____

    (e)    Are you or anyone close to you now employed, or ever been employed, by a law firm or office?

        ☐ Yes ☐ No

        If Yes, please list each employer and briefly describe the nature of your employment:

20.   Have you or anyone close to you ever been employed in the accounting profession?

   ☐ Yes ☐ No
   If yes, please describe:

    (a)    How many accountants or auditors have you known fairly well?_____

    (b)    Do you have business dealings with accountants or auditors in the normal course of your work?

        ☐ Yes ☐ No
        If yes, please describe:

**STATEMENT**

21.  What is your highest education level?

☐  Grammar school      ☐ Some high school      ☐ High school diploma/GED
☐  Trade or technical school
☐  Subject studied and degree: _____

Some college      Major/Degree: _____      School attended _____
College degree    Major/Degree: _____      School attended _____
Graduate school   Major/Degree: _____      School attended _____

22.  Do you have any plans to attend school in the future? ☐ Yes ☐ No   If Yes, please explain:

23.  Describe any special training or skills that you have (for example as a welder, auto mechanic, or cook):

24.  Have you or any immediate members of your family ever served in any branch of the armed forces of the United States (including military reserve or ROTC)?

☐  Yes ☐ No

If Yes, please answer the following and identify if the person is you or a member of your family:

(a)  What branch of service:

(b)  When did you or your relative serve:

(c)  Highest rank achieved:

(d)  Occupational specialty:

Page 10 of 45

| STATEMENT |
|---|

(e)     Duties:

(f)      Place of service:

(g)     Did you or this person see combat?

(h)     Have you or any of your family members participated in a Court Martial?

   □ Yes  □ No

(i)      If Yes, when, where and under what circumstances:

(j)      What type of discharge did you or that person receive?

25.   Have you or anyone close to you received training, education or had work experience in any of the following fields:

_____ Accounting/auditing   _____ Banking
_____ Bookkeeping     _____ Business
_____ Finance       _____ Law enforcement
_____ Prisons/correctional facilities _____ Stock Brokerage
_____ Shareholders' Rights   _____ Real Estate (including appraisals)
_____ Newspaper/Television or other media

If you checked any of the choices above, please explain in detail:

26.   What are your primary leisure activities, hobbies and interests?

Page 11 of 45

APP. 63

| STATEMENT |
|---|

27.  What charitable, civic, social, union, professional, fraternal, political, recreational or religious organizations do you and/or your significant other volunteer for; belong to; participate in; donate money, time or services to; or hold offices in?

28.  Spouse or Significant Other -- Please complete the following questions regarding your spouse/ significant other. (If you are (Please check): _____Widowed _____Divorced or _____ Separated and currently not married, please complete the following questions regarding your former spouse.)

(a)     Spouse's/significant other's age: _____

(b)     What is the highest level of education your spouse or significant other completed?

_ Grade school or less              _____ Less than 2 years of college
_ Some high school                  _____ More than 2 years of college
_ High school graduate              _____ College graduate
_____ Technical or business school    _____ Post graduate degree

(c)     Spouse's/significant other's current employment status or former employment status (if deceased):

_____ Employed full-time
_____ Employed part-time
_____ Homemaker
_____ Student

Page 12 of 45

| STATEMENT |
|---|
| _____ Unemployed - looking for work |
| _____ Unemployed - not looking for work |
| _____ Retired |

## STATEMENT

(d)   What is her/his occupation (Note - If your spouse or significant other is retired, unemployed or deceased, please answer the following questions as regards his/her last employment).

(e)   Who is his her employer (or is he or she self-employed)?

(f)   How long has or did she/he worked there?

(g)   Please describe her/his job:

(h)   Does he or she supervise any other employees?  If Yes, please explain:

(i)   Please list any other jobs she/he has had as an adult for the last 5 years. If your spouse/significant other is retired or deceased, please list the jobs she/he held for the last 10 years before retirement or death.

**Job title  Employer How long employed there?**

29.   Have you or anyone close to you ever been employed by Hollinger International, Inc., or any of its subsidiaries, affiliates or partnerships, including the *Chicago Sun Times*?

☐   Yes ☐ No

If yes, please explain:

## STATEMENT

30.

