**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **Civil Action No. 3:08-cv-02050 (SAF)** ) |
| MARK CUBAN, | ) ) |
| Defendant. | ) ) ) |

# DEFENDANT MARK CUBAN'S TRIAL MEMORANDUM REGARDING JUNE 2004 HEARSAY EMAILS OF DAVID GOLDMAN

Defendant Mark Cuban respectfully submits this Trial Memorandum in support of his request that certain emails written by David Goldman (Chairman of the Board of Directors of Mamma.com) (the "Goldman Emails" or "Emails") be excluded.

## I.     Background

The Goldman Emails are Mr. Goldman's out-of-court statements purporting to paraphrase Mamma.com CEO Guy Fauré's out-of-court statements about what Mr. Cuban supposedly told Mr. Fauré in a telephone conversation on June 28, 2004.  The Emails were the subject of a motion *in limine* filed by Mr. Cuban (the "Motion *in Limine*") that the Court granted at the pretrial conference on September 25, 2013.  In the Court's Advisory to Counsel dated September 26, 2013, however, the Court indicated that it had "located authorities . . . that arguably support the SEC's position that a written statement adopted by Fauré, even if drafted by David Goldman, can qualify under Rule 801(d)(1)(B) as a prior consistent statement.  Accordingly . . . the court may not follow its interlocutory ruling."  ECF No. 258.  For the following four independent reasons, the Court's interlocutory ruling on the Motion *in Limine* was proper and the Goldman Emails should be excluded:

    (i)     Rule 801(d)(1)(B) does not apply here because the Rule requires that the declarant "testify at trial" and Mr. Fauré is not appearing at trial;

    (iii)   Even assuming, arguendo, that Mr. Fauré adopted the Goldman Emails, they are still inadmissible hearsay statements of Mr. Goldman, irrespective of Rule 801(d)(1)(B);

    (iii)   The SEC cannot possibly satisfy its burden of establishing that Mr. Fauré adopted the Goldman Emails; and

    (iv)   The improper "motive" arose before the Goldman Emails.

## II.    Discussion

### A.     Rule 801(d)(1) Does Not Apply Because Mr. Fauré Is Not Testifying At Trial

Courts around the country have held that Rule 801(d)(1) applies only when the declarant "testifies at the trial."  *See, e.g., United States v. Liu*, 538 F.3d 1078, 1086 (9th Cir. 2008) ("In

order to admit statements under Rule 801(d)(1)(B), the party that seeks to admit the statement must satisfy [the following] elements . . . the declarant ***must testify at trial*** . . . [and] the proponent must offer a prior consistent statement that is consistent with the declarant's challenged ***in-court*** testimony . . ." (emphasis added)).[1] As such, Rule 801(d)(1)(B) is inapplicable here, because Mr. Fauré will not be testifying at trial. The SEC (and also Mr. Cuban) only intends to use Mr. Fauré's deposition testimony at trial and that deposition testimony is hearsay.

It is well established in the Fifth Circuit and elsewhere that deposition testimony admitted under Fed. R. Civ. P. 32 (and offered to prove the truth of the matter asserted) is hearsay.[2] As the Fifth Circuit explained in *Moss v. Ole South Real Estate, Inc.*, deposition statements made by the deponent in her deposition were "hearsay because the declarant . . . who is not available as a witness, made the statements outside of the courtroom, and because the statements are offered to prove the truth of the matters asserted. Fed. R. Evid. 801." 933 F.2d 1300, 1311 (5th Cir. 1991).[3] The fact that deposition testimony (when used to prove the truth of the matter asserted) is considered hearsay necessarily means deponents are ***not*** considered to be "testifying at trial" – that conclusion is compelled by the definition of hearsay. Fed. R. Evid. 801(c)(1) (defining "hearsay" to mean statements ***not*** made by the declarant while testifying at trial and offered to prove the truth of the matter asserted).

