ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
OCT 16 2013
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:08-CV-2050-D |
| VS. | § § | |
| MARK CUBAN, | § § | |
| Defendant. | § | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard all of the evidence and the argument of counsel, it becomes my duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in these instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. The parties and the public expect that you will carefully and impartially consider

29 all of the evidence in the case, follow the law as stated in these instructions, and reach a just verdict
30 regardless of the consequences.

31 This case should be considered and decided by you as an action between persons of equal
32 standing in the community and holding the same or similar stations in life. The law is no respecter
33 of persons, and all persons, including government agencies, stand equal before the law and are to
34 be dealt with as equals in a court of justice.

35 As stated earlier, it is your duty to determine the facts, and in so doing you must consider
36 only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony
37 of the witnesses, including deposition witnesses, the exhibits admitted in the record, and the
38 stipulated facts.

39 The parties have agreed, or stipulated, to certain facts. This means that both sides agree that
40 something is a fact. You must therefore treat each stipulated fact as having been proved. The
41 stipulated facts are contained in a document that you will be given during your deliberations entitled,
42 "Stipulated Facts." Please refer to that document for the stipulated facts in this case.

43 The term "evidence" does not include anything that I have instructed you to disregard.

44 Evidence admitted before you for a limited purpose may not be considered for any purpose
45 other than the limited purpose for which it was admitted.

46 Remember that any statements, objections, or arguments made by the lawyers are not
47 evidence in the case. The function of the lawyers is to point out those things that are most
48 significant or most helpful to their side of the case and, in so doing, to call your attention to certain
49 facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your
50 own recollection and interpretation of the evidence that controls in the case. What the lawyers say

51 is not binding upon you. If an attorney's question contained an assertion of fact that the witness did
52 not adopt, the assertion is not evidence of that fact.

53 You are not bound by any opinion that you might think I have concerning the facts of this
54 case, and if I have in any way said or done anything that leads you to believe that I have any opinion
55 about the facts in this case, you are instructed to disregard it. Further, nothing in these instructions
56 to you is made for the purpose of suggesting or conveying to you an intimation as to what verdict
57 I think you should find.

58 Although you should consider only the evidence in the case, you are permitted to draw such
59 reasonable inferences from the testimony and exhibits as you feel are justified in the light of
60 common experience. In other words, you may make deductions and reach conclusions that reason
61 and common sense lead you to draw from the facts established by the evidence in the case.

62 You should not be concerned about whether the evidence is direct or circumstantial. "Direct
63 evidence" exists when the evidence directly establishes the facts that a party asserts to be true, such
64 as by an eyewitness or in a document. "Circumstantial evidence" is proof of a chain of facts and
65 circumstances that, without going directly to prove the existence of an essential fact, gives rise to
66 a logical inference that such fact does actually exist. The law makes no distinction between the
67 weight you may give to either direct or circumstantial evidence.

68 Now, I have said that you must consider all of the evidence. This does not mean, however,
69 that you must accept all of the evidence as true or accurate.

70 You are the sole judges of the "credibility" or believability of each witness and the weight
71 to be given to the witness' testimony. In weighing the testimony of a witness, you should consider
72 the witness' relationship to a particular party; the witness' interest, if any, in the outcome of the


case; the witness' manner of testifying; the witness' opportunity to observe or acquire knowledge concerning the facts about which the witness testified; the witness' candor, fairness, and intelligence; and the extent to which the witness' testimony has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness' present testimony. If you believe that any witness has been so impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as the witness remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only an unimportant detail.

94  During the trial, I have instructed you that certain earlier statements of a witness were not
95  admitted in evidence to prove that the contents of those statements are true. You may not consider
96  these earlier statements to prove that the content of an earlier statement is true; you may only use
97  these earlier statements to determine whether you think the earlier statements are consistent or
98  inconsistent with the trial testimony of the witness and therefore whether they affect the credibility
99  of that witness.