Do you follow the news on a regular basis?   ☐ Yes ☐ No

(a)    If yes, check all the news you follow on a regular basis.

___World news                  _____Domestic (US) news
___Local news                  _____Business/financial news
___Sports news                 _____Entertainment news
___Other news (specify _____ )

(b)    What is the most important source of news for you?  (Check only one)

_____ Newspapers              _____ TV
_____ Radio                   _____ Magazines
_____ Friends and family      _____ Internet

(c)    Which newspapers do you read regularly, including both local and out-of-town papers?

(d)    How often do you read a newspaper?

_____ Every day               _____ Several times a week
_____ Once or twice a week    _____ Less often than once a week
_____ Never

(e)    Which television programs do you watch on a regular basis?

(f)    Do you watch financial news programs or networks (for example, CNBC and Bloomberg) or visit financial news websites (for example, Yahoo! Finance, Money.com, CNN-FN, CFO.com) or read the financial/business news (for example, the business pages of your local newspaper) on a regular basis?

       ☐ Yes ☐ No

| STATEMENT |
|---|
| (g)    Which magazines do you read regularly? |
| (h)    Which radio programs do you listen to on a regular basis? |

31.   Are you a regular user of the internet?  ☐ Yes ☐ No

(a)    If yes, what do you use the internet for?

(b)    If you get news from the internet, what websites do you frequently visit?

32.   If you are selected as a juror in this case, the Court will instruct you not to read, listen to or watch any news media accounts of the trial, including those on the internet.

(a)    Will you have any difficulties following this instruction?

(b)    This case may receive media attention during trial. Does this matter in any way to you?  ☐ Yes ☐ No

        If Yes, please explain:

33.   Have you or anyone close to you ever:

(a)    Been arrested, charged with or convicted of a crime?  ☐ Yes ☐ No

| STATEMENT |
|---|
| (b)     Appeared as a witness before any federal, state or district court, grand jury or government body or agency (including any legislative committee)? ☐ Yes ☐ No |
| (c)     Sued or been sued by anyone?       ☐ Yes ☐ No |
| (d)     If you checked Yes for any of the above, please explain here. |

34.    Was there any sort of court hearing in the matters you described in the preceding question? ☐ Yes ☐ No

If Yes, did you or the person close to you, testify at that court hearing? ☐ Yes ☐ No

(a)     If Yes, who testified?

(b)     If Yes, how did you or the person close to you, feel about the experience?

35.    Have you or anyone close to you ever been asked to testify in court as an expert witness, or as a witness with special knowledge or training?

☐ Yes ☐ No

If yes, please describe:

36.    Have you or anyone close to you been the victim of, or witness to, any kind of crime, whether it was

Page 17 of 45

APP. 69

| STATEMENT |
|---|

reported to law enforcement authorities or not?

☐     Yes ☐ No

(a)     If yes, was anyone caught?     What was the outcome of the case?

(b)     Have you or anyone close to you ever been the victim of fraud or another type of financial crime?

☐ Yes ☐ No
If yes, please give details:

37.     Have you or anyone close to you made or brought any claims or lawsuits against any federal, state, district or local government agency or have any claims or lawsuits ever been made by any federal, state, district, local official or government agency against you or anyone close to you?

☐ Yes ☐ No

If Yes, please explain:

38.     Are you or anyone close to you employed by a law enforcement agency (as an employee or a volunteer)?

☐ Yes ☐ No
If yes, please describe:

(a)     Have you or anyone close to you ever applied or considered applying to any law enforcement agency, or had any training, courses, or work experience in law enforcement, criminal justice, administration of justice,?