---

[1] *See also United States v. Anderson*, 303 F.3d 847, 858 (7th Cir. 2002) ("'nonhearsay' prior consistent statements . . . are admissible if they satisfy a four-part test: (1) the declarant testifies at trial and is subject to cross-examination, (2) his prior statement is indeed consistent with his trial testimony . . ."); *United States v. Savage*, 2013 WL 1795289, at *2 (E.D. Pa. April 26, 2013) (same).

[2] *See also Beck v. Jet Equipment & Tools, Inc.*, 2001 WL 515243, at *1 (E.D. La. May 14, 2001) ("Defendant's Motion in Limine to exclude the deposition transcript of Mr. Bartlett is hereby GRANTED. The testimony of Mr. Bartlett is hearsay . . . ."); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1217 (11th Cir. 1993) ("Establishing a predicate for using a deposition over objection is not a mere nicety. Under FRE 801(c) the deposition is hearsay. Fed. R. Civ. P. 32(a)(3) simply acts as an exception permitting admission of deposition testimony when the witness is unavailable to testify at trial." (internal citations omitted)); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 779 n.27 (9th Cir. 2002) ("Deposition testimony, irrespective of its contents, is ordinarily hearsay when submitted at trial . . . ."); *Maciel v. Mariposa County Jail*, 1989 WL 18110, at *1 (9th Cir. Feb. 24, 1989) ("Testimony in a deposition is hearsay . . .").

[3] The Court of Appeals went on to conclude that, as a result, deposition testimony regarding what another individual told the deponent amounts to double hearsay. *Id.*; s*ee also* 7 *Moore's Federal Practice*, § 32.02[1][b] (Matthew Bender 3d ed. 2013) (Under Rule 32, depositions are not excluded from the definition of hearsay; rather "Rule 32 works as an exception to the hearsay rule" prohibiting the admission of hearsay); Fed. R. Evid. 802 advisory cmt. note ("The provision excepting from the operation of the rule hearsay which is made admissible by other rules [includes] . . . Rule 32: admissibility of depositions").

Because the use of Mr. Fauré's deposition testimony means that he is not "testifying at trial," Rule 801(d)(1)'s express limitation to live witnesses means that the Rule cannot be used to obtain the admission of the Goldman Emails. In *Tome v. United States*, 513 U.S. 150 (1995), the Supreme Court examined the background of Rule 801(d)(1) and explained that it was, in part, "*because the declarant is present in court*" and testifies at trial that the Advisory Committee elected in the first place to treat prior consistent statements as nonhearsay, and implemented Rule 801(d)(1).[4] Thus, the fact "the declarant is present in court" (*id*.) is both a requirement of the Rule and central to the Rule's underlying rationale. *Tome* leaves no doubt that Rule requires the declarant of a "prior consistent statement" to be "present in court" and provide live testimony.

Given that Rule 801(d)(1) applies only when the declarant "testifies at trial,"[5] the Rule is inapplicable here. Mr. Fauré is not testifying at the trial in this case – rather, the SEC and also Mr. Cuban have designated portions of Mr. Fauré's deposition testimony to be entered into evidence. Accordingly, the SEC cannot admit Mr. Goldman's emails, in whole or in part, as "prior consistent statements" under Rule 801(d)(1)(B).

### B.   Even Assuming, Arguendo, That Mr. Fauré "Adopted" The Goldman Emails, Those Emails Are Still Inadmissible Hearsay

Even assuming, for the sake of argument, that Rule 801(d)(1)(B) is applicable to deposition testimony, the SEC still cannot offer the Goldman Emails into evidence to prove the truth of the

---

[4] *Id*. at 157 ("Noting the 'troublesome logic of treating a witness' prior consistent statements as hearsay at all (because the declarant is present in court and subject to cross-examination), the Advisory Committee decided to treat those consistent statements, once the preconditions of the Rule were satisfied, as nonhearsay . . . .").