100  Certain testimony has been presented to you through a deposition. A deposition is the sworn,
101  recorded answers to questions asked a witness in advance of the trial. Before this trial, attorneys
102  representing the parties in this case questioned the witness under oath. A court reporter was present
103  and recorded the testimony. This deposition testimony is entitled to the same consideration and is
104  to be judged by you as to credibility, and weighed and otherwise considered by you insofar as
105  possible in the same way, as if the witness had been present and had testified from the witness stand.

106  Deposition testimony can also be introduced for the purpose of impeaching or discrediting
107  a witness. If, in the deposition, the witness made any statements in conflict with testimony the
108  witness gave in court, you may consider such conflicts and any explanation therefor in determining
109  the witness' credibility.

110  The rules of evidence provide that if scientific, technical, or other specialized knowledge will
111  assist the jury to understand the evidence or to determine a fact in issue, a witness qualified as an
112  expert by knowledge, skill, experience, training, or education may testify and state an opinion
113  concerning such matters if the testimony is based upon sufficient facts or data, the testimony is the
114  product of reliable principles and methods, and the witness has applied the principles and methods
115  reliably to the facts in the case.

116 You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient knowledge, skill, experience, training, or education, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is not based upon sufficient facts or data, or that the opinion is outweighed by other evidence, or that the opinion is not the product of reliable principles and methods, or that the witness has not applied the principles and methods reliably to the facts in the case, then you may disregard the opinion entirely.

123 Certain exhibits were used during this trial for demonstrative purposes, which means they have not been admitted in evidence and will not be provided to you during your deliberations. You may consider demonstrative exhibits to the extent they help you understand the evidence admitted during the trial, but you are entitled to disregard them entirely if you find that they do not accurately reflect the evidence that they purport to demonstrate. If your recollection of the evidence differs from the exhibit, rely on your recollection.

129 The plaintiff has the burden of proving each essential element of its claim by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. To establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.

135 If the proof fails to establish any essential element of the plaintiff's claim by a preponderance of the evidence, the jury must find against the plaintiff.

137 In determining whether any fact in issue has been proved by a preponderance of the
138 evidence, the jury may consider the testimony of all the witnesses, including deposition witnesses,
139 regardless of who may have called them, and all the exhibits received in evidence, regardless of who
140 may have produced them.

141 As used in this charge, the term "SEC" means plaintiff Securities and Exchange
142 Commission, the term "Cuban" means defendant Mark Cuban, the term "Mamma.com" means
143 Mamma.com Inc., and the term "PIPE" means a private investment in public equity.

144 A corporation can act only through natural persons as its agents or employees. In general,
145 any agent or employee of a corporation can bind the corporation by acts and declarations made while
146 acting within the scope of the authority delegated to the agent or employee by the corporation, or
147 within the scope of the person's duties as an employee of the corporation.

148 SEC'S MISAPPROPRIATION THEORY OF INSIDER TRADING CLAIM

149 The SEC claims that Cuban engaged in insider trading, in violation of § 17(a) of the
150 Securities Act of 1933 ("Securities Act"), § 10(b) of the Securities Exchange Act of 1934
151 ("Exchange Act"), and SEC Rule 10b-5. Section 17(a) of the Securities Act, § 10(b) of the
152 Exchange Act, and SEC Rule 10b-5 make it unlawful for a person to employ any device, scheme,
153 or artifice to defraud someone else in connection with the purchase or sale of any security. The SEC
154 bases this claim on what is called the "misappropriation theory" of insider trading. Cuban denies
155 that he engaged in insider trading and denies that he violated any of these laws.

156 Under the "misappropriation theory" of insider trading, a person is liable for violating §
157 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b-5 when it is proved by a

158 preponderance of the evidence that, in connection with a securities transaction, he knowingly or with
159 severe recklessness misappropriates material, nonpublic information for securities trading purposes,
160 in breach of a duty owed to the principal who is the source of the information. The person's
161 undisclosed, self-serving use of the principal's information to purchase or sell securities, in breach
162 of a duty to the principal, defrauds the principal of the exclusive use of that information. One way
163 this duty to the principal can arise is when the person expressly or implicitly agrees with the
164 principal that he will keep the material, nonpublic information confidential and that he will not trade
165 on or otherwise use the information for his own benefit.