Page 18 of 45

| STATEMENT |
|---|
| ☐ Yes ☐ No<br>If yes, please explain:<br><br><br><br>(b)    Have you or anyone close to you ever worked for, applied to or had any experience with the Federal Bureau of Investigation, the Internal Revenue Service, the United States Postal Service, the United States Attorneys Office or the United States Securities and Exchange Commission?<br><br>☐ Yes ☐ No<br>If yes, please explain:<br><br><br><br>39.    Do you feel that you might give more or less weight to the testimony of agents of the federal government than to civilian witnesses?<br><br>☐ Yes ☐ No<br>Please explain why or why not:<br><br><br><br><br><br>40.    Do you currently, or have you ever, owned stocks (including mutual funds)?<br><br>☐    Yes ☐ No<br><br>(a)    If Yes, have you owned or are you aware of whether your mutual fund owned stock in Hollinger Inc. or Hollinger International, Inc. (which owned the *Chicago Sun Times*) at any time in the past ten years?    ☐ Yes ☐ No<br><br>(b)    If Yes, could you impartially consider evidence presented about Hollinger Inc., Hollinger |

Page 19 of 45

## STATEMENT

International, Inc. and its directors, officers and other present and former employees?      □ Yes
□ No

If No, please explain:

41.   Have you or anyone close to you ever participated in any group concerned with crime prevention or victims' rights?

□ Yes □ No

If yes, please list the organization, who participated, and any position that person holds or held:

42.   Have you ever served as a juror before?

□ Yes □ No

If yes, please complete for each case on which you served:

Civil or Criminal?
   **What were the charges or allegations?**
   **When and where was the trial?**
   **Did the jury reach a verdict? (Yes or No)**

(a)   If you have served on a jury before, were you the foreperson?

□ Yes □ No

(b)   Have you ever served on a grand jury or coroner's jury?

□ Yes □ No

Page 20 of 45

| STATEMENT |
|---|
| If yes:  When:  _____ |
| Where:  _____ |
| Kind of jury:  _____ |
| (c)   How did you feel about your service as a juror? |
| 43.   Was there anything about your experience as a juror which would make you want to serve again or not want to serve again? ☐ Yes  ☐ No |
| If Yes, please explain. |

## STATEMENT

### THIS CASE

This case is about an alleged financial fraud at a company called Hollinger International, which was the parent company that owned the Chicago Sun Times. The defendants in this case are Conrad Black, John Boultbee, Peter Atkinson, Mark Kipnis and The Ravelston Corporation Limited ("Ravelston").

The defendants are presumed to be innocent of all charges. The defendants have pled not guilty to all charges.

The prosecution has the burden of proving each defendant guilty of each charge beyond a reasonable doubt.

44. Do you or any family members know Conrad Black, John Boultbee, Peter Atkinson or Mark Kipnis? Have you heard of The Ravelston Corporation Limited?

45.

From time to time, this case has received media attention. There is nothing wrong with having heard something about this case. It is important that you truthfully and fully answer the following questions concerning your knowledge about this case.

    (a)    Have you seen, read or heard anything about this case or the criminal charges being brought against any of the defendants in this case: Conrad Black, John Boultbee, Peter Atkinson, Mark Kipnis, or Ravelston?

        □ Yes □ No
        If Yes, please describe:

    (b)    In general, have you formed an opinion about this case?

        □ Yes □ No
        If Yes, please describe:

APP. 74

**STATEMENT**

(c)   If you have formed an opinion or impression about the case, will it take evidence from the defendants or the government to change that opinion or impression?

☐ Yes ☐ No

If Yes, please describe:

46.   Conrad Black is a defendant in this case.  How much, if anything, have you seen, read, or heard about Conrad Black?

☐ Nothing     ☐ Some Things     ☐ A lot

(a)   What have you heard and what do you know about Conrad Black?

(b)   What impressions, feelings, or opinions had you formed about Conrad Black before coming into Court today?

(c)   Have you formed any opinions about the guilt or innocence of defendant Conrad Black?

If yes, please explain:

47.   John Boultbee is a defendant in this case.  How much, if anything, have you seen, read, or heard about John Boultbee?

☐ Nothing     ☐ Some Things     ☐ A lot

Page 23 of 45

| STATEMENT |
|---|
| (a)   What have you heard and what do you know about John Boultbee? |
| (b)   What impressions, feelings, or opinions had you formed about John Boultbee before coming into Court today? |
| (c)   Have you formed any opinions about the guilt or innocence of defendant John Boultbee? |
| If yes, please explain: |

48.   Peter Atkinson is a defendant in this case. How much, if anything, have you seen, read, or heard about Peter Atkinson?