[5] Prior to the Federal Rules of Evidence Style Project, Rule 801(d)(1) explicitly stated that "A statement is not hearsay if . . . [t]he declarant *testifies at the trial* or hearing." Fed. R. Evid. 801(d)(1), as amended Apr. 11, 1997, eff. Dec. 1, 1997. Although pursuant to the Style Project, the words "at the trial or hearing" were deleted from the Rule effective December 1, 2011, the Advisory Committee took pains to explain that this amendment was "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. ***These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility***." Fed. R. Evid. 801 advisory cmt. note (emphasis added). Consistent with the Advisory Committee Notes, courts have continued to construe Rule 801(d)(1) in the same manner it was before the language of the Rule was streamlined – *i.e.*, the Rule is construed as requiring that the declarant "testify at trial." *Compare United States v. Favato*, 2013 WL 3971430, at *1-2 (3d. Cir. August 5, 2013) ("for the proper admission of a prior consistent statement . . . the declarant ***must testify at trial*** . . . [and] the proponent must offer a prior consistent statement that is consistent with the declarant's challenged ***in-court*** testimony" (emphasis added)) *with United States v. Frazier*, 469 F.3d 85, 88 (3d. Cir. 2006) (same); s*ee also United States v. Holden*, 2013 WL 2149612, at *21 (E.D. Wash. May 16, 2013) (same); *United States v. Erramilli*, 2013 WL 1403206, at *9 (N.D. Ill. April 4, 2013) (same).

matters asserted in those Emails. The record evidence conclusively shows that the Goldman Emails are, in the first instance, out-of-court hearsay statements of *Mr. Goldman*.

At his deposition, Mr. Fauré testified that – even as to the email that has both Mr. Fauré and Mr. Goldman's names at the bottom – "Mr. Goldman composed this email after me conveying my impression of the call." Ex. D, Guy Fauré Dep., Nov. 4, 2011 ("Fauré Dep.") 105:10-12 (App. at 18).[6] Mr. Goldman testified that the draft of the email that was intended to be sent to the Mamma.com Board (the "Board Email") was Mr. Goldman's "writeup of the summary of what Mr. Fauré had told [him] about his conversation with Mr. Cuban." Ex. E, David Goldman Dep., Oct. 21, 2011 ("Goldman Dep.") 71:17-20 (App. at 28); *see also id.* 65:25-66:4, 171:13-18 (Board Email is "summary . . . of what Guy told me" regarding conversation with Mr. Cuban) (App. at 26-27, 33). Mr. Goldman further testified that the Board Email is not a literal recounting of what Mr. Fauré said, but instead it "reflects my understanding of what [Mr. Fauré] told me Mark Cuban said, not the specific words." *Id.* 171:19-23 (App. at 33); *see also id.* 93:21-94:14, 123:21-124:25, 189:17-25 (acknowledging "editorial comment" in Goldman Email) (App. at 29-32, 34). Finally, the Goldman Emails were sent from Mr. Goldman's email account. Fauré Dep. 100:5-8 (App. at 15); *see also* Exs. A-C (App. at 4-12) (showing Emails sent from the email address dgoldman@intasys.com).

The foregoing facts do not indicate that Mr. Fauré "adopted" the Goldman emails. *See infra* at 5-7. Even assuming that Mr. Fauré did "adopt" the emails, that would eliminate only the hearsay status of Mr. Fauré's out-of-court statements to Mr. Goldman – Mr. Goldman's out-of-court statements remain hearsay. This is confirmed by *United States v. Casoni*, 950 F.2d 893 (3d. Cir. 1991). In *Casoni*, a government witness made statements to his lawyer, who then worked those statements into a detailed proffer that was submitted to the government. The government sought to admit the proffer as a prior consistent statement. *Id.* at 907-08. Although

---

[6] All documents designated "Ex." are exhibits to the Declaration of Lyle Roberts in Support of Defendant Mark Cuban's Trial Memorandum Regarding June 2004 Hearsay Emails of David Goldman, and all references to "App." are to the consecutively paginated page numbers on the lower right-hand corners of the Appendix.