166 The "misappropriation theory" bases liability on a person's deception of the principal who
167 entrusted the person with access to material, nonpublic information. The person's deceptive use of
168 the information is "in connection with a securities transaction" because the person's fraud is
169 consummated, not when he gains the material, nonpublic information, but when, without disclosure
170 to his principal, he uses the information to purchase or sell securities. A person who trades on the
171 basis of material, nonpublic information gains his advantageous market position through deception;
172 he deceives the source of the information and simultaneously harms members of the investing
173 public.

174 Because the duty of non-use of material, nonpublic information flows to the source of the
175 information and not to the shareholders, a person's full disclosure to the source of the information
176 that he intends to use the information forecloses liability under the "misappropriation theory" of
177 insider trading. This is because the deception that is essential to the "misappropriation theory"
178 occurs when a person secretly trades on material, nonpublic information, in violation of the source's
179 legitimate and justifiable expectation that the recipient will not do so. If the person fully discloses

to the source that he plans to trade on the material, nonpublic information, there is no "device, scheme, or artifice to defraud," and thus no violation of § 17(a) of the Securities Act, § 10(b) of the Exchange Act, or SEC Rule 10b-5.

To establish this claim, the SEC must prove each of the following essential elements by a preponderance of the evidence:

> <u>First</u>, that Cuban received material, nonpublic information from Mamma.com concerning Mamma.com's impending PIPE transaction;
>
> <u>Second</u>, that Cuban expressly or implicitly agreed with Mamma.com to keep the material, nonpublic information confidential and not to trade on or otherwise use the information for his own benefit;
>
> <u>Third</u>, that Cuban traded on the material, nonpublic information in the sale of his Mamma.com stock;
>
> <u>Fourth</u>, that before trading on the material, nonpublic information, Cuban did not fully disclose to Mamma.com that he planned to trade on the material, nonpublic information;
>
> <u>Fifth</u>, that Cuban acted knowingly or with severe recklessness;
>
> <u>Sixth</u>, that Cuban's conduct was in connection with the sale of a security; <u>and</u>
>
> <u>Seventh</u>, that Cuban used or caused to be used a means or instrumentality of interstate commerce in connection with the sale of a security.

<u>First Element</u>

The SEC must prove that Cuban received "material, nonpublic information" from Mamma.com concerning Mamma.com's impending PIPE transaction.

Information is "material" if there is a substantial likelihood that disclosure of the information would be viewed by the reasonable investor as having significantly altered the total mix of

208  information made available. Materiality depends on the significance the reasonable investor would
209  place on the withheld or misrepresented information. Materiality is not judged in the abstract, but
210  in light of the surrounding circumstances. Information is material if there is a substantial likelihood
211  that, under all the circumstances, the information would have assumed actual significance in the
212  deliberations of the reasonable shareholder.

213  Information is "nonpublic" if it has not been effectively disclosed in a manner sufficient to
214  insure its availability to the investing public. Information becomes public when disclosed to achieve
215  a broad dissemination to the investing public generally and without favoring any special person or
216  group, or when, although known only by a few persons, their trading on it has caused the
217  information to be fully incorporated into the price of the particular stock.

218  Information is "nonpublic" if it was not available to the public through such sources as press
219  releases, SEC filings, trade publications, analysts' reports, newspapers, magazines, rumors, word
220  of mouth, or other sources. In assessing whether information is "nonpublic," the key word is
221  "available." If information is available in the public media or in SEC filings, it is public. However,
222  the fact that information has not appeared in a newspaper or other widely available public medium
223  does not alone determine whether the information is "nonpublic." Sometimes a corporation is
224  willing to make information available to securities analysts, prospective investors, or members of
225  the press who ask for it, even though it may never have appeared in any newspaper publication or
226  other publication. Such information would be public. Accordingly, information is not necessarily
227  "nonpublic" simply because there has been no formal announcement or because only a few people
228  have been made aware of it. For example, if Mamma.com's policy was to give out certain

229  information to people who ask for it, that information is public information. Whether information
230  is nonpublic is an issue of fact for you to decide.