☐ Nothing    ☐ Some Things    ☐ A lot

(a)   What have you heard and what do you know about Peter Atkinson?

(b)   What impressions, feelings, or opinions had you formed about Peter Atkinson before coming into Court today?

---

**STATEMENT**

(c)   Have you formed any opinions about the guilt or innocence of defendant Peter Atkinson?

If yes, please explain:

49.   Mark Kipnis is a defendant in this case. How much, if anything, have you seen, read, or heard about Mark Kipnis?

☐ Nothing   ☐ Some Things   ☐ A lot

(a)   What have you heard and what do you know about Mark Kipnis?

(b)   What impressions, feelings, or opinions had you formed about Mark Kipnis before coming into Court today?

(c)   Have you formed any opinions about the guilt or innocence of defendant Mark Kipnis?

If yes, please explain:

---

Page 25 of 45

## STATEMENT

50. Ravelston (a corporation) is a defendant in this case. How much, if anything, have you seen, read, or heard about Ravelston?

☐ Nothing     ☐ Some Things     ☐ A lot

(a)    What have you heard and what do you know about Ravelston?

(b)    What impressions, feelings, or opinions had you formed about Ravelston before coming into Court today?

(c)    Have you formed any opinions about the guilt or innocence of defendant Ravelston?

If yes, please explain:

51.    Is there anything that you have heard about this case that you feel would make it hard for you to be a fair and impartial juror in this case?

☐ Yes  ☐ No
If yes, please describe:

## STATEMENT

Page 27 of  45

## STATEMENT

52.   During this trial, you may hear testimony about the entities listed below.

American Publishing Company

American Publishing Management Services, Inc.

Bass, Berry & Sims PLC

CanWest Global Communications Corporation

Cardinal Capital Management, Inc.

*Chicago Sun-Times*

Community Newspaper Holdings, Inc.

Cravath, Swaine & Moore LLP

Davies, Ward, Phillips & Vineberg, LLP

Dirks Van Essen & Associates

Forum Communications Company

Groia & Company

Hollinger Canadian Newspapers,

     Limited Partnership

Hollinger International Publishing, Inc.

Hollinger International, Inc.

Hollinger, Inc.

Horizon Publishing Inc.

Interec Publishing Corporation

*Jerusalem Post*

KPMG LLP

Morgan Stanley Dean Witter & Co.

*National Post*

Newspaper Holdings, Inc.

Page 28 of 45

| STATEMENT |
|---|
| _____O'Melveny & Meyers LLP |
| Osler, Hoskins & Harcourt LLP |
| Osprey Media Group Inc. |
| Osprey Media Holdings Inc. |
| Paxton Media Group LLC |
| PMG Acquisition Corp. |
| Primedia Inc. |
| The Ravelston Corporation Ltd. |
| Ravelston Management Inc. |
| Richard C. Breeden & Co. |
| Shearman & Sterling |
| Southam, Inc. |
| Southam Business Communications, Inc. |
| Sugra Ltd. |
| The Telegraph Group |
| *The Daily Telepgraph* |
| *The Sunday Telegraph* |
| Toronto-Dominion Bank |
| Torys LLP |
| Tweedy, Browne Company LLC |
| Vogel Law Firm |
| Wachovia Bank |
| Winston & Strawn LLP |
| XSTM Holdings (2000) Inc. |
|       Do you or anyone close to you have any personal knowledge or experience with any of them? |

## STATEMENT

☐ Yes ☐ No

If Yes, please provide the following information:

**Entity or event about which you have personal knowledge**
    **What is the source of your knowledge?**
    **What do you know about that entity or event?**

53.    A list of names of possible witnesses or persons whose names might be mentioned during this trial is listed below.