4

there can be no doubt that the client "adopted" his lawyer's statement, the Third Circuit found that when a client makes statements to his lawyer, who then makes a statement reflecting what his client said, the statement is an out-of-court statement of the lawyer that still runs afoul of the rule against hearsay (unless subject to an exception to the hearsay rule). *Id*. at 908. As such, the Third Circuit held that the lawyer's statement cannot be admitted – notwithstanding the application of Rule 801(d)(1)(B) to the client's "adoption" of the statement – unless there is a hearsay exception that separately covers the lawyer's statement. *Id.; see also United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321-23 (4th Cir. 1982) (secretary who merely transmitted her boss's statement verbatim to third party is still considered to be a hearsay declarant whose statement requires a hearsay exception or exclusion to be admissible).

In sum, even if Mr. Fauré had adopted Mr. Goldman's statement, Mr. Fauré's adoption of the statement does not make it any less of an inadmissible out-of-court statement by Mr. Goldman.

### C. The SEC Cannot Satisfy Its Burden of Establishing That Mr. Fauré "Adopted" the Goldman Emails

Even assuming, arguendo, that adoption by Mr. Fauré of the Goldman Emails could completely cure the multiple "hearsay" nature of the Emails, the SEC simply cannot establish as a threshold matter that Mr. Fauré adopted the Emails. Where a witness has not written the record sought to be admitted, "he must testify that he examined it and found it to be accurate." *O'Malley v. United States Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985). Thus, the SEC must point to "specific testimony" from Mr. Fauré – the only witness with firsthand knowledge of the call with Mr. Cuban – establishing that Mr. Fauré "examined [the Goldman Emails] and found [them] to be accurate." *Id.* This the SEC cannot do. Indeed, despite attaching great importance to the Goldman Emails since this case was first filed, the SEC did not even ask Mr. Fauré any questions at his deposition that were calculated to establish whether he "adopted" the Emails. The SEC did not even bother to ask Mr. Fauré the straightforward question of whether he considered the Emails to be his own statements, or joint statements of his and Mr. Goldman.

As a threshold matter, there is no evidence that Mr. Fauré reviewed or otherwise, in any

way, "adopted" the Goldman Email sent on June 29, 2004. Accordingly, the SEC's "adoption" theory must fail as to that email. Even as to the June 28, 2004 Goldman Emails – the first of which is a draft email to Mamma.com's Board that did not include the words "Guy and Dave" at the bottom (the "Draft Board Email"), and the second of which is the final version of that email sent to the Board (the "Final Board Email") – there is insufficient evidence to suggest adoption.

First, the record evidence shows only that Mr. Fauré received the Draft Board Email (Fauré Dep. 108:5-15 (App. at 19)) and that Mr. Fauré "most probably" looked at that draft but made no changes. *Id.* 203:2-4, 205:6-21 (App. at 20-21). This manifestly does not amount to "specific testimony" from Mr. Fauré that he "[a] examined [the Goldman Emails] and [b] found [them] to be accurate." *O'Malley*, 776 F.2d at 500. In the absence of explicit testimony from Mr. Fauré that he both reviewed the draft of the first Goldman Email and found that it was consistent with his then-current memory, Mr. Fauré cannot be deemed to have "adopted" the Email.

Second, the record evidence actually belies any notion that Mr. Fauré "adopted" the June 28, 2004 Goldman Emails. In his deposition, Mr. Goldman states that those Emails are not a literal recounting of what Mr. Fauré said, but instead "reflects my understanding of what [Mr. Fauré] told me Mark Cuban said, not the specific words." Goldman Dep. 171:19-23 (App. at 33). Tellingly, despite being questioned at length about the Emails at his deposition, Mr. Fauré at no point referred to the Emails as "his" statements or joint statements of his and Mr. Goldman's. Moreover, both Mr. Goldman and Mr. Fauré acknowledged that Mr. Goldman had made his own "editorial comments" in the June 28 Emails. Goldman Dep. 93:21-94:14, 123:21-124:25, 189:17-25 (acknowledging "editorial comment" in Goldman Email) (App. at 29-32, 34); Fauré Dep. 207:21-208:2 (acknowledging Goldman's editorializing in Goldman Emails) (App. at 22-23). When one person characterizes another person's words as that person's "editorial comments," the first person is hardly embracing or adopting those words – they are doing quite the opposite.