231  On the other hand, the confirmation by an insider of unconfirmed facts or rumors—even if
232  reported in a newspaper—may itself be inside information. Information from a corporate insider
233  that is more reliable or specific than public rumors is nonpublic information despite the existence
234  of such rumors in the media or investment community. Whether or not the confirmation of a rumor
235  by an insider qualifies as material, nonpublic information is an issue of fact for you to decide.

236  Second Element

237  The SEC must prove that Cuban expressly or implicitly agreed with Mamma.com (a) that
238  he would keep the material, nonpublic information confidential and (b) that he would not trade on
239  or otherwise use the information for his own benefit. The express or implied agreement must
240  include both aspects.

241  The existence of such an agreement can be implied from the parties' conduct and the
242  surrounding circumstances.

243  Third Element

244  To prove that Cuban "traded on" the material, nonpublic information in the sale of his
245  Mamma.com stock, the SEC must prove that Cuban used, or was motivated by, the material,
246  nonpublic information in the sale of his Mamma.com stock. The SEC is not required to prove that
247  Cuban sold his Mamma.com stock solely because of the material, nonpublic information.

248  Fourth Element

249  The SEC must prove that, before trading on the material, nonpublic information, Cuban did
250  not fully disclose to Mamma.com that he planned to trade on the material, nonpublic information.

251         You may find that Cuban fully disclosed to Mamma.com that he planned to trade on the
252 material, nonpublic information if he made the full disclosure to an agent of Mamma.com whose
253 authority included receiving such notice, and who was acting within the scope of that authority when
254 Cuban made the full disclosure. An agent is acting within the scope of the agent's authority if the
255 agent is engaged in the performance of duties that were expressly or impliedly assigned to the agent
256 by Mamma.com.

257 Fifth Element

258         The SEC must prove that Cuban acted "knowingly" or "with severe recklessness."

259         To prove that Cuban acted "knowingly," the SEC must prove that Cuban acted with an intent
260 to deceive, manipulate, or defraud Mamma.com.

261         To prove that Cuban acted with "severe recklessness," the SEC must prove that Cuban
262 engaged in conduct that involved an extreme departure from the standard of ordinary care. A person
263 acts with reckless disregard if he knows of the danger or it is so obvious that an ordinary person
264 under the circumstances would have been aware of it.

265         To prove that Cuban acted "knowingly" or "with severe recklessness," it is not enough to
266 prove that he acted negligently, mistakenly, inadvertently, or accidentally.

267         A person's state of mind can be inferred from circumstantial evidence, including the person's
268 words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may
269 be drawn from them.

270 Sixth Element

271         It is undisputed that Mamma.com stock is a "security" within the meaning of § 17(a) of the
272 Securities Act, § 10(b) of the Exchange Act, and SEC Rule 10b-5.

273 Conduct is "in connection with" the sale of a security if there is some nexus or relation 274 between the conduct and the sale of the security. Conduct may be "in connection with" the sale of 275 a security if you find that the conduct "touched upon" or "coincided with" the sale of the security.

276 <u>Seventh Element</u>

277 To use, or cause to be used, a means or instrumentality of interstate commerce in connection 278 with the sale of a security means to use or cause to be used the mails, telephone, or any facility of 279 a national securities exchange. All that is required is that a means or instrumentality of interstate 280 commerce be used in some phase of Cuban's sale of the security.

281 <u>QUESTION:</u>

282 Did the SEC prove each of the essential elements of its "misappropriation theory" of insider 283 trading claim?

284         <u>Instruction</u>: The SEC has the burden of proof. If it has met its
285         burden as to an essential element, answer "Yes;" otherwise, answer
286         "No." Answer separately as to each element.