William Ainely
Ralph Barford
Lance Bloomfield
Richard Breeden
David Brooks
Christopher Browne
Richard Burt
Lloyd Case
Leslie Coolidge
Lee Cooperman
Frederick A. Creasey
Monique Delorme
Beth DeMerchant
Mathew Doull
Barry Epstein
James Fabro
Duncan Forsythe
Eugene Fox, III
Alan Funk
Andrew Geist

Page 30 of 45

| STATEMENT |
|---|
| Rebecca Goldman |
| Steve Hall |
| Gabe Hayos |
| Paul B. Healy |
| Gulliaume Hecketsweiler |
| Thomas Henson |
| Roderick Hills |
| Craig Holick |
| Laura Jereski |
| Steven Johnson |
| Thomas L. Kabler |
| Ann Kippen |
| Henry A. Kissinger |
| Marie-Josee Kravis |
| Peter S. Laino |
| Jinyan Li |
| Linda Loye |
| Joan Maida |
| William Marcil |
| Ralph J. Martin |
| Roland McBride |
| Charles McCurdy |
| _____Jonathan Miller |
| Warren J.A. Mitchell |
| Lisa Morse |
| Kevin Murphy |
| Robert Musur |
| Alan Nadel |
| Ralph T. Neveille |
| Jennifer Owens |
| Christopher Paci |
| Gordon Paris |
| David Paxton |
| Gustavo Pedernera |

Page 31 of 45

| STATEMENT |
|---|
| Richard Perle |
| Pao Phua |
| Kay Pishka |
| David Power |
| David Radler |
| James F. Reda |
| Michael Reed |
| Ann Riposuanu |
| William "Bud" Rogers |
| Marc Rosenberg |
| Jonathan Rosenberg |
| Patrick Ryan |
| Maureen J. Sabia |
| Paul Saunders |
| Shari Schindler |
| Ken Serota |
| Mahmood Shahab |
| Robert Smith |
| Ben Soave |
| Marilyn Stitt |
| Jerry Strader |
| Brian Stevens |
| Darren Sukonick |
| James Thompson |
| Barry Tyner |
| Donald Vale |
| Owen Van Essen |
| Todd Vogt |
| Angela Easterling Way |
| James Winikates |
| |
| |
| Do you or anyone close to you personally know any of these persons? |

Page 32 of 45

| STATEMENT |
|---|
| ☐ Yes ☐ No |

Page 33 of 45

| STATEMENT |
|---|
| If Yes, please provide the following information: |
| **Name of witness:** How do you, your family member, or your friend know this witness? How long have you, your family member, or your friend known this witness? |
| |
| 54.   Some individuals you may hear from or about in this case have titles such as "Lord" or "Ambassador." Would the fact that an individual held such a title cause you to view them differently? |
| |

Page 34 of 45

APP. 86

| STATEMENT |
|---|

55.    The attorneys and law firms expected to be involved in this case are listed below.  **Attorneys**:

Donald Corbett

Jeffrey Cramer

Zachary Fardon

Terence Gillespie

Edward Genson

Richard Greenberg

Edward Greenspan

Carolyn Gurland

Ian Hochman

Patricia Brown Holmes

Jane Kelly

Marc Martin

Royal Martin

Gus Newman

Benito Romano

Julie Ruder

Ronald Safer

Michael Schachter

Edward Siskel

Deborah Steiner

Eric Sussman

Michael Swartz

Robert Tarun

Patrick Tuite

Steven Yurowitz    **Law firms**:

Arnstein & Lehr

Dickstein Shapiro

Genson & Gillespie

Greenspan & White

Latham & Watkins

Martin, Brown & Sullivan

Newman & Greenberg

Schiff Hardin

Page 35 of  45

---

### STATEMENT

Schulte Roth & Zabel

Willkie Farr & Gallagher

Do you know any of these attorneys or firms?  ☐ Yes  ☐ No

---

| STATEMENT |
|---|

If Yes, please provide the following information:

Name of attorney or firm you know:

How do you know this attorney or firm?

How long have you known this attorney or firm?

56.      In general, what, if any, opinions do you have about people from Canada?

57.      If you heard evidence that some of the defendants in this case received tens of millions of dollars, would that fact alone cause you to believe that there must have been some type of misconduct?

If yes, please explain.

58.      Do you think there should be:

☐   More government regulation of large corporations

☐   Less government regulation of large corporations

☐   The amount of current regulation is adequate

☐   No opinion

Page 37 of 45

APP. 89

## STATEMENT

59.   During the case, there will be evidence about law firms that have large corporations as clients.  Do you hold any views about law firms that could affect your view of evidence in this case?