Finally, although the SEC attaches much weight to the fact that the Final Board Email bears Mr. Fauré's name at the bottom, the evidence shows that Mr. Fauré did not put his name there. Fauré Dep. 101:20-102:2 (Mr. Goldman typed email) (App. at 16-17). Rather, Mr. Goldman

6

acknowledged that he was the one who "affixed Guy's name" to the Final Board Email. Goldman Dep. 217:5-6 (App. at 35). Significantly, Mr. Fauré did not testify that he instructed or asked Mr. Goldman to sign the Final Board Email on his behalf or affix his name to that Email.

Of course, as the case law establishes, evidence that a person has *personally* signed a document can reflect that the person adopted the contents of the document.[7] But the SEC cannot identify any case law where, as here, one person took the liberty of putting another person's name at the end of an email or similar document, and the court held that this was tantamount to the second person signing the email or document themself and therefore evidenced the second person's adoption of the document. Indeed, any such case law would turn the doctrine of "adoption" on its head. In determining whether a person has adopted a statement, a court must consider whether the "words and conduct" of *that person* indicate *that person* manifested an intention to adopt the statement. *O'Malley*, 776 F.2d 494 at 500; *see also supra* at 7 n.7. That *Mr. Goldman* – and not Mr. Fauré himself – affixed Mr. Fauré's name to the email is not evidence of any intention of *Mr. Fauré's*, much less evidence of his intention to adopt the email.

### D. The Improper "Motive" Arose Before the Goldman Emails

The Federal Rules of Evidence do not accord non-hearsay status to all prior consistent statements. The admissibility of prior consistent statements is confined to those statements that are "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B). As the U.S. Supreme Court has held, the Rule has a temporal component: "the consistent statements must have been made *before* the alleged influence, or motive to fabricate, arose." *Tome*, 513 U.S. at 158 (emphasis added).

As discussed in the SEC's Opposition to Mr. Cuban's Motion *in Limine*, its "prior consistent statement" theory is that the June 28, 2004 email "which states that Cuban recognized

---

[7] *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 930 (3d Cir. 1985) (by *personally* signing copies of records, plaintiff adopted the records); *Pillsbury Co. v. Cleaver-Brooks Div. of Aqua-Chem, Inc.*, 646 F.2d 1216, 1217-18 n.2 (8th Cir. 1981) (supervisor adopted report by *personally* signing each page of report prepared by defendant).

7

that he was not able to do anything until after the public announcement is completely consistent with Mr. Fauré's testimony that Cuban said 'Now I'm screwed, I can't sell.'" SEC's Response to Cuban's Omnibus Motion in Limine at 4, Sept. 23, 2013, ECF No. 240. The problem with that theory, however, is that the motive for Mr. Fauré to fabricate his statements – the investigation of Mamma.com by the SEC – arose before the email was ever written.

The timeline is clear. On March 18, 2004, Mamma.com received an email and accompanying letter informing the Company that the SEC was "conducting a non-public informal inquiry into recent trading in Mamma.com Inc." Ex. F, Email from Alton Turner to David Goldman and Michael Storck (March 18, 2004) (App. at 37-41). Three months later, on June 28, 2004, Mr. Goldman wrote his email in which Mr. Fauré supposedly expressed his "prior consistent statement." In this situation, Rule 801(d)(1)(B) is simply inapplicable. There can be no debate that the alleged improper "motive" was in existence at the time of the Goldman email and, as a result, it cannot be described as a "prior" consistent statement. *Tome*, 513 U.S. at 159 ("Whatever objections can be leveled against limiting the Rule to this designated form of impeachment and confining the rebuttal to those statements made before the fabrication or improper influence or motive arose, it is clear to us that the drafters of Rule 801(d)(1)(B) were relying upon the common-law temporal requirement."). Accordingly, the June 28, 2004 Goldman email is not admissible under Rule 801(d)(1)(B) and must be excluded.