287 ANSWER:

288         <u>First</u>, that Cuban received material, nonpublic information from
289         Mamma.com concerning Mamma.com's impending PIPE transaction.

290         Yes _____   No __X__

291         <u>Second</u>, that Cuban expressly or implicitly agreed with Mamma.com
292         to keep the material, nonpublic information confidential and not to
293         trade on or otherwise use the information for his own benefit.

294         Yes _____   No __X__

<pre> 295       Third, that Cuban traded on the material, nonpublic information in
 296       the sale of his Mamma.com stock.

 297       Yes _____ No __X__

 298       Fourth, that before trading on the material, nonpublic information,
 299       Cuban did not fully disclose to Mamma.com that he planned to trade
 300       on the material, nonpublic information.

 301       Yes _____ No __X__

 302       Fifth, that Cuban acted knowingly or with severe recklessness.

 303       Yes _____ No __X__

 304       Sixth, that Cuban's conduct was in connection with the sale of a
 305       security.

 306       Yes __X__ No _____

 307       Seventh, that Cuban used or caused to be used a means or
 308       instrumentality of interstate commerce in connection with the sale of
 309       a security.
 310
 311       Yes __X__ No _____
</pre>

## Jury Deliberations

The fact that I have given you in this charge instructions about a particular claim, or that I have not so instructed you, should not be interpreted in any way as an indication that I believe a particular party should, or should not, win this case.

In order to return a verdict your verdict must be unanimous. It is your duty as jurors to consult one another and to deliberate with a view towards reaching an agreement. Each of you must decide the case for yourself, but only after an impartial consideration with each other of all the evidence in the case. In the course of your deliberations, do not hesitate to reexamine your own

<pre>                                    - 14 -</pre>

320 view and change your opinion if convinced it is erroneous. Do not, however, surrender your honest
321 conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or
322 for the mere purpose of returning a verdict. Remember at all times that you are not partisans. You
323 are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

324 After I finish reading this charge, you will retire to the jury room. I will send you the
325 exhibits that have been admitted into evidence. You will first select one member of the jury to act
326 as presiding juror. The presiding juror will preside over your deliberations and will speak on your
327 behalf here in court.

328 Do not deliberate unless all members of the jury are present in the jury room. In other words,
329 if one or more of you go to lunch together or are together outside the jury room, do not discuss the
330 case.

331 When you have reached unanimous agreement as to your verdict, the presiding juror shall
332 fill in your answers to the questions on a copy of the charge that I will provide to you for this
333 purpose, shall date and sign the last page of that copy of the charge, and shall notify the court
334 security officer that you have reached a verdict. The court security officer will then deliver the
335 verdict to me.

336 The court will honor the schedule you set for your deliberations and your requests for breaks
337 during your deliberations. From time to time I may communicate with you concerning your
338 schedule. This is done primarily for the purpose of anticipating the court's staffing needs, and is not
339 in any way intended to suggest that your deliberations should be conducted at a different pace or on
340 a different schedule.

During the trial, the court reporter made a verbatim record of the proceedings. The court rules do not provide for testimony to be produced for the jury in written form, or for testimony to be read back to the jury as a general aid in refreshing the jurors' memories. In limited circumstances, the court may direct the court reporter to read testimony back to the jury in open court. This is done, however, only when the jury certifies that it disagrees as to the testimony of a particular witness, and identifies the specific testimony in dispute.

If, during your deliberations, you desire to communicate with me, your presiding juror will reduce your message or question to writing, sign it, and pass the note to the court security officer, who will bring it to my attention. I will then respond as promptly as possible, either in writing or by asking you to return to the courtroom so that I can address you orally. If you do send a message or ask a question in which you indicate that you are divided, never state or specify your numerical division at the time.

October 15, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

358        The foregoing is the unanimous verdict of the jury.

359    Dated:  *October 16, 2013*                    *Jane Rothman*
360                                                   Presiding Juror