☐ Yes ☐ No
If yes, please describe:

60.   During the case, there will be evidence about practices in which a person or corporation may set up a transaction to obtain better tax treatment.  Do you hold any views about such practices that could affect your view of evidence in this case?

☐ Yes ☐ No
If yes, please describe:

61.   During the case, there will be evidence about the practice of obtaining, in connection with a business transaction, so-called "non-competition agreements" (also sometimes called "covenants not to compete").

(a)   Have you ever signed a non-competition agreement (or covenant not to compete) or been asked to sign one?

☐ Yes ☐ No

(b)   Do you hold any views about such agreements that could affect your view of evidence in this case?

☐ Yes ☐ No

Page 38 of 45

| STATEMENT |
|---|

If yes, please describe:

62.    Have you ever had anyone lie to you or mislead you in a business dealing?

If yes, please describe:

63.    Have you or anyone close to you ever served on a Board of Directors, or been an Officer of, any corporation, company, charitable organization or other entity?

□ Yes □ No
If Yes, briefly describe your responsibilities and type/size of the organization:

64.    Have you ever read a Shareholder Proxy Statement, Form 10-K, Form 10-Q or Annual Shareholder's Report of a publicly traded company or corporation?

□ Yes □ No
If yes, please describe:

65.    Have you ever lost a significant amount of money on an investment?

□ Yes □ No
If yes, is there anything about that experience that would cause you to pre-judge the evidence in this case?

Page 39 of 45

| STATEMENT |
|---|

66. Have you or anyone close to you been affected by financial problems at companies where there have been allegations of wrongdoing by corporate executives?

   ☐ Yes ☐ No
   If yes, please describe:

67. Have you or anyone close to you been a party to any shareholder action or lawsuit against a corporation or a corporation's executives?

   ☐ Yes ☐ No
   If yes, please describe:

68. Have you or anyone close to you ever served on, worked for or appeared before an Audit Committee of any corporation, company, charitable organization or other entity?

   ☐ Yes ☐ No
   If Yes, briefly describe your responsibilities and type/size of the organization:

69. Have you ever worked with auditors or conducted an audit of any corporation, company, charitable organization or other entity?

   ☐ Yes ☐ No
   If yes, please describe:

APP. 92

---

**STATEMENT**

70. Have you ever been a member of any shareholder's rights group or executive compensation reform group?

    ☐ Yes  ☐ No
    If yes, please describe:

71. Did you follow any of the lawsuits/prosecutions in the past few years involving WorldCom, Global Crossing, Qwest Communications, Enron, Arthur Andersen, Adelphia or Tyco?

    If yes, how closely?

72. Have you ever owned stock in a company whose officers or the corporation itself have been charged with a crime?

    If yes, please describe:

73. Under the United States Constitution, a person or entity accused of a crime does not have to testify in his defense or present any witnesses and his/its silence may not be used against him/it. Can you abide by this constitutional requirement?

    ☐        Yes  ☐ No

---

Page 41 of 45

APP. 93

## STATEMENT

74.    Is there any matter not covered by this questionnaire that you think the attorneys or the Court might want to know about you when considering you as a juror in this case?

☐ Yes ☐ No

If yes, please describe:

75.    Do you have personal, religious, philosophical or other beliefs that would make it difficult for you to sit in judgment of another?

☐Yes      ☐ No

If yes, please explain

76.    Is there any matter you would prefer to discuss privately?

☐ Yes ☐ No

77.    Do you have difficulty reading, speaking or understanding the English language?

☐      Yes ☐ No

If Yes, please explain:

78.    Is there anything else about your ability to serve as a juror that you think we should know?

☐ Yes ☐ No

If yes, please explain:

APP. 94

**STATEMENT**

APP. 95

**STATEMENT**

**JUROR'S OATH**

I declare under penalty of perjury that the answers set forth in this Jury Questionnaire are true and correct to the best of my knowledge and belief. I have not discussed my answers with others, or received assistance in completing the questionnaire.

_____

Signature

_____

Print Name

_____

Date

Page 44 of 45

Page 44 of 45

APP. 96

| STATEMENT |
|---|
| Please use the space below to finish any of your answers.  Please specify the number of any questions to which you are completing an answer. |