\* \* \*

For all of the foregoing reasons, Mr. Cuban respectfully submits that this Court should exclude the Goldman Emails.

Dated: September 30, 2013
Dallas, Texas

By:     *s/ Lyle Roberts*
        Lyle Roberts (*pro hac vice*)
        D.C. Bar No. 464789
        George E. Anhang (*pro hac vice*)
        D.C. Bar. No 461936
        COOLEY LLP

that he was not able to do anything until after the public announcement is completely consistent with Mr. Fauré's testimony that Cuban said 'Now I'm screwed, I can't sell.'" SEC's Response to Cuban's Omnibus Motion in Limine at 4, Sept. 23, 2013, ECF No. 240. The problem with that theory, however, is that the motive for Mr. Fauré to fabricate his statements – the investigation of Mamma.com by the SEC – arose before the email was ever written.

The timeline is clear. On March 18, 2004, Mamma.com received an email and accompanying letter informing the Company that the SEC was "conducting a non-public informal inquiry into recent trading in Mamma.com Inc." Ex. F, Email from Alton Turner to David Goldman and Michael Storck (March 18, 2004) (App. at 37-41). Three months later, on June 28, 2004, Mr. Goldman wrote his email in which Mr. Fauré supposedly expressed his "prior consistent statement." In this situation, Rule 801(d)(1)(B) is simply inapplicable. There can be no debate that the alleged improper "motive" was in existence at the time of the Goldman email and, as a result, it cannot be described as a "prior" consistent statement. *Tome*, 513 U.S. at 159 ("Whatever objections can be leveled against limiting the Rule to this designated form of impeachment and confining the rebuttal to those statements made before the fabrication or improper influence or motive arose, it is clear to us that the drafters of Rule 801(d)(1)(B) were relying upon the common-law temporal requirement."). Accordingly, the June 28, 2004 Goldman email is not admissible under Rule 801(d)(1)(B) and must be excluded.

\*   \*   \*

For all of the foregoing reasons, Mr. Cuban respectfully submits that this Court should exclude the Goldman Emails.

Dated: September 30, 2013
Dallas, Texas

By:   *s/ Lyle Roberts*
      Lyle Roberts (*pro hac vice*)
      D.C. Bar No. 464789
      George E. Anhang (*pro hac vice*)
      D.C. Bar. No 461936
      COOLEY LLP

1299 Pennsylvania Ave., Suite 700
Washington, DC 20004
Tel. (202) 842-7855
Fax (202) 842-7899
lroberts@cooley.com
ganhang@cooley.com

Stephen A. Best
D.C. Bar No. 428447
Angela Papalaskaris (*pro hac vice*)
BROWN RUDNICK LLP
601 Thirteenth St. NW, Suite 600
Washington, D.C. 20005
Tel. (202) 536-1737
Fax (202) 536-1701
sbest@brownrudnick
apapalaskaris@brownrudnick.com

Christopher J. Clark (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel. (212) 906-1200
Fax (212) 751-4864
christopher.clark2@lw.com

Thomas M. Melsheimer
Texas Bar No. 13922550
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Tel. (214) 747-5070
Fax (214) 747-2091
melsheimer@fr.com

*Attorneys for Defendant Mark. Cuban*

**CERTIFICATE OF SERVICE**

  I certify that on September 30, 2013, I electronically submitted the foregoing Trial Memorandum Regarding June 2004 Hearsay Emails of David Goldman with the Clerk of Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                s/ Lyle Roberts
                Lyle Roberts (*pro hac vice*)